IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| WISCONSIN ELECTRIC POWER COMPANY,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant. | No. 00-697C<br>Senior Judge Merow |

**WE'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY**

Pursuant to RCFC 56, plaintiff Wisconsin Electric Power Company ("WE") respectfully requests that the Court enter summary judgment establishing Defendant's liability for partial breach of its Standard Contract with WE.

## I. STATEMENT OF THE ISSUE

Whether the Defendant is liable for breach of contract as a matter of law when there is no genuine issue of material fact as to the Defendant's failure to perform a fundamental obligation by the date explicitly set forth in the Standard Contract.

## II. STATEMENT OF THE CASE

### A. WE's Standard Contract

In 1983, WE entered into the U.S. Department of Energy Contract for the Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste ("Standard Contract") with the Department of Energy ("DOE"). See WE PFUF ¶ 1. Under the Standard Contract, DOE promised to begin removal of WE's spent nuclear fuel ("SNF") no later than January 31, 1998. See Id. ¶¶ 2-3. In 1995, DOE announced that it would be unable to begin accepting SNF until 2010, and subsequently admitted that it did not begin disposing of SNF under any Standard Contract by the contractually required date. See Id. ¶¶ 4-5. DOE's failure to begin accepting, transporting, and disposing of SNF under the Standard Contract was a "breach [that] involved all

the utilities that had signed the contract – the entire nuclear electric industry." Maine Yankee Atomic Power Co. v. United States, 225 F.3d 1336, 1343 (Fed. Cir. 2000); WE PFUF ¶ 6.

**B. WE's Request For A Liability Order and the Government's Acknowledgement of Its Partial Breach of the Standard Contract in WE's Case**

In November 2000 WE brought the instant suit under the Standard Contract, alleging that it suffered substantial damages as a result of DOE's breach of WE's Standard Contract. See WE PFUF ¶¶ 7-8. On June 14, 2001, Judge Wiese conducted a hearing to review the utility plaintiffs' requests for coordinated discovery in the SNF cases and the Government's motion to reassign the SNF cases to a single judge. During that hearing, Judge Wiese recognized the importance of having "determinations of liability entered in all of th[e] cases," in light of the governing decisions of the United States Court of Appeals of the Federal Circuit in Maine Yankee and Northern States Power Co. v. United States, 224 F.3d 1361 (Fed. Cir. 2000). Judge Wiese instructed the parties to file requests for an order of liability in each of the individual cases. See June 14, 2001, Transcript of Proceedings, at 140:5-22.[1] In response to Judge Wiese's instruction, the Government indicated that it would not contest the entry of an order establishing its liability for partial breach of contract in the SNF cases, except for the case filed by the Tennessee Valley Authority. Id. at 141:16-25.

Subsequently, this Court issued an Order on July 24, 2001, directing the parties to file briefs regarding whether an order shall be issued establishing breach of contract liability in this case. In accordance with that Order, WE requested that summary judgment be entered against the Government on liability for partial breach of contract consistent with the governing decisions of the Federal Circuit in Maine Yankee and Northern States Power, and consistent with the Government's admissions that it breached WE's contract. See Plaintiff's Response to the Court's July 24, 2001 Order (August 16, 2001). The Government did not directly oppose or otherwise specifically address WE's request for entry of summary judgment. Instead, the Government

[1] Citations to the transcript of proceedings are to page and line numbers.

conceded "that DOE's inability to begin the services to be provided by the Standard Contract by January 31, 1998 constituted a partial breach of the Standard Contract." Defendant's Response to the Court's July 24, 2001 Order (Aug. 15, 2001) at 3 (emphasis added); WE PFUF ¶ 9.

Despite the Government's acknowledgement that it breached WE's Standard Contract, the Court has not yet entered an order establishing that the Government is liable for its breach. Accordingly, and for the reasons set forth more fully below, WE requests that the Court enter summary judgment of liability for partial breach of contract in favor of WE.

## III. ARGUMENT

### A. Summary Judgment Standard

Summary judgment may be granted on "any part" of a plaintiff's claim, when, as here, "there is no genuine issue of material fact . . . and the moving party is entitled to a judgment as a matter of law." RCFC 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Summary judgment may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages. RCFC 56(c); see also Maine Yankee, 225 F.3d 1336 (Fed. Cir. 2000) (granting partial summary judgment of liability for partial breach of contract).

Partial summary judgment on liability for breach of contract is appropriate when there is no genuine issue of material fact that the non-moving party defaulted on its unqualified contractual obligations, and where it is undisputed that the moving party has paid all contract fees. See e.g., Maine Yankee, at 1339, 1341-42 (Government liable for breach of contract where plaintiff utility paid all contract fees, but Government failed to begin disposing of waste as required by the time set forth in the contract). A party opposing summary judgment must show that there is a genuine issue of material fact that, if decided in its favor, would entitle a jury to rule in its favor. Celotex Corp., 477 U.S. at 324. The opposing party cannot rely upon mere denials. Id. at 323.

**B. The Undisputed Facts Demonstrate The Government's Liability For Its Partial Breach of WE's Standard Contract**

Here, the undisputed facts demonstrate that as a matter of law the Government is liable to WE for partial breach of contract, because (1) the Government had an unqualified contractual obligation to begin disposing of WE's SNF by January 31, 1998; (2) WE has paid all contract fees for the disposal of its SNF according to the terms of its contract; (3) the Government failed to begin disposing of WE's SNF as required, and has stated that it will not begin to do so until 2010, at the earliest; and (4) the only issue remaining in this case is the determination of the amount of damages to be assessed against the Government.

A valid contract exists between WE and the DOE that obligated DOE to begin taking WE's SNF by January 31, 1998. See Indiana Michigan Power Co. v. United States, 88 F.3d 1272, 1276 (D.C. Cir. 1996) (DOE's obligation to begin to dispose of SNF by January 31, 1998, is "without qualification or condition."); Northern States Power Co. v. Dep't. of Energy, 128 F.3d 754, 760 (D.C. Cir. 1997) (DOE has duty to begin taking the SNF by January 31, 1998, whether or not it has a repository or interim storage facility). As of April 26, 2004, WE had paid over $194 million in contract fees into the Nuclear Waste Fund as required by the Standard Contract. Declaration of Paul R. Farron, (Apr. 26, 2004) ¶ 3, WE PFUF ¶ 10.

DOE failed to honor its contractual obligations to accept WE's SNF pursuant to the terms of the Standard Contract. Indeed, DOE has stated that it missed the January 31, 1998 deadline and that it may not commence such disposal until 2010, at the earliest. See Final Interpretation, 60 Fed. Reg. 21,793, 21,794 (May 3, 1995), Defendant's Rate Motion PFUF, ¶ 132, WE PFUF ¶¶ 4-5. The Federal Circuit conclusively determined that DOE's acknowledged failure to begin disposal of SNF on January 31, 1998, constitutes a partial breach of the Standard Contract at issue in this case for which the Government is liable. Maine Yankee 225 F.3d at 1343; Northern States, 224 F.3d at 1367. In granting Maine Yankee's motion for partial summary judgment of liability for breach of contract, the Federal Circuit stated that "[t]he breach involved all the utilities that had signed the contract – the entire nuclear industry." 225 F.3d at 1342 (emphasis added). Moreover, the Government has expressly admitted that its inability to provide services

under the Standard Contract by January 31, 1998 constituted a partial breach of contract. See Defendant's Response to the Court's July 24, 2001 Order (Aug. 15, 2001) at 3, WE PFUF ¶ 9. In Southern Nuclear Operating Company, et al. v. United States, No. 98-614C, this Court recently ruled that the Government partially breach the Standard Contracts, concluding: "the United States, operating through DOE, failed to meet the contractual requirement to begin disposition of the nuclear waste covered by the Standard Contracts by no later than January 31, 1998." April 7, 2004 Order at 5 (See Attachment 1). Accordingly, WE's motion for summary judgment on contract liability should be granted.

Whether the Government's breach caused any injury to the plaintiff and the amount of that injury "[are] matter[s] that should properly be heard during the damages phase of the case." Hometown Financial, Inc. v. United States, 53 Fed. Cl. 326, 338 (2002).[2] Resolution of the damages issues in WE's case need not be reached prior to entry of partial summary judgment on breach of contract liability. See Id. (granting partial summary judgment on liability for breach, rejecting Government's position that it cannot be found liable because plaintiff failed to establish that the breach of contract caused any injury); Globe Savings Bank, F.S.B., v. United States, 55 Fed. Cl. 247, 263 (2003) (granting partial summary judgment on breach of contract liability and deferring any rulings regarding damages because Government clearly breached its contract and therefore, is liable for any damages resulting from its breach).

In sum, the outcome on the Government's liability for partial breach of contract in this case is controlled by the Court's decisions in Maine Yankee and Northern Power. WE is entitled to summary judgment on the issue of liability.

---

[2] WE previously identified in its Complaint at least $35 million in damages directly resulting from the Government's breach of the Standard Contract. WE PFUF ¶¶ 7-8.

## IV. CONCLUSION

For the foregoing reasons, WE respectfully requests that the Court enter an Order granting WE partial summary judgment on the issue of liability.

Dated: April 28, 2004

Respectfully submitted,

s/Richard W. Oehler by s/Donald J. Carney
Richard W. Oehler
Perkins Coie LLP
1201 Third Avenue, 40th Floor
Seattle, Washington 98101-3099
(206) 583-8419

Attorneys for Plaintiff
WISCONSIN ELECTRIC POWER COMPANY

Of Counsel:

Martin P. Willard
Donald J. Carney
Perkins Coie LLP
607 Fourteenth Street, N.W.
Washington, D.C. 20005
(202) 434-1635

**Certificate of Filing**

I hereby certify that on this 28th day of April 2004, a copy of the foregoing "WE's Motion for Partial Summary Judgment on Liability" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Donald J. Carney
Donald J. Carney

ORIGINAL

# In the United States Court of Federal Claims

No. 98-614C
(Filed April 7, 2004)

FILED
APR 7 2004
U.S. COURT OF FEDERAL CLAIMS

*******************************
SOUTHERN NUCLEAR OPERATING COMPANY, ALABAMA POWER COMPANY, GEORGIA POWER COMPANY,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.
*******************************

## ORDER

Following the lifting of all stays of proceedings pending conclusion of discovery and other matters and with the subsequent completion of briefing, this order addresses all unresolved dispositive motions. These include: (1) Plaintiffs' Motion for Summary Judgment on Contract Liability, filed October 2, 1998; (2) Defendant's Motion to Dismiss, filed December 22, 1998; (3) Defendant's Motion to Dismiss Count IV of Plaintiffs' Complaint, filed November 27, 2001; (4) Defendant's Motion for Partial Summary Judgment Regarding Plaintiffs' Greater Than Class C Radioactive Waste Arguments, filed November 28, 2001; (5) Defendant's Motion for Partial Summary Judgment Regarding the Rate of Spent Nuclear Fuel Acceptance, filed December 3, 2001 and plaintiffs' cross-motion, filed December 18, 2002; (6) Defendant's Motion to Dismiss Count Three of Plaintiffs' Complaint, filed December 14, 2001; and, (7) Defendant's Motion to Dismiss Southern Nuclear Operating Company as a Plaintiff for Lack of Subject Matter Jurisdiction, filed December 21, 2001.

A. **Defendant's Motion to Dismiss, filed December 21, 2001.**

Defendant's Motion to Dismiss, filed December 21, 2001, contests the status of Southern Nuclear Operating Company ("SNC") as a plaintiff in this breach of contract litigation. The Standard Contracts at issue, for disposal of spent nuclear fuel ("SNF"), were executed by the United States and plant owners, Alabama Power Company ("APC") and Georgia Power Company ("GPC"). SNC is not a contracting party with the United States, but has operating agreements with plant owners, APC and GPC, whereby it

> is responsible for, *inter alia* possession, management, control, operation, maintenance, shutdown and decommissioning of the plants including, but not limited to: (1) execution, administration and enforcement of contracts for the purchase of nuclear fuel and fuel services, which include the storage and disposal of SNF, necessary for the operation of those plants; and (2) management and storage of SNF generated by the plants until such time as it is removed by the Government pursuant to Standard Contracts.

All of SNC's activities are funded through payments to SNC under these operating agreements.

By letters, dated February 22, 1991, APC and GPC, as purchasers under the SNF contracts, notified the Department of Energy ("DOE") contracting officer assigned to the SNF contracts at issue that,

> you are hereby advised that Southern Nuclear Operating Company, Inc., a Delaware corporation, is designated by Purchaser as agent for Purchaser under the referenced agreements, to act for and on behalf of Purchaser for the purpose of giving or receiving any notice, demand or request required or authorized by the referenced agreements, and for such other administrative purposes as may be designated by Purchaser.

The letters also stated that pursuant to Article XII of the contracts, SNC was to receive all notices and communications between the parties. (Pls.' Resp., filed January 24, 2002, Exs. C, D, E). Accordingly, the DOE has dealt with SNC as agent for plant owners, APC and GPC on matters affecting APC's and GPC's interests

under the standard SNF contracts at issue. (Pls.' Resp., filed January 24, 2002, Exs. F-J).

In these circumstances, defendant argues that SNC lacks privity of contract with the United States and must be dismissed as a plaintiff. *United States v. Johnson Controls*, 713 F.2d 1541, 1550 (Fed. Cir. 1983); *Erickson Air Crane Co. v. United States*, 731 F.2d 810, 813 (Fed. Cir. 1984); *Total Med. Mgt., Inc. v. United States*, 104 F.3d 1314, 1319 (Fed. Cir. 1997).

In response, plaintiffs note that APC, GPC and SNC are subsidiaries of Southern Company, and that SNC was incorporated on December 17, 1990, for the express purpose of acting as operating agent for APC and GPC with respect to the operation and maintenance of their nuclear power plants. Plaintiffs state,

> Southern Nuclear joined as plaintiff in this case in order to avoid any argument over whether it, APC or GPC was the real party in interest, to eliminate inefficiencies that could arise in discovery and in trial if SNC were not a party and to enable it to fulfill its role as agent and attorney-in-fact for APC and GPC for the enforcement of the Standard Contracts.

Pls.' Resp., p. 4, n.3.

Plaintiff states that SNC has not asserted any contractual claims against the United States but sues in a representative capacity asserting APC's and GPC's breach of contract claims. Reliance is placed on precedent permitting representative suits by shareholders of corporations, sureties, and third-party beneficiaries. *Montana v. United States*, 124 F.3d 1269 (Fed. Cir. 1997), *First Hartford Corp. Pension Plan and Trust v. United States*, 194 F.3d 1279 (Fed. Cir. 1999); *Balboa Ins. Co. v. United States*, 775 F.2d 1158 (Fed. Cir. 1985).

Clearly, the circumstances involved here differ from a shareholder derivative action or a suit brought by a third-party beneficiary or litigation by a surety on a subrogation basis. If APC and GPC were not parties, dismissal of this litigation would be in order as contractual privity with the United States is a prerequisite to a breach of contract suit brought pursuant to 28 U.S. C. § 1491. *First Hartford Corp.*,

194 F.3d at 1289. The issue raised is whether SNC can be retained in this litigation for litigation convenience purposes.[1/]

The court lacks jurisdiction to consider or resolve any issues between APC, GPC, and SNC concerning their operating agreements. Absent contractual privity between SNC and the United States, no judgment can be rendered in favor of SNC. However, as plaintiffs have indicated, SNC's voluntary participation in this litigation could facilitate discovery and trial proceedings.

Moreover, it is concluded that SNC has a sufficient "interest" in the subject matter of this litigation, as this term is utilized in RCFC 14(b), to support the service of a notice, leading to third party intervention, had SNC not joined as a plaintiff. *See Allied Oil & Supply, Inc. v. United States*, __ Fed. Cl. __ (No. 03-2673 C, filed April 1, 2004).

Accordingly, it is concluded that the best solution is for the issue of SNC's status in this matter to be resolved at the conclusion of the litigation process. At that point the issue may be moot or, at least the exact nature of the claims asserted in this matter will be clear and any final judgment(s) can be drafted so as to insure that it is predicated on a firm jurisdictional basis. Defendant's motion to dismiss shall be denied, without prejudice to the reassertion of the matter pursuant to RCFC 52(c) or in any pre-judgment briefing.

**B. Plaintiffs' Motion for Summary Judgment on Contract Liability; Defendant's Motion to Dismiss.**

As has been noted in several submissions to date, the issues raised in Plaintiffs' Motion for Summary Judgment on Contract Liability, filed October 2, 1998, and Defendant's Motion to Dismiss, filed December 22, 1998, have been essentially moot since the Circuit Court's rulings affirming defendant's partial breach of the Standard Contracts in *Northern States Power Co. v. United States,* 224 F.3d 1361 (Fed. Cir.

---

[1/] Count IV of plaintiffs' Amended Complaint asserts a "taking" claim that "DOE's failure to commence disposal and, its announcement that it will not begin to dispose of SNF before 2010, at the earliest, took the Companies' vested property rights, as expressed and implied in, and arising from, the Standard Contracts." No "taking" claim divorced from contract derived rights is asserted. Thus, SNC has not pleaded any "taking" claim independent of the Standard Contracts executed by APC and GPC.

2000) and *Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336 (Fed. Cir. 2000). There is no dispute concerning the fact that the United States, operating through DOE, failed to meet the contractual requirement to begin disposition of the nuclear waste covered by the Standard Contracts by no later than January 31, 1998. Thus, the government partially breached the Standard Contracts executed by APC and GPC and plaintiffs' October 2, 1998 motion shall be granted accordingly as to the issue of contract liability. Defendant's motion, filed December 22, 1998, shall be denied.

**C. Defendant's Motion to Dismiss Count IV of the Complaint.**

Defendant's November 27, 2001 motion seeks the dismissal of Count IV of the Complaint. The same count is included in the First Amended Complaint, filed October 8, 2002. In paragraph 57 of the Amended Complaint, plaintiffs plead a taking without just compensation in that "DOE's failure to commence disposal and, its announcement that it will not begin to dispose of SNF before 2010, at the earliest, took the companies' vested property rights as expressed and implied in, and arising from, the Standard Contracts." Defendant seeks dismissal asserting that Count IV fails to state a claim upon which relief may be granted.

As asserted in the Complaint and Amended Complaint, plaintiffs' taking claim is grounded on the SNF contracts that APC and GPC executed with the United States. The Circuit Court's decision in *Castle v. United States,* 301 F.3d 1328 (Fed. Cir. 2002) precludes the existence of a viable taking claim when the rights involved are enforceable through a contract remedy. In this circumstance, in accord with the ruling in *Commonwealth Edison Co. v. United States*, 56 Fed. Cl. 652 (2003), plaintiffs' Count IV, as pleaded, shall be dismissed, as liability for a partial breach of the SNF contracts by the United States has been found. Plaintiffs' asserted loss of contract rights will be vindicated through breach of contract damages.

**D. Defendant's Motion for Partial Summary Judgment Regarding Plaintiffs' Greater Than Class C Radioactive Waste.**

Defendant seeks a ruling that Greater Than Class C radioactive waste ("GTCC") is not covered by the SNF Standard Contracts executed by APC and GPC. Plaintiffs' response is that they are not claiming damages based on DOE's failure to accept GTCC, with the result that any ruling on the contract coverage with respect to

GTCC would be advisory only. In this circumstance, in accord with the ruling in *Commonwealth Edison Co. v. United States, Id.*, it is concluded that the question of whether GTCC is included in defendant's contractual obligations is not ripe for judicial decision in this matter. Defendant's motion shall be denied .

**E. Defendant's Motion for Partial Summary Judgment Regarding the Rate of Spent Nuclear Fuel Acceptance and Plaintiffs' Cross-Motion.**

Defendant seeks a ruling that the rate of acceptance to dispose of nuclear waste covered by the Standard Contracts executed by APC and GPC is established by the delivery commitment schedule ("DCS") and final delivery schedule ("FDS") process set forth in the contracts. The rulings in *Commonwealth Edison Co. v. United States, Id.* and *Indiana Michigan Power Co. v. United States*, 57 Fed. Cl. 88 (2003) reject defendant's approach in favor of a construction that the rate of acceptance intended by the contracting parties is missing and must be supplied by the court. In *Commonwealth Edison Co.*, the rate issue was relegated to further proceedings whereas in *Indiana Michigan*, a 400 metric ton rate for 1998 which ramped up to 3,000 metric tons per year by the end of 2002 was found on the basis of summary judgment submissions.

The Order, filed June 26, 2003, in *Yankee Atomic Electric Co. v. United States*, No. 98-126 C, adopted the *Commonwealth Edison Co.* ruling on the rate of acceptance issue with the exception that the possibility was reserved of employing the "call" authority (28 U.S.C. § 2507(a)) to obtain a comprehensive multi-year SNF pick-up schedule in the unlikely event this would be required in order to resolve damage issues.

An analysis of the extensive submissions on this rate issue by the parties results in adopting the same approach as that applied in the *Yankee* litigation. The rate issue, to the extent relevant, must be resolved by further proceedings. While in *Indiana Michigan*, a 3,000 metric ton annual rate was established, the rationale on which it was based is that this quantity was needed to prevent additional SNF on-site storage for all utilities and to begin to eliminate SNF backlog. 57 Fed. Cl. at 99. However, applying an overall annual rate to any one utility to arrive at a damage computation could be complicated. Would excess capacity at other utilities also be utilized to avoid additional on-site storage? The Standard Contract contemplated exchanges of

priorities between utilities. What rate of acceptance by DOE would have been necessary to avoid additional on-site storage at APC or GPC given the age of their stored fuel, their SNF pool capacity, and the production of waste at the specified plants involved in this litigation? Would such a rate be within the range contemplated by the parties? When would disposition have to commence in order to avoid additional on-site storage at APC or GPC?

What is required are schedules of the specific damages claimed by plaintiffs APC and GPC so that any rate determination(s), if any, that may be required in order to resolve issues of liability for the damage items sought can be reached in the context of the actual circumstances involved.

Accordingly, defendant's motion, filed December 3, 2001 and plaintiffs' cross-motion, filed December 18, 2002, shall be denied, as further proceedings are needed for any rate determination(s) which may be required for determining liability for the specific breach of contract damages claimed by APC and GPC.[2]

**F. Defendant's Motion to Dismiss Count Three of Plaintiffs' Complaint.**

Defendant's Motion, filed December 14, 2001, seeks the dismissal of count three of the complaint, which pleads an illegal exaction claim. The same count is included in the First Amended Complaint, filed October 8, 2002. By Order, filed January 16, 2002, it was noted that plaintiffs had reported they would "not argue further its position on the illegal exaction count" but "reserves its right to contest this issue in any appeal of this matter, or in another court of competent jurisdiction." Accordingly, the January 16, 2002 Order stated that "(4) Pending entry of a final judgment, further proceedings in this litigation shall not involve count three of plaintiffs' Complaint, filed July 29, 1998."

In order to clear the docket entries involved, and in view of plaintiffs' assertion that the issue will not be pressed short of any appeal, defendant's motion, filed

[2] On April 11, 2003, plaintiffs filed a Motion to Strike pages 1584-1599 from the appendix to plaintiffs' opposition to the Government's December 3, 2001 motion. These pages contain document CTR0400568-0583. In the absence of any response, plaintiffs' April 11, 2003 Motion to strike shall be **GRANTED**.

December 14, 2001, shall be denied, without prejudice to its renewal as a RCFC 52(c) matter or in final briefing.

## Conclusion

In accordance with the discussion above, it is **ORDERED**:

(1) Defendant's Motion to Dismiss Southern Nuclear Operating Company as a Plaintiff, filed December 21, 2001, shall be **DENIED**, without prejudice to its reassertion pursuant to RCFC 52(c) or in pre-judgment briefing;

(2) Plaintiffs' Motion for Summary Judgment on Contract Liability, filed October 2, 1998, shall be **GRANTED** to the extent that defendant's failure by January 31, 1998, to commence dispositibn of nuclear waste covered by the Standard Contracts it executed with APC and GPC shall comprise a partial breach of these contracts for which defendant is liable;

(3) Defendant's Motion to Dismiss, filed December 22, 1998, shall be **DENIED**;

(4) Defendant's Motion, filed November 27, 2001, to Dismiss Count IV of Plaintiffs' Complaint, as included in the First Amended Complaint, shall be **GRANTED**;

(5) Defendant's Motion for Partial Summary Judgment Regarding Plaintiffs' Greater Than Class C Radioactive Waste Arguments, filed November 28, 2001, shall be **DENIED**;

(6) Defendant's Motion for Partial Summary Judgment Regarding the Rate of Spent Nuclear Fuel Acceptance, filed December 3, 2001, and Plaintiffs' Cross-Motion, filed December 18, 2002, shall both be **DENIED** as the ruling in *Commonwealth Edison Co. v. United States*, 56 Fed. Cl. 652 (2003) that further proceedings are required on this matter, is here adopted with the limited exception stated above;

(7) Plaintiffs' Motion to Strike, filed April 11, 2003, shall be **GRANTED**;

(8) Defendant's Motion, filed December 14, 2001, to Dismiss Count Three of the Complaint, also included in the First Amended Complaint, shall be **DENIED** without prejudice to its renewal pursuant to RCFC 52(c) or in final briefing.

James F. Merow
Senior Judge