# In the United States Court of Federal Claims

No. 98-614C
(Filed December 20, 2004)

******************************

| | |
|---|---|
| SOUTHERN NUCLEAR | * |
| OPERATING COMPANY, | * |
| ALABAMA POWER COMPANY, | * |
| GEORGIA POWER COMPANY, | * |
| | * |
| Plaintiffs, | * |
| | * |
| v. | * |
| | * |
| THE UNITED STATES, | * |
| | * |
| Defendant. | * |

******************************

## ORDER

This matter comes before the court on plaintiffs' Motion for an Order Regarding Subsequent Damages Actions, filed September 1, 2004, defendant's Response and Cross-Motion for Summary Judgment Regarding Pre-Breach and Future Damages, filed October 1, 2004, and the subsequent responses to these submissions filed by the parties.

The issue raised by the cited submissions is the scope of the trial ordered in this case with respect to damages stemming from the failure of the Department of Energy ("DOE") to commence removal of Spent Nuclear Fuel ("SNF") by no later than January 31, 1998.

Plaintiffs seek an order recognizing that the scope of this case involves damages for DOE's failure to remove SNF through December 31, 2009, which failure can engender damage items incurred through December 31, 2020. For any breach by DOE in its SNF removal obligation occurring on or after January 1, 2010, plaintiffs seek an

order recognizing their right to file a subsequent complaint, and also seek an order removing any statute of limitation concerns such a subsequent suit(s) might generate.

Defendant, consistent with its litigation position that DOE's SNF removal obligation arises only upon DOE's approval of a delivery commitment schedule ("DCS") for a specific quantity of SNF, opposes plaintiffs' Motion. Instead, defendant seeks recognition that the trial in this case will encompass damages only for, and subsequent to, a series of partial breaches of contract stemming from DOE's failure to remove SNF in quantities on approved DCSs. Accordingly, defendant seeks an order limiting the scope of trial to damages incurred after January 31, 1998, until July 29, 1998, the date the Complaint was filed – a 179-day period. Alternatively, defendant suggests the trial date as a damages terminus. Defendant has no objection to successive suits for any future failures by DOE timely to remove plaintiffs' SNF included on an approved DCS.

At this pretrial stage in the proceedings we are concerned with the extent of the evidence to be submitted at trial by the parties, not whether any particular damage items will or will not be included in the final judgment to be entered following trial proceedings and post-trial briefing.

For the reasons expressed in the undersigned's Order in *Yankee Atomic Electric Co. v. United States*, No. 98-126, 2004 WL 1535688 (Fed. Cl. June 28, 2004), evidence as to claimed damage items occurring prior to January 31, 1998, will not be excluded solely because the cost or obligation was incurred prior to the final statutory and contractual deadline for DOE to begin to dispose of high-level radioactive waste ("HLW") or SNF. *See* 42 U.S.C. § 10222(a)(5)(B). Similarly, given DOE's repeated past representations that performance of its SNF disposal obligation will commence in 2010, the current litigation involves damages asserted to be incurred as a result of the breach of contract represented by DOE's performance delay until 2010. Further delay, if any, in DOE's performance of its SNF disposal obligation beyond 2010, would comprise a separate breach of contract, not part of the instant case.

Accordingly, each party is free to propose the evidence supporting its theory of this case. Defendant will undoubtedly propose evidence supporting its DCS-related theory of damages and the limitations resulting therefrom. Plaintiffs will propose the evidence supporting their theory for the damages claimed, tied to DOE's performance delay encompassing a period preceding January 31, 1998 until 2010,

albeit with some cost implications for this delay period extending until 2020. For pretrial discovery each party's proposed evidence must be disclosed and is subject to evaluation and verification.

In the circumstances of this complex litigation, involving performance and lack of performance of long-term contracts, it is not contemplated that the introduction of evidence relevant to the monetary impact of DOE's current performance delay until 2010 will be artificially restricted by theoretical damage concepts involving what may, in the regulatory climate which exists for storage or transfer of highly radioactive materials, be an illusionary dichotomy between total and partial breach of contract. The ultimate question to resolve is the extent of the financial obligation which the United States must reasonably bear for the continued failure by DOE to begin to dispose of plaintiffs' HLW or SNF commencing no later than January 31, 1998 and extending to 2010.

Accordingly, it is **ORDERED**:

(1) Plaintiffs' motion, filed September 1, 2004, shall be **GRANTED** to the extent that:

> (a) evidence shall be received in this litigation addressed to the monetary damages plaintiffs claim to be appropriately tied to the period of DOE's current performance delay until 2010, including cost or monetary ramifications thereof extending to 2020; and
>
> (b) any DOE delay in its obligation to dispose of plaintiffs' HLW or SNF occurring after 2010 shall comprise a separate cause of action accruing then, and not comprising a part of the current litigation;

(2) Defendant's cross-motion, filed October 1, 2004, shall be **DENIED**, without prejudice to the appropriate reassertion of the arguments presented in post-trial briefing;

(3) Except as so granted above, the parties' cited motions shall be, otherwise, **DENIED**.

s/ James F. Merow
James F. Merow
Senior Judge

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
No. 01-249-C

(Filed: August 12, 2004)

| | |
|---|---|
| TENNESSEE VALLEY AUTHORITY, | ) |
| Plaintiff, | ) |
| v. | ) |
| UNITED STATES, | ) |
| Defendant. | ) |

ORDER

The government's motion for reconsideration, filed on August 10, 2004, respecting this Court's decision reported at 60 Fed. Cl. 665 (2004), proceeds on erroneous premises. First, contrary to the government's motion, the Court made *no* "finding that TVA could receive damages beginning in 1995." Def.'s Mot. at 12. Rather, the Court explicitly found that "DOE breached its obligation to act on TVA's DCSs in good faith," 60 Fed. Cl. at 674, and that initially occurred in 1997. Second, causation is an element of proof regarding damages, and the Court specifically denied TVA's motion for summary judgment respecting damages. *See* 60 Fed. Cl. at 675-76. Defendant's motion for reconsideration is denied.

It is so ORDERED.

s/ Charles F. Lettow
Charles F. Lettow
Judge

DOE RW 0331P

Office of Civilian Radioactive
Waste Management

# Annual Capacity Report

December 1991

U.S. Department of Energy
Office of Civilian Radioactive Waste Management

## 2.0 WASTE ACCEPTANCE PROJECTIONS

The waste acceptance projections used in this ACR are representative of a FWMS configuration authorized by the NWPA, which includes a Monitored Retrievable Storage (MRS) facility. Article II of the Standard Contract specifies that "The services to be provided by DOE under this contract shall begin, after the commencement of facility operations, not later than January 31, 1998...." DOE recognizes that, under current conditions, waste acceptance at a DOE facility can begin in 1998 only if the Federal Government is able to consummate a timely agreement, which is enacted into Federal law, with a host State or Indian Tribe for the siting of an MRS facility. The Office of Nuclear Waste Negotiator, the head of which is a representative of the Federal Government appointed by the President, is actively seeking a State or Indian Tribe willing to host an MRS facility or a geological repository.

The acceptance rates in Table 2.1 do not reflect the MRS facility' schedule linkages with the repository development that were imposed by the NWPA, but are consistent with the 10,000 MTU storage capacity limit contained in the NWPA for an MRS facility before a repository starts operation. These acceptance rates assume commencement of facility operations in 1998. If the current linkages between MRS facility construction and repository construction authorization are maintained, it is estimated that commencement of facility operations and initial acceptance of SNF by DOE could not start until at least 2007.

Operation of the FWMS with the waste acceptance rates presented in Table 2.1 would result in the receipt of 8,200 MTU of SNF at the MRS facility during the first ten years of operations. This table provides only an approximation of the system throughput rates and is subject to change depending on the system design and configuration and Congressional action regarding the conditions for the siting of an MRS facility. DOE will further define and specify the system operating and waste acceptance parameters as the program progresses and inform the Purchasers accordingly at the earliest feasible time. Under current conditions, the owners and generators of SNF will

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY | ) | |
| CONNECTICUT YANKEE ATOMIC POWER COMPANY | ) | |
| MAINE YANKEE ATOMIC POWER COMPANY | ) | |
| FLORIDA POWER & LIGHT COMPANY | ) | |
| NORTHERN STATES POWER COMPANY | ) | Case Nos. 98-126C, |
| DUKE POWER, A Division of DUKE ENERGY CORP. | ) | 98-154C, 98-474C, |
| INDIANA MICHIGAN POWER COMPANY | ) | 98-483C, 98-484C, |
| SACRAMENTO MUNICIPAL UTILITY DISTRICT | ) | 98-485C, 98-486C, |
| SOUTHERN NUCLEAR OPERATING COMPANY, et al. | ) | 98-488C, 98-614C, |
| COMMONWEALTH EDISON COMPANY | ) | 98-621C, 99-447C, |
| BOSTON EDISON COMPANY | ) | 00-440C, 00-697C, |
| GPU NUCLEAR, INCORPORATED | ) | 00-703C, 01-115C, |
| WISCONSIN ELECTRIC POWER COMPANY | ) | 01-116C, 01-249C |
| POWER AUTHORITY OF THE STATE OF NEW YORK | ) | |
| OMAHA PUBLIC POWER DISTRICT | ) | Judge Weinstein |
| NEBRASKA PUBLIC POWER DISTRICT | ) | (Discovery Judge) |
| TENNESSEE VALLEY AUTHORITY, | ) | |
| | ) | |
| Plaintiffs, | ) | RECEIVED LLP |
| | ) | |
| UNITED STATES, | ) | OCT 10 2001 |
| | ) | |
| Defendant. | ) | PERKINS COIE |

**DEFENDANT'S RESPONSES TO UTILITY**
**<u>PLAINTIFFS' JOINT FIRST SET OF INTERROGATORIES</u>**

Pursuant to Rule 33 of the Rules of the United States Court of Federal Claims ("RCFC"), and the Court's order for coordinated discovery, filed on September 26, 2001, defendant, the United States, provides the following responses to the plaintiffs' joint first set of interrogatories.

<u>GENERAL OBJECTIONS</u>

1. Defendant objects to each and every interrogatory to the extent that it calls for the disclosure of material or information that is subject to any claim of privilege or protection, including without limitation, the attorney-client privilege, the work-product doctrine, or any Government privilege. Defendant will not produce privileged or protected documents, materials or information in response to the document requests. The inadvertent production by defendant

**INTERROGATORY NO. 56:**

Identify the earliest date on which DOE reasonably believes it will begin to accept SNF from Purchasers pursuant to the Standard Contract. Describe the basis for DOE's response to this Interrogatory.

**RESPONSE:**

The Department of Energy has previously represented that it anticipates that no Federal facility constructed under the Nuclear Waste Policy Act will be available until at least 2010. Under the current statutory requirements of the Nuclear Waste Policy Act, 42 U.S.C. §§ 10101-10270, the Department of Energy cannot begin SNF acceptance until that facility is operational. Absent congressional action that would allow the Department of Energy to make alternative arrangements regarding SNF disposal and/or storage, DOE does not anticipate that it can begin SNF acceptance until at least 2010.