No. 00-697C
(Senior Judge Merow)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

WISCONSIN ELECTRIC POWER COMPANY,

Plaintiff,

v.

UNITED STATES,

Defendant.

---

# DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT REGARDING PRE-BREACH AND FUTURE DAMAGES

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director

KEVIN B. CRAWFORD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-9640
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

May 5, 2005

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT REGARDING PRE-BREACH AND FUTURE DAMAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. WEPCO'S PRE-BREACH DAMAGES CLAIMS ARE LEGALLY UNSUPPORTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. WEPCO CAN RECOVER ONLY FOR PARTIAL BREACHES THAT HAVE OCCURRED AS OF THE FILING OF ITS COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

III. WEPCO'S POLICY ARGUMENTS FAIL TO ADDRESS THE CONTRACTUAL REMEDY ISSUE . . . . . . . . . . . . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# TABLE OF AUTHORITIES

## FEDERAL CASES

Chain Belt Co. v. United States,
127 Ct. Cl. 38, 115 F. Supp. 701 (1953) . . . . . . . . . . 6, 7, 8

Fawick Corp. v. United States,
149 Ct. Cl. 623 (1960) . . . . . . . . . . 4

First National State Bank of New Jersey v.
Commonwealth Federal Savings and Loan Association,
610 F.2d 164 (3d Cir. 1980) . . . . . . . . . . 14, 16

Hansen Bancorp, Inc. v. United States,
367 F.3d 1297 (Fed. Cir. 2004) . . . . . . . . . . 2

Indiana Michigan Power Co. v. United States,
60 Fed. Cl. 639 (2004) . . . . . . . . . . 6

Middleton v. United States,
175 Ct. Cl. 786 (1966) . . . . . . . . . . 4, 5

Myerle v. United States,
33 Ct. Cl. 1 (1897) . . . . . . . . . . 4

Northern States Power Co. v. United States Department of Energy,
128 F.3d 754 (D.C. Cir. 1997),
cert. denied, 525 U.S. 1015 (1998) . . . . . . . . . . 15

Olin Jones Sand Co. v. United States,
225 Ct. Cl. 741 (1980) . . . . . . . . . . 4

Osage Oil & Refining Co. v. Chandler,
287 F. 848 (2d Cir. 1923) . . . . . . . . . . 4

Southern Nuclear Operating Co. v. United States,
No. 98-614C (Fed. Cl. Dec. 20, 2004) . . . . . . . . . . 9, 10, 12

Spartan Aircraft Co. v. United States,
120 Ct. Cl. 327, 100 F. Supp. 171 (1951) . . . . . . . . . . 4

Tennessee Valley Authority v. United States,
60 Fed. Cl. 665 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Tennessee Valley Authority v. United States,
No. 01-249C (Fed. Cl. Aug. 12, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Yankee Atomic Electric Co. v. United States,
No. 98-126C, 2004 WL 1535688 (Fed. Cl. June 28, 2004) . . . . . . . . . . . . . . . 9, 10, 11, 12

**STATE CASES**

Guntert v. City of Stockton,
55 Cal. App. 3d 131, 126 Cal. Rptr. 690 (1976) . . . . . . . . . . . . . . . . . . . . . . 13, 14, 16, 17

Coughlin v. Blair,
41 Cal. 2d 587, 262 P.2d 305 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**MISCELLANEOUS**

9 A. Corbin, Corbin on Contracts § 956 (interim ed. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

9 J. Murray, Corbin on Contracts § 956 (2004 Fall Cum. Supp.) . . . . . . . . . . . . . . . . . . . . . . . . 10

Restatement (Second) of Contracts § 236 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Restatement (Second) of Contracts § 253 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Restatement (Second) of Contracts § 350 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

Restatement (Second) of Contracts § 373 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WISCONSIN ELECTRIC POWER COMPANY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 00-697C |
| | ) | (Senior Judge Merow) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

DEFENDANT'S REPLY TO
PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS-MOTION FOR
SUMMARY JUDGMENT REGARDING PRE-BREACH AND FUTURE DAMAGES

Defendant, the United States, respectfully files this reply to the response filed by plaintiff, Wisconsin Electric Power Company ("WEPCO"), to defendant's cross-motion for summary judgment regarding pre-breach and future damages. Because WEPCO can identify no basis for the Court to award either pre-breach or future damages, defendant requests that the Court enter an order limiting the scope of damages to be litigated at trial in this matter to those incurred by WEPCO between January 31, 1998 and the date of the filing of WEPCO's complaint.

## ARGUMENT

### I. WEPCO'S PRE-BREACH DAMAGES CLAIMS ARE LEGALLY UNSUPPORTED

The Government previously established in its cross-motion for summary judgment that, because there is no cause of action for anticipatory repudiation in a partial breach case, damages allegedly incurred by WEPCO prior to the partial breach of the Standard Contract by the Department of Energy ("DOE") are not recoverable as a matter of law. See Def. Mtn. 11-23.[1] In

[1] "Def. Mtn. ____" refers to Defendant's Response to Plaintiff's Motion for An Order Regarding Subsequent Damages Actions and Request for Expedited Consideration and Cross-

its response, WEPCO does not, and cannot, contest the Government's argument that it may not recover restitution damages for a partial breach of contract. As the United States Court of Appeals for the Federal Circuit has recently reiterated, "the remedy of restitution is available only if the breaching party's conduct amounts to a total breach of its contractual duties." Hansen Bancorp, Inc. v. United States, 367 F.3d 1297, 1305 (Fed. Cir. 2004) (emphasis in original); see id. at 1309 ("relief in restitution is 'available only if the breach gives rise to a claim for damages for total breach and not merely to a claim for damages for partial breach'" (quoting Restatement (Second) of Contracts § 373)). As the Federal Circuit held, "[t]he goal of restitution, to return the parties to their precise state before the contract, is incompatible with the situation of partial breach . . . ." Id. at 1309 n.10 (emphasis added). In its opposition, WEPCO challenges the Government's argument that the right to recover mitigation costs is limited to claims for total breach or anticipatory repudiation. See Pl. Resp. 6-11.[2] However, as established in the same comments to the Restatement (Second) of Contracts that WEPCO cites in its brief, "[u]nder the doctrine of mitigation the injury party is expected to mitigate damages 'within a reasonable time *after* he learns of the *breach*.'" Restatement (Second) of Contracts § 350 cmt. f (1981) (emphasis added); see Def. Mtn. 16-22 (citing and discussing cases). Absent an anticipatory repudiation sometime prior to January 31, 1998, there is no "breach" about which WEPCO could learn. WEPCO seeks to simply avoid the fact that no anticipatory "partial" repudiation legal doctrine

---

Motion for Summary Judgment Regarding Pre-Breach and Future Damages, filed on March 11, 2005.

[2] "Pl. Resp." refers to Wisconsin Electric Company's Reply in Support of its Motion for An Order Regarding Subsequent Damages Actions and its Opposition to Defendant's Cross-Motion for Summary Judgment Regarding Pre-Breach and Future Damages, filed on April 11, 2005.

exists by asserting that it can predict a future breach and begin mitigating its damages before any breach ever occurs.

In support of its argument concerning its right to seek mitigation damages, WEPCO relies upon comment b to section 350 of the Restatement (Second) of Contracts, which states that, "once a party has reason to know that performance by the other party will not be forthcoming . . . he is expected to take such affirmative steps as are appropriate in the circumstances to avoid loss by making substitute arrangements or otherwise." Restatement (Second) of Contracts § 350 cmt. b (1981), quoted at Pl. Resp. 6. WEPCO has taken this sentence from the Restatement out of context, omitting the quotation's reference to four illustrations of the concept that comment b is intended to identify. In each of the four illustrations, the non-breaching party's duty to mitigate does not arise until after the other contracting party has already breached the contract by anticipatory repudiation or by an affirmative breach of the contract terms. See Restatement (Second) of Contracts § 350 cmt. b, illus. 1, 2, 3, & 4 (1981). WEPCO's quotation of this out-of-context sentence does not support its argument.

WEPCO still expects DOE to perform under the contract. The pre-breach damages it seeks are based upon repudiation alone. Therefore, its pre-breach damages are not allowed on a partial breach claim. See also Restatement (Second) of Contracts § 253 cmt. b, illus. 4 (explaining that a party does not have damages for breach of contract until performance is due). A party cannot seek damages for a total breach based upon anticipatory repudiation and, at the same time, seek continued performance of the contract. Instead, it must make an election: declare the contract in total breach at the time of the anticipatory repudiation or, instead, await the due date for contract performance. Restatement (Second) of Contracts § 236 cmt. b (1981)

("If the injured party elects to or is required to await the balance of the other party's performance under the contract, his claim is said instead to be one for damages for partial breach.").

WEPCO has the burden of establishing that the breach in question directly and proximately "caused" the damages that WEPCO seeks to recover. See Olin Jones Sand Co. v. United States, 225 Ct. Cl. 741, 743 n.3 (1980) (damages are recoverable if "they are directly and proximately caused by the contract breach"); Fawick Corp. v. United States, 149 Ct. Cl. 623, 637 (1960) ("the cause must produce the effect inevitably and naturally, not possibly nor even probably") (quoting Myerle v. United States, 33 Ct. Cl. 1, 27 (1897)); Spartan Aircraft Co. v. United States, 120 Ct. Cl. 327, 100 F. Supp. 171, 173 (1951) (burden on plaintiff to prove that breach "caused" damage). That is, "[t]he party complaining must show, not only that he has suffered the loss, but also that it would not have been incurred, but for the wrongful act of his adversary." Fawick, 149 Ct. Cl. at 637 (1960) (quoting Osage Oil & Refining Co. v. Chandler, 287 F. 848, 852 (2d Cir. 1923)). Here, costs incurred prior to an actual breach are not incurred solely as a consequence of , or naturally and inevitably from, the breach. At best, such "mitigation" costs might be incurred in anticipation of the possibility that the other party might breach the contract.

As we discussed in our motion, this Court's predecessor, the Court of Claims, has expressly rejected the argument that a plaintiff may obtain mitigation costs that actually precede the actual breach of contract. See Middleton v. United States, 175 Ct. Cl. 786, 792 (1966); Def. Mtn. 24. WEPCO attempts to distinguish the precedential Middleton decision from the facts of this case by mischaracterizing it. First, WEPCO argues that Middleton was "not even a contract matter," but rather, an administrative law dispute. Pl. Resp. 10-11. WEPCO then contends that

Middleton was decided on "causation" grounds rather than based upon the "timing" of the mitigation costs at issue. Pl. Resp. 11. WEPCO is wrong on both counts. The Middleton court was explicit in stating that it was deciding the portion of the case relating to the plaintiff's claim for recovery of damages that preceded his discharge by reference to the common law contractual duty of mitigation. Id. at 792 (referencing the "common law duty which calls upon an injured party to exercise reasonable caution in an effort to avoid additional injury," and citing RESTATEMENT OF CONTRACTS § 336(1) cmt. d.); see also id. ("this 'duty to mitigate' . . . is as integrally related to the law of contracts as the notion of consideration itself"). Furthermore, its holding on this portion of the case made clear that it was based upon the "timing" of the mitigation costs at issue, rather than on "causation" grounds:

> However, neither of the parties here may insist upon an expansion of this [duty to mitigate] so as to encompass items which relate to a period *antedating* defendant's breach. Both the defendant's right to a setoff and the plaintiff's duty to mitigate are defined **in terms of the same fixed time period**; like opposites of the same coin, they are inextricably bound together. Thus, plaintiff could no more seek to reduce defendant's setoff by alleging expenses incurred **prior to his discharge**, than defendant could enlarge his setoff by seeking the inclusion of income which plaintiff earned **prior to his erroneous dismissal**. . . . It follows, therefore, that all expenses which arose **prior to plaintiff's discharge** that he seeks to include, may not be considered within the framework of the setoff question.

Id. at 792 (italics in original; underlining and boldface type added). To the extent that WEPCO claims that costs incurred prior to DOE's partial breach are recoverable under principles of mitigation, WEPCO's arguments are in direct conflict with the precedential decision in Middleton. WEPCO's efforts to assert that the Middleton court did not rely upon contract

principles in deciding that case are meritless and cannot resurrect its claims for pre-breach damages.

WEPCO's primary response to the Government's argument is by reference to the Court of Claims' decision in Chain Belt Co. v. United States, 127 Ct. Cl. 38, 115 F. Supp. 701 (1953), but this decision does not establish WEPCO's right to recover pre-breach damages. First, contrary to WEPCO's assertion, Pl. Resp. 8-9 n.1, the Chain Belt case involved a total, not a partial, breach of contract. See Chain Belt, 127 Ct. Cl. at 42-44, 115 F. Supp. at 705-06 (pursuant to agreement to sell property, machinery required to be removed by a date certain, December 10, 1946); see also Indiana Michigan Power Co. v. United States, 60 Fed. Cl. 639, 649 (2004) (finding that Chain Belt involved a total breach), appeal pending, No. 04-5122 (Fed. Cir.). WEPCO asserts that the facts in Chain Belt could not involve a total breach because the Government eventually performed its obligations under the contract and moved the equipment. See Pl. Resp. 8-9 n.2. In doing so, WEPCO mischaracterizes the nature of the Government's obligations in Chain Belt. The Government's obligation was not merely to remove the equipment. The crucial part of the obligation was that it was to remove the equipment by a date certain. Chain Belt, 127 Ct. Cl. at 42-44, 115 F. Supp. at 705-06. WEPCO describes this equipment removal obligation as a "relatively minor provision," and that the contract at issue was the contract for the sale of the building of which this provision was only a part. In fact, the Court of Claims went to some length to explain that this equipment removal obligation was the material issue in the case. Id. at 47, 115 F. Supp. at 708 ("The true status of the parties and their respective rights and obligations . . . can be ascertained only in light of paragraph Six of the contract of sale and the action taken thereunder."). The Court of Claims found that the sale of the building had been consummated,

and that, at that point, the "relatively minor provision" essentially became a license agreement allowing the Government the use of the building until the date certain – December 10, 1946 – by which time, the Government's performance was to have been completed. Id. at 47-49, 115 F. Supp. at 708-09.

The Court of Claims also found, as a matter of fact, that, when the plaintiff began the removal of the Government's machinery in November 1946, the Government was physically unable to remove the equipment by December 10, 1946, a process that would take the "better part of . . . 90 days" to complete. Id. at 43, 115 F. Supp. at 705; see id. at 56, 115 F. Supp. at 713 ("By November 1946, it was apparent that under no circumstances could defendant move out all its machinery by December 10, as provided in the contract."). Because, in Chain Belt, the Government delay made its entire performance – completion of the equipment removal by a date certain – impossible, that delay amounted to a total breach by anticipatory repudiation.[3] That differs from the case at bar where the Government delay constitutes only a failure to begin performance, and only establishes a continuing series of partial breaches, tied to the failure to act in accordance with approved delivery commitment schedules. See Def. Mtn. 4-9. Moreover, because the Court of Claims' findings establish that the plaintiff did not begin to incur the mitigation costs it was seeking to recover until after the contract had been repudiated, the Chain Belt decision does not support an award of pre-breach mitigation damages.

---

[3] While the Court of Claims never used the term "repudiation" in its opinion, it determined that, "[w]hile there was not specific permission granted by defendant to plaintiff to do [the equipment removal] work, defendant knew that it was being done and did not object." Id. at 57, 115 F. Supp. at 713.

In any event, even if the Chain Belt decision could stand for the proposition that a plaintiff could potentially recover pre-breach mitigation costs, the pre-breach costs in that case were so closely tied in time to the actual breach, and so minor in nature, that they are not comparable to WEPCO's claimed costs. Specifically, any costs that the plaintiff in Chain Belt sought to recover were incurred no more than a month prior to the December 10, 1946 breach, when the breach was inevitable and impossible for the Government to avoid. Id. at 56-57, 115 F. Supp. at 713-14. Further, those costs were only an extremely small percentage of the total mitigation costs incurred by plaintiff in connection with the removal of the machinery, as "the bulk of [the $2,191.52 in work] was done subsequent to [December 10, 1946]." Id. at 57, 115 F. Supp. at 713. In awarding the mitigation damages in total, the Court noted that the pre-breach damages were nominal and that the record did not show precisely what work was performed prior to December 10, 1946, and what work was performed after that date. Id. In this case, WEPCO seeks to recover millions of dollars in damages incurred years before the actual partial breach.[4] Even if WEPCO has properly interpreted the Chain Belt decision, it does not support recovery of pre-breach damages incurred before it was impossible for the Government to avoid the future breach.

---

[4] According to WEPCO's initial disclosures, WEPCO is claiming that it incurred approximately $42,369,000 in damages prior to the end of fiscal year 2004. Two categories of those costs, totaling approximately $13,619,000, relate exclusively to costs incurred prior to January 1998. One of these cost categories contains costs that go back until 1995; the other contains costs reaching as far back as 1988. Def. Mtn. App. 25 (Additional Spent Fuel Storage) & 29 (High Level Waste Solutions). As noted in our opening brief, WEPCO has not yet quantified its potential future damages beyond fiscal year 2004. Instead, according to counsel for WEPCO, the quantification of the damages that WEPCO expects to incur between the end of fiscal year 2004 and December 31, 2015 will be the subject of an expert report. Def. Mtn. 37.

WEPCO also relies upon this Court's recent decision in Yankee Atomic Electric Co. v. United States, 2004 WL 1535688 at *6-*7 (June 28, 2004), on the Government's motion *in limine* regarding the presentation of evidence of pre-breach damages. As explained in the Government's opening brief, the Court cited to its decision in Tennessee Valley Authority v. United States, 60 Fed. Cl. 665 (2004), as support for the concept that pre-breach damages potentially could be recoverable. See Yankee Atomic, 2004 WL 1535688, at *6. However, in response to the Government's motion for reconsideration in TVA, in which the Government demonstrated that pre-breach damages were not recoverable in a partial breach case, and should not be permitted as a matter of law, the TVA Court indicated that its decision should not be interpreted as permitting TVA to recover damages prior to the date that the TVA court defined as the first partial breach. Defendant's Motion For Reconsideration of the Court's June 2, 2004 Order, filed August 10, 2004, and Order in Tennessee Valley Authority v. United States, No. 01-249C (Fed. Cl. Aug. 12, 2004). The Court in Yankee Atomic also cited to comment b of section 350 of the Restatement (Second) of Contracts. As explained above, and with all due respect, that comment does not provide that a party may receive pre-breach damages on a partial breach of contract claim.[5]

[5] Likewise, WEPCO also relies upon this Court's even more recent decision in Southern Nuclear Operating Co. v. United States, No. 98-614C (Fed. Cl. Dec. 20, 2004), to support this same proposition. Because that decision was based upon the same rationale as the Yankee Atomic decision, the Government respectfully contends that it does not support recovery of pre-breach damages on a partial breach claim.

## II. WEPCO CAN RECOVER ONLY FOR PARTIAL BREACHES THAT HAVE OCCURRED AS OF THE FILING OF ITS COMPLAINT

Although WEPCO engages in great efforts attempting to distinguish the cases that we cited in our motion for partial summary judgment from the situation at hand, WEPCO has not cited a single case in which a court actually has awarded future or prospective damages through an indefinite period – not yet incurred or obligated – to a plaintiff in response to a partial breach claim. The only support that WEPCO cites in response to our demonstration that damages for future partial breaches are not available to a claimant in a partial breach case is the Court's decisions in Southern Nuclear Operating Co. v. United States, No. 98-614C (Fed. Cl. Dec. 20, 2004), Yankee Atomic Electric Co. v. United States, No. 98-126C, 2004 WL 1535688 (Fed. Cl. June 28, 2004) (unpublished), and a sentence from a supplement to the Corbin on Contracts treatise. Pl. Resp. 12 (quoting 9 J. Murray, Corbin on Contracts § 956, at 576 (2004 Fall Cum. Supp.)). However, none of these sources support WEPCO's assertion that, in a partial breach context, it is entitled to pursue damages in its current case for future partial breaches through some indefinite period of time in the future.

WEPCO's reliance upon the Court's decision in Yankee Atomic as somehow allowing a plaintiff to recover future damages through some indefinite period of time is misplaced. In Yankee Atomic, the Court allowed evidence at trial of damages that could be incurred through 2010. However, the Court's decision was predicated upon four separate assumptions, none of which are true in this case. First, the Court based its decision, in part, upon its understanding that the Government had admitted that performance would commence "at the earliest" in 2010 and there was "no possibility that future Government performance will ameliorate or eliminate

expenditures caused by" the Government's failure to perform. 2004 WL 1535688, at *2. Second, the Court predicated its decision on the fact that the plaintiffs in that case were not seeking to recover damages that may be incurred if DOE did not commence performance until after 2010. Id. Third, the Court based its decision upon the fact that the plaintiffs were potentially seeking damages under a restitution theory, which would result in a total rather than partial breach and, therefore, potentially allowed for the recovery of future damages. Id. Finally, the Court noted that the limitation of damages to the date of the complaint or the date of trial potentially would not adequately compensate the plaintiffs and restore them to the position they would have been in but for the breach. Id. at 3.

In this case, none of these assumptions or limitations are present. First, the Government agrees that, consistent with the statute of limitations, WEPCO may bring future actions for future breaches, regardless of whether DOE performs by 2010. Second, WEPCO has unequivocally stated that it is seeking damages past 2010. Pl. Resp. 1 ("intend[s] to seek damages arising from the Government's partial breach of the Standard Contracts from January 31, 1998 to December 31, 2009, to the extent such damages are incurred through December 31, 2020."). However, WEPCO also seeks an order allowing it to return to the Court to seek additional damages "in the event the Government's delay in performance extends beyond December 31, 2009." Pl. Resp. 2. Even if the Court were to accept the Court's reasoning in Yankee Atomic, that reasoning has no application where, as here, WEPCO is seeking damages through some undefined time in the future. Third, there is absolutely no reference in WEPCO's complaint to seeking restitution as an alternative basis for recovery. Absent a restitution claim and, consequently, a total breach claim,

WEPCO has no right to seek future damages for future breaches through some indefinite period of time.

Finally, as the Government explained in its opening brief, the Court's ruling in Yankee Atomic did not disagree with the legal reasoning regarding the scope of damages that could be considered for future breaches. Yankee Atomic, 2004 WL 1535688 at *2-3 ("Damages caused by any failure to commence pick-up after 2010 (as well as any related issued concerning the adequacy of that future performance) would be future damages for future breaches."). Instead, the Court reached a different result based upon the finding of a single partial breach that extended from 1998 to 2010. Id. As we established in our motion, DOE's failure to perform is more properly viewed as a continuing series of partial breaches, tied to the failure to act in accordance with approved delivery commitment schedules. Def. Mtn. 4-9. As the testimony at trial in Yankee Atomic demonstrates, action could be taken by Congress or the NRC that would require performance by DOE prior to 2010. Def. Mtn. 9-10. WEPCO characterizes the Government's contention in this regard as a "convenient, post-hoc position adopted specifically for the purposes of litigation and not grounded in reality." Pl. Resp. 13. Relying on this Court's opinion in Southern Nuclear Operating Co. v. United States, No. 98-614C (Fed. Cl. Dec. 20, 2004), WEPCO would rather focus on DOE's past projections that it does not currently anticipate that performance will commence before 2010. Pl. Resp. 12-13. Those projections are in no way inconsistent with trial testimony relating to the possibility of earlier performance, which could occur with particular congressional action. Yet it is speculative to assume how, if, or when Congress could enact legislation. Because the timing and extent of DOE's performance in the future is still unknown, it is improper to view DOE's failure to perform as a single partial breach

that runs from 1998 to 2010. Instead, the extent of the Government's breach can only be measured with certainty as of the date of the filing of WEPCO's complaint or the date of trial, at the latest. Therefore, WEPCO's reliance on the Court's decision in Yankee Atomic as somehow allowing for the recovery of future damages through some indefinite period of time is misplaced.

In the Corbin supplement relied upon by WEPCO, the author, Professor Murray, discusses a decision from the California Court of Appeal, Guntert v. City of Stockton, 55 Cal. App. 3d 131, 126 Cal. Rptr. 690 (1976), in which the California court reversed an award of future damages for a partial breach of contract. In response to a partial breach of a lease contract, the trial court, in addition to ordering previously incurred damages and an injunction for specific performance, had ordered the defendant to pay a particular sum of money each month from the date of the trial court judgment through the identified end date of the lease, "unless the lease ended earlier." Id. at 150, 126 Cal. Rptr. at 701. The appellate court recognized, however, that, "[i]f the breach is partial only, the injured party may recover damages for non-performance only to the time of trial and may not recover damages for anticipated future nonperformance." Id. at 150-51, 126 Cal. Rptr. at 702 (quoting Coughlin v. Blair, 41 Cal. 2d 587, 598, 262 P.2d 305, 311 (1953)). The Guntert court determined that an injunction requiring specific performance of the contract would absolutely preclude the contract holder from incurring any damages and that, therefore, an award of lost future profits and entry of an injunction would be inconsistent:

> Here plaintiffs elected to remain in possession, continue to pay rent and sue for a partial rather than total breach. The lease, whose prime objective was the letting of property, remained alive; the law's remedies were substituted for only a part of the injured party's election, the breach was partial and not total. That election was confirmed by the injunction issued at the tenant's behest. That injunction prevented the landlord from interfering with the tenant's

> quiet possession and use of the leased premises during the remainder of the tenancy.
>
> By granting an injunction which assured specific performance and, in addition, a judgment for future profits available only on the theory of a total breach of the lease, the trial court awarded something akin to double recovery. Plaintiffs occupy an inconsistent position – they argue (correctly) that their right to damages was not dependent upon eviction, yet they seek a measure of damages available to an evicted tenant, that is, one who no longer has a lease. The breach being only partial, the trial court erred by awarding prospective loss of profits.

Id. at 151, 126 Cal. Rptr. at 702. Nevertheless, the Guntert court found that "[t]he unavailability of prospective damages does not preclude future awards of past damages flowing from the partial breach" and that "[p]laintiffs may, within the period of limitations, file a new lawsuit seeking additional damages." Id. at 153, 126 Cal. Rptr. at 703.

Professor Murray recognizes Guntert as a case holding that "it would be a double recovery to allow both an injunction to protect against future harm and also to allow damages for future harm." 9 J. Murray, supra, § 956, at 550. However, he feels that its result "is not sound," that "[i]t is not true that damages to be suffered in the future are always prevented by an injunction," and that "[a]n injunction may lessen or prevent a particular kind or item of damage without preventing another one." Id. at 550-51. Professor Murray then states that "[a] partial breach should be subject to both injunctive and future damage remedies in a proper case, because neither one may offer a complete cure alone," and that "a good example of this is First Nat'l State Bank of N.J. v. Commonwealth Fed. Sav. & Loan Ass'n, 610 F.2d 164 (3d Cir. 1979), where both specific performance and damages were awarded." Id. at 551.

Although Professor Murray's discussion of the Guntert case is somewhat confusing, it appears that he is contesting the Guntert court's finding that an injunction should preclude the existence of any future damages, rather than the means by and manner in which future damages are awarded. Because the United States Court of Appeals for the District of Columbia Circuit has expressly declined to order specific performance by the Department of Energy, see Northern States Power Co. v. United States Dep't of Energy, 128 F.3d 754, 759 (D.C. Cir. 1997), cert. denied, 525 U.S. 1015 & 1016 (1998), the issue of whether specific performance would eliminate WEPCO's future damages is not before this Court.

The issue here is whether it is appropriate to preclude, at the present time, an award of damages that might be caused by future partial breaches, but to allow the plaintiff to return to court if and when future partial breaches cause it to incur damages. In the Corbin on Contracts treatise, Professor Corbin expressly and unambiguously states that, in a partial breach claim, "[i]t has been thought that where there has been no repudiation, the plaintiff can recover damages for his injury only to the date of the writ – that he must treat the breach as only 'partial.'" 9 A. Corbin, Corbin on Contracts § 956, at 747 (interim ed. 1979) (emphasis added). Plainly, the long-standing rule is that a plaintiff claiming a partial breach may only recover damages "to the date of the writ," id., and Professor Murray, in his supplement, certainly cannot intend to disagree with that long-standing principle. To the extent that he has intended to contradict that long-standing rule, he has cited absolutely no authority to support that new theory.[6]

---

[6] Although Professor Murray cites to the United States Court of Appeals for the Third Circuit's decision in First National State Bank to support his assertion that specific performance and damages are not incompatible, the First National case did not involve an award of any future damages. To the contrary, the court in First National affirmed the trial court's award of "damages incidental to the breach covering reimbursement for interest and for losses sustained in operating

In any event, Professor Murray, in his supplement to the Corbin treatise, did not discuss or acknowledge the Guntert court's second basis for declining to award future damages for a partial breach: that "[t]he award of prospective profits accruing [more than five years after the date of judgment] offends another tenet of damage law – the requirement of reasonable certainty . . . ." Guntert, 55 Cal. App. 3d at 152, 126 Cal. Rptr. at 703. The trial court in Guntert "indulged in a shaky prognostication – that [the plaintiff's] plant could not be reopened or profitably utilized within the remaining years of tenancy." Id. As the appellate court found, the plaintiff "alone had made the decision to close down the plant," and the trial court viewed this decision "as an expression of economic prudence dictated by prevailing uncertainties over outcome of the lawsuit." Id. "Although the trial court found that plant closure was a natural foreseeable consequence of the breach, it did not find that reopening the plant would be uneconomical or unfeasible." Id. at 153, 126 Cal. Rptr. at 703. As the appellate court found, this uncertainty in the fact of damage, or the manner in which damages would accrue in the future based upon the plaintiff's future business decisions, also precluded an award of future damages:

> A claim for future damage may be maintained despite uncertainty of amount; it may not be maintained in the face of uncertainty as to its occurrence; a mere contingency will not support a claim for damages.

Id. (emphasis added). The appellate court in Guntert determined that "[t]hese two rules – one denying prospective damages for partial breach, the other denying contingent future damages –

---

the mall:" that is, "to reimburse with interest the amount First National has lost," in the past, "in operating the mall." First Nat'l, 610 F.2d at 169 & 174 (emphasis added). Although the court affirmed the trial court's order that the defendant "pay interest at eight percent on the amount of the loan from the time the loan should have been made until such time as the money is turned over to First National," id. at 169, neither the trial nor appellate courts made an award of future damages of costs yet to be incurred.

combine to invalidate that portion of the [trial court] judgment awarding monthly 'lost profits' commencing February 1974." Id.

WEPCO has failed to identify how it would be prejudiced or not be made whole by being limited to seeking damages for breaches that have already occurred. The Government agrees that WEPCO may, consistent with the statute of limitations, bring future actions for future breaches, and WEPCO has filed its own motion asking that it be allowed to seek future damages arising from DOE's prospective non-performance in a later-filed action. In fact, WEPCO's original motion seeking an order allowing it to preserve its future claims arising from future breaches recognizes the necessity of the Government's approach. WEPCO has not provided a basis to distinguish between damages it may incur between 2004 and 2010 and the damages it may incur after 2010 if DOE does not perform at that time.

## III. WEPCO'S POLICY ARGUMENTS FAIL TO ADDRESS THE CONTRACTUAL REMEDY ISSUE

WEPCO argues that its election of whether to pursue a partial or total breach case based upon DOE's failure to begin acceptance in 1998 was a Hobson's choice because, under the NWPA, a decision to treat the contract as repudiated would cause it to lose its operating license. Pl. Resp. 6.[7] Likewise, WEPCO contends that the NWPA and the Standard Contract provide DOE with a monopoly in the SNF acceptance market that limits its ability to mitigate its damages. Pl. Resp. 14. As an initial matter, WEPCO's assertions are wholly unsupported. Although section 302(b) of the NWPA, 42 U.S.C. § 10222(b), provides that the Nuclear Regulatory Commission ("NRC") should not renew an operating license unless a utility has

[7] Similarly, under the NWPA, DOE has a statutory obligation that allows it no choice but to ultimately dispose of WEPCO's SNF.

entered into a contract, WEPCO has cited nothing to support its assertion that it would automatically lose its existing license if it declared a total breach. Similarly, WEPCO's assertion that DOE has a "monopoly" on SNF disposal is unsupported by any evidence. In any event, the issue here is not the fairness of WEPCO's choices under the statutory and regulatory environment in which it does business. Instead, having made the election to continue operating under the constraints of the Standard Contract and to receive the promise of future performance by DOE, the issue is to what remedy is WEPCO now entitled. WEPCO's efforts to treat the breach as partial, but to maximize its damages recovery by relying upon total breach damages concepts while retaining the promise of future performance, are misguided.

## CONCLUSION

For the foregoing reasons and the reasons set forth in our opening brief, the Government respectfully requests that the Court deny WEPCO's motion in its entirety and grant the Government's cross-motion limiting the consideration of damages to those incurred between January 31, 1998, and the date that WEPCO filed its complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

OF COUNSEL:

JANE K. TAYLOR
Office of the General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ Kevin B. Crawford
KEVIN B. CRAWFORD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-0365
Fax: (202) 307-2503

May 5, 2005

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that, on May 5, 2005, a copy of foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT REGARDING PRE-BREACH AND FUTURE DAMAGES" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Kevin B. Crawford