**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| WISCONSIN ELECTRIC POWER COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 00-697C<br><br>Senior Judge Merow |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO CONDUCT MORE THAN TEN DEPOSITIONS**

Plaintiff Wisconsin Electric Power Company ("WE") opposes the Government's Motion for Leave to Conduct More Than Ten Depositions ("Motion for Leave"). WE believes that fifteen depositions (not twenty or more depositions) is appropriate in this case. Further, the Government has not provided sufficient notice for WE to prepare twenty or more individuals for depositions prior to the November 4, 2005 close of discovery. Few of these potential deponents currently work for WE and several no longer reside in the Wisconsin area.

The Government's assertion that WE has "flatly refused" to consider more than ten depositions is simply untrue. The September 23, 2005 letter cited by the Government contains no such statement. Further, after receiving the Government's September 26, 2005 response, WE contacted the Government on September 30 to attempt to negotiate a resolution of the deposition issue. The Government, however, was unwilling to discuss a

compromise regarding this issue and precipitously filed its motion for leave on October 3, 2005. A copy of WE's October 4, 2005 letter to the Government concerning this issue is attached as Exhibit 1.

Notwithstanding the Government's filing of its motion, WE has conferred with the Government and believes that the parties should be able to resolve these deposition issues without disrupting the pretrial schedule. WE seeks to maintain the current pretrial schedule, particularly the July 2006 trial date.

## I. FACTUAL BACKGROUND

WE respectfully takes issue with a number of the Government's factual allegations. The Government alleges that WE's February 2005 Rule 26 disclosures "failed to identify individuals likely to have discoverable information or documents upon which it intended to rely." See Motion for Leave at 2. The Government ignores that, on October 9, 2001, WE identified seven of the Government's twenty potential deponents. See Plaintiff's Objections and Responses to Defendant's First Set of Interrogatories and Request for Production of Documents, dated October 9, 2001 (identifying Glenn Adams, Kevin Anundson, Michael Baumann, Paul Farron, Gary Krieser, Bob Link, and Howard Shimon). Two more potential deponents – Carlyle Fay and David Porter, were identified by declarations attached to WE's Motion for Partial Summary Judgment filed on December 16, 2002.

As part of its February 2005 Rule 26 disclosures, WE then produced detailed information regarding its damage claims, identifying specific claim items, knowledgeable personnel, WE damages experts, and more than 5,000 pages of records directly supporting its damage claims. These initial disclosures identified yet another of the Government's potential

deponents – Jim Becka. Thus, by February 2005, WE had identified ten of the Government's twenty potential deponents.

After receiving this substantial WE information in February 2005, the Government did nothing until June 17, 2005, when the Government served interrogatories and requests for production of documents. Thus, the Government's written discovery requests were three-and-a-half months after WE's initial disclosures. The Government then waited until July 2005 to begin its audit verification activity.

While the Government correctly notes that WE produced 45,000 pages of documents in July 2005, those documents were not produced as part of WE's Rule 26 disclosures. Instead, those documents were produced as a timely response to the Government's June 2005 discovery requests. If the Government had served those document requests in March 2005, WE would have produced the 45,000 pages of documents in April 2005.

WE's February 2005 Rule 26 disclosures were not deficient. The parties merely had different understandings of the Court's order on this issue. To resolve their differing interpretations, the Government and WE then agreed to stipulate that WE would produce those expert reports that pertained to the calculation of WE's damages in July 2005. This was four months earlier than the original November 14, 2005 due date for plaintiff's damages calculation expert reports. See Joint Motion to Revise the Court's Pretrial Scheduling Order, dated May 27, 2005. Thus, WE has not been in any way deficient in its discovery responses.

Instead, the Government wasted three-and-a-half months after WE's initial disclosures, and now seeks to have WE bear the burden of the Government's poor planning. The Government's eleventh hour deposition notice is particularly unreasonable given that: (1)

ten of the Government's twenty potential deponents were identified by February 2005; and (2) in late June 2005, WE informed the Government that many former WE personnel were either retired or worked for other employers and that several were no longer in the Wisconsin area.

## II. ARGUMENT

### A. Legal Standard

According to RCFC 30(a)(2)(A), "[a] party must obtain leave of court, which shall be granted to the extent consistent with the principles stated in RCFC 26(b)(2), if . . . without stipulation of the parties, a proposed deposition would result in more than ten depositions being taken under this rule or RCFC 31 by the plaintiffs, or by defendants, or by third-party defendants." Thus, "Rule 30(a)(2)(A) prescribes a presumptive limit on the number of depositions that may reasonably be taken in a civil suit." Barrow v. Greenville Independent School Dist., 202 F.R.D. 480, 482 (N.D. Tex. 2001) (denying plaintiff's second motion for leave to take more than ten depositions where defendant agreed to allow plaintiff fifteen depositions) (emphasis added).

RCFC 26(b)(2) requires the Court to limit the "frequency or extent of discovery methods" when "(i) discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount

in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues."

Thus, a motion for leave to conduct more than ten depositions requires that the Court conduct a fact-specific analysis guided by the general principles of judicial economy. The similar discovery rule contained in Fed.R.Civ.P. 26(b)(2) was "promulgated to enable courts to maintain a 'tighter rein' on the extent of discovery and to minimize the potential cost of '[w]ide-ranging discovery' and the potential for discovery to be used as an 'instrument for delay or suppression.'" Whittingham v. Amherst College, 163 F.R.D. 170, 172 (D. Mass. 1995). The same principles of limitation and control are at work in Fed.R.Civ.P. 30 and RCFC 30. See Barrow, 202 F.R.D. at 483 ("Rule 30(a)(2)(A) is intended to control discovery, with its attendant costs and potential for delay, by establishing a default limit on the number of depositions."); Dixon v. CertainTeed Corp., 164 F.R.D. 685 (D. Kan. 1996) (noting that "[a] second objective [of Rule 30(a)(2)(A)] is to emphasize that counsel have a professional obligation to develop a mutual cost-effective plan for discovery in the case," quoting Fed. R. Civ. P. 30(a)(2)(A) Advisory Committee Notes (1993 Amend.) (emphasis added)).

The burden of providing justification for its desire to depose twenty individuals falls squarely on the Government. The Government has fallen well-short of meeting this burden.

**B. The Government Has Failed to Demonstrate that the Discovery Sought Will Not Be Cumulative or Duplicative**

The Government has not demonstrated that the requested depositions in excess of ten would not be cumulative or duplicative. Further, the Government has indicated that it may seek to conduct more than twenty depositions and to substitute different deponents. Requests

for leave to take additional depositions must be specific as to the number of additional depositions sought and the identity of the deponents. See 7 Moore's Federal Practice, § 30.05[1][b] (Matthew Bender 3d ed.).

The analysis of the potential for duplicative or cumulative discovery requires some touchstone, such as discovery-to-date, to serve as a standard against which to evaluate possible duplication or excessive accumulation. "Further, since a court must determine the cumulative effect of the proposed discovery, as well as the opportunity for the party to obtain the information through other means, the rule also appears to assume that discovery has at least commenced." Whittingham, 163 F.R.D. at 171.

Here, the Government filed its motion seeking to depose twenty or more individuals before having deposed anyone. As a result, the Government cannot establish that each of ten additional deponents has something unique to offer that cannot be obtained from the initial ten depositions. The Government has not carried its burden that the initial allotment of ten depositions – if carefully chosen and thoroughly conducted – will not yield sufficient discovery.

In the absence of any demonstration that the additional ten depositions will not be cumulative, it is premature and inefficient to allow such wide-ranging discovery at this point. See Andamiro U.S.A. v. Konami Amusement of America, Inc., No. 00-8561, 2001 WL 535667 at *2 (C.D.Cal. 2001) (permitting additional depositions of expert witnesses because such testimony would not be cumulative or duplicative, but denying non-expert depositions when "plaintiff ha[d] ample opportunity within the ten deposition limit to obtain relevant information.").

**C. The Government Has Had Ample Opportunity to Discovery Necessary Facts**

In the months since WE provided initial disclosures in February 2005, the Government has had ample opportunity to provide WE notice of the depositions that it wishes to take and to conduct those depositions in a manner that will not prejudice either the deponents or WE. The Government waited until September 23, 2005 – the "eleventh hour," little more than one month before the scheduled close of discovery – to announce its proposed deposition witnesses to WE. There is no justification for the Government's dilatory behavior and, consequently, no justification for exceeding ten depositions.

**D. The Burden of Additional Depositions Outweighs the Benefit**

The burden placed on WE to prepare for and defend twenty depositions in twenty-five business days – before the November 4, 2005 discovery cut-off – clearly outweighs any alleged benefit to the Government.

The Government's eleventh-hour deposition requests impose a substantial burden on WE – far in excess of any benefit alleged by the Government to flow specifically from these depositions. WE's counsel needs a reasonable amount of time to prepare each deponent for his or her deposition. By WE's calculations, it can defend fifteen depositions by November 4, 2005 given that WE is also deposing a U.S. Department of Energy official during this same period. Even defending fifteen depositions by November 4, 2005 places a substantial burden on WE and its counsel.

Furthermore, because the Government has only begun to take any of its ten allotted depositions, it is practically impossible for the Court, at this time, to determine the benefit to be gained from additional depositions. The presumptive limit to ten depositions is, in part, a

cost-saving one. Each deposition requires considerable and costly preparation, substantial attorney involvement, and inconvenience to the deponents. The benefit versus burden test requires evaluation of (1) the facts of each case, and (2) the alleged utility of each additional deposition, to ensure that the likely benefit to the parties, and the Court's resolution of the matter, outweighs the myriad costs imposed on the parties and the Court's judicial economy.

Balanced against the substantial cost facing WE in preparing for twenty depositions, the Government cannot offer any clear demonstration of the likely benefit of ten additional depositions.

## III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion for Leave to Conduct More than Ten Depositions. Instead, the Court should permit the Government to conduct no more than fifteen depositions.

Respectfully submitted,

s/Richard W. Oehler by s/Donald J. Carney
Richard W. Oehler
Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Tel: 206-583-8888
Fax: 206-583-8500
roehler@perkinscoie.com

*Attorneys for Plaintiff*
*Wisconsin Electric Power Company*

Of Counsel:

Donald J. Carney
Perkins Coie LLP
607 Fourteenth St., N.W., Suite 800
Washington, D.C. 20005
Tel: 202-434-1635
Fax: 202-434-1690
dcarney@perkinscoie.com

**CERTIFICATE OF SERVICE**

I certify under penalty of perjury that, on October 10, 2005, I caused a copy of the foregoing "Plaintiff's Motion in Opposition to Defendant's Motion for Leave to Conduct More Than Ten Depositions" to be filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Donald J. Carney
Donald J. Carney

Perkins Coie
607 Fourteenth Street, N.W.
Washington, D.C. 20005-2011
PHONE: 202.628.6600
FAX: 202.434.1690
www.perkinscoie.com

Donald J. Carney
PHONE: 202.434.1675
EMAIL: dcarney@perkinscoie.com

October 4, 2005

**BY FACSIMILE**

Kevin Crawford, Esq.
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530

**Re: Wisconsin Electric Power Co. v. United States, No. 00-697C**

Dear Mr. Crawford:

We were surprised to read in the Government's Motion for Leave to Conduct More than Ten Depositions its contention that Wisconsin Electric Power Company ("WE") "flatly refused" to agree to make any more than ten individuals available for deposition in the above-captioned matter.

WE's letter of September 23, 2005 reminded the Government of its obligation to obtain leave of court to depose more than ten persons and requested that the Government identify those ten persons. WE's letter was not intended to foreclose the parties' negotiation of a reasonable number of depositions in this case. Indeed, the point of my call to you on September 30 was to attempt to resolve this matter by determining if the Government was willing to agree to less than 20 depositions which we do not believe can be conducted prior to the November 4 close of fact discovery.

My understanding based on our call last Friday was that the Government is not willing to agree to less than 20 depositions at this time. Nevertheless, in an attempt to resolve this matter, WE believes that it can defend approximately 15 depositions by

[28795-0001/DA052770.025.DOC]

the close of discovery. Further, we believe that 15 is a reasonable number of depositions for the Government to take in this case given the late date at which the Government has sought to undertake depositions under the Court's pretrial schedule.

Please let us know whether the Government is willing to consider this proposal to conduct approximately 15 depositions.

If you have any questions, please call me.

Sincerely,

Donald J. Carney on behalf of Don Carney

cc: Catherine Phillips
Richard Oehler