IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WISCONSIN ELECTRIC POWER COMPANY, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 00-697C |
| | ) | (Senior Judge Merow) |
| UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR AN ENLARGEMENT OF TIME

Defendant, the United States, respectfully files this reply to the opposition filed by plaintiff, Wisconsin Electric Power Company ("WEPCO"), to defendant's motion for an enlargement of time of 63 days, to and including Friday, May 5, 2006, within which to complete fact discovery in the above-captioned case.

SUMMARY OF ARGUMENT

Defendant's request to enlarge the discovery period is being considered in conjunction with WEPCO's motion for leave to amend its complaint to claim an additional $3 million in damages for the year 2005. In our motion to enlarge the discovery period, we established our need for and have requested permission to: (1) continue three unfinished depositions, (2) reopen four of the 26 depositions that have already been conducted because of improper privilege objections raised and because the witnesses did not fully disclose their knowledge of the damages claim, and (3) take Rule 30(b)(6) depositions on certain topics.

In its opposition to our motion, WEPCO (1) has agreed to allow the continuation of the three unfinished depositions provided that they are each limited to one additional day of seven hours, (2) opposes the requested enlargement, claiming that it will require a revision of the

present pretrial schedule and trial date, (3) opposes reopening the four depositions and the use of a Rule 30(b)(6) deposition on the topic of the information provided by company employees to its damages expert witnesses by re-urging its improper privilege objections and making excuses for its witnesses' failure to disclose their knowledge about the claim, and (4) opposes the use of another two Rule 30(b)(6) depositions by asserting that the topics are not relevant to their damages claim.

Because, at present, the Government believes that each of the three continuation depositions can be completed within the time limit requested by WEPCO, the Government agrees that the relief it has requested relating to these depositions be so limited. As we explain below, WEPCO's remaining objections to our enlargement should be rejected because: (1) the additional discovery requested is unlikely to require alteration of the present pretrial schedule, and, to the extent that any pretrial dates need to be altered, it should only affect those relating to the submission of expert reports and expert discovery and not the submission of Appendix A material or the trial date and, therefore, will not prejudice WEPCO; (2) the purpose of reopening the four depositions and the use of a Rule 30(b)(6) deposition on the topic of the information provided by company employees to its damages expert witnesses is to allow the Government to obtain the full and proper disclosure of WEPCO's damages claim and the causation analysis upon which it is based, and to which the Government is entitled; and (3) the topics of the other two requested Rule 30(b)(6) depositions are relevant to WEPCO's damages claim, and are beyond the knowledge of any of the witnesses deposed thus far.

## ARGUMENT

I. The Government Agrees To The Condition Of A One-Day Limitation For The Continuation Of The Meils, Becka and Straub Depositions

WEPCO has agreed to allow the continuation of the depositions of Eric Meils, Jim Becka and Ione Straub, provided that they are each limited to one additional day of seven hours. WEPCO Opp'n. at 6-7.[1] At present, the Government believes that each of these depositions can be completed in that amount of time. Therefore, the Government agrees that the relief it has requested relating to these depositions be so limited.

II. The Requested Enlargement Will Not Prejudice WEPCO By Requiring Any Material Revision To The Present Pretrial Schedule

In the background section of its opposition, WEPCO states that it "had no choice but to agree to a pretrial schedule that extended discovery by four months and extended the trial date to March 27, 2007." WEPCO Opp'n at 3. That statement is incorrect, as is the characterization of the scope of the leave granted to the Government regarding depositions. The Court's October 1, 2005 order granted the Government leave to take a minimum of 20 depositions, and more if necessary. The present pretrial schedule was a product of negotiation between counsel for the parties after that leave was granted.[2]

---

[1] "WEPCO Opp'n." refers to Plaintiff's Opposition to Defendant's Motion for an Enlargement of Time, dated March 17, 2006.

[2] WEPCO initially proposed extending the trial date by seven-and-a-half months to February 27, 2007, while only extending the fact discovery deadline by three months. Because the proposed February 2007 trial date conflicted with another spent nuclear fuel case trial date, the Government countered WEPCO's proposal by proposing an extension of the trial date by eight-and-a-half months to March 27, 2007, and extending the fact discovery deadline by almost five months. Under the Government's proposal, more of the time gained by extending the pretrial deadlines would be used to accommodate the expected depositions. The compromise agreed to by the parties allowed for the March 27, 2007 trial date, but only four months for the

WEPCO mischaracterizes our mention of the need for additional time to review discovery and resolve remaining discovery disputes as an "open-ended request . . . to conduct whatever additional discovery [we] should later find appropriate." WEPCO Opp'n. at 18. Any discovery dispute arising out of our review would relate to the discovery propounded to date. This is hardly an "open-ended" request.

As a corollary to its assertion that our motion to enlarge amounts to an "open-ended" discovery request, WEPCO asserts in its opposition that any discovery enlargement will require postponement of the date for submission of its expert reports. WEPCO Opp'n. at 17. This assertion miscomprehends the nature of our motion. We seek an enlargement so that we may fully investigate WEPCO's damages claim. Our entitlement to such discovery is wholly independent from WEPCO's opportunity to prepare or revise its expert reports. WEPCO's purported reliance upon additional fact discovery is indeed curious given that WEPCO has only taken one two-day deposition of Dave Zabransky, the contracting officer for the Department of Energy who also happens to be a former WEPCO employee.[3] The only expert reports on which the Government understands that WEPCO is currently working are the supplements of its previously-filed reports to account for the updated claimed costs. It was with the understanding that WEPCO would be using the time period until its April 7, 2006 expert report

---

depositions and other fact discovery. As it turned out, both parties could have benefitted by having slightly more time for fact discovery.

[3] In addition to the information provided to WEPCO through coordinated discovery and on the RIS-Web and the document production website maintained by the Government, WEPCO has also propounded one set of 34 production requests during scheduled fact discovery in this case. The Government responded to those requests either by reference to documents already produced on its websites accessible by all plaintiffs or by supplementing its production on those websites.

submission date for that purpose that we requested that our enlargement of the discovery deadline run until Friday, May 5, 2006, one week prior to the currently scheduled deadline for submission of defendant's expert reports and audit response. Given the fact that the three agreed depositions may only take a total of three days, and that only two of the Rule 30(b)(6) depositions may be necessary, the requested enlargement should not require any revision of the Court's pretrial schedule or the trial date.[4]

## III. The Government Is Entitled To The Additional Discovery Requested And The Reopening Of Depositions In Order To Obtain Full And Proper Disclosure Of WEPCO's Damages Claim

WEPCO contends that the additional discovery requested by the Government is not relevant to the damages at issue in the case, but, instead, concerns only the "process" by which the costs were compiled by WEPCO's damages experts. WEPCO Opp'n. at 6. This mischaracterizes the discovery we seek. It is well established that as a plaintiff seeking damages for the Government's breach of the Standard Contract, WEPCO has the burden of establishing

---

[4] The Government, however, recognizes that, notwithstanding the best efforts of the parties, and given the fact that it will also need to depose the three experts who prepared the two expert reports that WEPCO has submitted, the requested additional discovery may not be completed in enough time to allow its experts to prepare their reports. If this happens, a short enlargement of the Government's expert report deadline may be necessary. However, that May 12, 2006 deadline is presently set 56 days prior to the July 7, 2006 close of expert discovery. The Government presently anticipates that it will need only three or four testifying experts. A short extension of the Government's May 12, 2006 deadline for expert reports should still leave ample time for WEPCO's deposition of the Government's experts. However, even in the unlikely event that WEPCO needs additional time for its discovery relating to the Government's experts, the present July 7, 2006 deadline for the close of expert discovery is set 70 days prior to the present date set for the parties' initial Appendix A submissions. That period is sufficient to accommodate any type of time extension needed for expert discovery. Given the amount of time built into the present schedule for expert discovery, granting the Government's enlargement request will not prejudice WEPCO by requiring alteration of the dates presently set for Appendix A submissions or trial.

that its damages are the proximate result of the Government's breach. Globe Savings Bank, FSB v. United States, 65 Fed. Cl. 330, 346 (2005). This requires proof that the causal connection between the breach and WEPCO's claimed damages has been "definitely established." Id.; California Fed. Bank v. United States, 395 F.3d 1263, 1268 (Fed. Cir. 2005). Such proof will not only be based upon WEPCO's explanation of what amount of money it had to spend as a result of the breach, but also upon its explanation of how it determined that it would not have spent those sums notwithstanding the breach. Bluebonnet Sav. Bank, FSB v. United States, 67 Fed. Cl. 231, 238-39 (it is incumbent upon plaintiffs to establish a plausible "but-for world"); Glendale Fed. Bank, FSB v. United States, 239 F.3d 1374, 1380 (Fed. Cir. 2001) (plaintiffs bear the burden of demonstrating "what might have been . . . ."); Coast Fed. Bank, FSB v. United States, 48 Fed. Cl. 402, 403 n. 25 (2000) (plaintiffs bear the burden of propounding a realistic but-for scenario). Presumably, those explanations will be provided by both WEPCO's damages experts and any fact witnesses who provided information to those experts. As such, it is important that the Government is provided with an opportunity to inquire into these issues fully in fact and expert discovery.

Despite this clear burden, during discovery to date, counsel for WEPCO have instructed the WEPCO witnesses not to answer our questions designed to elicit information relating to how WEPCO determined certain costs to be incremental to DOE's delay in accepting WEPCO's spent nuclear fuel. That is the only "process" in which the Government is interested. That information is the very gist of the causation issue because it relates to what damages WEPCO can prove were caused by DOE's delay in accepting spent nuclear fuel. Far from seeking to have witnesses

divulge privileged communications, as asserted by WEPCO, the Government merely seeks to investigate the basis of WEPCO's damages claim.

In its opposition, WEPCO raises an objection to reopening deposition of David Weaver to have him testify about what he knows about the damages claim because Mr. Weaver has testified that he believes that his knowledge of the damages claim was based upon privileged information. WEPCO Opp'n. at 8. Due to the amount of objections interposed by WEPCO's counsel, the portion of Mr. Weaver's testimony quoted in our motion is less than clear support for the proposition asserted by WEPCO. Def. Mot. at 6-8.[5] However, the central issue raised by our motion relates to the initial question put to Mr. Weaver. That question was based upon WEPCO's identification of Mr. Weaver in its February 14, 2005 disclosures as a person who provided data to WEPCO's damages experts, and goes on to ask, simply, what data he provided. Def. Mot. at 6.

Likewise, WEPCO raises an objection to reopening the deposition of Michael Baumann. WEPCO Opp'n. at 7-8. The relevant passage of Mr. Baumann's testimony quoted in our motion clearly indicates that Mr. Baumann was asked to attend the meetings with Mr. Sieracki in order to provide information that would, in turn, provide Mr. Sieracki with a "historical perspective" of the dry storage project. Def. Mot. at 3-6; October 31, 2005 deposition of Michael F. Baumann, at p. 211, ll. 6-9 and p. 211, l. 15 - p. 215, l. 9.

In both of these contexts, WEPCO's counsel's instructions not to answer questions based upon the attorney client privilege and the attorney work product doctrine were improper because

---

[5] "Def. Mot." refers to Defendant's Motion for an Enlargement of Time, dated March 3, 2006.

the inquiry related to what information the witnesses had provided to WEPCO's damages experts. In Pioneer Hi-Bred International, Inc., 238 F.3d 1370, 1374-75 (Fed. Cir. 2001), the United States Court of Appeals for the Federal Circuit recognized that the waiver of privileged attorney-client communications covers any information directly related to that which was actually disclosed, including the facts and details upon which the privileged communications were based. Likewise, any work product information provided to a testifying expert in connection with the formulation of his opinions or testimony is discoverable. Id. at 1375-76; Oneida, Ltd. v. United States, 42 Fed. Cl. 611, 619-20 (1999); Fed. R. Civ. P. 26 advisory committee notes (1970 amendments) (stating that "the new provisions of subdivision (b)(4)" "reject as ill-considered the decisions which have sought to bring expert information within the work-product doctrine"); see Energy Capital Corp v. United States, 45 Fed. Cl. 481, 494 (2000) (ordering the production of factual information given by the attorneys to the experts and "documents that implicate the core work product."); Fed. R. Civ. P. 26 advisory committee notes (1993 amendments) ("litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions-whether or not ultimately relied upon by the expert-are privileged or otherwise protected from disclosure . . . ."). Additionally, the Court of Federal Claims has recently held that the withholding of similar testimony by a plaintiff utility's employee in these spent nuclear fuel cases under the protections afforded by the attorney work product doctrine is improper. Pacific Gas & Electric Co. v. United States, No. 04-75C, 2006 WL 220114, at *34 (Fed. Cl. Jan. 25, 2006); see also Order on Reconsideration, Pacific Gas & Electric Co. v. United States, No. 04-75C (Fed. Cl. Mar. 9, 2006). Based upon these authorities, there is absolutely no reason why Mr. Weaver should not have been allowed to provide answers

to what data or information he provided to WEPCO's damages experts. Likewise, the Government should be allowed to ascertain what "historical perspective" information Mr. Baumann provided to Mr. Sieracki, and how that or any other information that Mr. Baumann provided to Mr. Sieracki was used in the preparation of WEPCO's damages claim.[6]

## IV. The Government Also Should Be Allowed To Reopen Depositions To Obtain Full And Proper Disclsure Of The Witnesses Knowledge

Additionally, in our motion, we established that another two of the depositions – those of Mr. Farron and Mr. Krieser – should be reopened based upon the failure of the witnesses to fully disclose their involvement in and knowledge of the preparation of the damages claim. Def. Mot. at 8-14. Both of these witnesses were identified by WEPCO as having been involved in the preparation of the damages claim. Id. They then professed in their deposition to have little or no knowledge of the claimed costs. Id. They were then later identified by Ms. Straub as having been the persons with the most knowledge of the damages claim. Id.

The Government noted the conflicting testimony in its motion. Id. In its opposition, WEPCO argues that no conflict exists. WEPCO Opp'n. at 7-8. According to WEPCO, the witnesses were, indeed, knowledgeable and fully able to testify about the claim, but were just asked confusing questions or shown the wrong exhibit. Id. Specifically, WEPCO claims that both Mr. Farron and Mr. Krieser have knowledge regarding the types of costs that WEPCO is seeking to recover, but that they were simply unable to testify about the costs as presented under the accounting codes and account names in the claim schedule prepared by WEPCO's damages

[6] Depending upon their knowledge of the damages claim, the Government expects that it should be able to complete each of the depositions of Mr. Baumann and Mr. Weaver in less than a seven-hour day.

experts. Id. However, one of the principal grounds behind the Government's request to reopen these depositions is the fact that Ms. Straub, the WEPCO accounting employee in charge of compiling the cost information for the request for equitable adjustment ("REA") that WEPCO presented to DOE in 1998 and the cost information provided to the damages experts in this case, has testified that both Mr. Farron and Mr. Krieser were the two WEPCO employees in charge of her work on both of those occasions. Mr. Krieser was the WEPCO employee in charge of the REA project, and Mr. Farron was in charge of the update of the REA claim that became the damages claim in this case. February 24, 2006 deposition of Ione Straub ("Straub deposition") at p. 9, l. 15 - p. 11, l. 14, p. 99, l. 14 - p. 110, l. 25, and p. 165, ll.2-6.

The claimed costs described in the 1998 REA and those described in WEPCO's February 14, 2005 disclosures are described by the same WEPCO accounting codes and account names as those used on the claim schedule prepared by WEPCO's damages experts. Compare Def. Depo Exs. 269 and 29 with February 14, 2005 Plaintiff's Supplemental Disclosures and Damages Schedules. Yet, now WEPCO is claiming that the lack of knowledge professed by both Mr. Farron and Mr. Krieser during their depositions was somehow due to their lack of familiarity with these WEPCO accounting codes and account names. WEPCO Opp'n at 8-9.

Regardless of the reasons behind the acknowledgment of the witnesses' significant involvement in the preparation of WEPCO's claim, the Government is entitled to an opportunity to re-examine them on this issue. It should be noted that Ms. Straub's testimony regarding the involvement of Mr. Farron and Mr. Krieser in the collection of the claimed costs was provided approximately four months after the testimony of Mr. Farron and Mr. Krieser. Additionally, WEPCO claims that, during his deposition examination on this issue, the questioning was

confusing and Mr. Farron did not understand the questions posed. WEPCO Opp'n at 9. Although the deposition record does not reflect that Mr. Farron indicated the fact of his confusion to the examiner, his deposition should be re-opened to allow him an opportunity to respond to questions that he is better able to understand. Def. Mot. at 8-12.[7]

As an alternative to reopening the depositions of Mr. Farron and Mr. Krieser, we have also suggested the use of a Rule 30(b)(6) deposition to have WEPCO designate for deposition those persons with the most knowledge of the information that was provided to the experts regarding the basis for the inclusion of each category of claimed costs in the damages claim, notwithstanding the testimony of Ms. Straub indicating that those persons would be Mr. Farron and Mr. Krieser.

At bottom, the discovery process should not be reduced to this sort of gamesmanship. WEPCO's witnesses with knowledge of the claim should come forward and provide testimony about that knowledge. Until that occurs, the Government is entitled to continue in its attempt to obtain the discovery to which it is entitled.[8]

---

[7] WEPCO argues that, to the extent that the Government failed to ask Mr. Farron any questions about his limited involvement in the preparation of the 1998 REA, the seven-hour rule should operate to prevent the reopening of his deposition to remedy that omission. In response, the Government would point out that Mr. Farron was only deposed for a little under six hours. Although, by our motion, we are requesting that Mr. Farron's deposition relating to his knowledge of the claimed costs be reopened without a time limitation based upon the duration of his prior deposition, the Government hopes that this area can be covered in an hour's time.

[8] Depending on their knowledge of the damages claim, the Government expects that it should be able to complete the depositions of Mr. Farron and Mr. Krieser in no longer than an additional seven-hour day, if not less.

V. The Government Should Be Allowed The Opportunity To Conduct The Requested Rule 30(b)(6) Depositions Because They Involve Relevant Topics Beyond The Knowledge Of The Witnesses That Have Been Deposed Thus Far

WEPCO has objected to the Government's request for a Rule 30(b)(6) deposition on the topic of nuclear fuel management strategies as improper because it is based upon a hypothetical premise, and requires preparation of an analysis. WEPCO Opp'n at 13-15. As established in our motion, the only thing hypothetical about this inquiry is that it relates to the hypothetical "but-for" world scenario that WEPCO must present at trial to recover damages and, specifically, what costs WEPCO would have had to incur if it contends at trial that it would have used certain fuel management strategies, including change of fuel cycle length, fuel enrichment, or core design, in order to increase the amount of space available for storage in the spent fuel pool and as an alternative to dry storage in that hypothetical world. Def. Mot. at 15.

It is important to note at the outset that, in his deposition testimony, Mr. Hennessy testified that WEPCO "had not done any detailed engineering analysis of any alternate means [of fuel storage] other than dry storage" prior to 1996. February 3, 2006 deposition of William Hennessy ("Hennessy deposition") Hennessy deposition at p. 277, l. 23 - p. 278, l. 13. Based upon that testimony, the Government would be willing to forego the need for a Rule 30(b)(6) deposition on the topic of nuclear fuel management strategies if WEPCO would stipulate to the fact that it will not rely at trial upon the use of such strategies as an alternate method of dealing with its fuel storage needs.

Contrary to WEPCO's suggestion, the Government is not requesting that Mr. Hughes or anyone else at WEPCO perform an analysis out of whole cloth. In another part of his testimony, Mr. Hennessy indicated that Mr. Hughes and certain other WEPCO employees normally perform

analyses of nuclear fuel management strategies similar to those that Mr. Hennessy has already testified that he believes could have been employed to avoid the use of dry storage in the hypothetical "but-for" world where DOE performs. Hennessy deposition at p. 203, l. 18 - p. 205, l. 17; p. 278, l. 25 - p. 281, l. 7. Therefore, the Government is requesting Mr. Hughes, or someone with the same knowledge and expertise in performing those analyses, to speak to what the analyses they have performed would indicate that the typical costs would be for analyzing the use of such strategies and implementing them. The Government will then be able to better evaluate Mr. Hennessy's testimony about what strategies he believes could have been pursued in the hypothetical "but-for" world.

WEPCO has objected to the Government's request for a Rule 30(b)(6) deposition on the topic of the financing of nuclear fuel expenses through the WEFT as improper because it was discussed during the audit conferences, WEPCO has produced a 13-page document which explains everything about it, and both Straub and Ackerman have testified about it. WEPCO Opp'n at 15. WEPCO also states that its damages claim "does not raise the WEFT issue." Id. As explained in our enlargement motion, our investigation of this activity relates to WEPCO's claim for $38 million in interest costs that allegedly were incurred to finance the dry storage project costs. Def. Mot. at 16.

Mr. Ackerman testified that the spent fuel storage cask costs in WEPCO's claim are treated as fuel expense costs. February 17, 2006 deposition of David J. Ackerman ("Ackerman deposition") at p. 125, l. 2-11. While under construction, the costs are accumulated in an account relating to "nuclear fuel in process," that also contains the procurement costs of the new nuclear fuel purchased by the Point Beach plant. Ackerman deposition, at p. 126, l. 18 - p. 128, l. 16.

Later, after the casks are constructed and loaded with fuel, the cask costs are allocated to the loaded fuel assemblies on an assembly-basis and financed as "nuclear fuel under capital lease" through the WEFT sale and lease-back arrangement at issue. Ackerman deposition, at p. 128, l. 17 - p. 129, l.20. These fuel expense costs, including the casks costs and any financing costs ascribed to them as part of the WEFT transaction, are then amortized and recovered from the ratepayers. Ackerman deposition, at p. 41, l. 22 - p. 46, l.16. However, Mr. Ackerman was uncertain as to what is actually included in the amortization payments that WEPCO makes under the WEFT sale and lease-back arrangement. Interestingly, the person he identified as having more knowledge of this subject is the same person that Mr. Hennessy identified as having knowledge of the cost of the nuclear fuel management strategies – John Hughes. Ackerman deposition, at p. 41, l. 4-15.

Likewise, in her deposition testimony, Ms. Straub had to refer to certain WEPCO accounting records as the best answer to certain of the Government's questions relating to the WEFT transaction. For instance, she identified certain monthly fuel reports or monthly fuel summaries submitted to the Public Service Commission of Wisconsin ("PSCW") as being the best evidence as to whether all of WEPCO's fuel expense costs had been recovered in a given year. Straub deposition, at p. 36, l.5 - p. 38, l.7. She also identified certain accounting records as being the best evidence of the amortization of WEPCO's fuel expenses. Straub deposition, at p. 38, l.16 - p. 40, l.5.

The Government is entitled to properly examine and evaluate how these costs were actually handled to be able to properly assess whether the interest costs that are being claimed as damages constitute a proper reflection of financing costs that were actually incurred. To that end,

we have recently requested many of the documents relating to the WEFT transaction referred to by Ms. Straub as a follow-up items to our audit activities. A Rule 30(b)(6) deposition in conjunction with those efforts is not an unreasonable request.

WEPCO has objected to the Government's request for a Rule 30(b)(6) deposition on the topic of claimed cost relating to the activities of the High Level Waste Group as improper because Jim Becka has already testified about it. WEPCO Opp'n at 15-16. However, Mr. Becka has not yet provided testimony regarding whether any of the claimed costs relating to this Group would have been incurred absent the breach.[9] As indicated in our motion, it is too early to ascertain whether a Rule 30(b)(6) deposition on this topic will even be necessary. We only mentioned the possible need for the testimony from Mr. Becka or another WEPCO or NMC employee as another ground for our requests relating to an enlargement and the continuation of Mr. Becka's deposition.

CONCLUSION

For the foregoing reasons and the reasons set forth in our enlargement motion, the Government respectfully requests that the Court grant the requested enlargement and the other relief requested.

[9] As indicated by the portion of Mr. Becka's testimony quoted in WEPCO's opposition, Mr. Becka has identified the three persons who make up the High Level Waste Group, and has testified as to the"centralized function" performed by each of those people. WEPCO Opp'n. at 16.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ Kevin B. Crawford
KEVIN B. CRAWFORD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-9640
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of the General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

ALAN J. LO RE
Senior Trial Counsel

RUSSELL A. SHULTIS
SONIA M. ORFIELD
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice

March 31, 2006

CERTIFICATE OF FILING

I hereby certify that, on March 31, 2006, a copy of the foregoing “DEFENDANT'S REPLY TO PLAINTIFF’S OPPOSITION TO DEFENDANT’S MOTION FOR AN ENLARGEMENT OF TIME” was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Kevin B. Crawford