IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| WISCONSIN ELECTRIC POWER COMPANY,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant. | No. 00-697C<br>Senior Judge Merow |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
**MOTION TO STAY PROCEEDINGS**

Wisconsin Electric Power Company ("WE") strongly opposes the Government's Motion to Stay Proceedings. The Government has failed to meet the rigorous requirements for the entry of a stay, particularly when that stay is of indefinite length and may last for years. The stay sought by the Government is unjust and will materially prejudice WE and its former personnel as explained more fully below.

**A. A Stay Will Materially Prejudice WE and Its Former Personnel**

The Government asserts that a stay is in "the best interests of the parties." Govt. Mot. at 1. To the contrary, a stay does not serve WE's interests. It will materially prejudice both WE and the twelve potential trial witnesses who no longer work for WE. WE filed this action in 2000 and has waited patiently for seven years for its day in this Court.

By way of background, this case was previously stayed by Chief Judge Damich for a substantial period and the trial date has already been rescheduled. With regard to the initial trial date, after the Court granted partial summary judgment on liability in favor of WE, the Court, after consideration of submissions by both parties, established a pretrial schedule and scheduled trial on damages to commence on July 14, 2006. See Nov. 24, 2004 Order. Then, after the Government waited until near the original close of discovery to seek to conduct numerous depositions, WE had no choice, but to reluctantly agree to extend the discovery schedule and to reset the subsequent pretrial and trial deadlines. After substantial

negotiations, the parties filed a December 19, 2005 Joint Motion to Revise the Court's Pretrial Scheduling Order and agreed upon the current March 27, 2007 trial date. On December 20, 2005, the Court then entered the schedule jointly agreed to by the parties and established the March 27, 2007 trial date.

WE counsel and the witnesses have been working assiduously to prepare for the March 27, 2007 trial date. WE counsel and the witnesses have already met and begun the witness preparation process. The witnesses have already made commitments to be available during the final trial preparation and trial periods. This sacrifice by the witnesses is considerable. Twelve individuals identified as potential trial witnesses no longer work for either WE or the Nuclear Management Company ("NMC"), which has operated the Point Beach Nuclear Plant ("PBNP") since 2001. Further, the trial is scheduled in Washington, D.C. and those witnesses who currently work for WE and NMC reside in Wisconsin. Many of these individuals have rearranged their work schedules to commit to the current schedule of trial preparation and trial activities. A rescheduling of the trial would work a hardship on these individuals.

In addition, the events at issue in these proceedings begin more than twenty-five years ago with the passage of the Nuclear Waste Policy Act of 1982, Pub. L. No. 97-425, 96 Stat. 2201 (1983) and the parties' execution of the Standard Contract in 1983. Two individuals with knowledge regarding WE's claim have passed away and several more are now retired. A few are quite elderly. Many are no longer involved in nuclear operations on a continuous basis and, with each year, their memories may fade. See Cherokee Nation of Oklahoma v. United States, 124 F.3d 1413, 1418 (Fed. Cir. 1997) (holding that plaintiffs had a "compelling interest in proceeding with their suit without delay" because, among other things, "[w]ith the passage of time, memories will fade, litigation costs will balloon and resolve will dwindle.") Another concern is the effort to continue to maintain contact with the

witnesses. A number of these individuals no longer reside in Wisconsin and, with each passing year, we expect these individuals to disperse further.

To date, WE has incurred in excess of $5.5 million in attorney fees and other costs in trial preparation activities and it would be unjust to stay this matter a mere seven weeks before trial. As reflected in its Pretrial Brief, WE has a substantial claim for damages in the amount of $91.0 million and desires a reasonably prompt adjudication of WE's entitlement to damages.[1] This is particularly true given the Government's recent motion, contending that WE's claim should not be adjusted based on WE's weighted cost of capital to take into account the time value of money for the past damages that WE has suffered. See Def.'s Mot. for Partial Summary Judgment Regarding Plaintiff's Claim for Prejudgment Interest. If the Government should prevail on its motion, WE will not recover anything for the time value of money and clearly suffers significant economic harm for every year of delay.

Given the damage that a stay will cause WE, the Government must make out a clear case of hardship or inequity to the Government in being required to go forward. Landis v. North American Company, 299 U.S. 248, 255 (1936). It has not done so. To the extent that the Government contends that the departure of one of the DOJ attorneys who has worked on this case constitutes hardship, that in no way qualifies as hardship. (This issue is more fully addressed in Section C, infra.) The real hardship will be borne by WE and its current and former personnel who have made commitments to travel to Washington, D.C. for the March 27, 2007 trial date.

Rule 1 of the Rules of the U.S. Court of Federal Claims provides that these Rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action." WE asks that the Court remain true to this ideal and deny the Government's requested stay.

---

[1] On January 17, 2007, the Kenrich Group submitted a one-page NRC fee errata sheet that revised WE's claim to $89.5 million.

**B. The Government's Assertions Regarding Judicial Economy Are Speculative and Do Not Merit a Stay**

The Government asserts that there are several cases on appeal and that the decisions of the Federal Circuit in these appeals might narrow the issues for trial in this matter. The Government's claims are totally speculative and clearly do not merit the stay that it seeks.

A stay over WE's objection is not consistent with the Court's handling of the SNF cases. During the period 2001-2003, the Government argued on several occasions that the SNF damages cases should be consolidated before a single Judge. The Court rejected that approach and, instead, decided that the better approach was for these cases to proceed before individual Judges so that the U.S. Court of Appeals for the Federal Circuit would have the benefit of the number of decisions in SNF cases from a variety of Judges. A natural result of this approach is that SNF cases will be decided at different times and reach the appeal stage at different times.

To our knowledge, neither the Federal Circuit nor this Court has concluded that the potential that a case on appeal might address a common SNF issue merits a stay of other SNF cases absent joint agreement by the parties to the stay. For example, in Arizona Public Service Company v. United States, No. 03-2832C, the Court rejected a similar argument by the Government, stating:

> We see no reason to continue the stay [in] this case over plaintiff's objections. Common issues may exist among Arizona Public Service Company and other utility plaintiffs with suits pending either in this court or in the Federal Circuit. However, we consider prompt trials, rulings, and appeals to be the best way to resolve disputes. It is not practical to await appellate resolution of substantially all matters in contention before proceeding with a case.

July 12, 2006 Order at 2.

The Government's assertion that the Federal Circuit's decisions in these appeals will promote judicial economy is entirely speculative and does not justify a multi-year stay in this matter. While the Court's decision in Indiana Michigan Power Co. v. United States, 57 Fed. Cl. 88 (2003) resolved the acceptance rate, the Federal Circuit's decision in Indiana Michigan

Power Co. v. United States, 422 F.3d 1369 (Fed. Cir. 2005) never resolved the acceptance rate issue. Similarly, contrary to the Government's assertions, the decision of the Federal Circuit in Pacific Gas & Electric Co. v. United States, No. 07-5046 (Fed. Cir. Docketed Jan. 24, 2007) may never resolve the acceptance rate issue even though that issue was addressed by the Court in the decision below.

The Government also asserts that, in order for the Court to find that DOE is responsible for the dry storage facility ("ISFSI") costs incurred by WE, the Court must find in WE's favor on the acceptance rate issue. Govt. Motion at 2. While WE believes strongly that the Department of Energy ("DOE") would have accepted fuel at a rate sufficient to keep up with the current SNF discharge and to reduce the amount of SNF that had built up at the utilities at a reasonable rate, this issue need not be determined in order for WE to prevail on this issue and to recover the costs of its ISFSI.

Indeed, the Government places importance on the determination of the acceptance rate that is unwarranted based on the reasoning of the Court in Yankee Atomic Electric Co. v. United States, 73 Fed. Cl. 249 (2006). There, the Court stated:

> Regardless of rate, these plaintiffs are faced with at least a twelve-year delay in commencement of performance. With due regard to the long lead time required for these mitigation decisions, the evidence establishes that the mitigating decisions and resulting expenditures were commercially reasonable, and substantially caused by DOE's impending partial breach(es) and delay(s). In the nonbreach world, the evidence shows that Maine Yankee and Connecticut Yankee would not have reracked and plaintiffs would not have built expensive dry storage.

Id. at 268 (citation omitted). The Court then proceeded to award these utilities substantial monetary damages to reimburse them for SNF storage costs. See, e.g., Id. at 279, 283. While the Court in Yankee found that DOE planned a robust rate of acceptance, it did not find it necessary to determine a specific acceptance rate under the Standard Contract in order

to conclude that the awarded SNF storage costs were recoverable. Id. at 269-283.[2] Instead, the Court found in favor of these Yankee utilities with regard to these costs by concluding that a substantial causal factor in the relevant SNF storage decisions was DOE's partial breaches. It further concluded that these costs were reasonably foreseeable, the product of commercially reasonable decisions and shown with reasonable certainty. Id. at 275.

In addition, the Court in Sacramento Municipal Utility District v. United States, 70 Fed. Cl. 332 (2006) held that there were recoverable damages without ruling explicitly on the acceptance rate issue. Thus, staying this case on the chance that one of the current appeals might resolve the acceptance rate issue is neither warranted nor appropriate.

The Government's assertion that this case should be stayed for years because of the decision by another Judge in Nebraska Public Power District v. United States, 73 Fed. Cl. 650 (2006) ("the NPPD decision") also must be rejected. The writ of mandamus issued by the U.S. Court of Appeals for the D.C. Circuit, preventing the Government from raising arguments relating to the "Unavoidable Delays" clause in the Standard Contract was issued in Northern States Power Co. v. Department of Energy, 128 F.3d 754 (D.C. Cir. 1997). Thus, this issue has been known to the Government for years and hardly provides a basis for a stay on the eve of trial more than nine years later.

Even the NPPD decision has been known to the Government since mid-December 2006 and the Government fails to explain why it has waited nearly two months to raise this issue. It also ignores that other SNF cases are proceeding to trial without objection by the Government such as Systems Fuels, Inc., et al v. United States, No. 03-2623C, where trial is scheduled to commence on February 13, 2007. Feb. 6, 2007 Final Pre-Trial Order in Systems Fuels, Inc., at 1. Moreover, WE counsel discussed this issue with DOJ counsel

---

[2] The Government's assertion that WE's Pretrial Brief acknowledges that "in PG&E, this Court accepted the Government's theory regarding the rate" misstates WE's pleading. Govt Motion at 2-3. To the contrary, WE's pretrial brief noted that WE was analyzing the recently issued PG&E decision and further noted that this Court, in Yankee Atomic, was highly critical of any rate (such as a 900 rate) that is "based on a proposed MRS which could exist only in conjunction with an approved repository." WE Pretrial Brief at 24, n. 16, citing Yankee Atomic, 73 Fed. Cl. at 274.

several weeks ago and DOJ counsel informed WE counsel that his expectation was that the Government would not use the NPPD decision to seek to delay trial in this matter.

In addition, one does not know when the Federal Circuit may hear the NPPD appeal and issue a decision. It may be years before a decision is issued. Even if the Federal Circuit should affirm the NPPD decision, that will not obviate trial in this matter and will not streamline the issues for trial in this matter. To the contrary, it will only add an issue for the Court's consideration. Significantly, the former WE and NMC personnel who have been identified as trial witnesses will still need to testify at this rescheduled trial that may be years in the future. As outlined above, WE is reasonably concerned regarding the continued health of several of these older witnesses and that the memories of former WE personnel will fade with time. This is particularly true of the individuals who no longer deal regularly with SNF issues (the vast majority of witnesses in this case).

Finally, for the Government to even avail itself of an Unavoidable Delays defense, the Federal Circuit will have to conclude that the D.C. Circuit's prior decision on this issue was outside the jurisdiction of the D.C. Circuit. We find it highly unlikely that the Federal Circuit will so conclude.

**C. The Departure of A Single DOJ Attorney Does Not Merit a Stay**

The other reason offered by the Government as support for its stay request is that one of the DOJ attorneys, Kevin Crawford, will be leaving DOJ for private practice. Many DOJ attorneys (including counsel of record for WE in this case) eventually leave DOJ for private practice. Such turnover is a regular occurrence and hardly merits a stay.

It also does not justify a substantial delay in the trial. As the Court is well aware, there are a number of DOJ attorneys with substantial experience in SNF cases. These attorneys include, inter alia, the former counsel of record in this case, Harold Lester, and other attorneys who have taken and defended depositions in this case, including Alan Lo Re, Sonia Orfield, Russell Shultis and Joshua Gardner. In addition, Marian Sullivan and John

Ekman also have appeared on pleadings in this matter. These DOJ attorneys have years of experience in litigation and trial of SNF cases. Moreover, as review of the Government's Pretrial Brief evidences, Government counsel makes heavy use of the work product that it has developed in other SNF cases and will continue to do so at trial in this case.

Further, while Mr. Crawford may have taken a number of the depositions in this case, the Government's motion ignores that other DOJ attorneys frequently attended these depositions. It further ignores that it still has available for its trial preparation in this case the numerous consultants who attended every deposition taken by the Government in this case.

Moreover, the Government, who failed to contact WE counsel prior to filing its motion to stay, ignores that there likely are ways to streamline this trial without compromising the positions of the parties. Indeed, last week, WE counsel wrote to Government counsel raising for discussion several proposals that might enable the parties to reduce the number of witnesses and thereby streamline the trial proceedings. For example, WE counsel asked Government counsel to consider whether the trial testimony regarding the acceptance rate issue can be substantially reduced or possibly eliminated through the use of stipulations and/or greater use of prior deposition or trial testimony. A copy of WE counsel's February 1, 2007 letter is attached as Exhibit 1.

Therefore, the departure of a single attorney from the DOJ SNF litigation team in no way satisfies the rigorous hardship requirement for a stay. Landis, 299 U.S. at 255.

**D. Conclusion**

For the foregoing reasons, we respectfully request that the Court deny the Government's motion for a stay of proceedings and proceed with the current pretrial and trial schedule. While WE does not believe that the Government is entitled to any relief in this matter, if the Court is inclined to grant some relief, WE would not oppose a four week delay in the trial from March 27, 2007 to April 24, 2007.

DATED : February 7, 2007

Respectfully submitted,

Of Counsel:

Donald J. Carney
Mary Rose Hughes
Perkins Coie LLP
607 Fourteenth Street, N.W.
Washington, D.C. 20005-2001
(202) 434-1675

s/Richard W. Oehler by s/Donald J. Carney
Richard W. Oehler
Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
(206) 359-8419 Phone
(206) 359-9419 Fax

Attorneys for Plaintiff
WISCONSIN ELECTRIC POWER
COMPANY

**CERTIFICATE OF SERVICE**

I certify under penalty of perjury that, on February 7, 2007, I caused a copy of the foregoing "Plaintiff's Opposition To Defendant's Motion To Stay Proceedings" to be filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Donald J. Carney
Donald J. Carney

Perkins Coie

1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
PHONE: 206.359.8000
FAX: 206.359.9000
www.perkinscoie.com

Richard W. Oehler
PHONE: (206) 359-8419
FAX: (206) 359-9419
EMAIL: ROehler@perkinscoie.com

February 1, 2007

**BY FACSIMILE & U.S. MAIL**

Kevin B. Crawford
Marian Sullivan
U.S. Department of Justice
Commercial Litigation Branch
Civil Division
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, DC 20530

**Re: Wisconsin Electric v. United States, No. 00-697C**

Dear Counsel:

On behalf of Wisconsin Electric ("WE"), we are writing to raise for discussion with the Government several proposals to streamline the upcoming trial and to ease the burden of this proceeding on testifying witnesses. Based on the parties' Appendix A, Paragraph 15(a) witness lists, nearly fifty witnesses may be called to testify at trial. The majority of those witnesses do not reside in the Washington, D.C. area. Our hope is that, through these proposals, the parties can efficiently manage the presentation of testimonial evidence and reduce the number of witnesses or otherwise make trial more efficient.

First, WE proposes that witnesses in this case, subject to a few potential exceptions, be called to testify only once during the trial. The party calling the witness would conduct its direct examination and then the opposing party also would conduct its cross examination and any direct examination that it wishes to conduct at that time. Any follow-up questioning would also occur during the witness's one time on the stand. WE favors this approach so that the many fact witnesses who have to travel to Washington, DC for the trial do not have to make more than one trip.



ANCHORAGE · BEIJING · BELLEVUE · BOISE · CHICAGO · DENVER · LOS ANGELES
MENLO PARK · OLYMPIA · PHOENIX · PORTLAND · SAN FRANCISCO · SEATTLE · WASHINGTON, D.C.

Perkins Coie LLP and Affiliates

WE is aware of one exception to this approach. Our present intention is to call a WE witness to testify twice on direct examination. The first appearance would be to orient the Court to the Point Beach Nuclear Plant ("PBNP"), its operation and spent nuclear fuel ("SNF") facilities. We would then later call this witness regarding the other subjects for which the witness was identified. Another exception, of course, would be witnesses called for rebuttal or surrebuttal.

Second, WE proposes that the parties consider whether they can reduce the number of witnesses that they expect to present through direct testimony at trial. WE is reviewing its list to determine whether WE can present its case through fewer witnesses. WE respectfully requests that the Government also revisit its witness list to determine if it can also delete any witnesses.

Third, as you know, this is Judge Merow's third SNF trial. Thus, he has already heard substantial evidence regarding the acceptance rate issue. WE is interested in discussing with the Government a substantial reduction or possible elimination of trial testimony regarding this issue at trial. For example, the parties potentially could agree upon stipulations of fact. Another possibility would be greater use of prior deposition and trial testimony.

Fourth, on a related point, WE has proposed to present the testimony of a number of DOE officials by prior trial and deposition testimony. WE is interested in whether the Government is intending to object to this approach and, if so, if the Government is willing to revisit its intention.

Fifth, WE is interested in learning about the Government's current expectation regarding the length of this trial. The parties previously jointly estimated that this trial would last three weeks. See Joint Motion to Revise the Court's Pretrial Scheduling Order (Dec. 19, 2005). WE is concerned, however, that the number of issues and volume of evidence in this trial may exceed the three week estimate. This may be the case even if the parties drop some witnesses as discussed above. We would like to know the Government's views regarding the anticipated duration of trial in this case and whether we should inform the Court now regarding a revision in the estimated duration of trial. WE also would like to know if the trial requires more than three weeks whether that would present an issue for the schedule of Government counsel.

Finally, we are interested in any proposals that the Government may have regarding potential methods to streamline trial in this matter.

We are available to discuss these issues in a conference call. We would suggest that you email us with several proposed times and consider that I am located in the western time zone.

Very truly yours,

Richard W. Oehler

Richard W. Oehler

cc: Catherine Phillips
Donald J. Carney