IN THE UNITED STATES COURT OF FEDERAL CLAIMS

WISCONSIN ELECTRIC POWER COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

No. 00-697C

Senior Judge Merow

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE FROM TRIAL EXHIBITS PREPARED BY GOVERNMENT CONTRACTORS**

Richard W. Oehler
Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
(206) 359-8419 Phone
(206) 359-9419 Fax

Attorneys for Plaintiff
WISCONSIN ELECTRIC POWER COMPANY

Of Counsel:

Donald J. Carney
Mary Rose Hughes
Perkins Coie LLP
607 Fourteenth Street, N.W.
Washington, D.C. 20005
(202) 434-1675

Dated: February 20, 2007

## TABLE OF CONTENTS


INTRODUCTION ..... 1

I. THE CONTRACTOR DOCUMENTS AT ISSUE HERE ARE ADMISSIBLE UNDER FED. R. EVID. 803(8)(A) AS PUBLIC RECORDS OR REPORTS ..... 2

A. DOE Fulfills Its Mission Through Contractors. ..... 2

B. The Documents Are DOE Public Records Setting Forth the Activities of the Agency Pursuant to Fed. R. Evid. 803(8)(A) and Are Therefore Admissible ..... 7

II. BECAUSE DOE AUTHORIZED THE CONTRACTORS TO SPEAK CONCERNING THE CONTRACT AND THE SPENT NUCLEAR FUEL PROGRAM, STATEMENTS IN THE DOCUMENTS ARE ADMISSIBLE PURSUANT TO FED. R. EVID. 801(D)(2)(C) ..... 10

III. THE DOCUMENTS CAN ALSO BE DEEMED ADMISSIBLE AS STATEMENTS OF AGENTS OR SERVANTS OF DOE PURSUANT TO FED. R. EVID. 801(D)(2)(D) ..... 12

IV. THE DOCUMENTS ARE NOT HEARSAY WHERE THE GOVERNMENT HAS "MANIFESTED AN ADOPTION OR BELIEF" IN THEIR TRUTH PURSUANT TO FED. R. EVID. 801(D)(2)(B) ..... 14

V. THE DOCUMENTS FALL WITHIN OTHER EXCEPTIONS TO THE RULE AGAINST HEARSAY ..... 14

A. The Documents Are "Business Records" Admissible Under Fed. R. Evid. 803(6). ..... 14

B. Certain Documents Are "Ancient" and Therefore Admissible Pursuant to Fed. R. Evid. 803(16) ..... 15

VI. THE GOVERNMENT'S OBJECTION THAT SOME OF THE DOCUMENTS ARE DRAFTS GOES TO WEIGHT AND NOT ADMISSIBILITY ..... 16

VII. A NUMBER OF DOCUMENTS CHALLENGED BY THE GOVERNMENT AS CONTRACTOR DOCUMENTS ARE NOT CONTRACTOR DOCUMENTS ..... 16

CONCLUSION ..... 17

## TABLE OF AUTHORITIES

### CASES

*Air Land Forwarders v. United States*, 172 F.3d 1338 (Fed. Cir. 1999)..........................14, 15

*Blue Water Envtl., Inc. v. United States*, 60 Fed. Cl. 48 (2004) ............................................ 9

*Brubaker Amusement Co. v. United States*, 304 F.3d 1349 (Fed. Cir. 2002)........................ 13

*Chemtool, Inc. v. Lubrication Techs., Inc.*, 148 F.3d 742 (7th Cir. 1998) ............................ 13

*Columbia First Bank, FSB v. United States*, 58 Fed. Cl. 333 (2003).................................. 16

*Glendale Fed. Bank, FSB v. United States*, 39 Fed. Cl. 422 (1997) ..............................11, 12

*Lockheed Martin Corp. v. United States*, 50 Fed. Cl. 550 (2001) ......................................... 9

*Marsee v. U.S. Tobacco Co.*, 866 F.2d 319 (10th Cir. 1989) ................................................ 9

*Oil Spill by the Amoco Cadiz*, 954 F.2d 1279 (7th Cir. 1992)................................................ 9

*Pacific Gas & Electric. Co. v. United States*, 73 Fed. Cl. 333 (2006) ..............................2, 10

*Paul v. Fed. Mine Safety & Health Review Comm'n*, 812 F.2d 717 (D.C. Cir. 1987)........... 13

*Reid Bros. Logging Co. v. Ketchikan Pulp Co.*, 699 F.2d 1292 (9th Cir. 1983) .................. 11

*Rotec Indust., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246 (Fed. Cir. 2000) ............................. 13

*United States v. Frazier*, 53 F.3d 1105 (10th Cir. 1995)...................................................... 14

*United States v. Hopkins*, 427 U.S. 123 (1976) ..................................................................... 8

*United States v. Lykes Bros. S.S. Co.*, 432 F.2d 1076 (5th Cir. 1970) .................................. 8

*United States v. Orleans*, 425 U.S. 807 (1976)...................................................................... 9

*Westfed Holdings, Inc. v. United States*, 55 Fed. Cl. 544 (2003), *aff'd in part*, *rev'd in part*, 407 F.3d 1352 (Fed. Cir. 2005)............................................ 16

*Westinghouse Elec. Corp. v. United States*, No. 93-445C, 93-446C, 1997 WL 1068204 (Fed. Cl. 1997)........................................................................................... 3

*Yankee Atomic Elec. Co. v. United States*, No. 98-126C, 2004 WL 2450874 (Fed. Cl. Sept. 17, 2004)........................................................................... *Passim*

*Zeus Enters., Inc. v. Alphin Aircraft, Inc.*, 190 F.3d 238 (4th Cir. 1999)............................... 9

**TABLE OF AUTHORITIES**
**(continued)**

**STATUTES**

42 U.S.C. § 10222(d)) .......... 3

48 C.F.R. § 17.601 .......... 4

48 C.F.R. § 17.604 .......... 5

Pub. L. No. 108-136, § 3112, 117 Stat. 1392, 1743 (2003) .......... 5

**REGULATIONS AND RULES**

Fed. R. Evid. 801(d)(2) .......... 2

Fed. R. Evid. 801(d)(2)(B) .......... 14

Fed. R. Evid. 801(d)(2)(C) .......... 10, 11, 12

Fed. R. Evid. 801(d)(2)(D) .......... 12, 14

Fed. R. Evid. 803(6) .......... 14, 15

Fed. R. Evid. 803(8) .......... 2, 7

Fed. R. Evid. 803(8)(A) .......... 2, 7, 9, 11

Fed. R. Evid. 803(16) .......... 15, 16

**OTHER AUTHORTIES**

*Administration of Government Contracts* 116-17 (3d ed. 1995) .......... 15

*Formation of Government Contracts* 175-77 (3d ed. 1998) .......... 15

# INDEX TO APPENDIX


Trial Testimony of Dr. John Bartlett, *Yankee Atomic Elec. Co. v. United States,* No. 98-126C (excerpt) (July 14, 2004) .......... 1-2

PX0070 (excerpt) .......... 3-4

PX0101 (excerpt) .......... 5-6

PX0121 (excerpt) .......... 7

PX0131 (excerpt) .......... 8-9

PX0196 (excerpt) .......... 10-11

PX0215 (excerpt) .......... 12-13

PX0341 (excerpt) .......... 14-17

PX0361 (excerpt) .......... 18-19

PX0564 (excerpt) .......... 20-21

PX0918 (excerpt) .......... 22

PX0937 (excerpt) .......... 23

PX0969 (excerpt) .......... 24-25

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| WISCONSIN ELECTRIC POWER COMPANY,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant. | No. 00-697C<br>Senior Judge Merow |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE FROM TRIAL EXHIBITS PREPARED BY GOVERNMENT CONTRACTORS**

Plaintiff Wisconsin Electric Power Company ("WE") respectfully responds to Defendant's (the "Government's") January 31, 2007 Motion *In Limine* to Exclude from Trial Exhibits Prepared by Government Contractors ("Gov't Mot." or "Motion"). For the reasons stated herein, the Motion should be denied.

## INTRODUCTION

The Government in its Motion seeks to exclude the admission at trial of 27 exhibits prepared by various contractors to or for the Department of Energy ("DOE"). Notably, the Government does not argue that these 27 exhibits are unreliable, or that they contain inaccurate or incorrect information, or that they misrepresent any official position of DOE. Instead, the Government makes a lengthy (32 pages, not including appendices) and contrived argument based on an overly narrow reading of the Federal Rules of Evidence ("Fed. R. Evid.") that also completely ignores the critical role that contractors play in assisting DOE in managing the civilian nuclear waste program.

This latter point underlies the rulings of the Court in two other Spent Nuclear Fuel ("SNF") cases in which substantially similar motions have been denied. In *Yankee Atomic Elec.*

*Co. v. United States*, No. 98-126C, 2004 WL 2450874 (Fed. Cl. Sept. 17, 2004), the Court held that contractor documents such as the ones designated by Plaintiff in this case were hearsay exceptions, admissible under Fed. R. Evid. 803(8) as "'records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency.'" *Yankee Atomic*, 2004 WL 2450874, at *7 (quoting Fed. R. Evid. 803(8)). In *Pacific Gas & Electric. Co. v. United States*, 73 Fed. Cl. 333, 439 (2006), Judge Hewitt "agreed with the *Yankee Atomic* court's findings and adopted its reasoning in full with respect to Fed. R. Evid. 803(8)(A)'s application to the contractor documents." Judge Hewitt further held that the contractor documents were also non-hearsay and admissible under Fed. R. Evid. 801(d)(2) as admissions by a party-opponent. *Id.* at 440. The Government's contention that both decisions of the Court were "in error" is itself meritless, and unsupported by the case law.

In addition, while the remaining Government arguments concerning the admissibility of the contractor documents as "business records," as a statement by a party's agent or servant, or as "ancient documents" need not be reached by the Court, each of these arguments also fails as a matter of law.

## I. THE CONTRACTOR DOCUMENTS AT ISSUE HERE ARE ADMISSIBLE UNDER FED. R. EVID. 803(8)(A) AS PUBLIC RECORDS OR REPORTS

### A. DOE Fulfills Its Mission Through Contractors

In every practical sense, the contractor documents at issue here are DOE documents. The Government's argument that "contractors do not operate as part of DOE and that documents created by such contractors do not constitute government or public documents" (Gov't Mot. at 2) does not determine whether such documents are admissible under Fed. R. Evid. 803(8)(A). As the Court explained in *Yankee Atomic*, "[t]o a significant, if not exclusive extent, DOE's activities, duties and responsibilities under the [Nuclear Waste Policy Act ("NWPA")], have

been and are conducted through its national laboratories and management and operation ('M & O') contractors." 2004 WL 2450874, at *3. Indeed, the Standard Contract between WE and DOE (the "Contract") expressly provides that "DOE may fulfill any of its obligations, or take any action, under this contract either directly or through contractors." Contract, Article IV.B.3. (PX0041) Consistent with the Contract, and consistent with the authority granted to DOE in the United States Code authorizing the expenditure of funds for non-generic research, development and demonstration activities under the NWPA (42 U.S.C. § 10222(d)), DOE engaged a number of contractors to provide services to it in connection with the Contract and the management of its spent nuclear fuel program in general.

These contractors include a number of entities that DOE engaged under M&O contracts, which have been described as follows:

> DOE normally uses M & O contractors to manage and operate its Government-owned facilities. The DOE M & O contract is unique. Unlike a typical Government contract through which the Government obtains products and services to assist it in carrying out its mission, DOE uses the M & O contract to conduct its mission.

*Westinghouse Elec. Corp. v. United States*, No. 93-445C, 93-446C, 1997 WL 1068204, at *2 (Fed. Cl. 1997). In *Yankee Atomic*, the Court similarly stated:

> These contractors were retained under unique circumstances to perform DOE's function, provided [sic] critical and essential data and input to DOE, and operate and manage the national laboratories for and on behalf of DOE. In a very real sense, these contactors performed DOE's statutory mission, or at a minimum provided the technical input to perform the same.

2004 WL 2450874, at *11.[1] Under the Federal Acquisition Regulation ("FAR"), an M&O contractor is defined as acting on behalf of the Government:

> *Management and operating contract* means an agreement under which the Government contracts for the operation, maintenance, or support, on its behalf, of a Government-owned or -controlled research, development, special production, or testing establishment wholly or principally devoted to one or more major programs of the contracting Federal agency.

48 C.F.R. § 17.601. The FAR further provides that:

> A management and operating contract is characterized both by its purpose (see 17.601) and by the special relationship it creates between Government and contractor. The following criteria can generally be applied in identifying management and operating contracts:
>
> * * *
>
> (b) Because of the nature of the work, or because it is to be performed in Government facilities, the Government must maintain a special, close relationship with the contractor and the contractor's personnel in various important areas (e.g., safety, security, cost control, site conditions).
>
> (c) The conduct of the work is wholly or at least substantially separate from the contractor's other business, if any.
>
> (d) The work is closely related to the agency's mission and is of a long-term or continuing nature, and there is a need (1) to ensure its continuity and (2) for special protection covering the orderly transition of personnel and work in the event of a change in contractors.

---

[1] M&O contractors involved with the documents that are the subject of this Motion include Battelle Memorial Institute (Pacific Northwest National Laboratory), Martin Marietta Energy Systems, Inc. (Oak Ridge, Tennessee), Science Applications International Corporation and TRW Environmental Safety Systems, Inc. (Civilian Radioactive Waste Management System), and Bechtel SAIC Company LLC.

48 C.F.R. § 17.604. Indeed, Congress has decreed that employees of M&O contracts be deemed employees of DOE for some purposes:

> An officer or employee of a management and operating contractor of the Department of Energy, when serving as a member of a group reviewing or advising on matters related to any one or more management and operating contracts of the Department, shall be treated as an officer or employee of the Department for purposes of determining whether the group is an advisory committee within the meaning of section 3 of the Federal Advisory Committee Act (5 U.S.C. App.).

Pub. L. No. 108-136, § 3112, 117 Stat. 1392, 1743 (2003). The Court concluded: "The documents indicate that the contractor personnel who operate DOE facilities are functionally indistinguishable from the DOE employees who request and use their research or drafting input. They are more akin to contract employees of DOE." *Yankee Atomic*, 2004 WL 2450874, at *7.

This symbiotic relationship between the Government and these contractors was also explicitly recognized by Dr. John Bartlett, former Director of the Office of Civilian Radioactive Waste Management ("OCRWM"). When asked during the *Yankee Atomic* trial about the role of the OCRWM M&O contractor (then TRW Systems), Dr. Bartlett explained that:

> [a]ll of the work is done by the – by the support contractors. That's what they're there for. . . . OCRWM itself has about 65 employees. The program has about 5,000 employees. . . . The work is done by [the contractors]. And the job of the DOE people is to oversight that, do the program planning, give them guidance and direction for what their activities should be.

*Yankee Atomic*, 7/14/04 Trial Tr. 615:24-616:22, App. at 2. Dr. Bartlett was also asked about the extent to which the M&O contractor was "authorized by the Department to make statements concerning the subjects addressed in studies." *Id.* at 616:23-617:1, App. at 2. Further reinforcing the agency relationship between OCRWM and M&O contractors, Dr. Bartlett

explained that "[t]hey have full authority to accomplish and report this work." *Id.* at 617:2-3, App. at 2.

In this case, DOE engaged its contractors to investigate and report on a number of subjects specifically relating to the fulfillment of DOE's obligations under the Contract, including the following:

> DOE positions and program guidance (PX0341, PX0918);
>
> DOE reports, reviews, studies, assessments, and analyses (PX0070, PX0101, PX0121, PX0131, PX0196, PX0197, PX0215, PX0230, PX0361, PX0564, PX0593, PX0774, PX0937, PX0938, PX0969);
>
> memorandums describing schedules, assumptions, calculation methods, and risks and logistics impacts, (PX0055, PX0396, PX0912, PX0922, PX0923, PX0952).

The contractors also prepared, at DOE's request, positions to be taken by the Government on issues (PX0223, PX0928, PX0931, PX0940). In *Yankee Atomic*, the Court described the documents before it (substantially similar to the documents again challenged by the Government in this case) as follows:

> For the most part they are documents of national laboratories and other contractors to the Department of Energy ("DOE") and include analysis of priority for shutdown reactors and other acceptance scenarios, fuel shipment strategies, consideration of failed fuel and delivery commitment schedules, allocations between nuclear utilities, program costs, treatment of greater-than-class C waste ("GTCC"), trading of acceptance rights, and the effects of trading of acceptance rights on transportation—all part of the development of DOE's spent nuclear fuel program.

2004 WL 2450874, at *1. Just as in *Yankee Atomic*, the documents the Government challenged in this case were prepared by DOE contractors, through which DOE fulfills its mission.

**B. The Documents Are DOE Public Records Setting Forth the Activities of the Agency Pursuant to Fed. R. Evid. 803(8)(A) and Are Therefore Admissible**

As a matter of law, the Court in *Yankee Atomic* correctly concluded that these contractor documents are fully admissible under Fed. R. Evid. 803(8), which excepts from the hearsay rule all "[r]ecords, reports, statements, or data compilations, in any form, of public offices and agencies, setting forth (A) the activities of the office or agency . . . unless the sources of information or other circumstances indicate lack of trustworthiness." As the Court explained:

> Since the assurance of accuracy is generally greater for public records than for private business records, the proponent is usually not required to establish their admissibility through foundation testimony. Rule 803 documents are non-hearsay and admissible regardless of the availability of the declarant. . . . Admissibility is presumed and the burden of proof is on the party opposing introduction.

*Yankee Atomic*, 2004 WL 2450874, at *4 (footnote omitted). In this case, the Government does not contend that any of the documents were untrustworthy (and, in fact, many of these documents were produced by the Government during discovery).

As noted at the outset, in *Yankee Atomic*, the Court considered and rejected objections identical to those the Government makes here regarding (for the most part) the very same kinds of government contractor documents. In brief summary, however, the Court in *Yankee Atomic* reasoned that "public agency" is construed broadly for the purposes of Fed. R. Evid. 803(8)(A). *Id.* Specifically:

> In this case, the records, reports, statements or data compilations, in any form, to the extent they are the activities of the DOE, are construed broadly to include those activities done by national laboratories at the behest of DOE and within the parameters thereof. . . . DOE cannot bifurcate its responsibilities for SNF and/or high level waste ("HLW") disposal by utilizing its M & O contractors to develop DOE's spent nuclear fuel program.

> Contracting statutory and regulatory responsibility does not eliminate the underlying public nature of these documents.

*Id.* at *6; *see also United States v. Lykes Bros. S.S. Co.*, 432 F.2d 1076, 1079-80 (5th Cir. 1970) ("[T]he duty to prepare the report can be delegated, under government regulations, to an independent agency or to a foreign government without the report losing its character . . . as a report of a 'department or agency of the United States.'").

The Court also specifically rejected the Government's argument, set forth at page 10 of its Motion in this case, that WE's position would create a "ridiculous result."

> Defendant argues that allowing contractor documents to be admissible as public documents would create a "ridiculous" result because, under plaintiffs' theory, all documents generated by a construction contractor under contract to build a federal courthouse would become "public records" and a contractor could potentially generate documents that could be used against the government in litigation. The "contractors" involved in the instant document issues are in no way analogous to a contractor who bids for and obtains a contract to construct a building. The documents indicate that the contractor personnel who operate DOE facilities are functionally indistinguishable from the DOE employees who request and use their research or drafting input. They are more akin to contract employees of DOE. *See United States v. Hopkins*, 427 U.S. 123, 96 S.Ct. 2508, 49 L.Ed.2d 361 (1976). There is no way courthouse construction contractor employees would be performing court work in an equivalent manner.

*Yankee Atomic*, 2004 WL 2450874, at *7. The Court further noted that the documents came from DOE files:

> Data compilations, records, reports or statements "of" public offices or agencies "setting forth" the activities of that agency are within the scope of the hearsay exception. The qualifier "of" does not mean that data compilations, records, reports and statements must in all situations have been authored by the public office or agency—just that they must have emanated therefrom. These are "... documents generated or collected by the national government

> in the course of its public functions." *In re Oil Spill by the Amoco Cadiz*, 954 F.2d 1279, 1309 (7th Cir. 1992).

*Id.*

Finally, the Court specifically distinguished many of the exact same cases the Government again attempts to rely upon here to argue that a government contractor cannot be held substantively liable as an "agency" of the Government, *compare, e.g.*, Gov't Mot. at 8-12 (citing and relying, among others, upon three cases, *Blue Water Envtl., Inc. v. United States*, 60 Fed. Cl. 48 (2004), *Marsee v. U.S. Tobacco Co.*, 866 F.2d 319 (10th Cir. 1989), and *Zeus Enters., Inc. v. Alphin Aircraft, Inc.*, 190 F.3d 238 (4th Cir. 1999)) *with Yankee Atomic*, 2004 WL 2450874, at *5-6 (distinguishing these cases). Whether or not a government contractor can be held substantively liable as an "agency" of the Government is not relevant. *See Yankee Atomic*, 2004 WL 2450874, at *6 ("Questions of whether a contractor is a federal agency under the Tucker Act or the Federal Tort Claims Act are not the same as the court's evidentiary inquiry here."). This renders inapposite *United States v. Orleans*, 425 U.S. 807 (1976), *Blue Water Envtl., Inc. v. United States*, 60 Fed. Cl. 48 (2004), and *Lockheed Martin Corp. v. United States*, 50 Fed. Cl. 550 (2001), the principal cases relied upon by the Government on this issue. *See* Gov't Mot. at 7-9.

Because the documents are public records of DOE "setting forth … the activities of the … agency," they are admissible pursuant to Fed. R. Evid. 803(8)(A).

## II. BECAUSE DOE AUTHORIZED THE CONTRACTORS TO SPEAK CONCERNING THE CONTRACT AND THE SPENT NUCLEAR FUEL PROGRAM, STATEMENTS IN THE DOCUMENTS ARE ADMISSIBLE PURSUANT TO FED. R. EVID. 801(d)(2)(C)

The challenged exhibits are also admissible under Fed. R. Evid. 801(d)(2)(C), as non-hearsay party admissions because DOE "authorized" its contractors to make the statements

contained in these documents. In most, if not all cases, the contractors were actually hired to write the reports in question, so clearly the statements made in the reports – like the analysis and other work underlying the reports – were "authorized" by DOE. Where a contractor is hired to write a report, the statements in the report are *a fortiori* "authorized."

Although the Court ultimately found that "the court need not reach the separate admissibility of contractor documents under Rule 801," *Yankee Atomic*, 2004 WL 2450874, at *11, it did recognize – explicitly – the fundamental basis for admitting these contractor documents under Fed. R. Evid. 801(d)(2)(C) as party admissions "authorized" by DOE: "Plaintiffs insist that the contractors were 'authorized' to make the statements concerning the subjects in the reports in the sense that they were specifically requested to perform work for DOE, matters which are not in dispute." *Id.* at *8.

While the Government, at pages 13-14 of its Motion, correctly points out that Judge Hewitt adopted the rationale of *Yankee Atomic* regarding similar contractor documents in *Pacific Gas & Electric Co. v. United States*, 73 Fed. Cl. 333 (2006), the Government fails to inform the Court that Judge Hewitt also held that the contractor documents were admissible under Fed. R. Evid. 801(d)(2)(C) as an admission against a party opponent. *Id.* at 440 ("the question was whether (a) statements made by DOE contractors were beneficial to, and offered by, plaintiff, and (b) such statements were 'authorized' by DOE to be made. The court answered both questions in the affirmative."). If that was not clear enough, Judge Hewitt also explicitly held "that statements by contractors in the contractor documents could be admitted as non-hearsay under Fed. R. Evid. 801(d)(2)(C)." *Id.*

For a variety of reasons, the Court should not only adopt the well-considered conclusion of *Yankee Atomic* that contractor documents are admissible under Fed. R. Evid. 803(8)(A), but

also adopt Judge Hewitt's well-considered conclusion that contractor documents are admissible under Fed. R. Evid. 801(d)(2)(C) as statements "authorized" by DOE.

First, the Court has recognized that the person "authorized to speak" need not qualify as an "agent" under this provision of Fed. R. Evid. 801(d)(2)(C). *Glendale Fed. Bank, FSB v. United States*, 39 Fed. Cl. 422, 424 (1997) (stating that "FRE 801(d)(2)(C) applies to a person who is not an agent but is 'authorized' to speak"); *Reid Bros. Logging Co. v. Ketchikan Pulp Co.*, 699 F.2d 1292, 1306-07 (9th Cir. 1983) (allowing into evidence report prepared by non-employee of defendant on the basis that it was "authorized" by defendant). Nor is it of any importance that the Government now disagrees with the statement (if it does). Under the plain language of Fed. R. Evid. 801(d)(2)(C), so long as the person was authorized by DOE to speak regarding a particular subject, the statement of that person can be used against DOE. DOE's current disagreement with such a statement, if any, goes to the weight of the evidence, not its admissibility. Even absent the explicit statements in the contractor documents in question, as discussed next, it is simply not credible to assume that these studies, reports, and papers were prepared and published *sua sponte*, without DOE's authorization.

Second, some of the documents state explicitly on their inside cover that "[t]his report was prepared as an account of work sponsored by an agency of the United States Government." PX0070 (excerpt), App. at 3-4; PX0101 (excerpt), App. at 5-6; PX0131 (excerpt), App. at 8-9; PX0196 (excerpt), App. at 10-11; PX0564 (excerpt), App. at 20-21; PX0969 (excerpt), App. at 24-25. On others, on the face of the document, it is readily apparent that DOE authorized the contractors to produce the study or document – i.e., "'authorized' [the contractor] to make a statement [the study] concerning the subject." *Glendale*, 39 Fed. Cl. at 423; *see, e.g.*, PX0070 (excerpt), App. at 3-4 ("Prepared for the U.S. Department of Energy under Contract DE-AC06-

76RLO 1830"); PX0101 (excerpt), App. at 5-6 (same); PX0131 (excerpt), App. at 8-9 (same); PX0196 (excerpt), App. at 10-11 (same); PX0937 (excerpt), App. at 23 (same); PX0564 (excerpt), App. at 20-21 ("Prepared for: U.S. Department of Energy"); PX0918 (excerpt), App. at 22 (same); PX0121 (excerpt), App. at 7 ("Work Performed Under Contract No. DE-AC01-83-NE-44301"); PX0215 (excerpt), App. at 12-13 ("Pacific Northwest Laboratory operated by Battelle Memorial Institute for the U.S. Department of Energy under Contract DE-AC06-76RLO 1830").

Regardless of whether these documents effectively identify DOE as author or were prepared by a contractor at the direction and authorization of DOE, these documents clearly carried DOE's "stamp of approval." Accordingly, in addition to being public records, the challenged exhibits are admissible pursuant to Fed. R. Evid. 801(d)(2)(C).

## III. THE DOCUMENTS CAN ALSO BE DEEMED ADMISSIBLE AS STATEMENTS OF AGENTS OR SERVANTS OF DOE PURSUANT TO FED. R. EVID. 801(d)(2)(D)

In addition to their being merely authorized to speak, in the circumstances of this case the contractors were agents of DOE and statements made within the scope of their employment are admissible under Fed. R. Evid. 801(d)(2)(D). This rule provides that statements offered against a party are not hearsay if made "by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." It requires only that the statement concern a matter within the scope of the agency or employment; it does not require DOE to have ratified or even agreed with the statement.

Although the authors of the documents at issue are contractors, "'an agency relationship can be created by contract.'" *Rotec Indust., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1256 (Fed. Cir. 2000) (quoting *Chemtool, Inc. v. Lubrication Techs., Inc.*, 148 F.3d 742, 745 (7th Cir.

1998)); *see also Paul v. Fed. Mine Safety & Health Review Comm'n*, 812 F.2d 717, 718 (D.C. Cir. 1987) (describing Battelle Memorial Institute, which prepared, as the M&O contractor and operator of DOE's Pacific Northwest National Laboratory, several of the challenged contractor documents in this litigation as an "agent" of DOE).

The Government itself concedes that the documents were created by parties who had contracted with the Government. Further the documents themselves show that they were created in fulfillment of the contractors' duties to the Government under their contracts. It is undisputed that the statements by the contractors both concerned a matter within the scope of the contractor's employment and were made during the existence of that relationship.

An agency relationship "results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other to so act." *Brubaker Amusement Co. v. United States*, 304 F.3d 1349, 1360 (Fed. Cir. 2002)(internal quotation marks and citations omitted). For M&O contractors, that consent and level of control are defined and set forth in the nature of the relationship between the M&O contractor and the Government. As the Court reasoned in *Yankee Atomic*:

> As "servants," direct employees of DOE could make binding admissions as to matters within their employment duties, and there may be no good reason to not afford the same evidentiary treatment to the contractors here. Any distinction between a nuclear physicist preparing tonnage estimates for DOE under a direct employment contract versus the M & O contracts here is questionable, and at best a matter of degree.

*Yankee Atomic*, 2004 WL 2450874, at *11.

Accordingly, those contractors are agents or servants of DOE and their statements are admissible pursuant to Fed. R. Evid. 801(d)(2)(D).

## IV. THE DOCUMENTS ARE NOT HEARSAY WHERE THE GOVERNMENT HAS "MANIFESTED AN ADOPTION OR BELIEF" IN THEIR TRUTH PURSUANT TO FED. R. EVID. 801(d)(2)(B)

Several challenged exhibits have been made publicly available by the Government. PX0341 (excerpt), App. at 14-17 ("June 1994 Request for Proposal (RFP) for the Multi-Purpose Canister (MPC) System"); PX0361 (excerpt), App. at 18-19 ("Clearance Request for Public Release of Information"). When the Government makes the documents available to the general public (PX0341) or presents them at industry conferences (PX0361), it manifests an adoption or belief in the truth of such documents and such documents may be used in evidence against the Government.

## V. THE DOCUMENTS FALL WITHIN OTHER EXCEPTIONS TO THE RULE AGAINST HEARSAY

### A. The Documents Are "Business Records" Admissible Under Fed. R. Evid. 803(6)

Alternatively, the Court may elect to allow these documents into evidence as "business records" pursuant to Fed. R. Evid. 803(6). *See, e.g.*, *United States v. Frazier*, 53 F.3d 1105, 1110 (10th Cir. 1995) (admitting report prepared by independent contractor at direction of Department of Labor into evidence pursuant to Fed. R. Evid. 803(6)). On this point, the case law the Government cites actually supports Plaintiff's position. In *Air Land Forwarders v. United States*, 172 F.3d 1338, 1343 (Fed. Cir. 1999), the court held that to be admitted as a "business record," a document of one party held by another party could be admitted if the holding party "rel[ied] upon the accuracy of the document incorporated and . . . there are other circumstances indicating the trustworthiness of the document."

The Government asserts that, in order for a business record held by a third party to be admitted under Fed. R. Evid. 803(6), the foundational testimony of a DOE employee is required.

*See* Gov't Mot. at 21-22. On this point, the Government is simply wrong on the law. Such "testimony is not necessary where an organization incorporated the records of another entity into its own, relied upon those records in its day-to-day operations, and where there are other strong indicia of reliability." *Air Land Forwarders*, 172 F.3d at 1344.

The Government does not deny that it relied on the accuracy of the challenged documents in this case. The trustworthiness of the documents is further buttressed by the penalties that could have befallen the contractor that prepared the document. To the extent these documents were created under contracts with the Government, penalties for falsifying information in the documents likely included a termination of the contract for default, suspension and debarment, and possibly even criminal penalties. John Cibinic, Jr. & Ralph C. Nash, Jr., *Administration of Government Contracts* 116-17 (3d ed. 1995); John Cibinic, Jr. & Ralph C. Nash, Jr., *Formation of Government Contracts* 175-77 (3d ed. 1998). Because the Government relied on the documents' accuracy, and because it is undisputed that the documents are trustworthy, they should be admitted under Fed. R. Evid. 803(6) as "business records."

### B. Certain Documents Are "Ancient" and Therefore Admissible Pursuant to Fed. R. Evid. 803(16)

In addition to the bases for admissibility set forth above, several of the challenged documents are independently admissible pursuant to Fed. R. Evid. 803(16), the "ancient documents" hearsay exception. That rule allows into evidence "[s]tatements in a document in existence twenty years or more the authenticity of which is established." Fed. R. Evid. 803(16). The following documents challenged by the Government in this case meet the standard for ancient documents, and thus are admissible under Fed. R. Evid. 803(16): PX0055, PX0070, PX0101, PX0912, PX0923, PX0937 and PX0940.

In its Motion, the Government concedes that "ancient documents" are admissible. Gov't Mot. at 31. The Government simply reserves its right to challenge discrete statements within those documents, in accordance with *Columbia First Bank, FSB v. United States*, 58 Fed. Cl. 333, 338 (2003). Because the documents listed above are more than 20 years old, their authenticity is undisputed, and the Government has conceded to their admission under Fed. R. Evid. 803(16). There is no basis for excluding the admission of these documents at trial.

## VI. THE GOVERNMENT'S OBJECTION THAT SOME OF THE DOCUMENTS ARE DRAFTS GOES TO WEIGHT AND NOT ADMISSIBILITY

The Government objects that a number of documents are drafts. However, such an argument goes only to the weight of the evidence and not its admissibility. *Westfed Holdings, Inc. v. United States*, 55 Fed. Cl. 544, 567 (2003), *aff'd in part*, *rev'd in part*, 407 F.3d 1352 (Fed. Cir. 2005). An objection that a document is a draft is not an independent basis for excluding an otherwise admissible document. *Id.*

## VII. A NUMBER OF DOCUMENTS CHALLENGED BY THE GOVERNMENT AS CONTRACTOR DOCUMENTS ARE NOT CONTRACTOR DOCUMENTS

Finally, among the documents to which the Government objects are the following that are in no respect "contractor" documents:

- PX0070 (excerpt), App. at 3-4 ("1984 Annual Review of the Adequacy of the 1.0 Mill Per KWH Waste Disposal Fee");
- PX0101 (excerpt), App. at 5-6 ("1986 Annual Review of the Adequacy of the 1.0 Mill Per KWH Waste Disposal Fee");
- PX0131 (excerpt), App. at 8-9 ("1987 Annual Review of the Adequacy of the 1.0 Mill Per KWH Waste Disposal Fee");
- PX0196 (excerpt), App. at 10-11 ("May 1990 Commercial Spent Fuel Management and Concrete Cask Testing Programs Monthly Progress Report");

- PX0121 (excerpt), App. at 7 ("April 27, 1984 Preliminary Analysis of the Total System Life Cycle Cost of the Commercial High-Level Radioactive Waste Disposal Program").

The foregoing documents are either final drafts that are essentially DOE documents (PX0121) or "camera-ready" documents lacking only a DOE publication number (PX0070, PX0101, PX0131, PX0196). These documents, therefore, fall outside the stated scope of the Government's motion *in limine* and thus are admissible as evidence in this proceeding.

**CONCLUSION**

Thus, for the foregoing reasons, Plaintiff respectfully submits that the Government's motion *in limine* to exclude certain contractor documents should be denied in its entirety.

Dated: February 20, 2007

Respectfully submitted,

s/Richard W. Oehler by s/Donald J. Carney
Richard W. Oehler
Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
(206) 359-8419 Phone
(206) 359-9419 Fax

Attorneys for Plaintiff
WISCONSIN ELECTRIC POWER COMPANY

Of Counsel:

Donald J. Carney
Mary Rose Hughes
Perkins Coie LLP
607 Fourteenth Street, N.W.
Washington, D.C. 20005-2001
(202) 434-1675

**CERTIFICATE OF SERVICE**

I certify under penalty of perjury that, on February 20, 2007, I caused a copy of the foregoing "PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE FROM TRIAL EXHIBITS PREPARED BY GOVERNMENT CONTRACTORS" to be filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Donald J. Carney
Donald J. Carney