IN THE UNITED STATES COURT OF FEDERAL CLAIMS

WISCONSIN ELECTRIC POWER COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

No. 00-697C

Senior Judge Merow

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S "NOTICE OF DEPOSITION AND TRIAL TESTIMONY DESIGNATIONS" AND, IN THE ALTERNATIVE, MOTION IN LIMINE TO PRECLUDE RELIANCE UPON THOSE DESIGNATIONS AS SUBSTANTIVE EVIDENCE PURSUANT TO RCFC 32(a) AND FEDERAL RULE OF EVIDENCE 801(d)(2)**

Of Counsel:

Donald J. Carney
Mary Rose Hughes
Perkins Coie LLP
607 Fourteenth Street, N.W.
Washington, D.C. 20005-2001
(202) 434-1675

Richard W. Oehler
Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
(206) 359-8419 Phone
(206) 359-9419 Fax

Attorneys for Plaintiff
WISCONSIN ELECTRIC POWER COMPANY

Dated: February 26, 2007

# TABLE OF CONTENTS

Page

DISCUSSION ........ 1

I. WE MAY USE ADMISSIONS OF PARTY-OPPONENTS REGARDLESS OF THEIR UNAVAILABILITY OR APPEARANCE AT TRIAL ........ 1

II. THE TESTIMONY OF THE WITNESSES IN WE'S NOTICE IS ADMISSIBLE PURSUANT TO FED. R. EVID. 801(d)(2) ........ 3

A. The Government Does Not Dispute That Certain Witnesses Were DOE/NRC Employees and These Designations Are Admissible as Substantive Evidence ........ 3

B. The Testimony of Michael Lawrence, Robert Morgan, Benard Rusche, and Daniel Dreyfus Is Admissible Pursuant to FED. R. EVID. 801(d)(2)(C) ........ 4

C. The Testimony of Edward Benz, Billy Cole, and Patrick McDuffie Is Admissible Under FED. R. EVID. 801(d)(2)(D) Because Contractors Can Be Agents of the Government ........ 6

III. THE GOVERNMENT'S FOUNDATION OBJECTION REGARDING DOCUMENTS IS WITHOUT MERIT AND WAIVED, TO THE EXTENT THE GOVERNMENT FAILED TO MAKE THE OBJECTION DURING THE DEPOSITION ........ 7

IV. THE GOVERNMENT'S COUNTER-DESIGNATIONS SHOULD BE EXCLUDED TO THE EXTENT THEY GO BEYOND THE RULE OF COMPLETENESS ........ 8

CONCLUSION ........ 10

# TABLE OF AUTHORITIES

**Page**

Cases

*Glendale Fed. Bank, FSB v. United States*, 39 Fed. Cl. 422 (1997) .......... 2

*Globe Sav. Bank, F.S.B. v. United States*, 61 Fed. Cl. 91 (2004) .......... 1, 2

*In re Pagnotti*, 269 B.R. 326 (Bankr. M.D. Pa. 2001) .......... 8

*Kolb v. County of Suffolk*, 109 F.R.D. 125 (E.D.N.Y. 1985) .......... 2

*Long Island Sav. Bank, FSB v. United States*, 63 Fed. Cl. 157 (2004) .......... 2, 3

*PR Contractors, Inc. v. United States*, 69 Fed. Cl. 468 (2006) .......... 2

*Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246 (Fed. Cir. 2000) .......... 6

*United States v. Glover*, 101 F.3d 1183 (7th Cir. 1996) .......... 9

*United States v. Soures*, 736 F.2d 87 (3d Cir. 1984) .......... 8

*Weaver-Bailey Contractors, Inc. v. United States*, 19 Cl. Ct. 474 (1990) .......... 2

*Westinghouse Elec. Corp. v. United States*, Nos. 93-445C, 94-446C, 1997 WL 1068204 (Fed. Cl. June 4, 1997) .......... 6

*Yankee Atomic Elec. Co. v. United States*, No. 98-126C, 2004 WL 2450874 (Fed. Cl. Sept. 17, 2004) .......... 6

Statutes, Regulations, and Rules

Fed. R. Civ. P. 32(a) .......... 3

Fed. R. Civ. P. 32(a)(2) .......... 3

Fed. R. Evid. 106 .......... 8, 9

Fed. R. Evid. 801 .......... 2, 9

Fed. R. Evid. 801(d)(2) .......... 1, 3, 5, 10

Fed. R. Evid. 801(d)(2)(C) .......... 1, 2, 4, 5

Fed. R. Evid. 801(d)(2)(D) .......... 1, 2, 6, 7

## TABLE OF AUTHORITIES

**Page**

Miscellaneous

5 Weinstein's Federal Evidence § 801.32 .......... 2

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| WISCONSIN ELECTRIC POWER COMPANY,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant. | No. 00-697C<br>Senior Judge Merow |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S "NOTICE OF DEPOSITION AND TRIAL TESTIMONY DESIGNATIONS" AND, IN THE ALTERNATIVE, MOTION IN LIMINE TO PRECLUDE RELIANCE UPON THOSE DESIGNATIONS AS SUBSTANTIVE EVIDENCE PURSUANT TO RCFC 32(a) AND FEDERAL RULE OF EVIDENCE 801(d)(2)**

Plaintiff Wisconsin Electric Power Company ("WE") respectfully submits this response to Defendant's (the "Government's") motion to strike and, in the alternative, motion in limine to preclude WE's reliance upon deposition and trial transcript designations ("Gov't Motion" or "Motion"). For the reasons stated herein, the Motion should be denied.

**DISCUSSION**

**I. WE MAY USE ADMISSIONS OF PARTY-OPPONENTS REGARDLESS OF THEIR UNAVAILABILITY OR APPEARANCE AT TRIAL**

WE seeks to admit statements of a party-opponent – the Government (i.e., the United States) – as non-hearsay pursuant to FED. R. EVID. 801(d)(2)(C) & (D). Pursuant to FED. R. EVID. 801(d)(2)(D), WE may use its designations as admissions of a party-opponent if a designation (1) is offered against a party-opponent, (2) the person's statement concerns a matter within the scope of the person's agency or employment, and (3) the statements were made during the existence of that person's relationship with the United States. *See Globe Sav. Bank, F.S.B. v. United States*, 61 Fed. Cl. 91, 97 (2004). Generally, WE "need not establish that [a witness's] statement was 'authorized' within the meaning of the rule" because "'an agent may make vicarious admissions for his principal whether or not he is

specifically authorized to speak on that subject.'" *PR Contractors, Inc. v. United States*, 69 Fed. Cl. 468, 473 (2006) (quoting *Glendale Fed. Bank, FSB v. United States*, 39 Fed. Cl. 422, 424 (1997)).

Pursuant to FED. R. EVID. 801(d)(2)(C), WE may also use statements of a party-opponent if the designation is (1) offered against a party-opponent and (2) the statement by the person is "authorized by the party to make a statement concerning the subject." *See also Glendale Fed. Bank*, 39 Fed. Cl. at 424. "Authority to make a statement can be bestowed upon virtually anyone, either expressly or implicitly." 5 WEINSTEIN'S FEDERAL EVIDENCE § 801.32[1], at 801-68.1 (2d Ed. 2006).

Contrary to the Government's attempt to blur the standard for introducing admissions of a party-opponent, Gov't Motion at 12-15, WE does not have to show the unavailability of any witness or "good cause" to introduce admissions of a party-opponent under FED. R. EVID. 801(d)(2). *See Long Island Sav. Bank, FSB v. United States*, 63 Fed. Cl. 157, 164 (2004) (noting that a party "need not demonstrate that any of the declarants whose deposition testimony it seeks to admit at trial pursuant to FED.R.EVID. 801(d)(2)(D) will be unavailable as witnesses at trial"); *Globe Sav. Bank*, 61 Fed. Cl. at 94 ("[T]he government is mistaken that Rule 801(d)(2) requires a showing of the unavailability of the declarant."); *cf Weaver-Bailey Contractors, Inc. v. United States*, 19 Cl. Ct. 474, 483 (1990) (noting that FED. R. CIV. P. 32(a)(2) – similar to RCFC 32(a)(2) – "permits a party to introduce the deposition of an adversary as part of his substantive proof regardless of the adversary's availability to testify at trial") (citation and quotation marks omitted). In this regard, in *Long Island Savings*, this Court rejected the need to show witness unavailability as well as the rationale in *Kolb v. County of Suffolk*, 109 F.R.D. 125 (E.D.N.Y. 1985), cited by the Government here for that proposition. *Long Island Sav.*, 63 Fed. Cl. at 163 ("Although the court in *Kolb* correctly observed that admission of deposition testimony as evidence under FED.R.CIV.P. 32(a) is dependent upon meeting the requirements of the rules of evidence, the court incorrectly

assumed that the reverse is also true.") (footnote omitted). Also contrary to the Government's assertions or preferences, the "common law's preference for live testimony has no bearing on the use of party admissions as evidence." *Id*. Thus, there is no requirement to show unavailability of a witness to designate testimony of a party-opponent. Nor does a witness's "preferred" live testimony prevent the introduction of party-admissions.

WE also takes exception to the Government's assertion that WE's designations are "wholesale" or otherwise "massive," such that they should not be allowed pursuant to RCFC 1. Gov't Motion at 15. WE has marked specific portions of these transcripts as permissible admissions of a party-opponent. The admission of this testimony as evidence is certainly less burdensome than requiring additional live testimony to yet again obtain these admissions.

## II. THE TESTIMONY OF THE WITNESSES IN WE'S NOTICE IS ADMISSIBLE PURSUANT TO FED. R. EVID. 801(d)(2)

### A. The Government Does Not Dispute That Certain Witnesses Were DOE/NRC Employees And These Designations Are Admissible As Substantive Evidence

The Government does not contest that the following twelve witnesses were Department of Energy ("DOE")/Nuclear Regulatory Commission ("NRC") employees at the time of their deposition or trial testimony: Mr. Lake Barrett; Mr. Alan Brownstein; Ms. Tammy Croote; Ms. Susan Klein; Mr. Christopher Kouts; Mr. Ronald Milner; Mr. Thomas Pollog; Mr. Peter Rabideau; Mr. Robert Roselli; Ms. Nancy Slater (Thompson); Mr. Victor Trebules; and Mr. David Zabransky. Each of these DOE/NRC employees was deposed about their knowledge and work with either the DOE's Office of Civilian Radioactive Waste Management ("OCRWM") regarding issues within the scope of their duties for DOE's OCRWM or NRC's Office of the Chief Financial Officer regarding issues within the scope of their duties in connection with NRC annual fee amounts charged to operating power reactors. Thus, these designations are admissible as substantive evidence.

**B. The Testimony of Michael Lawrence, Robert Morgan, Benard Rusche, and Daniel Dreyfus Is Admissible Pursuant to FED. R. EVID. 801(d)(2)(C)**

WE offers the testimony of Mr. Michael Lawrence, Mr. Robert Morgan, Mr. Benard Rusche, and Dr. Daniel Dreyfus based on the Government's authorization of a person to make statements on a particular issue. *See* FED. R. EVID. 801(d)(2)(C). In this regard, the Government identified in interrogatories that Mr. Lawrence and Mr. Morgan were "DOE personnel" that participated in creating the Standard Contract for Disposal of Spent Nuclear Fuel and/or High Level Radioactive Waste ("Standard Contract") and even quote Mr. Morgan's deposition transcript regarding the Government's asserted position in this litigation. *See* Defendant's Responses to Utility Plaintiffs' Joint Supplemental Interrogatories Nos. 77, 78, 79, 80, 81 (attached hereto as Exhibit A). WE seeks to introduce testimony regarding Mr. Lawrence's and Mr. Morgan's participation in the creation of the Standard Contract. Furthermore, Mr. Morgan is listed to testify in this case regarding topics covered by his admissions. *See* Defendant's Final Witness List at 3.

In addition, Mr. Rusche was listed on the Government's Witness List and testified on its behalf during the *Yankee Atomic* trial, supporting the notion that he had the Government's authorization to make statements on a particular issue. *See* Defendant's Witness List – *Connecticut Yankee Atomic Power Co. v. United States* (attached hereto as Exhibit B); Transcript of Trial Testimony of Benard Rusche, *Yankee Atomic* Trial, August 3, 2004 (excerpts) (attached hereto as Exhibit C). Although Dr. Daniel Dreyfus held high positions at DOE and the U.S. Senate, including service as the Director of the DOE Office of Civilian Radioactive Waste Management (Presidential appointment & U.S. Senate-confirmed position), Special Assistant to the Secretary of Energy, and Staff Director, U.S. Senate Energy Committee, he was retired at the time of his deposition. *See* Gov't Motion, Appendix, pages 19-20 (Deposition Testimony of Daniel Dreyfus at 8-9 (May, 15, 2002)). Given Dr. Dreyfus's extensive government service, his testimony evidences all the hallmarks of truthfulness because his Senate-confirmed position indicates that he possessed the

Government's authorization to make statements on a particular issue. WE further notes that Dr. Dreyfus remains listed on WE's Appendix A, Paragraph 15(a) witness list. Therefore, because the Government identified two of these former-DOE personnel (Messrs. Lawrence and Morgan) as having participated in the Standard Contract's creation; quoted Mr. Morgan's deposition in its interrogatories; identified Mr. Morgan as testifying regarding the same topics for which he has made relevant admissions; listed Mr. Rusche and had him testify in the *Yankee Atomic* trial regarding the same topics for which he has made relevant admissions; and because the extensive government service and testimony of Dr. Dreyfus possessed all the hallmarks of truthfulness, WE's designations are admissible pursuant to FED. R. EVID. 801(d)(2)(C).

Notwithstanding the Government's general objection to WE's use of designations (and of Mr. Morgan, in particular), the Government agrees that WE may introduce testimony from Mr. Morgan, but requests that it be allowed to introduce Mr. Morgan's trial testimony from prior trials to avoid testifying in this trial. Gov't Motion at 17-19.

WE strongly opposes the Government's request. WE has marked certain testimony from Mr. Morgan based on FED. R. EVID. 801(d)(2) – admissions of a party-opponent – which rule has neither a requirement that opposing counsel be present for an admission nor one allowing for the marking of counter-designations (as the Government has extensively done here).

On the contrary, the Government seeks to have Mr. Morgan's testimony admitted under RCFC 32(a), which rule specifically allows use of a "deposition" only "against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof." The Government has counter-designated testimony of Mr. Morgan from three trials in *Tennessee Valley Authority*, *Yankee Atomic*, and *Pacific Gas & Electric*. First, on its face, RCFC 32(a) related to the use of "deposition" testimony, not trial testimony as the Government apparently seeks to designate in the instant case. Second, WE was not a

party to these trials and, thus, had no opportunity to have counsel present and represented with the opportunity for cross-examination as required by RCFC 32(a). Furthermore, Mr. Morgan is the only witness on the Government's list that could potentially authenticate the substantial number of documents on the Government's exhibit list, which documents were apparently submitted to him when DOE developed the Standard Contract. Thus, WE opposes allowing the Government to submit Mr. Morgan's testimony from prior trials.

### C. The Testimony of Edward Benz, Billy Cole, and Patrick McDuffie Is Admissible Under FED. R. EVID. 801(d)(2)(D) Because Contractors Can Be Agents of the Government

The Government has opposed the use of Messrs. Edward Benz, Billy Cole, and Patrick McDuffie's deposition testimony because they worked for a Management & Operations contractor to DOE, rather than as a direct employee of the Government. However, FED. R. EVID. 801(d)(2)(D) requires only that an agency or servant relationship exist between the party-opponent and the declarant; it does not require an employee-employer relationship. In this regard, "an agency relationship can be created by contract." *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1256 (Fed. Cir. 2000) (citation and quotation marks omitted).

As the Court noted in *Yankee Atomic Elec. Co. v. United States*, No. 98-126C, 2004 WL 2450874, at *11 (Fed. Cl. Sept. 17, 2004), the "unique" role of Management & Operations contractors to DOE's mission makes it difficult to distinguish between an employee and a contractor, including in the area of spent fuel removal. ("These contractors were retained under unique circumstances to perform DOE's function, provided critical and essential data and input to DOE, and operate and manage the national laboratories for and on behalf of DOE. In a very real sense, these contractors performed DOE's statutory mission, or at a minimum provided the technical input to perform the same." *Id.*); *see also Westinghouse Elec. Corp. v. United States*, Nos. 93-445C, 93-446C, 1997 WL 1068204, at *2 (Fed. Cl. June 4, 1997) ("Unlike a typical Government contract through which the Government obtains

products and services to assist it in carrying out its mission, DOE uses the M & O contract to conduct its mission."). In this regard, Article IV.B.3 of the Standard Contract provides, "DOE may fulfill any of its obligations, or take any action, under this contract either directly or through contractors." Thus, because of the unique contractual relationship, there was an agency relationship between DOE and the contractors for whom Messrs. Benz, Cole, and McDuffie worked. Therefore, their testimony should be admissible pursuant to FED. R. EVID. 801(d)(2)(D).

Furthermore, the Government states in its Witness List that Mr. Billy Cole, "based upon his position as a contractor for DOE, will testify about the Government's implementation of the Standard Contract, including the ACR issue resolution process conducted with industry representatives, the issuance and content of the ACRs." *See* Defendant's Final Witness List at 4. The Government can hardly argue that Mr. Cole's designations are not admissible where it expects Mr. Cole to testify in this case regarding identical matters.

## III. THE GOVERNMENT'S FOUNDATION OBJECTION REGARDING DOCUMENTS IS WITHOUT MERIT AND WAIVED, TO THE EXTENT THE GOVERNMENT FAILED TO MAKE THE OBJECTION DURING THE DEPOSITION

The Government belatedly seeks to lodge foundation and best evidence objections. To the extent the Government failed to make these objections during the depositions, these objections are waived.

In particular, the Government asserts that WE's designations are "replete" with testimony concerning documents that are unidentified, but provides only one example in its motion. Gov't Motion at 16-17. The Government's foundation or best evidence objection is either in the testimony designated or it is waived because these objections could have led the questioner to cure the problem claimed in the objection. *See* RCFC 32(d)(3)(B) ("[E]rrors of any kind which might be obviated, removed, or cured if promptly presented [ ] are waived unless seasonable objection thereto is made at the taking of the deposition."). The one

example provided by the Government in its motion is misleading because the objections as stated in the transcript were "asked and answered" and "vague," not the "foundation" or "best evidence" objections that the Government now belatedly seeks to invoke. *See* Gov't Motion, Appendix, pages 57-59 (Deposition Testimony of Lake Barrett at 196-198 (Apr. 22, 2002)). The Government failed to preserve its foundation and best evidence objections by failing to seasonably make them at the deposition (at least this portion of it), and, therefore, these objections are waived. To the extent the Government has added new objections in contravention of RCFC 32(d)(3) in response to other portions of transcript pages designated by WE, these objections should be denied as waived for failure to raise them during the deposition testimony.[1]

## IV. THE GOVERNMENT'S COUNTER-DESIGNATIONS SHOULD BE EXCLUDED TO THE EXTENT THEY GO BEYOND THE RULE OF COMPLETENESS

WE objects to the Government's counter-designations to the extent these designations go beyond FED. R. EVID. 106, which codifies the common law principle of "completeness." *See* FED. R. EVID. 106, advisory committee's note ("The rule is an expression of the rule of completeness."). In many circumstances, the Government has counter-designated testimony far beyond that needed to explain and place in context the admissions designated by WE.

FED. R. EVID. 106 states: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." *See also* RCFC 32(a)(4). "The Rule does not require introduction of portions of a statement that are neither explanatory of nor relevant to the passages that have been admitted." *United States v. Soures*, 736 F.2d 87, 91 (3d Cir. 1984); *see also In re Pagnotti*, 269 B.R. 326, 331 (Bankr. M.D. Pa. 2001) ("[I]t is often perfectly

[1] Contrary to the Government's concerns, WE has endeavored to include most (if not all) material documents relevant to the designated deposition testimony as trial exhibits. To the extent the Court may find a gap in what WE has provided, WE seeks leave to supplement the testimony pursuant to FED. R. EVID. 106.

proper to admit segments of prior testimony without including everything, and adverse parties are not entitled to offer additional segments just because they are there and the proponent has not offered them.") (citation and quotation marks omitted). Thus, FED. R. EVID. 106 does not invite the wholesale designation of large unrelated blocks of new testimony; "indeed, the proponent of the additional evidence sought to be admitted must demonstrate its relevance to the issues in the case, and must show that it clarifies or explains the portion offered by the opponent." *United States v. Glover*, 101 F.3d 1183, 1190 (7th Cir. 1996).

Generally, where the Government truly has a "completeness" objection pursuant to FED. R. EVID. 106 regarding WE's designated transcript excerpts, it usually indicates this alleged incompleteness by marking the discrete additional lines from a transcript that should be added. Indeed, the Government has done this by indicating the exact lines necessary for completeness in the charts where it states its objection to WE's designated testimony. *See* Gov't Motion, Attachment A – Government's Objections to Designations by Wisconsin Electric Power Co. and Counter-Designations. The Government, however, has also "counter-designated" substantial testimony that extends well beyond the need to complete a particular statement or portion of a transcript. First, these so-called "counter-designations" are inadmissible hearsay because they go far beyond the need to complete the context of WE's designations. FED. R. EVID. 801. Second, the Government often designates testimony for deposition and trial dates for which WE has designated none.[2] Ultimately, the Government's lengthy counter-designations, totaling approximately 873 pages, contravene the "completeness" purpose of FED. R. EVID. 106 and should be disallowed.

Finally, to the extent that the Court allows any of the Government's counter-designations, WE requests leave from the Court to object more specifically to these counter-

[2] For example, the Government has counter-designated testimony from the following transcripts for which WE has designated no testimony: Billy Cole's May 13, 2002 deposition transcript; Patrick McDuffie's March 19, 2002 deposition transcript; and Robert Morgan's August 2, 2004 testimony in the *Yankee Atomic* trial and his June 13, 2006 testimony in the *Pacific Gas & Electric* trial.

designations during the post-trial briefing in this case. With regard to the Government's request that "the Court require the depositions to be read into the record and consider the Government's counter-designations from these same depositions," Gov't Motion at 19, WE is mindful that the Court directed the parties to read designated testimony into the record at the trials in *Tennessee Valley Authority* and *Systems Fuels*, No. 03-2623C. Although WE respectfully opposes the Government's request, if the Court directs a similar reading of designated testimony in this case, WE is prepared in principle to stipulate that any designated testimony in this case that was already read into the record in the *Tennessee Valley Authority* and *Systems Fuels*, No. 03-2623C, cases need not be read into the record again here.

**CONCLUSION**

For the foregoing reasons, WE respectfully requests that the Court allow WE's trial and deposition designations pursuant to FED. R. EVID. 801(d)(2), disallow the Government's counter-designations, and deny any out-of-time objections made by the Government regarding foundation, best evidence, or other matters the Government failed to raise seasonably during the taking of a deposition.

Dated: February 26, 2007

Respectfully submitted,

s/Richard W. Oehler by s/Donald J. Carney
Richard W. Oehler
Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
(206) 359-8419 Phone
(206) 359-9419 Fax

Attorneys for Plaintiff
WISCONSIN ELECTRIC POWER COMPANY

Of Counsel:

Donald J. Carney
Mary Rose Hughes
Perkins Coie LLP
607 Fourteenth Street, N.W.
Washington, D.C. 20005-2001
(202) 434-1675

## CERTIFICATE OF SERVICE

I certify under penalty of perjury that, on February 26, 2007, I caused a copy of the foregoing "PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S 'NOTICE OF DEPOSITION AND TRIAL TESTIMONY DESIGNATIONS' AND, IN THE ALTERNATIVE, MOTION IN LIMINE TO PRECLUDE RELIANCE UPON THOSE DESIGNATIONS AS SUBSTANTIVE EVIDENCE PURSUANT TO RCFC 32(a) AND FEDERAL RULE OF EVIDENCE 801(d)(2)" to be filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Donald J. Carney
Donald J. Carney

# EXHIBIT A

Rec'd
4-16-02
AD1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY | ) |
| CONNECTICUT YANKEE ATOMIC POWER COMPANY | ) |
| MAINE YANKEE ATOMIC POWER COMPANY | ) |
| FLORIDA POWER & LIGHT COMPANY | ) |
| NORTHERN STATES POWER COMPANY | ) Case Nos. 98-126C, |
| DUKE POWER, A Division of DUKE ENERGY CORP. | ) 98-154C, 98-474C, |
| INDIANA MICHIGAN POWER COMPANY | ) 98-483C, 98-484C, |
| SACRAMENTO MUNICIPAL UTILITY DISTRICT | ) 98-485C, 98-486C, |
| SOUTHERN NUCLEAR OPERATING COMPANY, et al. | ) 98-488C, 98-614C, |
| COMMONWEALTH EDISON COMPANY | ) 98-621C, 99-447C, |
| BOSTON EDISON COMPANY | ) 00-440C, 00-697C, |
| GPU NUCLEAR, INCORPORATED | ) 00-703C, 01-115C, |
| WISCONSIN ELECTRIC POWER COMPANY | ) 01-116C, 01-249C |
| POWER AUTHORITY OF THE STATE OF NEW YORK | ) 01-551C |
| OMAHA PUBLIC POWER DISTRICT | ) |
| NEBRASKA PUBLIC POWER DISTRICT | ) Judge Sypolt |
| TENNESSEE VALLEY AUTHORITY | ) (Discovery Judge) |
| PSEG NUCLEAR LLC, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S RESPONSES TO UTILITY PLAINTIFFS' JOINT SUPPLEMENTAL INTERROGATORIES**

Pursuant to Rule 33 of the Rules of the United States Court of Federal Claims ("RCFC"), and the Court's order for coordinated discovery, filed on September 26, 2001, defendant, the United States, provides the following responses to the plaintiffs' joint supplemental interrogatories, dated March 8, 2002.

GENERAL OBJECTIONS

1. Defendant objects to each and every interrogatory to the extent that it calls for the disclosure of material or information that is subject to any claim of privilege or protection, including without limitation, the attorney-client privilege, the work-product doctrine, or any

## DEFENDANT'S RESPONSES

**INTERROGATORY NO. 77:**

Identify the DOE personnel who drafted, developed, or participated in meetings regarding the Standard Contract for Disposal of Spent Nuclear Fuel and/or High Level Radioactive Waste contained within the notice of proposed rulemaking at 48 Fed. Reg. 5458 (Fed. 4, 1983).

**RESPONSE:**

Defendant objects to this interrogatory as overly broad and burdensome. Defendant is unable to identify all DOE personnel who may have drafted, developed, or participated in meetings regarding the Standard Contract for Disposal of Spent Nuclear Fuel and/or High Level Radioactive Waste contained within the notice of proposed rulemaking at 48 Fed. Reg. 5458 (Fed. 4, 1983). Pursuant to Rule 33(c), RCFC, defendant responds that the answer(s) to this interrogatory may be obtained from the documents previously made available to plaintiffs, and that the burden of ascertaining the answer(s) is substantially the same for the plaintiffs as it is for defendant. Defendant also objects to this interrogatory because the term "participated in" is not defined, rendering the interrogatory vague and ambiguous.

Without waiving these objections, defendant states that the following individuals, to varying degrees, were involved with and may have knowledge of the Standard Contract for Disposal of Spent Nuclear Fuel and/or High Level Radioactive Waste contained within the notice of proposed rulemaking at 48 Fed. Reg. 5458 (Fed. 4, 1983):

Robert Rosselli, Michael Lawrence, Robert Morgan, James Fiore, Eliot Winnick (deceased), James Cavanaugh.

**INTERROGATORY NO. 78:**

Identify the DOE personnel who reviewed the comments the agency received in response to the notice of proposed rulemaking Standard Contract for Disposal of Spent Nuclear Fuel and/or High Level Radioactive Waste contained within the notice of proposed rulemaking at 48 Fed. Reg. 5458 (Fed. 4, 1983).

**RESPONSE:**

Defendant objects to this interrogatory as overly broad and burdensome. Defendant is unable to identify all DOE personnel who may have reviewed the comments the agency received in response to the notice of proposed rulemaking Standard Contract for Disposal of Spent Nuclear Fuel and/or High Level Radioactive Waste contained within the notice of proposed rulemaking at 48 Fed. Reg. 5458 (Fed. 4, 1983). Defendant also objects that the interrogatory is vague and ambiguous, as the interrogatory does not define the time period of the "review" by DOE personnel (i.e., review prior to issuance of the final rule vs. review at during some subsequent time period).

Without waiving these objections, defendant states that the following individuals may have reviewed the comments the agency received in response to the notice of proposed rulemaking Standard Contract for Disposal of Spent Nuclear Fuel and/or High Level Radioactive Waste contained within the notice of proposed rulemaking at 48 Fed. Reg. 5458 (Fed. 4, 1983):

Robert Rosselli, Michael Lawrence, Robert Morgan, James Fiore, Eliot Winnick (deceased), James Cavanaugh.

**INTERROGATORY NO. 79:**

Identify the DOE personnel who were involved in DOE's decision to "intentionally [] not adopt any" suggestions made by commenters on the proposed Standard Contract that DOE "insert into the Standard Contract a minimum rate of SNF and/or HLW acceptance by which DOE would be bound to perform." Defendant's Motion for Partial Summary Judgment Regarding the Rate of Spent Nuclear Fuel Acceptance at 5.

**RESPONSE:**

Defendant objects to this interrogatory because the term "involved in" is not defined, rendering the interrogatory vague.

Without waiving this objection, defendant states that the following individuals may have knowledge of DOE's decision to intentionally not adopt any suggestions made by commenters on the proposed Standard Contract that DOE insert into the Standard Contract a minimum rate of SNF and/or HLW acceptance by which DOE would be bound to perform:

Robert Rosselli, Michael Lawrence, Robert Morgan.

**INTERROGATORY NO. 80:**

Identify the DOE personnel who drafted, developed, or participated in meetings between 1981 and 1983 regarding the Standard Contract for Disposal of Spent Nuclear Fuel and/or High Level Radioactive Waste contained within the final rule at 48 Fed. Reg. 16,590 (Apr. 18, 1983).

**RESPONSE:**

Defendant objects to this interrogatory as overly broad and burdensome. Defendant is unable to identify all DOE personnel who may have drafted, developed, or participated in meetings between 1981 and 1983 regarding the Standard Contract for Disposal of Spent Nuclear Fuel and/or High Level Radioactive Waste contained within the final rule at 48 Fed. Reg. 16,590 (Apr. 18, 1983). Pursuant to Rule 33(c), RCFC, defendant responds that the answer(s) to this interrogatory may be obtained from the documents previously made available to plaintiffs, and that the burden of ascertaining the answer(s) is substantially the same for the plaintiffs as it is for defendant. Defendant also objects to this interrogatory because the term "participated in" is not defined, rendering the interrogatory vague.

Without waiving these objections, defendant states that the following individuals, to varying degrees, were involved with and may have knowledge of the Standard Contract for Disposal of Spent Nuclear Fuel and/or High Level Radioactive Waste contained within the final rule at 48 Fed. Reg. 16,590 (Apr. 18, 1983):

Robert Rosselli, Michael Lawrence, Robert Morgan, James Fiore, Eliot Winnick (deceased), James Cavanaugh.

**INTERROGATORY NO. 81**:

Does DOE contend that, at the time it executed the Standard Contract with the Purchasers, DOE did not intend to accept SNF and/or HLW starting in 1998 at a rate sufficient for Purchasers not to "have to add any further storage facilities either on site or at another location[?]" Robert Morgan, Acting Director of Civilian Radioactive Waste Management, U.S. Department of Energy, Program Overview, in Proceedings of the 1983 Civilian Radioactive Waste Management Information Meeting, February 1984. State all facts that support your answer.

**RESPONSE**:

Defendant objects to this interrogatory because the term "intend" is not defined, rendering the interrogatory vague. Defendant also objects to this interrogatory because it fails to distinguish between program goals and contractual obligations. Further, defendant objects that what DOE may have intended is irrelevant. The language of the Standard Contract speaks for itself as to the obligations of the parties.

Without waiving these objections, defendant states that, assuming that the legal, political and technical hurdles identified in the 1985 Mission Plan could be overcome and assuming that the repository had begun operations, DOE had a programmatic goal to begin acceptance of SNF in 1998 at a rate that, in the aggregate, would obviate the need for additional at-reactor storage. Any of DOE's "desires" or programmatic goals that are not contained in the Standard Contract itself were not intended to be contractually binding or to create any enforcement obligations upon DOE. As Mr. Morgan explained at his deposition, DOE did not have a contractual "intent" to accept SNF and/or HLW at a rate sufficient for Purchasers not to have to add any further storage facilities, either on-site or at another location. These facts are also supported by the

language of the Standard Contract and the administrative record of rulemaking for the Standard Contract.

# EXHIBIT B

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| CONNECTICUT YANKEE ATOMIC POWER COMPANY<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. 98-154C<br>(Senior Judge Merow) |

## DEFENDANT'S WITNESS LIST

Pursuant to the Court's pretrial order issued November 4, 1998, as amended by subsequent orders, defendant submits the following list of witnesses. This list does not contain witnesses that the defendant may choose to use for impeachment. Defendant reserves the right to amend this list as described in the Court's rules. Defendant also reserves the right to call all witnesses listed on plaintiff's witness list.

**Fact Witnesses**

Government, Contractor or former Government employees

1. Christopher S. Bajwa
Thermal Engineer
Nuclear Regulatory Commission
One White Flint North
11555 Rockville Pike
Rockville, Maryland 20852-2738

Mr. Bajwa will testify concerning the licensing process and requirements for fuel storage and transportation.

2. Lake Barrett
7805 Potters Mill Court
Derwood, Maryland 20855

Mr. Barrett, former Director of the Office of Civilian Radioactive Waste Management, will provide testimony concerning the Government's implementation of the Standard Contract, including acceptance rates, priority for shutdown reactors, the Annual Capacity Report ("ACR") issue resolution process conducted with industry representatives, the issuance and content of the ACRs, the issuance and content of the Acceptance Priority Rankings ("APR"), delivery commitment schedules, schedule negotiations, exchanges, and other relevant matters.

3. Edward Benz
JAI Corp.
955 L'Enfant Plaza
Suite 8000
Washington D.C.

Mr. Benz, based upon his position as a contractor for DOE, will testify about the technical aspects of the Standard Contract, including the ACR issue resolution process conducted with industry representatives and the technical and legal basis for acceptance rates contained in the ACRs/APRs.

4. Alan Brownstein
Senior Policy Advisor
Office of Civilian Radioactive Waste Management
United States Department of Energy
RW-2
1000 Independence Ave., SW
Washington, DC 20585

Mr. Brownstein will provide testimony concerning the Government's implementation of the Standard Contract, including acceptance rates, priority for shutdown reactors, the ACR issue resolution process conducted with industry representatives, the issuance and content of the

ACRs, the issuance and content of the APRs, delivery commitment schedules, schedule negotiations, the exchange approval process, and other relevant matters.

5. Patrice Bubar
Deputy Assistant Secretary Integrated Safety Management & Operation Oversight
Office of Environmental Management
United States Department of Energy
1000 Independence Ave., S.W.
Washington D.C. 20585

Ms. Bubar will testify regarding the development of DOE's plans to accept "greater-than-class-C" low-level radioactive waste from commercial utilities pursuant to the Low Level Radioactive Waste Policy Act Amendments of 1985 and other relevant matters.

6. James Carlson
4008 Glenrose St.
Kensington, MD 20895

Mr. Carlson, former Director of the DOE Waste Acceptance and Transportation Division, will testify about the implementation of the Standard Contract, including transportation issues, as well as other relevant matters.

7. Billy Cole
Senior Consultant
JAI Corp.
11350 Random Hills Road
Suite 440
Fairfax, VA 22030

Mr. Cole, based upon his position as a contractor for DOE, will testify about the Government's implementation of the Standard Contract, including the ACR issue resolution process conducted with industry representatives and the technical and legal basis for acceptance rates contained in the ACRs/APRs, the exchange approval process, and other relevant matters.

8. David Huizenga
Associate Assistant Deputy Administrator
Office of International Nuclear Safety and Cooperation
United States Department of Energy
1000 Independence Ave., S.W.
Washington D.C. 20585

Mr. Huizenga, former Deputy Assistant Secretary, Office of Environmental Management, will testify regarding the development of DOE's plans to accept "greater-than-class-C" low-level radioactive waste from commercial utilities pursuant to the Low Level Radioactive Waste Policy Act Amendments of 1985 that occurred during his tenure and other relevant matters.

9. Thomas H. Isaacs
Lawrence Livermore National Labs
7000 East Avenue
Lawrence Livermore, CA

Mr. Isaacs will provide testimony regarding the implementation of the Nuclear Waste Policy Act ("NWPA") and the 1987 Amendments to the NWPA, including the issuance and content of the 1985 Mission Plan and 1987 Mission Plan Amendment, and the issuance and content of the ACRs, and the technical, legal, and political obstacles to the implementation of the NWPA, and other relevant matters.

10. Christopher Kouts
Director
Office of Systems Analysis and Strategy Development
Office of Civilian Radioactive Waste Management
United States Department of Energy
RW-20E
1000 Independence Ave., SW
Washington, DC 20585

Mr. Kouts will testify about DOE's plans to begin waste acceptance in 2010, the fact that the Yucca Mountain repository is not being designed to accept "greater-than-class-c" low-level radioactive waste and other relevant matters.

11. Michael Lawrence
105605 N. Harrington Road
West Richland, Washington 99353

Mr. Lawrence, former Director of the Nuclear Waste Policy Act Project Office, will testify about the early implementation of the NWPA and the 1987 Amendments to the NWPA, including the issuance and content of the 1985 Mission Plan and 1987 Mission Plan Amendment, the issuance and content of the ACRs, the technical, legal, and political obstacles to the implementation of the NWPA, and the formation of the Standard Contract, including the intention of the parties concerning the rate of acceptance, priority for shutdown reactors, the delivery commitment schedule process as well as other relevant matters.

12. Pat McDuffie
1840 Monserrat Way
Vista, CA 92083

Mr. McDuffie, based upon his experience as a contractor for DOE, will provide testimony concerning the implementation of the Standard Contract, including the ACR issue resolution process conducted with industry representatives and the technical and legal basis for acceptance rates contained in the ACRs/APRs, and other relevant matters.

13. Ronald Milner
Chief Operating Officer
Office of Civilian Radioactive Waste Management
United States Department of Energy
RW-2
1000 Independence Ave., SW
Washington, DC 20585

Mr. Milner will testify about the implementation of the Standard Contract, including acceptance rates, priority for shutdown reactors, the ACR issue resolution process conducted with industry representatives, the issuance and content of the ACRs, the issuance and content of the APRs, delivery commitment schedules, schedule negotiations, exchanges, the fact that the Yucca Mountain repository is not being designed to accept "greater-than-class-c" low-level radioactive waste, and other relevant matters.

14. Robert L. Morgan
3001 NW Colonial Drive
Bend, OR 97701-5447

Mr. Morgan, former Director of the Nuclear Waste Policy Act Project Office, will provide testimony concerning the early implementation of the NWPA and the formation of the Standard Contract, including the intention of the parties concerning the rate of acceptance, priority for shutdown reactors, the delivery commitment schedule process, and other relevant matters.

15. Stephen C. O'Connor
Project Manager
United States Nuclear Regulatory Commission
One White Flint North
11555 Rockville Pike
Rockville, Maryland 20852-2738

Mr. O'Connor will provide testimony concerning the licensing process and requirements for fuel storage and transportation.

16. Tom Pollog
Office of Civilian Radioactive Waste Management
United States Department of Energy
RW-20E
1000 Independence Ave., SW
Washington, DC 20585

Mr. Pollog will testify about the implementation of the Standard Contract, including acceptance rates, priority for shutdown reactors, the ACR issue resolution process conducted with industry representatives, the issuance and content of the ACRs, the issuance and content of the APRs, delivery commitment schedules, schedule negotiations, exchanges, the fact that the Yucca Mountain repository is not being designed to accept "greater-than-class-c" low-level radioactive waste and other relevant matters. Mr. Pollog will also testify about the DOE database built upon the RW-859 data submitted by the utilities and used to develop fuel acceptance allocations.

17. Robert Rosselli
2631 Thoroughbroad Way
Richland, Washington 99352

Mr. Rosselli will provide testimony concerning the early implementation of the NWPA and the formation of the Standard Contract, including the intention of the parties concerning the rate of acceptance, the delivery commitment schedule process, and other relevant matters.

18. Benard Rusche
10 Chicorana Rd
West Columbia, SC 29169-7402

Mr. Rusche, former Director of the Office of Civilian Radioactive Waste Management, will provide testimony about the implementation of the NWPA and the 1987 Amendments to the NWPA, including the issuance and content of the 1985 Mission Plan and 1987 Mission Plan Amendment, the issuance and content of the ACRs, and the technical, legal, and political obstacles to the implementation of the NWPA, as well as other relevant matters.

19. Nancy Slater-Thompson
Office of Civilian Radioactive Waste Management
United States Department of Energy
RW-30E
1000 Independence Ave., SW
Washington, DC 20585

Ms. Slater-Thompson will testify about the Government's implementation of the Standard Contract, including acceptance rates, priority for shutdown reactors, the ACR issue resolution process conducted with industry representatives, the issuance and content of the ACRs, the issuance and content of the APRs, delivery commitment schedules, schedule negotiations, and the exchange approval process. Ms. Slater-Thompson may also testify about her knowledge of issues concerning the Standard Contract discussed by the utility industry and DOE during the 1985-1987 timeframe, while she was employed by the Edison Electric Institute, an industry trade association.

20. Beth Tomasoni
Contracting Officer
United States Department of Energy
ME-642
1000 Independence Ave., SW
Washington, DC 20585

Ms. Tomasoni will testify regarding the contract interpretation issues that arose during her tenure as contracting officer, as well as other relevant matters.

21. Victor Trebules
Director
Office Project Control and Monitoring
Yucca Mountain Site Characterization Office
United States Department of Energy
1551 Hillshire
Suite A
Las Vegas, Nevada 89134

Mr. Trebules will testify about the implementation of the NWPA and the 1987 Amendments to the NWPA, including the issuance and content of the 1985 Mission Plan and 1987 Mission Plan Amendment, the issuance and content of the ACRs, and the technical, legal, and political obstacles to the implementation of the NWPA, as well as other relevant matters.

22. David Zabransky
Office of Civilian Radioactive Waste Management
United States Department of Energy
RW-20E
1000 Independence Ave., SW
Washington, DC 20585

Mr. Zabransky will testify about the Government's implementation of the Standard Contract, including acceptance rates, priority for shutdown reactors, the ACR issue resolution process conducted with industry representatives, the issuance and content of the ACRs, the issuance and content of the APRs, delivery commitment schedules, schedule negotiations, exchanges, the fact that the Yucca Mountain repository is not being designed to accept "greater-than-class-c" low-level radioactive waste, and other relevant matters. Mr. Zabransky may also testify about his knowledge of issues concerning the Standard Contract discussed by the utility industry and DOE based upon his experience in the nuclear utility industry prior to his employment with DOE.

23. Member of Office of Nuclear Security and Incident Response
United States Nuclear Regulatory Commission
One White Flint North
11555 Rockville Pike
Rockville, Maryland 20852-2738

This individual will testify about the regulatory requirements relating to the security staffing and security hardware necessary for the storage of SNF or GTCC radioactive waste.

Non-Government personnel:

1. Thomas Bennet
Vice President and Chief Financial Officer
19 Midstate Drive, Suite 200
Auburn, Massachusetts 01501

Mr. Bennett will testify about Yankee Atomic's decision to transfer its spent nuclear fuel to dry storage. He will also testify regarding issues relating to Yankee Atomic's decommissioning and dismantlement project including issues relating to the construction of the ISFSI at Yankee Atomic's site.

2. John Buchheit
Duke Engineering
Senior Engineer, Nuclear Fuels
Duke Engineering and Services
400 Donald Lynch Boulevard
Marlboro, MA 01752

Mr. Buchheit, based upon his position at Duke Engineering and former position with a division of Yankee Atomic Electric Company, will provide testimony concerning the administration and performance of the Yankees' Standard Contracts, the delivery commitment schedule process, the Yankees' fuel and fuel management, the Yankees' decisions concerning fuel storage, the Yankees' decommissioning costs studies, and other related matters.

3. Rudy Grube
48 Reservoir Road
Westwood, MA 02090

Mr. Grube, based upon his former position with a division of Yankee Atomic Electric Company, will testify as to the inventory of Maine Yankee, Connecticut Yankee, and Yankee Atomic's spent fuel pools, as well as the characterization of the Yankees' spent fuel.

4. Andrew Kadak
253 Rumstick Point Road
Barrington, Rhode Island 02806

Dr. Kadak will provide testimony about the Yankees' approach to priority for shutdown reactors, delivery commitment schedules, schedule negotiations, exchanges, and "greater-than-class- C" low-level radioactive waste. Additionally, Mr. Kadak will testify concerning Yankee Atomic's decisions concerning fuel storage and other relevant matters.

5. Thomas LaGuardia
President
TLG Services, Inc.
148 New Milford Road East, Route 67
Bridgewater, CT 06752

Mr. LaGuardia will provide testimony regarding the decommissioning costs studies performed by TLG Services for Connecticut Yankee, Yankee Atomic and Maine Yankee.

6. Russell Mellor
President
Yankee Atomic Electric Company & Connecticut Yankee Atomic Power Company
362 Injun Hollow Road
East Hampton, Connecticut 06424-3099

Mr. Mellor will testify concerning the management of Yankee Atomic and Connecticut Yankee, their decisions concerning fuel storage, and other related matters.

7. Dr. E.E. Pilat
Fuel Management Department
Duke Engineering & Services
580 Main Street
Bolton, Massachusetts 01740

Dr. Pilat, based upon his position at Duke Engineering and former position with a division of Yankee Atomic Electric Company, will testify about the Yankees' attempts to exchange entitlements with other contract holders and to value exchanges.

8. Paul Plante
Principal Engineer
Maine Yankee Atomic Power Company
321 Old Ferry Road
Wiscasset, Maine 04578

Mr. Plante will testify as to the inventory of Maine Yankee, Connecticut Yankee and Yankee Atomic's spent fuel pools, as well as the characterization of the Yankees' spent fuel.

9. Frank Quinn
Fuel Procurement Manager
Duke Engineering & Services
580 Main Street
Bolton, Massachusetts 01740

Mr. Quinn, based upon his position at Duke Engineering and former position with a division of Yankee Atomic Electric Company, will testify about the Yankees' attempts to exchange entitlements with other contract holders and the Yankees' attempt to value exchanges.

10. E.C. Shyloski
Senior Project Manager
Bechtel SAIC Co., LLC
1180 Town Center Drive
Las Vegas, Nevada 89144

Mr. Shyloski will testify about the authenticity of documents relating to Connecticut Yankee's ISFSI project and other relevant matters.

**Expert Witnesses**

1. Edward C. Abbott
President
ABZ Incorporated
4451 Brookfield Corp. Drive
Suite 101
Chantilly, VA 20151

Mr. Abbott will provide expert testimony concerning the technical aspects of handling, storing and transporting spent nuclear fuel and other radioactive waste. Mr. Abbott's opinions and the bases for those opinions are set out in his expert witness report. The information specified in FRCP 26(a)(2)(B) is attached to Mr. Abbott's expert witness report.

2. Kenneth Blair
Principal, PE
Navigant Consulting
10000 Midatlantic Drive
Suite 300 East
Mt. Laurel, New Jersey 08054

Mr. Blair will provide expert testimony concerning the delays experienced in the construction of the ISFSI at Yankee Atomic's site. Mr. Blair's opinions and the bases for those opinions are set out in his expert witness report. The information specified in FRCP 26(a)(2)(B) is attached to Mr. Blair's expert witness report.

3. Daniel R. Fischel
President
Lexecon, Inc.
332 S. Michigan Avenue,
Chicago, IL 60604-4306.

Mr. Fischel will provide expert testimony regarding his expert analysis of plaintiffs' damage claim from an economic perspective. Mr. Fischel's opinions and the bases for those

opinions are set out in his expert witness report. The information specified in FRCP 26(a)(2)(B) is attached to Mr. Fischel's expert witness report.

4. R. Larry Johnson
Veris Consulting, LLC
11710 Plaza America Drive
Suite 300
Reston, VA 20190

Mr. Johnson will testify as an expert concerning the calculation of plaintiff's damages. Mr. Johnson's opinions and the bases for those opinions are set out in his expert witness report. The information specified in Federal Rule of Civil Procedure ("FRCP") 26(a)(2)(B) is attached to Mr. Johnson's expert witness report.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

Harold D. Lester, Jr.

HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7562
Fax: (202) 307-2503

OF COUNSEL:
KEVIN B. CRAWFORD
SCOTT DAMELIN
JOHN EKMAN
HEIDE L. HERRMANN
R. ALAN MILLER
STEFAN SHAIBANI
RUSSELL A. SHULTIS
VICTORIA STROHMEYER
MARIAN E. SULLIVAN
ELIZABETH THOMAS
Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530

MARTHA CROSLAND
JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

February 19, 2004

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 19th day of February, 2004, I caused to be served by United States mail (first class, postage prepaid) a copy of "DEFENDANT'S WITNESS LIST" addressed as follows:

JERRY STOUCK
Spriggs & Hollingsworth
1350 I Street, N.W.
Ninth Floor
Washington, D.C. 20005-3305

[signature]

# EXHIBIT C

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

| | |
|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY, | ) |
| CONNECTICUT YANKEE ATOMIC POWER | )Case Nos.: |
| COMPANY, and MAINE YANKEE ATOMIC | ) 98-126C |
| POWER COMPANY, | ) 98-154C |
| Plaintiffs, | ) 98-474C |
| | ) |
| THE UNITED STATES, | ) |
| Defendant. | ) |

---

Courtroom 5
National Courts Building
717 Madison Place, N.W.
Washington, D.C.

Tuesday, August 3, 2004
Volume 16

The parties met, pursuant to the notice of the Judge, at 10:00 a.m.

BEFORE: THE HONORABLE JAMES F. MEROW

APPEARANCES:

ON BEHALF OF YANKEE ATOMIC ELECTRIC COMPANY, CONNECTICUT YANKEE ATOMIC POWER COMPANY and MAINE YANKEE ATOMIC POWER COMPANY:

JERRY STOUCK, ESQ.
ROBERT SHAPIRO, ESQ.
PETER J. SKALABAN, JR., ESQ.
VIVEK K. HATTI, ESQ
Spriggs & Hollingsworth
1350 I Street, N.W.
Washington, D.C. 20005
(202) 898-5800

ON BEHALF OF YANKEE ATOMIC ELECTRIC COMPANY, CONNECTICUT YANKEE ATOMIC POWER COMPANY:

MERRILL J. ATKINS, ESQ.
Assisting General Counsel
19 Midstate Drive
Auburn, Massachusetts 01560
(508) 721-3042

(Appearances Continued on the Next Page.)

APPEARANCES CONTINUED:

ON BEHALF OF MAINE YANKEE ATOMIC POWER COMPANY:
JOSEPH D. FAY, ESQ.
General Counsel
Maine Yankee
321 Old Ferry Road
Wiscasset, Maine 04578
(207) 882-5603

On Behalf of the Defendant:
HAROLD LESTER, JR., ESQ.
JOHN EKMAN, ESQ.
MARIAN E. SULLIVAN, ESQ.
HEIDE L. HERRMANN, ESQ.
R. ALAN MILLER, ESQ.
KEVIN B. CRAWFORD, ESQ.
RUSSELL SHULTIS, ESQ.
U.S. Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530
(202) 305-7562

***Index appears at end of transcript***

P R O C E E D I N G S

\- - - - -

MR. MILLER: Your Honor, we appreciate the Court's indulgence in letting us get our thoughts together over the evening hours. I just have one additional question for Mr. Morgan on my direct examination.

THE COURT: Go ahead, whenever you're ready.

Whereupon--

ROBERT MORGAN

a witness, called for examination, having been previously duly sworn, was examined and testified further as follows:

DIRECT EXAMINATION (Resumed)

BY MR. MILLER:

Q. All right. Sir, if we could go back on Plaintiff's 678. Mr. Morgan, you recall we talked about this exhibit yesterday in your testimony?

A. Yes.

Q. And you recall this document, do you not?

A. Yes.

Q. Mr. Morgan, you recognize this, do you not, as the second page of the statement you made at the December 1983 information meeting?

A. Yes.

Q. All right, sir. In your mind, Mr. Morgan, what's the difference between a program goal and a contractual requirement?

A. They were totally separate. The contract was the agreement between DOE and the utilities, and the program goal was our best efforts at meeting the requirements of the Act. They were totally different.

MR. MILLER: I have no further questions, Your Honor. Thank you, Mr. Morgan.

THE COURT: Anything further?

MR. SHAPIRO: Nothing further, Your Honor.

THE COURT: All right. You're excused, and thank you very much for your testimony.

THE WITNESS: Thank you, sir.

MR. MILLER: Your Honor, the government calls, as its next witness, Mr. Benard Rusche.

Whereupon--

BENARD C. RUSCHE

a witness, called for examination, having been duly sworn, was examined and testified as follows:

THE COURT: Just take a seat.

DIRECT EXAMINATION

BY MR. MILLER:

Q. Are you all set, Mr. Rusche?

A. Raring to go.
Q. Would you state your full name for the record, please, sir?
A. My name is Benard Clements Rusche.
Q. All right, sir. And, Mr. Rusche, you are the former first presidentially appointed and confirmed director of the Office of Civilian Radioactive Waste Management, are you not?
A. Correct.
Q. We'll talk a little bit about that, as you might guess. But first, could you tell me what your college degree, what field that was in and when you obtained that?
A. My college degree was in Physics. I obtained a BS in Physics from Tennessee Polytechnic Institute in 1953.
Q. Okay, sir. And what was your first job after graduating from the Polytechnic Institute?
A. Two weeks after graduation, I joined the Savannah River site as an experimental physicist in the technical division.
Q. And what was the status of the Savannah River site at the time you joined the Savannah River?
A. Under construction, had been under construction for, I guess late '51, since late '51,

and the site, the first production reactor was scheduled to go critical by the end of the year in 1953. And the position, or the opportunity at which I became involved was an experimental physics effort to provide assurance that the physics calculations and predictions and designs for that first production reactor were acceptable.

Q. All right, sir. And did in fact the reactor go online as you had anticipated?

A. Indeed, it did, but we made special efforts to assure that it would by actually taking that first charge critical in the experimental reactor, so we had pretty high confidence.

Q. All right, sir. Well, how long did you remain employed at Savannah River?

A. I was at Savannah River from 1953 to '58.

Q. All right, sir. Would you just tell us what, if any, progression of jobs you had during that time period?

A. In 1958, I decided to take a slight diversion and join Lockheed Nuclear Products, which was an aircraft company's attempt to get itself into the nuclear business and spent two years and then returned to Savannah River and stayed at Savannah River until 1975.

Q. Okay, sir. And what job did you take up when you returned to Savannah River in about 1960, right?

A. Yes, yes.

Q. I'm sorry.

A. In 1960, the government had raised the prospect of possibly using heavy water reactors for some civilian purposes, as contrasted with the production purposes at Savannah River. And to that extent, a test reactor was built called the heavy water components test reactor, and I was assigned the physics responsibility for that design, along with a number of others, and subsequently, the operation of that reactor from the standpoint of its physics connotations.

Q. All right, sir.

A. And soon thereafter, it became evident that issues related to the environment were taking greater importance in the concept, or in the context of both the government and the general population.

And I was appointed, after about two or two and a half years in the HWCTR activity, as the director of a new study group which was aimed at both reactor safety dynamics, as well as environmental effects, and continued that for a couple years, as I

recall, and then formed a reactor safety group, which was associated with the activities of predicting operations, understanding the site and the interaction between the reactors, their effluence and their potential for other facts or factors, and continued in that rule until 1975.

I had, in that time, I guess I had a group of maybe about 25 or 30 physicists or chemists or engineers that were in the group that I was leading. And in 1975, I was invited by the Nuclear Regulatory Commission to join the Commission on a leave of absence from Dupont, and I was appointed the first director of the office of Nuclear Reactor Regulation, in which I stayed two years, as agreed.

Q. And what were your responsibilities as the first director of nuclear regulation for the NRC?

A. The Nuclear Regulatory Commission had just been born in the Energy Reorganization Act of 1970. I think it was either late '73 or '74. And it was to, the goal was first to attempt to establish a context in which commercial nuclear power could be regulated for the safety of the public and of the industry as well, and to develop the appropriate protocols, procedures, designs and so forth.

And I had the opportunity of being involved

in the licensing of a number of the commercial reactors.

Q. All right, sir. And so in 1977, you took on a different job, did you?

A. My Dupont colleagues invited me back to the company, as we had agreed, and I was appointed corporate director for health and safety for Dupont. Many of you would recognize -- I don't know, many of you are not as old as I am, but Dupont had an international reputation for its attention to health and safety matters.

And although this had been very obvious in much of the activity that Dupont did, in fact everything that I knew about, but the company decided it was time to make those efforts more visible, somewhat more coordinated, and so I was offered that opportunity and stayed in that job for a year.

Q. All right, sir. And at the end of that year, what happened?

A. I concluded that the pace was too slow and the opportunities were perhaps more enticing elsewhere. And the then governor of South Carolina, who later became the Secretary of Energy, Dr. Jim Edwards, invited me to come back to South Carolina and form an energy research institute to look at all