# EXHIBIT A

Rec'd
4-16-02
AD1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY<br>CONNECTICUT YANKEE ATOMIC POWER COMPANY<br>MAINE YANKEE ATOMIC POWER COMPANY<br>FLORIDA POWER & LIGHT COMPANY<br>NORTHERN STATES POWER COMPANY<br>DUKE POWER, A Division of DUKE ENERGY CORP.<br>INDIANA MICHIGAN POWER COMPANY<br>SACRAMENTO MUNICIPAL UTILITY DISTRICT<br>SOUTHERN NUCLEAR OPERATING COMPANY, et al.<br>COMMONWEALTH EDISON COMPANY<br>BOSTON EDISON COMPANY<br>GPU NUCLEAR, INCORPORATED<br>WISCONSIN ELECTRIC POWER COMPANY<br>POWER AUTHORITY OF THE STATE OF NEW YORK<br>OMAHA PUBLIC POWER DISTRICT<br>NEBRASKA PUBLIC POWER DISTRICT<br>TENNESSEE VALLEY AUTHORITY<br>PSEG NUCLEAR LLC,<br><br>Plaintiffs,<br><br>UNITED STATES,<br><br>Defendant. | Case Nos. 98-126C, 98-154C, 98-474C, 98-483C, 98-484C, 98-485C, 98-486C, 98-488C, 98-614C, 98-621C, 99-447C, 00-440C, 00-697C, 00-703C, 01-115C, 01-116C, 01-249C 01-551C<br><br>Judge Sypolt<br>(Discovery Judge) |

**DEFENDANT'S RESPONSES TO UTILITY**
**PLAINTIFFS' JOINT SUPPLEMENTAL INTERROGATORIES**

Pursuant to Rule 33 of the Rules of the United States Court of Federal Claims ("RCFC"), and the Court's order for coordinated discovery, filed on September 26, 2001, defendant, the United States, provides the following responses to the plaintiffs' joint supplemental interrogatories, dated March 8, 2002.

GENERAL OBJECTIONS

1. Defendant objects to each and every interrogatory to the extent that it calls for the disclosure of material or information that is subject to any claim of privilege or protection, including without limitation, the attorney-client privilege, the work-product doctrine, or any

## DEFENDANT'S RESPONSES

**INTERROGATORY NO. 77:**

Identify the DOE personnel who drafted, developed, or participated in meetings regarding the Standard Contract for Disposal of Spent Nuclear Fuel and/or High Level Radioactive Waste contained within the notice of proposed rulemaking at 48 Fed. Reg. 5458 (Fed. 4, 1983).

**RESPONSE:**

Defendant objects to this interrogatory as overly broad and burdensome. Defendant is unable to identify all DOE personnel who may have drafted, developed, or participated in meetings regarding the Standard Contract for Disposal of Spent Nuclear Fuel and/or High Level Radioactive Waste contained within the notice of proposed rulemaking at 48 Fed. Reg. 5458 (Fed. 4, 1983). Pursuant to Rule 33(c), RCFC, defendant responds that the answer(s) to this interrogatory may be obtained from the documents previously made available to plaintiffs, and that the burden of ascertaining the answer(s) is substantially the same for the plaintiffs as it is for defendant. Defendant also objects to this interrogatory because the term "participated in" is not defined, rendering the interrogatory vague and ambiguous.

Without waiving these objections, defendant states that the following individuals, to varying degrees, were involved with and may have knowledge of the Standard Contract for Disposal of Spent Nuclear Fuel and/or High Level Radioactive Waste contained within the notice of proposed rulemaking at 48 Fed. Reg. 5458 (Fed. 4, 1983):

Robert Rosselli, Michael Lawrence, Robert Morgan, James Fiore, Eliot Winnick (deceased), James Cavanaugh.

**INTERROGATORY NO. 78**:

Identify the DOE personnel who reviewed the comments the agency received in response to the notice of proposed rulemaking Standard Contract for Disposal of Spent Nuclear Fuel and/or High Level Radioactive Waste contained within the notice of proposed rulemaking at 48 Fed. Reg. 5458 (Fed. 4, 1983).

**RESPONSE:**

Defendant objects to this interrogatory as overly broad and burdensome. Defendant is unable to identify all DOE personnel who may have reviewed the comments the agency received in response to the notice of proposed rulemaking Standard Contract for Disposal of Spent Nuclear Fuel and/or High Level Radioactive Waste contained within the notice of proposed rulemaking at 48 Fed. Reg. 5458 (Fed. 4, 1983). Defendant also objects that the interrogatory is vague and ambiguous, as the interrogatory does not define the time period of the "review" by DOE personnel (i.e., review prior to issuance of the final rule vs. review at during some subsequent time period).

Without waiving these objections, defendant states that the following individuals may have reviewed the comments the agency received in response to the notice of proposed rulemaking Standard Contract for Disposal of Spent Nuclear Fuel and/or High Level Radioactive Waste contained within the notice of proposed rulemaking at 48 Fed. Reg. 5458 (Fed. 4, 1983):

Robert Rosselli, Michael Lawrence, Robert Morgan, James Fiore, Eliot Winnick (deceased), James Cavanaugh.

**INTERROGATORY NO. 79:**

Identify the DOE personnel who were involved in DOE's decision to "intentionally [] not adopt any" suggestions made by commenters on the proposed Standard Contract that DOE "insert into the Standard Contract a minimum rate of SNF and/or HLW acceptance by which DOE would be bound to perform." Defendant's Motion for Partial Summary Judgment Regarding the Rate of Spent Nuclear Fuel Acceptance at 5.

**RESPONSE:**

Defendant objects to this interrogatory because the term "involved in" is not defined, rendering the interrogatory vague.

Without waiving this objection, defendant states that the following individuals may have knowledge of DOE's decision to intentionally not adopt any suggestions made by commenters on the proposed Standard Contract that DOE insert into the Standard Contract a minimum rate of SNF and/or HLW acceptance by which DOE would be bound to perform:

Robert Rosselli, Michael Lawrence, Robert Morgan.

**INTERROGATORY NO. 80:**

Identify the DOE personnel who drafted, developed, or participated in meetings between 1981 and 1983 regarding the Standard Contract for Disposal of Spent Nuclear Fuel and/or High Level Radioactive Waste contained within the final rule at 48 Fed. Reg. 16,590 (Apr. 18, 1983).

**RESPONSE:**

Defendant objects to this interrogatory as overly broad and burdensome. Defendant is unable to identify all DOE personnel who may have drafted, developed, or participated in meetings between 1981 and 1983 regarding the Standard Contract for Disposal of Spent Nuclear Fuel and/or High Level Radioactive Waste contained within the final rule at 48 Fed. Reg. 16,590 (Apr. 18, 1983). Pursuant to Rule 33(c), RCFC, defendant responds that the answer(s) to this interrogatory may be obtained from the documents previously made available to plaintiffs, and that the burden of ascertaining the answer(s) is substantially the same for the plaintiffs as it is for defendant. Defendant also objects to this interrogatory because the term "participated in" is not defined, rendering the interrogatory vague.

Without waiving these objections, defendant states that the following individuals, to varying degrees, were involved with and may have knowledge of the Standard Contract for Disposal of Spent Nuclear Fuel and/or High Level Radioactive Waste contained within the final rule at 48 Fed. Reg. 16,590 (Apr. 18, 1983):

Robert Rosselli, Michael Lawrence, Robert Morgan, James Fiore, Eliot Winnick (deceased), James Cavanaugh.

**INTERROGATORY NO. 81:**

Does DOE contend that, at the time it executed the Standard Contract with the Purchasers, DOE did not intend to accept SNF and/or HLW starting in 1998 at a rate sufficient for Purchasers not to "have to add any further storage facilities either on site or at another location[?]" Robert Morgan, Acting Director of Civilian Radioactive Waste Management, U.S. Department of Energy, Program Overview, in Proceedings of the 1983 Civilian Radioactive Waste Management Information Meeting, February 1984. State all facts that support your answer.

**RESPONSE:**

Defendant objects to this interrogatory because the term "intend" is not defined, rendering the interrogatory vague. Defendant also objects to this interrogatory because it fails to distinguish between program goals and contractual obligations. Further, defendant objects that what DOE may have intended is irrelevant. The language of the Standard Contract speaks for itself as to the obligations of the parties.

Without waiving these objections, defendant states that, assuming that the legal, political and technical hurdles identified in the 1985 Mission Plan could be overcome and assuming that the repository had begun operations, DOE had a programmatic goal to begin acceptance of SNF in 1998 at a rate that, in the aggregate, would obviate the need for additional at-reactor storage. Any of DOE's "desires" or programmatic goals that are not contained in the Standard Contract itself were not intended to be contractually binding or to create any enforcement obligations upon DOE. As Mr. Morgan explained at his deposition, DOE did not have a contractual "intent" to accept SNF and/or HLW at a rate sufficient for Purchasers not to have to add any further storage facilities, either on-site or at another location. These facts are also supported by the

language of the Standard Contract and the administrative record of rulemaking for the Standard Contract.

# EXHIBIT B

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CONNECTICUT YANKEE ATOMIC POWER COMPANY

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

No. 98-154C
(Senior Judge Merow)

**DEFENDANT'S WITNESS LIST**

Pursuant to the Court's pretrial order issued November 4, 1998, as amended by subsequent orders, defendant submits the following list of witnesses. This list does not contain witnesses that the defendant may choose to use for impeachment. Defendant reserves the right to amend this list as described in the Court's rules. Defendant also reserves the right to call all witnesses listed on plaintiff's witness list.

**Fact Witnesses**

Government, Contractor or former Government employees

1. Christopher S. Bajwa
Thermal Engineer
Nuclear Regulatory Commission
One White Flint North
11555 Rockville Pike
Rockville, Maryland 20852-2738

Mr. Bajwa will testify concerning the licensing process and requirements for fuel storage and transportation.

2. Lake Barrett
7805 Potters Mill Court
Derwood, Maryland 20855

Mr. Barrett, former Director of the Office of Civilian Radioactive Waste Management, will provide testimony concerning the Government's implementation of the Standard Contract, including acceptance rates, priority for shutdown reactors, the Annual Capacity Report ("ACR") issue resolution process conducted with industry representatives, the issuance and content of the ACRs, the issuance and content of the Acceptance Priority Rankings ("APR"), delivery commitment schedules, schedule negotiations, exchanges, and other relevant matters.

3. Edward Benz
JAI Corp.
955 L'Enfant Plaza
Suite 8000
Washington D.C.

Mr. Benz, based upon his position as a contractor for DOE, will testify about the technical aspects of the Standard Contract, including the ACR issue resolution process conducted with industry representatives and the technical and legal basis for acceptance rates contained in the ACRs/APRs.

4. Alan Brownstein
Senior Policy Advisor
Office of Civilian Radioactive Waste Management
United States Department of Energy
RW-2
1000 Independence Ave., SW
Washington, DC 20585

Mr. Brownstein will provide testimony concerning the Government's implementation of the Standard Contract, including acceptance rates, priority for shutdown reactors, the ACR issue resolution process conducted with industry representatives, the issuance and content of the

ACRs, the issuance and content of the APRs, delivery commitment schedules, schedule negotiations, the exchange approval process, and other relevant matters.

5. Patrice Bubar
Deputy Assistant Secretary Integrated Safety Management & Operation Oversight
Office of Environmental Management
United States Department of Energy
1000 Independence Ave., S.W.
Washington D.C. 20585

Ms. Bubar will testify regarding the development of DOE's plans to accept "greater-than-class-C" low-level radioactive waste from commercial utilities pursuant to the Low Level Radioactive Waste Policy Act Amendments of 1985 and other relevant matters.

6. James Carlson
4008 Glenrose St.
Kensington, MD 20895

Mr. Carlson, former Director of the DOE Waste Acceptance and Transportation Division, will testify about the implementation of the Standard Contract, including transportation issues, as well as other relevant matters.

7. Billy Cole
Senior Consultant
JAI Corp.
11350 Random Hills Road
Suite 440
Fairfax, VA 22030

Mr. Cole, based upon his position as a contractor for DOE, will testify about the Government's implementation of the Standard Contract, including the ACR issue resolution process conducted with industry representatives and the technical and legal basis for acceptance rates contained in the ACRs/APRs, the exchange approval process, and other relevant matters.

8. David Huizenga
Associate Assistant Deputy Administrator
Office of International Nuclear Safety and Cooperation
United States Department of Energy
1000 Independence Ave., S.W.
Washington D.C. 20585

Mr. Huizenga, former Deputy Assistant Secretary, Office of Environmental Management, will testify regarding the development of DOE's plans to accept "greater-than-class-C" low-level radioactive waste from commercial utilities pursuant to the Low Level Radioactive Waste Policy Act Amendments of 1985 that occurred during his tenure and other relevant matters.

9. Thomas H. Isaacs
Lawrence Livermore National Labs
7000 East Avenue
Lawrence Livermore, CA

Mr. Isaacs will provide testimony regarding the implementation of the Nuclear Waste Policy Act ("NWPA") and the 1987 Amendments to the NWPA, including the issuance and content of the 1985 Mission Plan and 1987 Mission Plan Amendment, and the issuance and content of the ACRs, and the technical, legal, and political obstacles to the implementation of the NWPA, and other relevant matters.

10. Christopher Kouts
Director
Office of Systems Analysis and Strategy Development
Office of Civilian Radioactive Waste Management
United States Department of Energy
RW-20E
1000 Independence Ave., SW
Washington, DC 20585

Mr. Kouts will testify about DOE's plans to begin waste acceptance in 2010, the fact that the Yucca Mountain repository is not being designed to accept "greater-than-class-c" low-level radioactive waste and other relevant matters.

11. Michael Lawrence
105605 N. Harrington Road
West Richland, Washington 99353

Mr. Lawrence, former Director of the Nuclear Waste Policy Act Project Office, will testify about the early implementation of the NWPA and the 1987 Amendments to the NWPA, including the issuance and content of the 1985 Mission Plan and 1987 Mission Plan Amendment, the issuance and content of the ACRs, the technical, legal, and political obstacles to the implementation of the NWPA, and the formation of the Standard Contract, including the intention of the parties concerning the rate of acceptance, priority for shutdown reactors, the delivery commitment schedule process as well as other relevant matters.

12. Pat McDuffie
1840 Monserrat Way
Vista, CA 92083

Mr. McDuffie, based upon his experience as a contractor for DOE, will provide testimony concerning the implementation of the Standard Contract, including the ACR issue resolution process conducted with industry representatives and the technical and legal basis for acceptance rates contained in the ACRs/APRs, and other relevant matters.

13. Ronald Milner
Chief Operating Officer
Office of Civilian Radioactive Waste Management
United States Department of Energy
RW-2
1000 Independence Ave., SW
Washington, DC 20585

Mr. Milner will testify about the implementation of the Standard Contract, including acceptance rates, priority for shutdown reactors, the ACR issue resolution process conducted with industry representatives, the issuance and content of the ACRs, the issuance and content of the APRs, delivery commitment schedules, schedule negotiations, exchanges, the fact that the Yucca Mountain repository is not being designed to accept "greater-than-class-c" low-level radioactive waste, and other relevant matters.

14. Robert L. Morgan
3001 NW Colonial Drive
Bend, OR 97701-5447

Mr. Morgan, former Director of the Nuclear Waste Policy Act Project Office, will provide testimony concerning the early implementation of the NWPA and the formation of the Standard Contract, including the intention of the parties concerning the rate of acceptance, priority for shutdown reactors, the delivery commitment schedule process, and other relevant matters.

15. Stephen C. O'Connor
Project Manager
United States Nuclear Regulatory Commission
One White Flint North
11555 Rockville Pike
Rockville, Maryland 20852-2738

Mr. O'Connor will provide testimony concerning the licensing process and requirements for fuel storage and transportation.

16. Tom Pollog
Office of Civilian Radioactive Waste Management
United States Department of Energy
RW-20E
1000 Independence Ave., SW
Washington, DC 20585

Mr. Pollog will testify about the implementation of the Standard Contract, including acceptance rates, priority for shutdown reactors, the ACR issue resolution process conducted with industry representatives, the issuance and content of the ACRs, the issuance and content of the APRs, delivery commitment schedules, schedule negotiations, exchanges, the fact that the Yucca Mountain repository is not being designed to accept "greater-than-class-c" low-level radioactive waste and other relevant matters. Mr. Pollog will also testify about the DOE database built upon the RW-859 data submitted by the utilities and used to develop fuel acceptance allocations.

17. Robert Rosselli
2631 Thoroughbroad Way
Richland, Washington 99352

Mr. Rosselli will provide testimony concerning the early implementation of the NWPA and the formation of the Standard Contract, including the intention of the parties concerning the rate of acceptance, the delivery commitment schedule process, and other relevant matters.

18. Benard Rusche
10 Chicorana Rd
West Columbia, SC 29169-7402

Mr. Rusche, former Director of the Office of Civilian Radioactive Waste Management, will provide testimony about the implementation of the NWPA and the 1987 Amendments to the NWPA, including the issuance and content of the 1985 Mission Plan and 1987 Mission Plan Amendment, the issuance and content of the ACRs, and the technical, legal, and political obstacles to the implementation of the NWPA, as well as other relevant matters.

19. Nancy Slater-Thompson
Office of Civilian Radioactive Waste Management
United States Department of Energy
RW-30E
1000 Independence Ave., SW
Washington, DC 20585

Ms. Slater-Thompson will testify about the Government's implementation of the Standard Contract, including acceptance rates, priority for shutdown reactors, the ACR issue resolution process conducted with industry representatives, the issuance and content of the ACRs, the issuance and content of the APRs, delivery commitment schedules, schedule negotiations, and the exchange approval process. Ms. Slater-Thompson may also testify about her knowledge of issues concerning the Standard Contract discussed by the utility industry and DOE during the 1985-1987 timeframe, while she was employed by the Edison Electric Institute, an industry trade association.

20. Beth Tomasoni
Contracting Officer
United States Department of Energy
ME-642
1000 Independence Ave., SW
Washington, DC 20585

Ms. Tomasoni will testify regarding the contract interpretation issues that arose during her tenure as contracting officer, as well as other relevant matters.

21. Victor Trebules
Director
Office Project Control and Monitoring
Yucca Mountain Site Characterization Office
United States Department of Energy
1551 Hillshire
Suite A
Las Vegas, Nevada 89134

Mr. Trebules will testify about the implementation of the NWPA and the 1987 Amendments to the NWPA, including the issuance and content of the 1985 Mission Plan and 1987 Mission Plan Amendment, the issuance and content of the ACRs, and the technical, legal, and political obstacles to the implementation of the NWPA, as well as other relevant matters.

22. David Zabransky
Office of Civilian Radioactive Waste Management
United States Department of Energy
RW-20E
1000 Independence Ave., SW
Washington, DC 20585

Mr. Zabransky will testify about the Government's implementation of the Standard Contract, including acceptance rates, priority for shutdown reactors, the ACR issue resolution process conducted with industry representatives, the issuance and content of the ACRs, the issuance and content of the APRs, delivery commitment schedules, schedule negotiations, exchanges, the fact that the Yucca Mountain repository is not being designed to accept "greater-than-class-c" low-level radioactive waste, and other relevant matters. Mr. Zabransky may also testify about his knowledge of issues concerning the Standard Contract discussed by the utility industry and DOE based upon his experience in the nuclear utility industry prior to his employment with DOE.

23. Member of Office of Nuclear Security and Incident Response
United States Nuclear Regulatory Commission
One White Flint North
11555 Rockville Pike
Rockville, Maryland 20852-2738

This individual will testify about the regulatory requirements relating to the security staffing and security hardware necessary for the storage of SNF or GTCC radioactive waste.

Non-Government personnel:

1. Thomas Bennet
Vice President and Chief Financial Officer
19 Midstate Drive, Suite 200
Auburn, Massachusetts 01501

Mr. Bennett will testify about Yankee Atomic's decision to transfer its spent nuclear fuel to dry storage. He will also testify regarding issues relating to Yankee Atomic's decommissioning and dismantlement project including issues relating to the construction of the ISFSI at Yankee Atomic's site.

2. John Buchheit
Duke Engineering
Senior Engineer, Nuclear Fuels
Duke Engineering and Services
400 Donald Lynch Boulevard
Marlboro, MA 01752

Mr. Buchheit, based upon his position at Duke Engineering and former position with a division of Yankee Atomic Electric Company, will provide testimony concerning the administration and performance of the Yankees' Standard Contracts, the delivery commitment schedule process, the Yankees' fuel and fuel management, the Yankees' decisions concerning fuel storage, the Yankees' decommissioning costs studies, and other related matters.

3. Rudy Grube
48 Reservoir Road
Westwood, MA 02090

Mr. Grube, based upon his former position with a division of Yankee Atomic Electric Company, will testify as to the inventory of Maine Yankee, Connecticut Yankee, and Yankee Atomic's spent fuel pools, as well as the characterization of the Yankees' spent fuel.

4. Andrew Kadak
253 Rumstick Point Road
Barrington, Rhode Island 02806

Dr. Kadak will provide testimony about the Yankees' approach to priority for shutdown reactors, delivery commitment schedules, schedule negotiations, exchanges, and "greater-than-class- C" low-level radioactive waste. Additionally, Mr. Kadak will testify concerning Yankee Atomic's decisions concerning fuel storage and other relevant matters.

5. Thomas LaGuardia
President
TLG Services, Inc.
148 New Milford Road East, Route 67
Bridgewater, CT 06752

Mr. LaGuardia will provide testimony regarding the decommissioning costs studies performed by TLG Services for Connecticut Yankee, Yankee Atomic and Maine Yankee.

6. Russell Mellor
President
Yankee Atomic Electric Company & Connecticut Yankee Atomic Power Company
362 Injun Hollow Road
East Hampton, Connecticut 06424-3099

Mr. Mellor will testify concerning the management of Yankee Atomic and Connecticut Yankee, their decisions concerning fuel storage, and other related matters.

7. Dr. E.E. Pilat
Fuel Management Department
Duke Engineering & Services
580 Main Street
Bolton, Massachusetts 01740

Dr. Pilat, based upon his position at Duke Engineering and former position with a division of Yankee Atomic Electric Company, will testify about the Yankees' attempts to exchange entitlements with other contract holders and to value exchanges.

8. Paul Plante
Principal Engineer
Maine Yankee Atomic Power Company
321 Old Ferry Road
Wiscasset, Maine 04578

Mr. Plante will testify as to the inventory of Maine Yankee, Connecticut Yankee and Yankee Atomic's spent fuel pools, as well as the characterization of the Yankees' spent fuel.

9. Frank Quinn
Fuel Procurement Manager
Duke Engineering & Services
580 Main Street
Bolton, Massachusetts 01740

Mr. Quinn, based upon his position at Duke Engineering and former position with a division of Yankee Atomic Electric Company, will testify about the Yankees' attempts to exchange entitlements with other contract holders and the Yankees' attempt to value exchanges.

10. E.C. Shyloski
Senior Project Manager
Bechtel SAIC Co., LLC
1180 Town Center Drive
Las Vegas, Nevada 89144

Mr. Shyloski will testify about the authenticity of documents relating to Connecticut Yankee's ISFSI project and other relevant matters.

**Expert Witnesses**

1. Edward C. Abbott
President
ABZ Incorporated
4451 Brookfield Corp. Drive
Suite 101
Chantilly, VA 20151

Mr. Abbott will provide expert testimony concerning the technical aspects of handling, storing and transporting spent nuclear fuel and other radioactive waste. Mr. Abbott's opinions and the bases for those opinions are set out in his expert witness report. The information specified in FRCP 26(a)(2)(B) is attached to Mr. Abbott's expert witness report.

2. Kenneth Blair
Principal, PE
Navigant Consulting
10000 Midatlantic Drive
Suite 300 East
Mt. Laurel, New Jersey 08054

Mr. Blair will provide expert testimony concerning the delays experienced in the construction of the ISFSI at Yankee Atomic's site. Mr. Blair's opinions and the bases for those opinions are set out in his expert witness report. The information specified in FRCP 26(a)(2)(B) is attached to Mr. Blair's expert witness report.

3. Daniel R. Fischel
President
Lexecon, Inc.
332 S. Michigan Avenue,
Chicago, IL 60604-4306.

Mr. Fischel will provide expert testimony regarding his expert analysis of plaintiffs' damage claim from an economic perspective. Mr. Fischel's opinions and the bases for those

opinions are set out in his expert witness report. The information specified in FRCP 26(a)(2)(B) is attached to Mr. Fischel's expert witness report.

4. R. Larry Johnson
Veris Consulting, LLC
11710 Plaza America Drive
Suite 300
Reston, VA 20190

Mr. Johnson will testify as an expert concerning the calculation of plaintiff's damages. Mr. Johnson's opinions and the bases for those opinions are set out in his expert witness report. The information specified in Federal Rule of Civil Procedure ("FRCP") 26(a)(2)(B) is attached to Mr. Johnson's expert witness report.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

Harold D. Lester, Jr.

HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7562
Fax: (202) 307-2503

OF COUNSEL:
KEVIN B. CRAWFORD
SCOTT DAMELIN
JOHN EKMAN
HEIDE L. HERRMANN
R. ALAN MILLER
STEFAN SHAIBANI
RUSSELL A. SHULTIS
VICTORIA STROHMEYER
MARIAN E. SULLIVAN
ELIZABETH THOMAS
Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530

MARTHA CROSLAND
JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

February 19, 2004

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 19th day of February, 2004, I caused to be served by United States mail (first class, postage prepaid) a copy of "DEFENDANT'S WITNESS LIST" addressed as follows:

JERRY STOUCK
Spriggs & Hollingsworth
1350 I Street, N.W.
Ninth Floor
Washington, D.C. 20005-3305

# EXHIBIT C

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

| | | |
|---|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY, | ) | |
| CONNECTICUT YANKEE ATOMIC POWER | ) | Case Nos.: |
| COMPANY, and MAINE YANKEE ATOMIC | ) | 98-126C |
| POWER COMPANY, | ) | 98-154C |
| Plaintiffs, | ) | 98-474C |
| | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

---

Courtroom 5

National Courts Building

717 Madison Place, N.W.

Washington, D.C.

Tuesday, August 3, 2004

Volume 16

The parties met, pursuant to the notice of the Judge, at 10:00 a.m.

BEFORE: THE HONORABLE JAMES F. MEROW

APPEARANCES:

ON BEHALF OF YANKEE ATOMIC ELECTRIC COMPANY, CONNECTICUT YANKEE ATOMIC POWER COMPANY and MAINE YANKEE ATOMIC POWER COMPANY:

JERRY STOUCK, ESQ.
ROBERT SHAPIRO, ESQ.
PETER J. SKALABAN, JR., ESQ.
VIVEK K. HATTI, ESQ
Spriggs & Hollingsworth
1350 I Street, N.W.
Washington, D.C. 20005
(202) 898-5800

ON BEHALF OF YANKEE ATOMIC ELECTRIC COMPANY, CONNECTICUT YANKEE ATOMIC POWER COMPANY:

MERRILL J. ATKINS, ESQ.
Assisting General Counsel
19 Midstate Drive
Auburn, Massachusetts 01560
(508) 721-3042

(Appearances Continued on the Next Page.)

APPEARANCES CONTINUED:

ON BEHALF OF MAINE YANKEE ATOMIC POWER COMPANY:
JOSEPH D. FAY, ESQ.
General Counsel
Maine Yankee
321 Old Ferry Road
Wiscasset, Maine 04578
(207) 882-5603

On Behalf of the Defendant:
HAROLD LESTER, JR., ESQ.
JOHN EKMAN, ESQ.
MARIAN E. SULLIVAN, ESQ.
HEIDE L. HERRMANN, ESQ.
R. ALAN MILLER, ESQ.
KEVIN B. CRAWFORD, ESQ.
RUSSELL SHULTIS, ESQ.
U.S. Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530
(202) 305-7562

***Index appears at end of transcript***

P R O C E E D I N G S

- - - - -

MR. MILLER: Your Honor, we appreciate the Court's indulgence in letting us get our thoughts together over the evening hours. I just have one additional question for Mr. Morgan on my direct examination.

THE COURT: Go ahead, whenever you're ready.

Whereupon--

ROBERT MORGAN

a witness, called for examination, having been previously duly sworn, was examined and testified further as follows:

DIRECT EXAMINATION (Resumed)

BY MR. MILLER:

Q. All right. Sir, if we could go back on Plaintiff's 678. Mr. Morgan, you recall we talked about this exhibit yesterday in your testimony?

A. Yes.

Q. And you recall this document, do you not?

A. Yes.

Q. Mr. Morgan, you recognize this, do you not, as the second page of the statement you made at the December 1983 information meeting?

A. Yes.

Q. All right, sir. In your mind, Mr. Morgan, what's the difference between a program goal and a contractual requirement?

A. They were totally separate. The contract was the agreement between DOE and the utilities, and the program goal was our best efforts at meeting the requirements of the Act. They were totally different.

MR. MILLER: I have no further questions, Your Honor. Thank you, Mr. Morgan.

THE COURT: Anything further?

MR. SHAPIRO: Nothing further, Your Honor.

THE COURT: All right. You're excused, and thank you very much for your testimony.

THE WITNESS: Thank you, sir.

MR. MILLER: Your Honor, the government calls, as its next witness, Mr. Benard Rusche.

Whereupon--

BENARD C. RUSCHE

a witness, called for examination, having been duly sworn, was examined and testified as follows:

THE COURT: Just take a seat.

DIRECT EXAMINATION

BY MR. MILLER:

Q. Are you all set, Mr. Rusche?

A. Raring to go.
Q. Would you state your full name for the record, please, sir?
A. My name is Benard Clements Rusche.
Q. All right, sir. And, Mr. Rusche, you are the former first presidentially appointed and confirmed director of the Office of Civilian Radioactive Waste Management, are you not?
A. Correct.
Q. We'll talk a little bit about that, as you might guess. But first, could you tell me what your college degree, what field that was in and when you obtained that?
A. My college degree was in Physics. I obtained a BS in Physics from Tennessee Polytechnic Institute in 1953.
Q. Okay, sir. And what was your first job after graduating from the Polytechnic Institute?
A. Two weeks after graduation, I joined the Savannah River site as an experimental physicist in the technical division.
Q. And what was the status of the Savannah River site at the time you joined the Savannah River?
A. Under construction, had been under construction for, I guess late '51, since late '51,

and the site, the first production reactor was scheduled to go critical by the end of the year in 1953. And the position, or the opportunity at which I became involved was an experimental physics effort to provide assurance that the physics calculations and predictions and designs for that first production reactor were acceptable.

Q. All right, sir. And did in fact the reactor go online as you had anticipated?

A. Indeed, it did, but we made special efforts to assure that it would by actually taking that first charge critical in the experimental reactor, so we had pretty high confidence.

Q. All right, sir. Well, how long did you remain employed at Savannah River?

A. I was at Savannah River from 1953 to '58.

Q. All right, sir. Would you just tell us what, if any, progression of jobs you had during that time period?

A. In 1958, I decided to take a slight diversion and join Lockheed Nuclear Products, which was an aircraft company's attempt to get itself into the nuclear business and spent two years and then returned to Savannah River and stayed at Savannah River until 1975.

Q. Okay, sir. And what job did you take up when you returned to Savannah River in about 1960, right?

A. Yes, yes.

Q. I'm sorry.

A. In 1960, the government had raised the prospect of possibly using heavy water reactors for some civilian purposes, as contrasted with the production purposes at Savannah River. And to that extent, a test reactor was built called the heavy water components test reactor, and I was assigned the physics responsibility for that design, along with a number of others, and subsequently, the operation of that reactor from the standpoint of its physics connotations.

Q. All right, sir.

A. And soon thereafter, it became evident that issues related to the environment were taking greater importance in the concept, or in the context of both the government and the general population.

And I was appointed, after about two or two and a half years in the HWCTR activity, as the director of a new study group which was aimed at both reactor safety dynamics, as well as environmental effects, and continued that for a couple years, as I

recall, and then formed a reactor safety group, which was associated with the activities of predicting operations, understanding the site and the interaction between the reactors, their effluence and their potential for other facts or factors, and continued in that rule until 1975.

I had, in that time, I guess I had a group of maybe about 25 or 30 physicists or chemists or engineers that were in the group that I was leading. And in 1975, I was invited by the Nuclear Regulatory Commission to join the Commission on a leave of absence from Dupont, and I was appointed the first director of the office of Nuclear Reactor Regulation, in which I stayed two years, as agreed.

Q. And what were your responsibilities as the first director of nuclear regulation for the NRC?

A. The Nuclear Regulatory Commission had just been born in the Energy Reorganization Act of 1970. I think it was either late '73 or '74. And it was to, the goal was first to attempt to establish a context in which commercial nuclear power could be regulated for the safety of the public and of the industry as well, and to develop the appropriate protocols, procedures, designs and so forth.

And I had the opportunity of being involved

in the licensing of a number of the commercial reactors.

Q. All right, sir. And so in 1977, you took on a different job, did you?

A. My Dupont colleagues invited me back to the company, as we had agreed, and I was appointed corporate director for health and safety for Dupont. Many of you would recognize -- I don't know, many of you are not as old as I am, but Dupont had an international reputation for its attention to health and safety matters.

And although this had been very obvious in much of the activity that Dupont did, in fact everything that I knew about, but the company decided it was time to make those efforts more visible, somewhat more coordinated, and so I was offered that opportunity and stayed in that job for a year.

Q. All right, sir. And at the end of that year, what happened?

A. I concluded that the pace was too slow and the opportunities were perhaps more enticing elsewhere. And the then governor of South Carolina, who later became the Secretary of Energy, Dr. Jim Edwards, invited me to come back to South Carolina and form an energy research institute to look at all