No. 00-697C
(Senior Judge Merow)

IN THE UNITED STATES COURT OF THE FEDERAL CLAIMS

WISCONSIN ELECTRIC POWER COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO MOTION *IN LIMINE* TO EXCLUDE FROM TRIAL DOCUMENTS PREPARED BY GOVERNMENT CONTRACTORS

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn. Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 307-0282
Fax: (202) 514-8624

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

RUSSELL A. SHULTIS
SONIA M. ORFIELD
MARIAN E. SULLIVAN
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

March 16, 2007

Attorneys for Defendant

**TABLE OF CONTENTS**

**PAGE(S)**

TABLE OF AUTHORITIES . . . . . ii

SUMMARY OF ARGUMENT . . . . . 1

I. PLAINTIFF'S RELIANCE ON PROVISIONS OF THE FEDERAL ACQUISITION REGULATIONS TO SUPPORT ITS ASSERTION THAN AN AGENCY RELATIONSHIP EXISTS BETWEEN DOE AND ITS CONTRACTORS IS INCORRECT . . . . . 2

II. DOCUMENTS PREPARED BY CONTRACTORS OF DOE ARE NOT ADMISSIBLE PURSUANT TO FRE 803(8)(A) . . . . . 6

III. FEDERAL RULE OF EVIDENCE 803(6) DOES NOT SUPPORT THE ADMISSION OF DOCUMENTS PRODUCED BY GOVERNMENT CONTRACTORS . . . . . 11

IV. CONTRACTOR DOCUMENTS DO NOT CONSTITUTE ADMISSIONS BY DOE PURSUANT TO FRE 801(d)(2)(C) . . . . . 12

V. CONTRACTOR DOCUMENTS DO NOT CONSTITUTE ADMISSIONS BY DOE PURSUANT TO FRE 801(d)(2)(D) . . . . . 15

VI. WEPCO'S ARGUMENT THAT DOCUMENTS ARE NOT HEARSAY WHERE THE GOVERNMENT HAS MANIFESTED AN ADOPTION OR BELIEF IN THEIR TRUTH UNDER FRE 801(d)(2)(B) IS MISPLACED . . . 16

VII. ANCIENT DOCUMENTS ADMISSIBLE UNDER FRE 803(16) ARE SUBJECT TO CHALLENGE AT TRIAL UNDER FRE 805 AS HEARSAY WITHIN HEARSAY . . . . . 17

VIII. UNTIL A DOCUMENT HAS THE IMPRIMATUR OF DOE, IT IS NOT A DOE STATEMENT . . . . . 17

CONCLUSION . . . . . 18

## TABLE OF AUTHORITIES

**CASES** **PAGES(S)**

Air Land Forwarders v. United States,
172 F.3d 1338 (1999) .......... 11, 12

Blue Water Environmental v. United States,
60 Fed. Cl. 48 (2004) .......... 13

Butler v. Southern Pacific Co.,
431 F.2d 77 (5th Cir. 1970) .......... 9

In re Cheney,
406 F.3d 723 (D.C. Cir. 2005) .......... 10

Christos v. United States,
48 Fed. Cl. 469 (2000) .......... 3, 4

Columbia First Bank, FSB v. United States,
58 Fed. Cl. 333 (2003) .......... 11, 17

El Paso Natural Gas Co. v. Neztsosie,
526 U.S. 473 (1999) .......... 10

Glendale Federal Bank, FSB v. United States,
39 Fed. Cl. 422 (1997) .......... 13

Kirk v. Raymark Indus., Inc.,
61 F.3d 147 (3rd Cir. 1995) .......... 13

Lockheed Martin Corp. v. United States,
50 Fed. Cl. 550 (2001), aff'd, 48 Fed. Appx. 752 (Fed. Cir. 2002) .......... 2, 3, 13

Morgan v. Brush Wellman, Inc.,
No. 3:94-CV-369, 2000 U.S. Dist. LEXIS 9898 (E.D. Tenn. Feb. 2000) .......... 4, 5

Pacific Gas & Electric Co. v. United States,
73 Fed. Cl. 333 (2006) .......... 7

Reid Brothers Logging Co. v. Ketchikan Pulp Co.,
699 F.2d 1292 (9th Cir. 1983) .......... 13

Reynolds v. Green,
184 F.3d 589 (6th Cir. 1999) .......... 8

**CASES** **PAGE(S)**

Rotec Industries, Inc. v. Mitsubishi Corp.,
215 F.3d 1246 (Fed. Cir. 2000) .................... 3, 15

Sabel v. Mead Johnson & Co.,
737 F. Supp. 135 (D. Mass. 1990) .................... 14

United States v. Lykes Bros. Steamship Co.,
432 F.2d 1076 (5th Cir. 1970) .................... 8, 9

United States v. New Mexico,
455 U.S. 720 (1982) .................... 5, 6

United States v. Rollins,
862 F.2d 1282 (7th Cir.1988) .................... 16

United States v. Smith,
499 U.S. 160, 111 S. Ct. 1180 (1991) .................... 11

Westfed Holdings, Inc. v. United States,
55 Fed. Cl. 544 (2003), aff'd in part, rev'd in part,
407 F.3d 1352 (Fed. Cir.2005) .................... 16

Yankee Atomic Electric Company v. United States,
No. 98-126C, 2004 WL 2450874 (Fed. Cl. Sept. 17, 2004) .................... 7

Zeus Enterprises, Inc. v. Alphin Aircraft, Inc.,
190 F.3d 238 (4th Cir. 1999) .................... 8

**STATUTES**

5 U.S.C. App. § 3 .................... 10

42 U.S.C. § 7234 .................... 10

48 C.F.R. § 17.601 .................... 2, 3

48 C.F.R. § 17.604 .................... 2, 3

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

WISCONSIN ELECTRIC POWER COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

No. 00-697C
(Senior Judge Merow)

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE FROM TRIAL EXHIBITS PREPARED BY GOVERNMENT CONTRACTORS**

Defendant, the United States, respectfully submits this reply to the response to the Government's Motion *In Limine* to Exclude from Trial Exhibits Prepared by Government Contractors, which plaintiff, Wisconsin Electric Power Company ("WEPCO"), filed on February 20, 2007.

SUMMARY OF ARGUMENT

WEPCO's response to the Government's motion *in limine* fails to establish that documents prepared by Government contractors are admissible under the Federal Rules of Evidence. Specifically, WEPCO failed to rebut the Government's arguments that the contractor documents are not records of a public agency and that the documents are not admissions of a party opponent. WEPCO failed to establish that an agency relationship exists between the Department of Energy ("DOE") and its contractors or that DOE contractors are authorized to make statements on behalf of DOE that satisfy the evidentiary foundation for purposes of an admission of a party opponent.

The determination of whether the relationship between contracting parties creates an agency relationship "focuse[s] on contract provisions [and] not day-to-day Government involvement in the performance of the subcontract." Lockheed Martin Corp. v. United States, 50 Fed. Cl. 550, 558-59 (2001) (involving M&O contractor) (citing United States v. Johnson Controls, Inc., 713 F.3d 1541, 1551 (Fed. Cir. 1983)), aff'd, 48 Fed. Appx. 752 (Fed. Cir. 2002). As set forth in the Government's motion *in limine*, the plaintiffs have not identified any testimonial or documentary evidence to support their contention that the M&O contracts create the necessary agency relationship to support admission of the contractor documents.

WEPCO also failed to establish that documents prepared by DOE contractors are admissible as business records. Although some of the documents may meet the requirements of "ancient documents" under the Federal Rules of Evidence, WEPCO cannot establish the proper foundation for admissibility of these documents. Finally, WEPCO incorrectly concludes that a number of the documents at issue are not DOE contractor documents.

## ARGUMENT

### I. PLAINTIFF'S RELIANCE ON PROVISIONS OF THE FEDERAL ACQUISITION REGULATIONS TO SUPPORT ITS ASSERTION THAT AN AGENCY RELATIONSHIP EXISTS BETWEEN DOE AND ITS CONTRACTORS IS INCORRECT

Plaintiffs cited two provisions from the Federal Acquisition Regulations ("FAR") for the apparent proposition that DOE management and operations ("M&O") contractors are "agents" of DOE. Pl.'s Resp. 4-5 (citing 48 C.F.R. §17.601; 48 C.F.R. §17.604). Although cited in its response brief, WEPCO fails to explain how these two provisions support its assertions regarding the agency relationship between DOE and its contractors. WEPCO also fails to cite to any legal precedent interpreting these two FAR provisions. In fact, courts have not found M&O

contracts themselves sufficient to create an agency relationship between the Government and its contractors.[1] Therefore, the M&O contracts by themselves do not create an agency relationship between the contractors and DOE in this case. See Rotec Indus. v. Mitsubishi Corp., 215 F.3d 1246, 1256 (Fed. Cir. 2000); Lockheed Martin Corp. v. United States, 550, 558-59 (2001).

In interpreting sections 17.601 and 17.604 of the FAR, this Court has found that, where it is not clear that the Government intends to create an agency relationship, and where a disclaimer of agency has been understood as present in the history of the contract, there is no agency relationship between DOE and the private parties with which it has an M&O contract. In Christos v. United States, 48 Fed. Cl. 469 (2000), former employees of a contractor were laid off because of a reduction in workforce pursuant the performance of an M&O contract with DOE.

[1] Section 17.601 of the FAR defines an M&O contract as "an agreement under which the Government contracts for the operation, maintenance, or support, on its behalf, of a Government-owned or –controlled research, development, special production, or testing establishment wholly or principally devoted to one or more major programs of the contracting Federal agency." 48 C.F.R. § 17.601 (2000).

In addition, section 17.604 of the FAR states that an M & O contract

> is characterized both by its purpose (see 17.601) and by the special relationship it creates between Government and contractor. . . . (b) Because of the nature of the work, or because it is to be performed in Government facilities, the Government must maintain a special, close relationship with the contractor and the contractor's personnel in various important areas (e.g., safety, security, cost control, site conditions). (c) [In addition, the] conduct of the work is wholly or at least substantially separate from the contractor's other business, if any[, and the] (d) work is closely related to the agency's mission and is of a long-term or continuing nature, and there is a need (1) to ensure its continuity and (2) for special protection covering the orderly transition of personnel and work in the event of a change in contractors.

48 C.F.R. § 17.604 (2000).

Id. at 473. The former employees sued the Government when the contractor diverted DOE funds marked as severance pay to the contractor's parent corporation, alleging that an agency relationship existed between DOE and the contractor such that DOE was obliged to compel the contractor to comply with severance pay provisions in the M&O contracts. Id. at 478. This Court held that the Government was not required to give severance pay to workers of its contractors because there was "no agency relationship in this case." Id. Focusing upon the written language in the contracts, the Court found that they did not contain "'reasonably clear indications' that the government intended to create [an agency] relationship," id., and, "[b]ecause personnel matters are something better handled by the contractor, who has daily contact with its employees and has closer supervision over them, . . . the government does not share a special relationship with employees of a party to an M&O contract in the area of personnel matters." Id. at 479. It recognized that, pursuant to FAR §17.604, that "special relationship" between the Government and the M&O contractor relates generally to "safety, security, cost control, [and] site conditions." Id. Nothing in FAR §17.604 identifies any "agency" or "special" relationship regarding policy matters or decision making.

Further, although, in an agency relationship, a principal is normally liable for the negligence of its employees, courts have found that, when the Government does not substantially supervise the day-to-day operations of its contractors under an M&O contract made pursuant to FAR §17.604, the Government cannot be liable for negligence on the part of the contractors. E.g., Morgan v. Brush Wellman, Inc., No. 3:94-CV-369, 2000 U.S. Dist. LEXIS 9898, at *36-39 (E.D. Tenn. Feb. 2000). In Morgan, the plaintiffs were employees or former employees of Government contractors who allegedly suffered from chronic beryllium disease as a result of exposure to toxins while they worked to

manufacture nuclear weapons at DOE plants. Id. at *1-2. The court in Morgan held that the United States could not be liable for negligence on the part of its contractors because the entities were independent contractors and thus were not "employee[s] of the government" or "employees of any federal agency" under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b). Morgan, 2000 U.S. Dist. LEXIS 9898, at *36-37.

In United States v. New Mexico, 455 U.S. 720 (1982), the Supreme Court addressed whether a state tax on three contractors who had performed management, maintenance, construction, and repair work pursuant to management contracts with DOE was unconstitutional under the Supremacy Clause, U.S. Const. Art. VI cl. 2, as a state tax "directly upon the United States." New Mexico, 455 U.S. at 736 (quoting Mayo v. United States, 319 U.S. 441, 447 (1943)). Although this case did not specifically cite to the two FAR provisions that WEPCO cites, the Supreme Court addressed the relationship between DOE and its management contractors. An underlying question in New Mexico was whether the private entities that were parties to the management contracts could be considered so closely linked to the Government that a tax upon their operations may be interpreted as a tax upon the Government itself. New Mexico, 455 U.S. at 736. In its interpretation of DOE management contracts, the Supreme Court stated that, because DOE agreements are a "unique species of contract, . . . the complex and intricate contractual provisions make it virtually impossible to describe the contractual relationship in standard agency terms." Id. at 723. In addition, the Court found that, "while subject to the general direction of the Government, the contractors are vested with substantial autonomy in their operations and procurement practices." Id. It recognized that, when deciding whether contractors can realistically be considered entities separate from the United States, it was crucial to remember that "the congruence of professional interests between the contractors

and the Federal Government is not complete; their relationships with the Government have been created for limited and carefully defined purposes." Id. at 740-41. Therefore, the Court found that the contractors of the Government under DOE management contracts were not intimately connected to the Government under principles of agency and were therefore taxable by the States. Id.

The FAR provisions that WEPCO cited fail to establish the requisite agency relationship required for the admissibility of the contractor documents under the Federal Rules of Evidence. As we demonstrated in our motion in limine, this Court and the Federal Circuit have repeatedly held that an M&O contractor is not an agent of the Government. Therefore, the existence of an M&O contract by itself, and the cited FAR provisions, are insufficient to render the contractor documents in this case admissible under the Federal Rules of Evidence.

## II. DOCUMENTS PREPARED BY CONTRACTORS OF DOE ARE NOT ADMISSIBLE PURSUANT TO FRE 803(8)(A)

Documents created by Government contractors do not constitute Government or public documents admissible under Federal Rule of Evidence ("FRE") 803(8)(A) as records, reports, statements, or data compilations of public offices or agencies setting forth the activities of the offices and agencies. In our motion regarding contractor documents, we cited to significant evidence that DOE does not consider its contractors to set or establish policy for DOE or to make decisions for DOE. Def.'s Mot. 1-6 (citing testimony of DOE senior officials Christopher Kouts, Alan Brownstein, Ronald Milner, and Lake Barrett).

WEPCO failed to rebut the extensive testimonial evidence from DOE officials that DOE does not consider its contractors to set, establish, or make policy or decisions for the agency. WEPCO's only effort to rebut the substantial testimony cited in the Government's motion was to

cite a limited portion of trial testimony in the Yankee cases from John Bartlett, a former OCRWM director. Pl.'s Resp. 5-6; App. to Pl.'s Resp. at 2. On its face, the trial testimony of Dr. Bartlett – who was a paid expert for the Yankee plaintiffs at the time of his trial testimony – fails to provide any support for the proposition that an agency relationship exists between DOE and its contractors. Further, in trial testimony that WEPCO failed to cite in its response, Dr. Bartlett admitted that M&O contractors work for DOE and that DOE itself is responsible for policy and programmatic development and decisions:

> Q: M&O contractors don't make [DOE] policy or program decisions, do they?
>
> A: Not at all.

Yankee Atomic July 14, 2004 Trial Tr. 715:3-5 (Bartlett) (App. 1-4). Further, Dr. Bartlett admitted that, when he was director of OCRWM, he did not normally review draft documents prepared by contractors, and that many contractor-prepared documents would never even reach the Director's office or even be reviewed by the OCRWM director. Yankee Atomic July 14, 2004 Trial Tr. 713:10-715:2 (Bartlett) (App. 1-4)

Given the significant evidence that these "contractor" documents do not constitute DOE documents and the lack of any evidence to the contrary, the underlying premise for WEPCO's evidentiary argument to support the admission of these documents at trial, and the rationale set forth by this Court for the admission of these documents pursuant to FRE 803(8)(A) in Yankee Atomic Electric Company v. United States, No. 98-126C, 2004 WL 2450874 (Fed. Cl. Sept. 17, 2004) (unpublished), the rationale of which was adopted by the Court in Pacific Gas & Electric Co. v. United States, 73 Fed. Cl. 333 (2006), should be reconsidered and rejected by the Court. With all due respect, this Court incorrectly concluded that Government contractors working

upon behalf of DOE were essentially "public agencies" for purposes of FRE 803(8)(A). The legal authorities that the Court cited were construed much too broadly and do not support its conclusion that FRE 803(8)(A) extended to Government contractors, because a contractor for DOE is not an "office" or "agency" of the Federal Government. The public records exception to the hearsay rule is justified by "the assumption that a public official will perform his duty properly and the unlikelihood that he will remember details independently of the record." Zeus Enterprises, Inc. v. Alphin Aircraft, Inc., 190 F.3d 238, 241 (4th Cir. 1999) (quoting Fed. R. Evid. 803(8), Advisory Committee's Note to Paragraph (8)) (emphasis added); see Reynolds v. Green, 184 F.3d 589, 596 (6th Cir. 1999) (quoting same). The Government contractors identified by WEPCO are not public officials as characterized by FRE 803(8)(A). WEPCO's argument in support of the admission of contractor documents effectively eliminates any distinction between the work conducted by a Federal employee within OCRWM and a worker employed by a private contractor performing work pursuant to a Government contract.

The cases that this Court cited, and upon which WEPCO relies, do not support the conclusion that Government contractors are the equivalent of public offices or agencies under FRE 803(8)(A). In support of this Court's finding that "public agency" should be construed broadly under FRE 803(8)(A), WEPCO cites United States v. Lykes Bros. Steamship Co., 432 F.2d 1076 (5th Cir. 1970), but Lykes fails to support that position. In Lykes, the Court addressed the admissibility of evidence in Federal courts under a former version of Federal Rule of Civil Procedure ("FRCP") 43(a), which read, in relevant part: "All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, or under rules of evidence applied in the courts of general jurisdiction of the state in which the United States court

is held."[2] See Butler v. Southern Pacific Co., 431 F.2d 77, 79 (5th Cir. 1970). The Court reviewed "several documents certified by the Department of Agriculture as being authenticated government documents, . . . all offered in evidence as official records under Title 28, U.S.C. § 1733, the government records statute." Lykes, 432 F.2d at 1079.

The documents at issue were prepared by Republic of Korea officials pursuant to specific Federal Government regulations setting forth the method for preparation of certain commodity shipment reports, the substantive contents required for each report, and the process for inspecting the commodity shipments that were detailed in the reports. Id. at 1079. Emphasizing the "liberal application" of FRCP 43(a), and citing specific Government regulations applicable to the commodity-related reports, the Court found that the duty to prepare the reports could be delegated, under Government regulations, to an independent agency or foreign government "without the report losing its character, when submitted through the appropriate United States agency, as a report of a 'department or agency of the United States.'" Id. The Court emphasized the existence of Government regulations – not present in the instant case – that permitted and authorized the delegation to prepare the reports. Lykes fails to provide support for WEPCO's broad interpretation of "public agency" under FRE 803(8)(A).

Finally, WEPCO's reliance on a statutory note, which states that, in limited circumstances, an employee of a M&O contractor shall be treated as a DOE employee, is misplaced and irrelevant to the argument that the contractor documents here are public records admissible under FRE 803(8)(A). On page 5 of its response brief, to support its assertion that "Congress has decreed that employees of M&O Contractors be deemed employees of DOE for

[2] In 1972, the general provisions of FRCP 43(a) dealing with the admissibility of evidence and competency of witnesses were deleted and superceded by the detailed provisions of the new Federal Rules of Evidence.

some purposes," WEPCO cites to a "note" to 42 U.S.C. § 7234, which states that:

> An officer or employee of a management and operating contractor of the Department of Energy, when serving a member of a group reviewing or advising on matters related to one or more management and operating contracts of the Department, shall be treated as an officer or employee of the Department for purposes of determining whether the group is an advisory committee within the meaning of section 3 of the Federal Advisory Committee Act (5 U.S.C. App.)

Pub.L. 108-136, Sec. 3112, Nov. 24, 2003, 117 Stat. 1743. Pursuant to 42 U.S.C. § 7234,

> the Secretary is authorized to establish in accordance with the Federal Advisory Committee Act such advisory committees as he may deem appropriate to assist in the performance of his functions. Members of such advisory committees, other than full-time employees of the Federal Government, while attending meetings of such committees or while otherwise serving at the request of the Secretary while serving away from their homes or regular places of business, may be allowed travel expenses, including per diem in lieu of subsistence, as authorized by section 5703 of Title 5 for individuals in the Government serving without pay.

WEPCO's reference to this statutory note is irrelevant because WEPCO did not identify any trial exhibits that were created or produced as a result of any work conducted by or matters related to any group established by DOE pursuant to the Federal Advisory Committee Act.[3] Second, the statutory note that WEPCO cites is limited to very specific circumstances related to activities of an advisory committee within the meaning of the Federal Advisory Committee Act.

---

[3] The term "advisory committee" under this statutory note "'means any committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or other subgroup thereof' 'established or utilized by the President' or an agency for the purpose 'of obtaining advice.'" In re Cheney, 406 F.3d 723, 725-26 (D.C. Cir. 2005) (quoting 5 U.S.C. App. § 3). Plainly, WEPCO's reference to DOE contractor documents does not fall within the context of these advisory committees. In fact, Congress' decision to treat M&O contractor employees as Federal employees in some instances indicates, by implication, that M&O contractor employees are not considered Federal employees in other instances. El Paso Natural Gas Co. v. Neztsosie, 526 U.S. 473, 487 (1999) (explaining that Congress probably failed to provide for tribal-court removal in Price-Anderson Act actions because Congress never expected the situation to arise); see United States v. Smith, 499 U.S. 160 (1991)

On its face, this statutory note is limited to treating M&O contractor employees as DOE employees only for purposes of determining whether a group – reviewing or advising on matters related to M&O contracts – is an advisory committee within the meaning of the Federal Advisory Committee Act. WEPCO, without offering any additional explanation, attempts to construe the language of this note to support its argument that contractor documents are public records under FRE 803(8)(A). In fact, reference to this note contradicts WEPCO's argument that M&O contractor employees essentially function as DOE employees, because the note identifies and carves out a very specific situation under which a contractor may actually be treated as a DOE employee.

## III. FEDERAL RULE OF EVIDENCE 803(6) DOES NOT SUPPORT THE ADMISSION OF DOCUMENTS PRODUCED BY GOVERNMENT CONTRACTORS

As explained in the Government's motion in limine, to the extent that WEPCO asserts that the Court can admit the "contractor" documents as "business records" pursuant to FRE 803(6), the United States Court of Appeals for the Federal Circuit's decision in Air Land Forwarders v. United States, 172 F.3d 1338 (1999), establishes that the contractor documents cannot be admitted on that basis. This Court adopted the Air Land Forwarders approach in Columbia First Bank, FSB v. United States, 58 Fed. Cl. 333 (2003), finding that, "when a document produced by a third party is incorporated into the business records of another entity this circuit applies a two-factor standard of reliability in order to admit a record that has an otherwise appropriate foundation." Id. at 339. It further found that "[t]hird party documents," such as documents created by DOE's contractors, "kept in the records of a party in this case must be shown to have been received and incorporated, to have been relied upon, and to have indicia of trustworthiness to meet the Air Land Forwarders test for the business records exception in

Fed. R. Evid. 803(6)" and that "[t]he proponent of such evidence at trial must show that this test has been met to overcome a hearsay objection." Id.. Under the applicable case precedent, there is no basis for admitting the "contractor" documents under FRE 803(6).

FRE 803(6) provides, in relevant part:

> (6) Records of Regularly Conducted Activity. – A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

FRE 803(6) (emphasis added). Yet there is no witness identified on either WEPCO or the Government's witness list who can testify that the contractor documents at issue were prepared by a person with knowledge, that the documents were prepared in the regular course of business, or that it was the regular practice of that business activity to make the particular contractor document. Absent a qualified witness, WEPCO's contention that the contractor documents are admissible under FRE 803(6) should be rejected.

IV. CONTRACTOR DOCUMENTS DO NOT CONSTITUTE ADMISSIONS BY DOE PURSUANT TO FRE 801(d)(2)(C)

WEPCO's claim that documents generated by contractors to DOE are admissible pursuant to FRE 801(d)(2)(C) is incorrect. With regard to subdivision (C), WEPCO has not identified any testimony or documents to establish that the DOE contractors were "authorized" to speak for the Government under FRE 801(d)(2)(C) and, further, have not identified any cases in which a Government contractor was found to be "authorized" to make admissions upon behalf

of the Government.

FRE 801(d)(2)(C) treats as a statement as non-hearsay if it is "offered against a party" and is "a statement by a person authorized by the party to make a statement concerning the subject." See Kirk v. Raymark Indus., Inc., 61 F.3d 147, 164 (3rd Cir. 1995) ("Rule 801(d)(2)(C) requires that the declarant be an agent of the party-opponent against whom the admission is offered").[4] This Court has found in numerous cases that maintenance and operating ("M&O") contractors are not agents of the United States agency with which they have a contract. See Blue Water Environmental v. United States, 60 Fed. Cl. 48, 52 (2004); Lockheed Martin Corp. v. United States, 50 Fed. Cl. 550, 558-59 (2001), aff'd, 48 Fed. Appx. 752 (Fed. Cir. 2002); Defendant's Motion *In Limine* To Exclude From Trial Documents Prepared By Government Contractors, at 6-10 (filed January 31, 2007) (discussing whether M&O contractors constitute "agents" of Federal agency).

WEPCO asserts that DOE "authorized" its M&O contractor to make statements

---

[4/] WEPCO, citing to this Court's decision in Glendale Federal Bank, FSB v. United States, 39 Fed. Cl. 422 (1997), asserts that "the person 'authorized to speak' need not qualify as an 'agent' under" FRE 801(d)(2)(C). Pl.'s Resp. 11-12. As explained in the Government's motion in limine, to the extent that the Court in Glendale found that the speaker at issue need not be an "agent" of the party, that finding conflicts with the weight of authority regarding FRE 801(d)(2)(C). WEPCO failed to show that the DOE contractor's views are the views of the Government or that they were adopted by the Government. Unlike Glendale, there was not any explicit authorization for any of the contractors at issue to speak on behalf of DOE prior to the contractor documents at issue being officially approved by DOE and issued as DOE documents.

In the other case that WEPCO cites as support that agency is not a requirement for the application of FRE 801(d)(2)(C), Reid Brothers Logging Co. v. Ketchikan Pulp Co., 699 F.2d 1292 (9th Cir. 1983), the court's findings and analysis focused on the fact that individual at issue was a company employee, that he was given extensive access and guidance in order to prepare a report, and that the report was presented to company executives and circulated to company officers and managers. Id. at 1306. Neither Glendale nor Reid Brothers supports WEPCO's argument that DOE contractors are authorized to make statements that qualify as admissions under FRE 801(d)(2)(C).

concerning the subjects in the documents that it seeks to admit as "party admissions" of DOE in this case. Pl. Resp. 9-12. Even for those matters that DOE specifically requested the M&O contractor to consider and upon which it requested the contractor to report do not render the M&O contractor an "agent" of DOE:

> In addition to Mead Johnson's apparent lack of control, there is no evidence that the consultants were empowered to speak or act on Mead Johnson's behalf. . . . Mead Johnson never expressed an intent to be bound by the recommendations of the outside experts, nor did it even authorize or request them to prepare a written report on their findings and recommendations.

Sabel v. Mead Johnson & Co., 737 F.Supp. 135, 139 (D. Mass 1990) (emphasis added).

WEPCO also asserts that some of the documents are admissible on their face under FRE 801(d)(2)(C) because some of them contain language providing that "[t]his report was prepared as an account of work sponsored by an agency of the United States Government." Pl. Br. 12. Although WEPCO asserts that this statement is tantamount to an assertion that "this report is authorized by the United States Government," Pl.'s Resp. 12, the statement to which WEPCO refers merely reflects that the contractor preparing the document did so pursuant to a contract. It says nothing about the M&O contractor being "authorized" as an "agent" of the Government to prepare reports or statements. Further, under FRE 801(d)(2), the "contents of the statement shall be considered but are not alone sufficient to establish the declarant's authority under subdivision (C)." Here, in some instances, WEPCO relies on language in draft documents, without any other evidence or testimony, to suggest that the documents are actually final and "authorized" by DOE. WEPCO cannot meet its burden of establishing authorization simply through the documents themselves.

In the case at hand, WEPCO has not identified any evidence to show that the DOE

contractor's views are the views of the Government or that they were adopted by the Government. The Government receives numerous reports and statements from contractors and could not possibly adopt or agree with all recommendations or scenarios promoted in these documents. Further, M&O contractors are not "agents" of the United States. The Court should find the challenged documents are not admissible under FRE 801(d)(2)(C).

## V. CONTRACTOR DOCUMENTS DO NOT CONSTITUTE ADMISSIONS BY DOE PURSUANT TO FRE 801(d)(2)(D)

WEPCO also claims that the contractor documents at issue may be admissible under Federal Rule of Evidence 801(d)(2)(D) under the theory that "an agency relationship can be created by contract." Pl. Resp. 14. However, WEPCO has not identified or cited to any contract creating an agency relationship between DOE and its M&O contractors. Instead, WEPCO simply relies upon the fact that DOE has entered into contracts with its M&O contractors in an attempt to create an agency relationship. Indeed, WEPCO's reliance upon Rotec Industries, Inc. v. Mitsubishi Corp., 215 F.3d 1246 (Fed. Cir. 2000), undercuts its own argument.

In Rotec, the Federal Circuit affirmed the trial court's rejection that certain statements fell within FRE 801(d)(2)(D) and explained that the court must decide "whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal." Id. at 1256 (citations omitted). Here, WEPCO has failed to demonstrate that DOE has the right "to control the manner or method" in which its M&O contractors carried out their work. Consequently, WEPCO's contention that the DOE contractor documents are admissible under FRE 801(d)(2)(D) is without merit. Absent such evidence, WEPCO has failed to satisfy its burden of proof regarding admissibility under FRE 801(d)(2)(D).

VI. WEPCO'S ARGUMENT THAT DOCUMENTS ARE NOT HEARSAY WHERE THE GOVERNMENT HAS MANIFESTED AN ADOPTION OR BELIEF IN THEIR TRUTH UNDER FRE 801(d)(2)(B) IS MISPLACED

WEPCO next claims, without any legal citation or authority, that the fact that DOE has made certain documents publicly available constitutes a manifestation of "an adoption or belief in the truth of such documents" and are therefore admissible pursuant to FRE 801(d)(2)(B). Pl.'s Resp. 14. FRE 801(d)(2)(B) provides that a statement is not hearsay where it is offered against a party and is "a statement of which the party has manifested an adoption or belief in its truth." This Court has rejected the application of FRE 801(d)(2)(B) where the party seeking to introduce the evidence failed to establish either an agency relationship or adoption by the agency:

> Beyond its conclusory argument in briefing that Westfed relied upon the statements of these consultants, defendant did not demonstrate a manifestation of adoption. In order for a statement to be admitted as an adoptive admission, the proponent of the evidence must show "a manifestation of [the other] party's intent to adopt another's statements, or evidence of the party's belief in the truth of the statements . . ." United States v. Rollins, 862 F.2d 1282, 1296 (7th Cir.1988). Absent a showing of either an agency relationship or adoption, the statements made by these individuals and entities were not admitted as party admissions.

Westfed Holdings, Inc. v. United States, 55 Fed. Cl. 544, 565 (2003), aff'd in part, rev'd in part, 407 F.3d 1352 (Fed. Cir. 2005). As in Westfed, WEPCO's conclusory statement, unsupported by any case law, that certain exhibits prepared by DOE's M&O contractors are admissible under FRE 801(d)(2)(B), absent a showing that DOE had an agency relationship with these contractors or otherwise adopted the contractor's statements, should be rejected.

VII. ANCIENT DOCUMENTS ADMISSIBLE UNDER FRE 803(16) ARE SUBJECT TO CHALLENGE AT TRIAL UNDER FRE 805 AS HEARSAY WITHIN HEARSAY

WEPCO identified seven contractor documents as "ancient documents." Pursuant to FRE 803(16), statements in ancient documents may not be excluded by the hearsay rule if the

document has been in existence 20 years or more and the authenticity of the document is established. However, hearsay statements that are contained within ancient documents, which themselves may be admissible pursuant to FRE 803(16), are not automatically admissible. In Columbia First Bank, FSB v. United States, 58 Fed.Cl. 333 (2003), the Court concluded that it "will consider at trial Fed. R. Evid. 805 hearsay within hearsay challenges to hearsay statements incorporated within documents admitted under Fed. R. Evid. 803(16)." Id. at 338. If the documents identified as ancient documents are admitted under FRE 803(16), the Government reserves its right to assert FRE 805 hearsay challenges to statements contained within the documents.

## VIII. UNTIL A DOCUMENT HAS THE IMPRIMATUR OF DOE, IT IS NOT A DOE STATEMENT

WEPCO incorrectly concluded that five documents identified in the Government's motion in limine are not documents prepared by DOE contractors. For example, one of the documents cited by WEPCO is PX 131, the July 1987 Annual Review of the Adequacy of the 1.0 mill per KWh Waste Disposal Fee. The cover page of the document states "Prepared for the U.S. Department of Energy Under Contract DE-AC06-76RLO 1830 Pacific Northwest Laboratory Operated for the U.S. Department of Energy by Batelle Memorial Institute." (emphasis added).

Further, the documents identified by WEPCO lack any indicia that DOE has adopted the statements in the documents as their own. Indeed, one of the documents (PX 121), prepared by a contractor to DOE in 1984, is marked on its cover page as a draft document. Second, all five documents identified by WEPCO are clearly identified on the face of the document as the work product of DOE contractors.

## CONCLUSION

For the foregoing reasons, the Government requests that the Court grant its motion *in limine* to exclude from trial exhibits prepared by Government contractors.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/ Jeanne E. Davidson
JEANNE E. DAVIDSON
Director

s/ Harold D. Lester, Jr. by Scott R. Damelin
HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7583
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

MARIAN E. SULLIVAN
RUSSELL A. SHULTIS
SONIA M. ORFIELD
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice

March 16, 2007

Attorneys for Defendant

# APPENDIX

**Yankee Atomic v. U.S. No.: 98-126C July 14, 2004**

**Page 574 to Page 793**

CONDENSED TRANSCRIPT AND CONCORDANCE
PREPARED BY:

*HERITAGE REPORTING CORPORATION*
*1220 L Street, N.W.*
*Suite 600*
*Washington, DC 20005*
*Phone: 202-628-4888*

A 1

Page 574

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

YANKEE ATOMIC ELECTRIC COMPANY, CONNECTICUT YANKEE ATOMIC POWER COMPANY, and MAINE YANKEE ATOMIC POWER COMPANY,
Plaintiffs,
v.
THE UNITED STATES,
Defendant.

Case Nos.: 98-126C, 98-154C, 98-474C, Consolidated

Courtroom Number 7

National Courts Building
717 Madison Place, N.W.
Washington, D.C.

Wednesday, July 14, 2004

VOLUME 3

The parties met, pursuant to the notice of the Judge, at 10:01 a.m.

BEFORE: THE HONORABLE JAMES F. MEROW

Page 575

APPEARANCES:

ON BEHALF OF YANKEE ATOMIC ELECTRIC COMPANY, CONNECTICUT YANKEE ATOMIC POWER COMPANY and MAINE YANKEE ATOMIC POWER COMPANY:

JERRY STOUCK, ESQ.
ROBERT SHAPIRO, ESQ.
PETER J. SKALABAN, JR., ESQ.
MICHAEL R. MINER, ESQ.
VIVEK H. HATTI, ESQ.
Spriggs & Hollingsworth
1350 I Street, N.W.
Washington, D.C. 20005
(202) 898-5800

ON BEHALF OF YANKEE ATOMIC ELECTRIC COMPANY and CONNECTICUT YANKEE ATOMIC POWER COMPANY

GERALD GARFIELD, ESQ.
General Counsel
Day, Berry & Howard, LLP
CityPlace I
Hartford, Connecticut 06103
(860) 275-0182

Page 576

APPEARANCES CONTINUED:

ON BEHALF OF MAINE YANKEE ATOMIC POWER COMPANY:

JOSEPH D. FAY, ESQ.
General Counsel
Maine Yankee
321 Old Ferry Road
Wiscasset, Maine 04578
(207) 882-5603

ON BEHALF OF THE DEFENDANT:

HAROLD LESTER, JR., ESQ.
JOHN EKMAN, ESQ.
MARIAN E. SULLIVAN, ESQ.
HEIDE L. HERRMANN, ESQ.
R. ALAN MILLER, ESQ.
KEVIN B. CRAWFORD, ESQ.
RUSSELL SHULTIS, ESQ.
U.S. Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530
(202) 305-7562

** Index appears at the end of transcript **

Page 577

P R O C E E D I N G S

MR. SHAPIRO: Your Honor, we're ready to proceed with Dr. Bartlett.

THE COURT: Good.

MR. SHAPIRO: The plaintiffs call John Bartlett.

THE COURT: Okay.

Whereupon,

JOHN WESLEY BARTLETT

was called as a witness, and, having first been duly sworn, was examined and testified as follows:

MR. SHAPIRO: Your Honor, once again, we have a notebook with some documents we would like to provide the witness and to provide copies to you as well, and to government counsel.

I know we have the fan, Your Honor, which is pleasant. But, obviously, if you have any trouble hearing, let us know.

THE COURT: I'm more worried about the reporter.

DIRECT EXAMINATION

BY MR. SHAPIRO:

Q Would you state your name for the record, please.

A My name is John Wesley Bartlett.

A 2

Page 710

you wouldn't be disrupting operations?
A You would generally not operate that way for optimal purposes at the reactor. You would campaign more on an 18 month or more schedule.
Q And you would want to pick up more than 1 cask –
A Yes.
Q – worth of fuel, wouldn't you?
A Yes. Yes.
Q Okay. I want to talk to you now, sir, about what you had been discussing or you had discussed on direct examination about eliminating the need for additional at-reactor storage.
When you were director of OCRWM, you did not do any calculation of what rate of acceptance would be necessary in order to preclude the need for additional at-reactor storage, correct?
A I did not, no.
Q And now as the Yankees' expert witness, you have not done any calculation of what rate of acceptance would be necessary to preclude the need for additional at-reactor storage; is that correct?
A I have not, no.
Q Okay. You have not done any calculation of what rate of acceptance would be necessary to preclude

Page 711

the need for additional at-reactor storage and work off the backlog, right?
A I have not done any direct calculation, but I would refer you back to the mission plan which established a 3,000-ton per year rate of acceptance to avoid the buildup of must-move fuel.
Q And you're talking about the 1985 mission plan?
A Yes.
Q You've told us today – and I'm going to come back to that in a second. You've told us today that 3,000 MTU acceptance rate that you advocate is designed, and I think this dovetails with what you're saying, is designed to remove part of the backlog that exists because of continuing generation of spent fuel.
A Yes.
Q Have I summarized that correctly?
A Yes.
Q The aggregate amount of fuel that's produced by all reactors each year is actually 2,000 MTU per year.
A That's right.
Q So that's what contributes to the backlog; is that right?
A That's right. Prior years of operation.

Page 712

Q But in order to eat away at that backlog, DOE would really just need to make sure that they accept more than 2,000 MTU per year; is that correct?
A An appropriate rate to maintain receipt of constant – or current generation and eat away the backlog is 3,000 MTU per year.
Q I understand that you feel that way, sir.
A Yes.
Q But what I actually want to find out about is, if DOE were to make sure that they accepted just more than 2,000 MTU per year, they would be eating away at the backlog, wouldn't they?
A At a very minor rate.
Q But they would?
A Yes.
Q So if they accepted, say, 2,100 MTU per year, they would be eating away at the backlog?
A At a very minor rate, yes.
Q They would be eating away at the backlog if they accepted, say, 2,500 MTU per year; is that right?
A Yes.
Q I want to ask you, sir, about one of the documents that you discussed with Mr. Shapiro. So if I could have you look back at your binder of exhibits that Mr. Shapiro gave you. Do you still have that?

Page 713

A I don't have that.
MS. HERRMANN: Mr. Shapiro, do you still have that?
BY MS. HERRMANN:
Q And I'm going to ask you, sir, about tab 1. Are you with me?
A Almost.
Q Okay. Take your time. I'm sorry.
A I'm stuck. Tab 1.
Q Okay. Looking at tab 1, which is Plaintiffs' Exhibit 175, the Civilian Radioactive Waste Management System Throughput Rate Analysis?
A Yes.
Q Does this document, sir – does this – let me put it this way: Is this document a system study –
A Yes, it is.
Q – as you defined it?
A Yes, it is.
Q Yes, it is. Am I correct that your testimony about this document was that you reviewed a draft of this document prior to the end of your tenure as director?
A No.
Q You –

A 3

Page 714

A I said it was being prepared during my tenure.
Q But you didn't review it while you were director of OCRWM?
A It wasn't completed.
Q So normally you wouldn't review drafts –
A That's right.
Q – of documents while you're director?
A That's right.
Q This was drafted by an M&O, I think you said, correct?
A Yes.
Q So normally you wouldn't review drafts of what the M&O contractors are preparing?
A Normally what is done are periodic program reviews where the staff report status of work and in-progress work, and that is the means by which I keep informed, would keep informed of where things stand.
Q But you wait until it's a final product from the M&O?
A Yes. And a many of these documents I don't see. They don't come to the director's office.
Q I see. The contractor's office – the contractor document might not even come to you.

Page 715

A That's right.
Q I see.
M&O contractors don't make policy or program decisions, do they?
A Not at all.
Q I would like to – let me clarify one other thing. This document is not – Plaintiffs' Exhibit 175 is not one of the documents that you looked at in forming your expert opinion for this case, correct?
A That's right.
Q I want to look now at page Roman Numeral i of this document. It's a few pages in. And it's entitled Executive Summary.
A I.
Q Are you there, sir?
A Yes, I am.
Q I'm looking on that first paragraph under Introduction. A little more than halfway through the paragraph, there is a sentence which begins: The rate at which.
Let me know when you're there.
A The rate at which SNF is accepted at reactors?
Q That's it.
A Yes.

Page 716

Q That section reads: The rate at which SNF is accepted at reactors may differ from the rate at which SNF is received at, or shipped from the MRS, and the rate at which SNF is received at the repository, depending on how the system is operated. Steady state throughput rate is defined as the maximum annual rate of emplacement of SNF at the repository and does not include high-level waste, HLW.
Do you see that, sir?
A Yes.
Q You agreed with that statement when you were the director of OCRWM, didn't you?
A Oh, yes.
Q If you just flip one page, sir, to ii.
A Uh-huh.
Q Right under Objectives. That paragraph begins: In the past, a system throughput rate of 3,000 MTU per year has been assumed for planning purposes and for conceptual design of the major facilities in the Civilian Radioactive Waste Management System.
Are you with me?
A Yes.
Q You agreed with that statement at the time you were director of OCRWM, didn't you?

Page 717

A Yes.
Q I would like you to look now at iii, just one more page in.
A Yes.
Q Do you understand this report that we're looking at in Plaintiffs' Exhibit 175 to present an analysis of a reference scenario of acceptance and several alternative scenarios?
A That's exactly right.
Q And that reference scenario was as depicted here on page iii, correct?
A Yes.
Q So with a 1998 start, if you look at that chart just at the top of the page?
A Yes.
Q I want you to just confirm this for me. I see a – and you can check me on this if you like. There is another page that gives us a much better breakdown, which I'll point you to. But I believe that I see a 400, a 600 and then a 900 rate for the first 9 years.
Do you see that, sir?
A The little bars.
Q The little bars going across, right.
A That's right.

A 4

CERTIFICATE OF FILING

I hereby certify that, on March 16, 2007, a copy of the foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE FROM TRIAL EXHIBITS PREPARED BY GOVERNMENT CONTRACTORS " was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Scott R. Damelin