No. 00-697C
(Senior Judge Merow)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

WISCONSIN ELECTRIC POWER COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S "NOTICE OF DEPOSITION AND TRIAL TESTIMONY DESIGNATIONS" AND, IN THE ALTERNATIVE, MOTION *IN LIMINE* TO PRECLUDE RELIANCE UPON THOSE DESIGNATIONS AS SUBSTANTIVE EVIDENCE PURSUANT TO RCFC 32(a) AND FEDERAL RULE OF EVIDENCE 801(d)(2)

---

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-7583
Fax: (202) 307-2503

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

SONIA M. ORFIELD
RUSSELL A. SHULTIS
MARIAN E. SULLIVAN
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

March 26, 2007

Attorneys for Defendant

TABLE OF CONTENTS

PAGE

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S "NOTICE OF DEPOSITION AND TRIAL TESTIMONY DESIGNATIONS" AND, IN THE ALTERNATIVE, MOTION *IN LIMINE* TO PRECLUDE RELIANCE UPON THOSE DESIGNATIONS AS SUBSTANTIVE EVIDENCE PURSUANT TO RCFC 32(a) AND FEDERAL RULE OF EVIDENCE 801(d)(2) . . . . . . . . . . . . . . . . . . . . . 1

DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. WEPCO HAS FAILED TO MAKE A PROPER SHOWING THAT ANY OF THE TESTIMONY IT HAS DESIGNATED MAY BE PROPERLY ADMITTED PURSUANT TO FEDERAL RULE OF EVIDENCE 801(d)(2) . . . . . . . . . . . . . 2

II. WEPCO CANNOT ESTABLISH AN INDEPENDENT BASIS FOR THE ADMISSION OF THE DESIGNATED TESTIMONY PURSUANT TO FEDERAL RULE OF EVIDENCE 801(d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A. WEPCO Cannot Establish That Messrs. Morgan, Lawrence, Rusche and Dreyfus Are 'Agents' Of The Government As Is Necessary To Allow The Admission Of Their Deposition Testimony Pursuant To FRE 801(d)(2)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

B. Messrs. Benz, Cole, and McDuffie, As Contractor or Former Contractor Employees, Are Not Employed By DOE For The Purposes Of The Admission Of Their Prior Testimony Pursuant To FRE 801(d)(2)(D) . . . 6

III. WEPCO HAS NOT MADE THE PROPER SHOWING AS TO WHY DESIGNATED TESTIMONY SHOULD BE ALLOWED TO BURDEN THE RECORD, PARTICULARLY FOR WITNESSES WHO ARE SCHEDULED TO TESTIFY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

IV. CONTRARY TO WEPCO'S CONCERNS, THE GOVERNMENT HAS PROPERLY LODGED OBJECTIONS TO THE TESTIMONY DESIGNATED AND SOUGHT TO COMPLETE THOSE DEPOSITION DESIGNATIONS WITH ITS COUNTER-DESIGNATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

TABLE OF AUTHORITIES

**CASES**

Angelo v. Armstrong World Industrial,
11 F.3d 957 (10th Cir. 1993) . . . . . . . . . . 12

Chemtool, Inc. v. Lubrication Techs., Inc.,
148 F.3d 742 (7th Cir. 1998) . . . . . . . . . . 7

Collins v. Wayne Corp.,
621 F.2d 777 (5th Cir. 1980) . . . . . . . . . . 3

Kirk v. Raymark Indus., Inc.,
61 F.3d 147 (3d Cir. 1995) . . . . . . . . . . 3

Lockheed Martin Corp. v. United States,
50 Fed. Cl. 550 (2001), aff'd, 48 Fed. Appx. 752 (Fed. Cir. 2002) . . . . . . . . . . 7

Pacific Gas & Electric Co. v. United States,
73 Fed. Cl. 333 (2006) . . . . . . . . . . 14, 17

Renda Marine, Inc. v. United States,
66 Fed. Cl. 639 (2005) . . . . . . . . . . 14

Rotec Indus. v. Mitsubishi Corp.,
215 F.3d 1246 (Fed. Cir. 2000) . . . . . . . . . . 7

Sacramento Municipal Utility District v. United States,
No. 98-488C (Fed. Cl. March 16, 2005) (unpublished) . . . . . . . . . . 14

Theriot v. J. Ray McDermott & Co., Inc.,
742 F.2d 877 (5th Cir. 1984) . . . . . . . . . . 3

United States v. Int'l Bus. Machs. Corp.,
90 F.R.D. 377 (S.D.N.Y. 1981) . . . . . . . . . . 14

United States v. Marin,
669 F.2d 73 (2d Cir. 1982) . . . . . . . . . . 17

United States v. Sweiss,
814 F.2d 1208 (7th Cir. 1987) . . . . . . . . . . 17

Westinghouse Electric Corp. v. United States,
Nos. 93-445C & 93-446C, 1997 WL 1068204 (Fed. Cl. June 4, 1997) . . . . . . . . . . . . 10

Yankee Atomic Electric Co. v. United States,
No. 98-126C, 2004 WL 2450874 (Fed. Cl. Sept. 17, 2004) . . . . . . . . . . . . . . . . . . . . 10

**MISCELLANEOUS**

Fed. R. Evid. 106 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Fed. R. Evid. 602 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Fed. R. Evid. 801(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Restatement (Second) of Agency § 1 cmt. a (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WISCONSIN ELECTRIC POWER COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 00-697C<br>(Senior Judge Merow) |

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S "NOTICE OF DEPOSITION AND TRIAL TESTIMONY DESIGNATIONS" AND, IN THE ALTERNATIVE, MOTION *IN LIMINE* TO PRECLUDE RELIANCE UPON THOSE DESIGNATIONS AS SUBSTANTIVE EVIDENCE PURSUANT TO RCFC 32(a) AND FEDERAL RULE OF EVIDENCE 801(d)(2)

Defendant, the United States, respectfully files this reply to the response that plaintiff, Wisconsin Electric Power Company ("WEPCO"), filed on February 26, 2007, to defendant's motion to strike WEPCO's "notice of deposition and trial testimony designations," or, in the alternative, motion in limine to preclude reliance upon those designations as substantive evidence, pursuant to Rule 32 (a) of the Rules of the Court of Federal Claims ("RCFC") and Federal Rule of Evidence ("FRE") 801(d)(2). In its response, WEPCO has failed to establish that the designated testimony may be admitted pursuant to FRE 801(d)(2)(C) and (D). Moreover, WEPCO has failed to show good cause as to why the record should be burdened with the designation of deposition testimony, particularly of witnesses scheduled to testify. Further, WEPCO has failed properly to address the Government's request that WEPCO be required to read into the record any deposition designations upon which it intends to rely as substantive evidence. Finally, WEPCO's complaints about the nature of the Government's objections to the testimony designated and the scope of the Government's counter-designations are without merit.

## DISCUSSION

### I. WEPCO HAS FAILED TO MAKE A PROPER SHOWING THAT ANY OF THE TESTIMONY IT HAS DESIGNATED MAY BE PROPERLY ADMITTED PURSUANT TO FEDERAL RULE OF EVIDENCE 801(d)(2)

The Government moved to strike WEPCO's "notice" of deposition designations, in part, because WEPCO had failed to file a proper motion requesting that the Court determine whether the proposed designations actually constitute "admissions" under the identified Federal Rule of Evidence. The lack of a motion seeking the Court's review and admission of these proposed designations, as opposed to WEPCO's mere admission of the designations into the record of this case without any Court review and approval, is inappropriate because WEPCO attempts to remove from the Court's purview any review of its proposed admissions. WEPCO fails to address this problem with its response to the Government's motion to strike. The Court should strike WEPCO's "notice" of designations on this basis.

### II. WEPCO CANNOT ESTABLISH AN INDEPENDENT BASIS FOR THE ADMISSION OF THE DESIGNATED TESTIMONY PURSUANT TO FEDERAL RULE OF EVIDENCE 801(d)(2)

#### A. WEPCO Cannot Establish That Messrs. Morgan, Lawrence, Rusche and Dreyfus Are 'Agents' Of The Government As Is Necessary To Allow The Admission Of Their Deposition Testimony Pursuant To FRE 801(d)(2)(C)

In our original motion, we moved to strike the designated testimony of Messrs. Benz, Cole, Dreyfus, Lawrence, McDuffie, Morgan, and Rusche because none of these individuals were employed by the Department of Energy ("DOE") at the time of their testimony, a requirement for the admission of a statement as the admission of a party opponent, pursuant to FRE 801(d)(2)(D). In its response, WEPCO asserts that it seeks the admission of the testimony of Messrs. Lawrence and Morgan pursuant to FRE 801(d)(2)(C), because Messrs. Lawrence,

Morgan, Rusche, and Dreyfus were "agents" of the Government and were authorized to make statements on behalf of the Government. Response at 4. WEPCO cannot establish that any of these individuals were "agents" of the Federal Government at the time of their testimony and, thus, has not provided the Court with a basis for the admission of this testimony.

FRE 801(d)(2)(C) allows the admission of testimony that is a "statement offered against a party and . . . a statement by a person authorized by the party to make a statement concerning the subject." For testimony to be admitted pursuant to this rule, the Court must find that the witness is an agent of the party against whom the statement is offered and authorized to speak upon behalf of that party on the subject of the testimony. Kirk v. Raymark Indus., Inc., 61 F.3d 147, 164 (3d Cir. 1995). To establish that an individual or entity is acting as an agent, the Court must find the following facts: "manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking." Restatement (Second) of Agency § 1 cmt. a (1958). Courts have found that an agent-principal relationship is established, for example, when an individual is employed by the party to investigate an accident that later becomes the subject of litigation. See, e.g., Theriot v. J. Ray McDermott & Co., Inc., 742 F.2d 877, 882 (5th Cir. 1984) (report regarding accident prepared by foreman, whose duties included investigating accidents, admitted as statements of an agent); Collins v. Wayne Corp., 621 F.2d 777, 781-82 (5th Cir. 1980) (report and deposition testimony of investigator of accident hired by party should have been admitted pursuant to FRE 801(d)(2)(C)). However, if the individual or entity has not agreed to be subject to the party opponent's control with regard to testimony offered, that individual cannot be deemed an agent of the party opponent. See Kirk, 61 F.3d at 164 (party cannot establish agent

relationship with an expert witness so that prior testimony of expert becomes an admission of that party).

WEPCO cannot provide the necessary elements to establish that Messrs. Morgan, Lawrence, Rusche and Dreyfus were "agents" of the Federal Government. The only evidence of "agency" that WEPCO provides for Messrs. Morgan and Lawrence is the fact that the Government listed both Messrs. Lawrence and Morgan, among others, in discovery responses as individuals who may have knowledge about contract formation activities. Response, Exhibit A. Presumably because the Government identified Messrs. Lawrence and Morgan as individuals possibly having knowledge, WEPCO sought to take their depositions on these matters. However, these interrogatory responses and the fact that Messrs. Lawrence and Morgan sat for depositions do not establish that Messrs. Lawrence and Morgan were "agents" of the Government at the time of their depositions. Specifically, there is no evidence that the Government asked Messrs. Lawrence or Morgan to speak upon behalf of the Government regarding these activities, that Messrs. Lawrence or Morgan agreed to speak upon behalf of the Government, or that the Government was "in control" of the testimony that Messrs. Lawrence and Morgan provided. Moreover, any argument that the Government's identification of Messrs. Lawrence and Morgan, who were third parties at the time, in response to interrogatories creates an agent-principal relationship with the Government changes the very nature of discovery requests from a vehicle for learning the facts underlying a party's claims to a tool to be used against a party in the prosecution of a case. In fact, in response to several inquiries from spent nuclear fuel ("SNF") plaintiffs regarding persons with knowledge in these cases, the Government has been required to identify some <u>nuclear utility</u> employees. Under WEPCO's

theory, statements by those employees of the plaintiffs would become admissions of the United States, contrary to established law.

Assuming for the sake of argument that these interrogatory responses could establish that Messrs. Lawrence and Morgan were the Government's "agents," Messrs. Lawrence and Morgan were only "authorized" to speak to these contract formation activities that were the subject of the interrogatories. However, WEPCO seeks the admission of testimony from these individuals that goes beyond their involvement in contract formation activities. See, e.g., Lawrence Dep. May 21, 2002, 301:20-305:4 (testimony about congressional testimony given in 1984, after contracts were signed); Morgan Dep. Mar. 21, 2002, 38:5-44:4 (testimony about presentation to industry meeting in December 1983). Absent evidence that establishes agency, WEPCO has no basis for the admission of this deposition testimony pursuant to FRE 801(d)(2)(C).

The only evidence of "agency" that WEPCO provides for Mr. Rusche is that Mr. Rusche testified at trial in Yankee Atomic Electric Co. v. United States, No. 98-126C (Fed. Cl.). Again, WEPCO cannot impute an agency relationship between DOE and all individuals listed upon the Government's witness list. If this action met the standard for agency, the Government would have an agency relationship with the utility employees that it regularly identifies upon its witness lists in the SNF cases. The only evidence of "agency" that WEPCO provides for Mr. Dreyfus is that Mr. Dreyfus held a series of senior positions within DOE and was the staff director for the Senate Energy Committee and that, simply by virtue of these positions, "his testimony evidences all the hallmarks of truthfulness." Response at 4. The fact that Mr. Dreyfus was authorized to make statements upon behalf of DOE when he was employed by DOE does not make him an "agent" of DOE for the purposes of his deposition testimony given many years after he left

Government service. Because WEPCO cannot establish "agency" between Messrs. Morgan, Lawrence, Rusche, and Dreyfus, and these individuals were not employed by DOE at the time of their depositions, WEPCO has no basis for the admission of any of the testimony designated for these individuals as admissions of a party-opponent, pursuant to FRE 801(d)(2).

The Government maintains its objection to the admission of Mr. Morgan's testimony as the admission of a third-party opponent because Mr. Morgan was neither employed by or an agent of the Government at the time of any of the testimony designated by WEPCO. WEPCO correctly notes that the Government would not object to the admission of Mr. Morgan's testimony, pursuant to RCFC 32(a), based upon a determination that Mr. Morgan is unavailable to testify. Response at 5-6. However, WEPCO has not sought the admission of Mr. Morgan's testimony on this basis. Instead, WEPCO seeks the admission of Mr. Morgan's testimony pursuant to FRE 801(d)(2)(C), but cannot establish that Mr. Morgan was an "agent" for the Government at the time of his testimony.

B. Messrs. Benz, Cole, and McDuffie, As Contractor or Former Contractor Employees, Are Not Employed By DOE For The Purposes Of The Admission Of Their Prior Testimony Pursuant To FRE 801(d)(2)(D)

The Government also opposes the admission of Messrs. Benz, Cole, and McDuffie, pursuant to FRE 801(d)(2)(D), because none of these individuals has ever been employed by DOE. In response, WEPCO admits that it must show that there exists "an agency or servant relationship between the party-opponent and the declarant," but asserts that such a relationship is established by the fact that these individuals are or were employed by one of the contractors to the Office of Civilian Radioactive Waste Management ("OCRWM"). WEPCO's arguments are unpersuasive.

Although the United States Court of Appeals for the Federal Circuit has found that "an agency relationship can be created by contract," it has determined that "not all contracts create agency relationships and not all conduct creates agency relationships." Rotec Indus. v. Mitsubishi Corp., 215 F.3d 1246, 1256 (Fed. Cir. 2000) (quoting Chemtool, Inc. v. Lubrication Techs., Inc., 148 F.3d 742, 745 (7th Cir. 1998)). The focus in determining whether the relationship between contracting parties creates an agency relationship "focuse[s] on contract provisions [and] not day-to-day Government involvement in the performance of the subcontract." Lockheed Martin Corp. v. United States, 50 Fed. Cl. 550, 558-59 (2001) (involving M&O contractor) (citing United States v. Johnson Controls, Inc., 713 F.3d 1541, 1551 (Fed. Cir. 1983)), aff'd, 48 Fed. Appx. 752 (Fed. Cir. 2002). Specifically, the test for determining agency "requires an interpretation of the contract" and findings that "(1) the prime [M&O] contractor was acting as a purchasing agent for the Government; (2) the agency relationship between the Government and the prime contractor was established by clear contractual consent; and (3) the contract stated that the Government would be directly liable to the vendors for the purchase price." Lockheed, 50 Fed. Cl. at 562.

Extensive trial testimony and deposition testimony from prior spent nuclear fuel ("SNF") cases specifically establishes that contractors for the Department of Energy ("DOE") do not operate as part of DOE and that statements by individuals employed by those contractors should not be considered admissions by the Government. For example, Mr. Lake Barrett, Deputy Director, OCRWM, testified that Pacific Northwest Laboratory ("PNL") was a contractor and that DOE used PNL to provide nothing more than advice, not to make policy decisions:

Q What is Pacific Northwest Laboratory?

A It's a contractor in Richland, Washington.

Q Were those contractors relied on often by the Department of Energy in connection with the development, design, and construction of the waste management system?

MS. HERRMANN: Objection. Vague.

A We use them as advisors and analysts for the waste management system.

* * *

Q Did you ever rely on the work of Pacific Northwest Laboratory?

MS. HERRMANN: Objection. Vague.

A I used it as input.

Q For what purposes?

A For advice on systems analysis.

SA. 3-4, Barrett Dep., May 10, 2002, 1150:3-1151:4.[1] Similarly, Mr. Ronald Milner, Chief Operating Officer of OCRWM, testified that contractor documents do not present the positions of DOE:

A. . . . In any event this is a contractor report which would never relate to a position the Department took, simply input data to it.

Q. You say it would never relate to a position?

A. It would never reflect, I'm sorry; not relate, it would never reflect the Department's position, it would simply input data to it.

---

[1] "SA. __" refers to the appendix to this reply brief.

> Q. The Department would have to subsequently take a separate position which might or might not approve or reflect what the contractor recommended?
>
> A. The Department would take a position based on information from a number of sources including its contractor's input.

SA. 7-8, Milner Dep., May 3, 2002, 443:19-444:8. Mr. Christopher A. Kouts, Director, Office Systems Analysis and Strategy Development of OCRWM, similarly testified that contractor documents do not speak for DOE:

> Q. How does DOE regard these types of reports prepared by contractors?
>
> A. They're essentially the view of the contractor, and unless the Department issues its won report under its own letterhead, with the DOE stamp, as well as a document number, that's not DOE position or DOE policy.
>
> Court. Right. You're just getting advice?
>
> A. Yes, that's correct.
>
> Q. And in terms of, I think you said putting it on DOE letterhead or the equivalent of that, who makes that decision regarding a contractor report or study or document?
>
> A. It's typically a DOE official, and that's routed through senior management, and a decision is made that that document is acceptable and will be issued under a DOE letterhead. Let me give you an example. For instance, when we went through the site recommendation process [for Yucca Mountain], we went through many, many drafts of documents that were related to the Secretary's recommendation. And those drafts were prepared by contractors, but it wasn't until the Department issued those final documents that became part of the site recommendation that we adopted and we accepted the language in those reports, and therefore, it was issued under a DOE identification number, and it was considered a DOE document.

SA. 10, Trial Transcript in Tennessee Valley Authority v. United States, Mar. 29, 2005, 2110:25-2112:4 (Kouts).

WEPCO provides no evidence that DOE's contractors occupy an agent role or a servant relationship with DOE, choosing instead simply to rely upon the findings of other courts regarding the role of contractors at DOE. WEPCO cites to an unpublished decision in Yankee Atomic Electric Co. v. United States, No. 98-126C, 2004 WL 2450874 (Fed. Cl. Sept. 17, 2004), in which the Court admitted numerous contractor documents as exhibits over the Government's objection. As we discussed in our motion to strike, the Court in this decision examined the nature of the relationship between OCRWM and its contractors to determine whether FRE 801(d)(2) was a possible avenue for admission of these documents, but the Court ultimately did not rule upon that issue or admit the documents upon that basis. Yankee Atomic, 2004 WL 2450874, at *11. Moreover, a finding that reports prepared at the request of DOE and with DOE's review constitute "admissions" pursuant to FRE 801(d)(2) cannot be expanded to allow the admission of statements of an individual contractor employee from a deposition. The necessary indicia of agency are lacking in such a situation because the Government agency has no opportunity to review or "authorize" the statements made in such a proceeding. WEPCO's reliance upon the decision in Westinghouse Electric Corp. v. United States, Nos. 93-445C & 93-446C, 1997 WL 1068204, at *2 (Fed. Cl. June 4, 1997), is similarly misplaced. That decision only describes the general character of an M&O contractor. It does not purport to identify an M&O contractor as an "agent" of the Federal Government. Given the significant evidence that DOE's contractors provide only input to OCRWM and that documents prepared by contractors do not constitute official DOE positions and WEPCO's inability to provide evidence to the

contrary, the Court should reject WEPCO's attempt to attribute the statements of an individual contractor employee obtained in a deposition proceeding to DOE.

WEPCO has not addressed the additional hurdle that it faces with regard to the admission of the testimony of Messrs. Cole and McDuffie. Both of these individuals were retired at the time of their depositions. A. 14 (Cole Dep. Mar. 12, 2002, 113:10-20) and 36 (McDuffie Dep. Mar. 18, 2002, 11:4-5).[2] Assuming for the sake of argument that being employed by one of DOE's contractors met the requirements of FRE 801(d)(2)(D), Messrs. Cole and McDuffie were not employed by the contractor at the time of their deposition, and their deposition testimony cannot be admitted pursuant to FRE 801(d)(2)(D). With regard to Mr. Cole, WEPCO highlights the fact that the Government has placed Mr. Cole upon its witness list and asserts that, based upon this fact, Mr. Cole's prior deposition testimony should be admissible. Response at 7. Again, the fact that the Government has listed a former contractor employee as a possible witness at trial does not mean that Mr. Cole was employed by DOE or otherwise satisfy the requirements of FRE 801(d)(2)(D).

## III. WEPCO HAS NOT MADE THE PROPER SHOWING AS TO WHY DESIGNATED TESTIMONY SHOULD BE ALLOWED TO BURDEN THE RECORD, PARTICULARLY FOR WITNESSES WHO ARE SCHEDULED TO TESTIFY

As we demonstrated in our motion to strike, WEPCO has sought the admission of the testimony of 19 individuals consisting of almost 2,300 additional transcript pages for the Court to consider. WEPCO has made no effort to show that any of the witnesses whose deposition testimony it has designated are unavailable to testify at trial. Moreover, the testimony is

[2] "A. __" refers to the appendix to the Government's original motion to strike.

irrelevant, incomplete, and replete with objections, all of which need to be ruled upon before the Court considers its substance. Because WEPCO has failed to meet its burden to show why this testimony should be admitted, the Court should exclude it from the record.

In response to the Government's concerns, WEPCO merely asserts that it may seek admission of these depositions pursuant to FRE 801(d)(2) and need not show "good cause" for their admission, pursuant to paragraph 15(b) of Appendix A of the Court's rules. See RCFC, App. A, ¶ 15(b) ("Any party intending to present substantive evidence by way of deposition testimony . . . *shall show cause* why the deposition testimony should be admitted") (emphasis added)); see also Angelo v. Armstrong World Industrial, 11 F.3d 957, 963 (10th Cir. 1993) (proponent of using deposition testimony at trial bears the burden of proving that it is admissible in lieu of live testimony under Rule 32 of the Federal Rules of Civil Procedure). However, as demonstrated in our motion and in the discussion above, WEPCO cannot establish a sufficient basis for the admission of much of this testimony pursuant to FRE 801(d)(2). Therefore, absent a showing of "good cause," WEPCO is left with no basis for the admission of the testimony that it has designated.

Moreover, WEPCO has designated an enormous amount of testimony that it seeks to simply "dump" into the trial record without explanation or context, leaving the Court to sift through the 2,300 additional pages to determine its significance. WEPCO has already asked that the trial extend for five weeks. Although WEPCO claimed in its notice of deposition designations that it sought to "reduce" its trial time by avoiding calling live witnesses, the wholesale designation of testimony from witnesses who are not called to testify represents an attempt to supplement that already extensive trial time. Further, particularly to the extent that

the Government will have to address some of the out-of-context designated statements in these deposition designations with live witnesses, WEPCO's use of designations prejudices the Government by increasing the amount of live testimony that the Government will have to present.

To reduce the amount of additional testimony with which WEPCO seeks to burden the Court, the Government requested in its motion to strike that WEPCO be required to read into the record during trial proceedings the designations upon which it intends to rely. The Court recently requested the same relief in System Fuels, Inc. v. United States, No. 03-2623C (Fed. Cl.), and, as a result, plaintiff in that case significantly reduced the amount of designated deposition testimony. The Government would expect the same result here. If WEPCO is required to read its designations into the record at trial, WEPCO's counsel will be required to determine what additional testimony is really required for its case-in-chief. This procedure also allows the Court to rule upon the Government's objections to the designated testimony when it is read into the record, further streamlining the Court's consideration of the testimony. In addition, if the Government is provided notice regarding which specific designations WEPCO plans to read into the record, the Government can read into the record its counter-designations at the same time, thereby providing the Court with the complete record of designated testimony.

WEPCO opposes the Government's request that the testimony be read into the record, but does not provide any basis for its opposition. Response at 10. WEPCO then states that it is "prepared in principle to stipulate that any designated testimony in this case that was already read into the record in [Tennessee Valley Authority v. United States, No. 01-115C] need not be read into the record again here." Id. We do not understand the nature or the need for the

"stipulation" that WEPCO proposes. Only six of the 68 "days" of testimony designated by WEPCO are designations that were read into the record at trial in Tennessee Valley. Moreover, WEPCO provides no authority or basis for simply adopting portions of the trial record in that case as the trial record in this case. Having opposed repeatedly any effort to consolidate these cases in the past, WEPCO cannot now seek "consolidation" for the purpose of avoiding the need to read into the record the testimony that it seeks to designate as substantive evidence in this case.

The Government's concerns with the burden to the record are particularly acute with regard to the designation of testimony for Messrs. Kouts, Pollog, Rabideau, and Zabransky and Ms. Croote. All five of these individuals are scheduled to testify during the Government's case-in-chief. If these individuals testify, as expected, WEPCO will have burdened the record with additional testimony that could have been elicited during cross-examination. See Renda Marine, Inc. v. United States, 66 Fed. Cl. 639, 645 (2005) (citing United States v. Int'l Bus. Machs. Corp., 90 F.R.D. 377, 382 (S.D.N.Y. 1981)) (disregarding designated deposition testimony of witnesses who testified at trial); Sacramento Municipal Utility Dist. v. United States, No. 98-488C, Order, at 2 (Fed. Cl. March 16, 2005) (unpublished) (denying motion to designate prior testimony of witnesses who were to testify at trial); see also Pacific Gas & Electric Co. v. United States, 73 Fed. Cl. 333, 442 (2006) (court struck deposition designations not relied upon by parties in post-trial briefing to avoid burdening the record, pursuant to FRE 403). While WEPCO should not be allowed to designate testimony from witnesses who will testify at trial, to the extent that the Court allows it, we ask that WEPCO be barred from cross-examining these witnesses upon the topics that are the subject of WEPCO's designations.

## IV. CONTRARY TO WEPCO'S CONCERNS, THE GOVERNMENT HAS PROPERLY LODGED OBJECTIONS TO THE TESTIMONY DESIGNATED AND SOUGHT TO COMPLETE THOSE DEPOSITION DESIGNATIONS WITH ITS COUNTER-DESIGNATIONS

If the Court allows the testimony that WEPCO has designated to become part of the record in this case, the Government respectfully requests that the Court first rule upon the objections to that testimony indicated in the portions of the testimony designated. RCFC 32(b). Thereafter, and to the extent that the Court admits any designated testimony, the Government requests that the Court consider the Government's counter-designations from these same depositions. FRE 106.

WEPCO objects to the nature of the Government's objections, asserting generally that they go beyond those that the Government is allowed to raise, pursuant to RCFC 32(d)(3)(B), which provides that "errors of any kind which might be obviated removed, or cured if promptly presented, are waived unless seasonable objections thereto is made at the taking of the deposition." Response at 8-9. WEPCO asserts that this rule precludes the Government from now raising "best evidence" or "foundation" objections.

Pursuant to RCFC 32(b), the Government may object "at the trial or hearing to receiving in evidence any deposition or part thereof for any reason which would require the exclusion of the evidence if the witness were then present and testifying." Within this rule, the Government has asserted proper objections to the testimony that WEPCO has designated, including objections to the foundation of the testimony offered. It is incumbent upon WEPCO to provide a proper foundation for the witness testimony that it seeks to introduce. FRE 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Where WEPCO has failed to designate or

otherwise establish the foundation for testimony, the Government may properly object to WEPCO's failure. Similarly, much of the testimony that WEPCO has designated includes testimony about documents that may or may not be identified in the designated testimony or may or may not be admitted into evidence as exhibits during the trial. In response to the Government's concern, WEPCO states that it has "endeavored to include most (if not all) material documents relevant to the designated testimony as trial exhibits." Response at 8 n.1. WEPCO's general assertion does not respond to the Government's concern. The Government has properly lodged a "best evidence" objection to alert the Court to the fact that this testimony concerns such documents, and it is incumbent upon WEPCO to identify the documents about which it has designated testimony and seek the admission of those documents during trial. Absent this effort, WEPCO is attempting to introduce testimony and documents into the trial record without proper foundation, and the Government has properly objected on this basis.

WEPCO also objects generally to the purported scope of the Government's counter-designations and attempts to limit the permissible scope of counter-designations to those necessary "to complete a particular statement or portion of a transcript." See Response at 9. FRE 106 provides: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." (emphasis added). RCFC 32(a)(4) ("If only part of a deposition is offered in evidence by a party, an adverse party may require the offeror to introduce any other part which ought in fairness be considered with the part introduced, any party may introduce any other parts.") (emphasis added). Portions of a statement or writing must be admitted if it is necessary to

explain the admitted portion, place the admitted portion in context, avoid misleading the trier of fact, or ensure a fair and impartial understanding of the admitted portion. United States v. Sweiss, 814 F.2d 1208, 1211-12 (7th Cir. 1987); United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982). "The rule of completeness is nothing more nor less than what it says plainly on its face: that when evidence is introduced by one party, a court is required to admit evidence introduced by the adverse party when that evidence is necessary to give an accurate portrayal of the first party's proffered evidence." Pacific Gas, 73 Fed. Cl. at 444 (2006) (citations omitted). Each of the Government's counter-designations properly fits within this rule.

WEPCO also asserts, without support, that the Government is not allowed to counter-designate testimony from depositions or trial testimony from which WEPCO has not designated testimony and identifies in a footnote several days of deposition from which the Government has counter-designated testimony, but WEPCO did not designate testimony. Response at 9. Pursuant to FRE 106, the Government may counter-designate any other testimony from an individual whose testimony WEPCO has designated which it believes also should be considered by the Court. Moreover, most of the depositions from which WEPCO has designated testimony were depositions lasting several days, and the Government, for the most part, has counter-designated testimony from depositions that WEPCO has designated testimony, albeit from different days. Accordingly, WEPCO's concern is unfounded.[3]

[3] Mr. Cole's March 13, 2002 deposition was a continuation of Mr. Cole's March 12, 2002 deposition in the coordinated discovery proceedings, from which WEPCO designated testimony. Mr. McDuffie's March 19, 2002 deposition was a continuation of Mr. McDuffie's March 18, 2002 deposition in the coordinated discovery proceedings, from which WEPCO has designated testimony.

## CONCLUSION

For the foregoing reasons and the reasons stated in our motion to strike, we respectfully request that the Court deny the admission of the deposition and trial testimony that WEPCO has designated or, in the alternative, that the Court rule upon the objections and admit the Government's counter-designations.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/ Jeanne E. Davidson
JEANNE E. DAVIDSON
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 353-7955
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of the General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

MARIAN E. SULLIVAN
RUSSELL A. SHULTIS
SONIA M. ORFIELD
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice

March 26, 2007

# APPENDIX

INDEX TO THE APPENDIX

Document | Page

Excerpt of Deposition of Mr. Lake Barrett, May 10, 2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Excerpt of Deposition of Mr. Ronald Milner, May 3, 2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Excerpt of Trial Transcript in Tennessee Valley Authority v. United States, Mar. 29, 2005 . . . . 9

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

COPY

- - - - - - - - - - - - - - - - - - - x

YANKEE ATOMIC ELECTRIC COMPANY; : Case Nos. 98-126C,
CONNECTICUT YANKEE ATOMIC POWER : 98-154C, 98-474C,
COMPANY; MAINE YANKEE ATOMIC : 98-483C, 98-484C,
POWER COMPANY; FLORIDA POWER & : 98-485C, 98-486C,
LIGHT COMPANY; NORTHERN STATES : 98-488C, 98-614C,
POWER COMPANY; DUKE POWER, a : 98-621C, 99-447C,
Division of DUKE ENERGY CORP.; : 00-440C, 00-695C,
INDIANA MICHIGAN POWER COMPANY; : 00-703C, 01-115C,
SACRAMENTO MUNICIPAL UTILITY : 01-116C, 01-249C,

- - - - - - - - - - - - - - - - - - - x

(Caption continued on the next page)

Continued Deposition of LAKE H. BARRETT

Washington, D. C.

Friday, May 10, 2002

8:06 a.m.

Job No.: 11792-11

Pages 1104 to 1437, Volume 5

Reported by: Diane Gomez, RPR

DISTRICT; SOUTHERN NUCLEAR :
OPERATING COMPANY, et al.; :
COMMONWEALTH EDISON COMPANY; :
BOSTON EDISON COMPANY; GPU :
NUCLEAR, INCORPORATED; WISCONSIN :
ELECTRIC POWER COMPANY; POWER :
AUTHORITY OF THE STATE OF NEW :
YORK; OMAHA PUBLIC POWER DISTRICT; :
NEBRASKA PUBLIC POWER DISTRICT; :
and TENNESSEE VALLEY AUTHORITY, :
Plaintiffs :
v. :
THE UNITED STATES, :
Defendant :
- - - - - - - - - - - - - - - - - - X

Laboratory?
A Yes.
Q What is Pacific Northwest Laboratory?
A It's a contractor in Richland, Washington.
Q Were those contractors relied on often by the Department of Energy in connection with the development, design, and construction of the waste management system?
MS. HERRMANN: Objection. Vague.
A We use them as advisors and analysts for the waste management system.
Q Do you continue to so use them through today?
A No.
Q Through when did you use them?
A Through the late eighties.
Q There's also another name at the top of the first page, H.D. Huber, H-u-b-e-r. Do you know that individual?
A No.
Q Did you ever rely on the work of Pacific Northwest Laboratory?

MS. HERRMANN: Objection. Vague.
A I used it as input.
Q For what purposes?
A For advice on systems analysis.
Q Did you ever personally assign work out to be performed by Pacific Northwest Laboratory?
A I don't remember me personally, but my staff did.
Q Did you authorize your staff to assign work out to Pacific Northwest Laboratory?
A Yes.
Q I take it then you considered the work of Pacific Northwest Laboratory to be competent?
A Yes.
Q I turn your attention to page Bates number PA-221972. It's the second page of the document. Actually, returning to the first page, do you see the buck slip on the first page? It says, '91 HLRWM conference papers, volume two, "high priority."
A I see it.
Q Is that your writing?
A No.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

- - - - - - - - - - - - - - - - - - - - - - x
YANKEE ATOMIC ELECTRIC COMPANY, (98-126C) :
CONNECTICUT YANKEE ATOMIC POWER COMPANY (98-154C) :
MAINE YANKEE ATOMIC POWER COMPANY (98-474C) :
FLORIDA POWER & LIGHT COMPANY (98-483C) :
NORTHERN STATES POWER COMPANY (98-484C) :
DUKE POWER, A Division of DUKE ENERGY CORP. (98-485C) :
INDIANA MICHIGAN POWER COMPANY (98-486C) :
SACRAMENTO MUNICIPAL UTILITY DISTRICT (98-488C) :
SOUTHERN NUCLEAR OPERATING COMPANY, et al., (98-614C) :
COMMONWEALTH EDISON COMPANY (98-621C) :
BOSTON EDISON COMPANY (99-447C) :
GPU NUCLEAR, INCORPORATED (00-440C) :
WISCONSIN ELECTRIC POWER COMPANY, (00-697C) :
POWER AUTHORITY OF THE STATE OF NEW YORK (00-703C) :
OMAHA PUBLIC POWER DISTRICT (01-115C) :
NEBRASKA PUBLIC POWER DISTRICT (01-116C) :
TENNESSEE VALLEY AUTHORITY (01-249C) :

Plaintiffs, :

v. :

UNITED STATES OF AMERICA, :

Defendant. :

- - - - - - - - - - - - - - - - - - - - - - x

Washington, D.C.

Friday, May 3, 2002

Continued Deposition of RONALD MILNER, a witness herein, called for examination by counsel for

Certified Copy

Plaintiffs in the above-entitled matter, pursuant to notice, the witness being previously duly sworn by CATHERINE S. BOYD, Notary Public in and for the Commonwealth of Virginia, taken at the offices of Shaw Pittman, 1650 Tysons Boulevard, McLean, Virginia, at 9:15 a.m., Friday, May 3, 2002, and the proceedings being taken down by Stenotype by CYNTHIA R. SIMMONS, RMR, CRR, and transcribed under her direction.

consider?

A. I recall maintaining a list of approved DCS's and looking at that list versus utilities which we might be aware were running out of pool space which had a lower priority ranking than another which had sufficient pool space.

And, you know, the potential of in essence brokering something between the two utilities.

Q. And do you recall any consideration of developing a computerized system for providing information among utilities on approved DCSes?

A. I do now reading this.

Q. But you don't have any independent recollection beyond this document?

A. No, I don't.

Q. If I could turn you to the first page of the attached draft report. Do you know whether this report was ever finalized?

A. I don't recall whether it was or not. In any event this is a contractor report which would never relate to a position the Department took, simply input data to it.

Q. You say it would never relate to a position?

A. It would never reflect, I'm sorry; not

relate, it would never reflect the Department's position, it would simply input data to it.

Q. The Department would have to subsequently take a separate position which might or might not approve or reflect what the contractor recommended?

A. The Department would take a position based on information from a number of sources including its contractor's input.

Q. I see the last sentence of the second paragraph on this page states that, the next to the last sentence, "Based on the preliminary evaluations of the cost, complexity, maintenance requirements, and the accuracy and timeliness of the information provided through these various options, the Department has decided to develop a PC-based electronic bulletin board system, the DCS exchange network."

A. I'm sorry; what paragraph are you reading from?

Q. The second paragraph under introduction, sir.

A. Okay.

Q. The next to the last sentence. You see it states that the Department has decided to develop a PC-based electronic bulletin board system?

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

-------------------------------x

SACRAMENTO MUNICIPAL UTILITY :
DISTRICT. :
:NO. 98-488C
Plaintiff :
vs. :
UNITED STATES. :
Defendant. :
------------------------------- :

Courtroom 5
National Courts Building
715 Madison Place
Washington. D.C.

Tuesday. March 29. 2005

VOLUME 7

The parties met. pursuant to the notice of the Judge at 9:00 a.m.

BEFORE THE HONORABLE SUSAN G. BRADEN



APPEARANCES:
ON BEHALF OF PLAINTIFF:
DAVID S. NESLIN. ESQ.
TIMOTHY R. MACDONALD. ESQ.
Arnold & Porter LLP
370 Seventeenth Street
Suite 4500
Denver. Colorado 80202-1370
(303) 863-2301

HOWARD N. CAYNE. ESQ.
Arnold & Porter LLP
555 Twelfth Street. N.W.
Washington. D.C. 20004-1206
(202) 942-5656



APPEARANCES (Continued:)

ON BEHALF OF THE DEFENDANT:
ALAN J. LO RE. ESQ.
JOSHUA E. GARDNER. ESQ.
TODD J. COCHRAN. ESQ.
SCOTT DAMELIN. ESQ.
RUSSELL SHULTIS. ESQ.
ELIZABETH THOMAS. ESQ..
U.S. Department of Justice
1100 L Street. N.W.
Washington. D.C. 20036

ALSO PRESENT:
STEVEN M. COHN. ESQ.
STEVE J. REDEKER
THOMAS POLLOG

***Index appears at end of transcript***



P R O C E E D I N G S
\- - - - - -
THE COURT: Let's go.
Whereupon--
DAVID ZABRANSKY
a witness. called for examination. having previously been duly sworn. was examined and testified further as follows:
CROSS-EXAMINATION (Resumed)
BY MR. CAYNE:
Q. Good morning. Mr. Zabransky.
A. Good morning.
Q. I'd like to turn your attention to Plaintiff's Exhibit 121. I believe that will be in the first binder. one out of three. Do you have that document before you. sir?
A. Yes. I see it.
Q. And is this document a memorandum from you to -- was this a memorandum from you. sir?
A. It's an e-mail from me to Mr. -- I believe it's Auke Piersma.
Q. And who is that person?
A.. Mr. Piersma used to be with a group called Public Citizen.
Q. And there's also a CC?
A. Yes.

Page 2110

one entity. So essentially, the vast majority of contracting that the program does in order to conduct its activities, both at the repository, through the transportation, the waste acceptance area, for instance, and other areas, systems area, for instance, that I manage, are also done by Bechtel SAIC Corporation, with the help of subcontractors.

Q. Now, in terms of your job, how do you use the contractors that you reference, both the M&O and subcontractors?

A. Well, we have an annual task statement with them under which they do individual studies for us, and when there are specific guidance that we want to give them about a specific report, we will issue a technical direction letter asking them to conduct a certain study for us, and then they provide those studies, and we review them, provide comments, and that's essentially their role.

Q. Are those considered deliverables under this contract?

A. Yes, they are.

Q. Now, how does DOE – I assume, are these written products that you're referencing as studies?

A. That's correct.

Q. How does DOE regard these types of reports

Page 2111

prepared by contractors?

A. They're essentially the view of the contractor, and unless the Department issues its own report under its own letterhead, with the DOE stamp, as well as a document number, that's not DOE position or DOE policy.

THE COURT: Right. You're just getting advice?

THE WITNESS: Right, that's correct.

BY MR. DAMELIN:

Q. And in terms of, I think you said putting it on DOE letterhead or the equivalent of that, who makes that decision regarding a contractor report or study or document?

A. It's typically a DOE official, and that's routed through our senior management, and a decision is made that that document is acceptable and will be issued under a DOE letterhead. Let me give you an example. For instance, when we went through the site recommendation process, we went through many, many drafts of documents that were related to the Secretary's recommendation. And those drafts were prepared by contractors, but it wasn't until the Department issued those final documents that became part of the

Page 2112

site recommendation that we adopted and we accepted the language in those reports, and therefore, it was issued under a DOE identification number, and it was considered a DOE document.

Q. Within OCRWM, who is responsible for setting policy regarding the Civilian Radioactive Waste Management Program?

A. It's the director of the program.

Q. Now, your description of, I guess, the type of approval needed for – or that you view for contractor reports or documents, would that also apply to verbal statements by contractors?

A. Verbal statements by contractors have no binding influence on the department. It's just their views of the world as they see it.

Q. Now, Mr. Kouts, you had mentioned, I believe, in your description of your background, the first position or job that you had within OCRWM related to an MRS proposal to Congress. Can you describe for the Court what your job entailed in that position?

A. Okay. Section 141 of the Nuclear Waste Policy Act basically requested the Department submit a proposal on monitored retrievable storage to the Congress for its consideration, so when I joined the

Page 2113

program, there was a small MRS team that was tasked with putting together that proposal. And that's – my specific responsibilities had to do with the needs and feasibility analysis of the, of the MRS, which was contained in volume two of the proposal. That volume two was an environmental assessment, which was also required by Congress, the needs and feasibility analysis, which was also required by Congress, and a program plan, which was volume three of that. So those were basically my responsibilities. I worked as a member of that team.

Q. And was that team part, or included as part of OCRWM?

A. Yes, it was a small group that worked for an office director within OCRWM at that time.

Q. And just so I'm clear, the Section 141 you reference, that was to the Nuclear Waste Policy Act?

A. That's correct.

Q. Now, as part of this team that you mentioned you were working on, what steps did DOE take to address the MRS provision of the Nuclear Waste Policy Act?

A. Well, the, the, there was fairly specific guidance given in Section 141. They requested a combination of at least five facilities and the – or

CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 26th day of March, 2007, a copy of foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S "NOTICE OF DEPOSITION AND TRIAL TESTIMONY DESIGNATIONS" AND, IN THE ALTERNATIVE, MOTION *IN LIMINE* TO PRECLUDE RELIANCE UPON THOSE DESIGNATIONS AS SUBSTANTIVE EVIDENCE PURSUANT TO RCFC 32(a) AND FEDERAL RULE OF EVIDENCE 801(d)(2)," was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Marian E. Sullivan