# ATTACHMENT A

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| WISCONSIN ELECTRIC POWER COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 00-697C<br><br>(Senior Judge Merow) |

**SECOND AMENDED AND SUPPLEMENTAL COMPLAINT**

Plaintiff Wisconsin Electric Power Company ("WE") files this Second Amended and Supplemental Complaint pursuant to Rules 15(a) and 15(d), through its undersigned counsel, and states as follows:

## I. NATURE OF THE CASE

1. This is an action for money damages based on a breach of contract claim that WE brought against the United States, acting through the U.S. Department of Energy ("DOE"). More specifically, the DOE undertook an unconditional obligation to begin disposing of spent nuclear fuel and high-level nuclear waste (collectively, "SNF") generated by the commercial nuclear facility owned and operated by WE. Pursuant to the Nuclear Waste Policy Act of 1982, as amended, 42 U.S.C. §§ 10101, et seq. ("NWPA"), DOE and WE entered into a contract in 1983 under which WE has paid and continues to pay substantial fees in return for DOE's obligation to begin removal and disposal of WE's SNF no later than January 31, 1998. WE has fully complied with its fee payment obligations under the contract. DOE, however, has failed to begin disposal of SNF as of January 31, 1998 and has stated that it will not do so until 2017 at the earliest. WE has incurred and will continue to incur significant costs and other damages as a result of DOE's partial material breach of its contractual obligations.

## II. PARTIES

2. WE is a Wisconsin corporation with headquarters in Milwaukee, Wisconsin. It is primarily a public utility, providing energy to residential and business users. WE's parent corporation is Wisconsin Energy Corporation. WE is the owner and operator of Units 1 and 2 of the Point Beach Nuclear Plant ("Point Beach"). WE's nuclear plant has generated and continues to generate SNF, which is stored at the Point Beach site.

3. Defendant is the United States, acting through the DOE.

## III. JURISDICTION

4. The Court has jurisdiction over this action under 28 U.S.C. § 1491.

5. WE and DOE entered into a Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste (the "Standard Contract") pursuant to which DOE is to accept and dispose of the SNF generated by WE's nuclear plant in return for payment of fees by WE. DOE's failure to begin disposal of SNF by January 31, 1998 constitutes a partial material breach of its Standard Contract with WE for which WE may seek recovery of its damages without exhausting any administrative remedies. Northern States Power Co. v. United States, 224 F.3d 1361 (Fed. Cir. 2000).

6. Furthermore, Article XI of the Standard Contract states: "Nothing in this Contract shall be construed to preclude either party from asserting its rights and remedies under the Contract or at law." This provides another basis for WE to pursue its legal claims without exhausting any administrative remedies.

## IV. FACTS

7. In 1982, Congress enacted the NWPA, codifying the Federal Government's commitment to accept responsibility for and to provide for the timely disposition of commercial SNF. Pursuant to the NWPA, DOE was required to commence disposing of commercially-generated SNF no later than January 31, 1998, in return for the payment of

fees by utilities and others that generated or held title to the SNF. The fees are paid into the Nuclear Waste Fund, which is the source of funds to cover DOE's costs of disposing of the SNF.

8. Pursuant to the NWPA, DOE developed the Standard Contract in 1983. The Standard Contract embodies the reciprocal obligations mandated by the NWPA, pursuant to which the utilities agreed to pay fees into the Nuclear Waste Fund in return for the provision of the SNF disposal services by DOE, beginning no later than January 31, 1998. The Standard Contract provides: "The services to be provided by DOE under this contract shall begin, after commencement of facility operations, not later than January 31, 1998 and shall continue until such time as all SNF . . . has been disposed of." See 10 C.F.R. Pt. 961.11, art. II.

9. Consistent with the NWPA, WE entered into a Standard Contract with DOE on June 16, 1983. A copy of WE's contract as executed with DOE is attached as Exhibit 1. The Standard Contract requires DOE to commence disposal of WE's SNF no later than January 31, 1998. The Standard Contract also requires DOE to arrange for and to provide transportation casks and all necessary transportation of the SNF from WE's site to a DOE facility. The Standard Contract permits DOE, in order to carry out its obligations under the contract, to use any appropriate facility operated by or on behalf of DOE.

10. WE's Standard Contract provides that WE will pay the Government fees which, together with fees paid by other utilities pursuant to contracts under NWPA, will be sufficient for DOE to implement and to operate a program for the prompt disposal of all the SNF that WE will be ready to deliver. As of January 30, 2007, WE had paid more than $217 million into the Nuclear Waste Fund pursuant to the Standard Contract and continues to pay fees into the Fund.

11. WE's Standard Contract provides that, in return for the payment of such fees, DOE will implement and operate a program for the prompt disposal of all the SNF that WE

will be ready to deliver. In the more than twenty-four years since the enactment of the NWPA, DOE has failed to take reasonable actions to develop and to implement an SNF disposal program or to perform its obligations to dispose of WE's SNF.

12. In 1995, DOE issued a Final Interpretation of Nuclear Waste Acceptance Issues ("Final Interpretation") wherein DOE indicated that it would not have either a permanent repository or an interim storage facility available by 1998 and that it would not commence disposal of the SNF at a repository until 2010 at the earliest. 60 Fed. Reg. 21973, 21974 (May 3, 1995). The Final Interpretation also stated DOE's conclusion that the NWPA did not impose an obligation on DOE to dispose of the utilities' SNF in 1998 in the absence of a disposal or interim storage facility.

13. Several nuclear utilities then sought review of DOE's Final Interpretation in the U.S. Court of Appeals for the District of Columbia Circuit. The D.C. Circuit ruled in favor of the utilities and held that the NWPA imposed upon DOE an unconditional obligation to begin disposing of SNF by January 31, 1998. Indiana Michigan Power Co. v. Dep't of Energy, 88 F.3d 1272 (D.C. Cir. 1996). The court further held that this obligation was reciprocal to the utilities' obligation to pay fees into the Nuclear Waste Fund. The court remanded the matter to DOE for proceedings consistent with the opinion.

14. Notwithstanding the D.C. Circuit's ruling, DOE advised WE and other Standard Contract holders that it would not begin disposal of the SNF by the January 31, 1998 deadline. Furthermore, DOE took the position that its failure to meet this deadline was excused, arguing that its delay was unavoidable.

15. In response to DOE's action, the utilities filed another petition with the D.C. Circuit for a writ of mandamus to compel DOE to comply with the mandate in Indiana Michigan. In Northern States Power Co. v. United States, 128 F.3d 754 (D.C. Cir. 1997), the D.C. Circuit reiterated that DOE had an unconditional obligation under both the NWPA and the Standard Contract to begin disposal of the utilities' SNF by January 31, 1998. The court

held that DOE had a clear duty to act in accordance with this unconditional obligation and issued a writ of mandamus precluding DOE from arguing that its failure to meet the January 31, 1998 deadline was unavoidable.

16. Despite the ruling in Northern States, DOE made no effort to meet the contractual deadline. DOE did not begin disposal of the SNF by January 31, 1998, as required by the NWPA and the Standard Contract, and has indicated that it will not begin to dispose of the SNF until 2017 at the earliest. DOE has failed and refused to provide any firm commencement date for the disposal of WE's SNF.

17. As a direct consequence of DOE's breach of contractual obligations, WE has been and will be forced to incur substantial additional costs. For example, WE has had to construct and maintain a dry storage SNF facility known as the Independent Spent Fuel Storage Installation ("ISFSI"). Construction of the ISFSI required substantial evaluation by WE, including preparation of an environmental analysis; efforts to seek the approval of the Public Service Commission of Wisconsin; and efforts to seek the approval of the Nuclear Regulatory Commission for WE's use of casks at the ISFSI. WE has also had to spend substantial monies in developing and purchasing these casks, and incurred costs relating to the delivery, loading, and handling of dry storage containers. Moreover, WE incurred costs for spent fuel management activities to address the long-term disposal of spent nuclear fuel. As of February 28, 2007, such costs exceeded $97.6 million (present dollars as of September 10, 2007).

## V. COUNT ONE: PARTIAL MATERIAL BREACH OF CONTRACT

18. WE incorporates by reference paragraphs 1 through 17 of this Complaint as if set forth herein.

19. WE has complied with and continues to comply with all of its obligations under the Standard Contract, including the payment of all required fees into the Nuclear Waste Fund.

20. The DOE has failed to perform its obligation under the Standard Contract to dispose of all of WE's SNF beginning no later than January 31, 1998, and thereby has partially and materially breached the Standard Contract.

21. As a direct and proximate result of DOE's partial material breach of the Standard Contract, WE has incurred and will incur damages in a substantial amount which, as noted, exceeded $91.7 million (present dollars as of September 10, 2007) by December 2005. WE's damages continue to accrue. The rate at which WE's damages will continue to accrue is dependent upon when and on what schedule DOE finally performs its contractual obligation. WE reserves its rights to recover presently unascertainable damages that may be caused by DOE's future partial breaches of the Standard Contract.

## VI. COUNT TWO: BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

22. WE incorporates by reference paragraphs 1 through 21 of this Complaint as if set forth herein.

23. The Standard Contract between WE and DOE contains an implied covenant of good faith and fair dealing pursuant to which DOE has a duty to perform its obligations under the contract in good faith and not to take actions detrimental to WE's contractual rights. DOE has breached the covenant of good faith and fair dealing by failing and refusing to make any effort to meet the contractual deadline for beginning disposal of SNF; by attempting to avoid its obligations under the Standard Contract as defined by the D.C. Circuit; by failing to make any effort to dispose of WE's SNF or even to provide WE with a firm date on which DOE will begin to perform the SNF disposal operations; and by insisting on WE's continued performance of its reciprocal obligation to pay fees into the Nuclear Waste Fund despite DOE's refusal to perform.

24. DOE's failure to act has not been a result of inadequate resources. DOE annual expenditures from the Nuclear Waste Fund have consistently been below the level of

annual receipts into the Nuclear Waste Fund. There are ample funds available to DOE to comply with its obligations under the Standard Contract.

25. In contrast to DOE's failure to take any action to meet its Standard Contract commitments, DOE has taken action to receive, transport and store the SNF from other utilities. For example, DOE continues to accept and store the SNF from foreign research reactors.

26. As a direct and proximate result of DOE's breach of the implied covenant of good faith and fair dealing, WE has suffered and will continue to suffer damages in excess of $10,000.

## VII. COUNT THREE: UNCOMPENSATED TAKING

27. WE incorporates by reference paragraphs 1 through 26 of this Complaint as if set forth herein.

28. WE's interests in Point Beach and related land are property rights within the meaning of the Fifth Amendment to the U.S. Constitution.

29. DOE's failure to dispose of WE's SNF denies WE the use and value of its Point Beach site for the foreseeable future until DOE performs its obligation to dispose of WE's SNF.

30. DOE's failure to dispose of WE's SNF effects a taking by DOE of WE's property interests for a public purpose, which requires DOE to pay WE just compensation for that property under the Takings Clause of the Fifth Amendment to the U.S. Constitution.

31. DOE's failure to dispose of WE's SNF has destroyed WE's reasonable investment-backed expectations arising from the NWPA and WE's Standard Contract with DOE regarding WE's use of its Point Beach site for the foreseeable future.

32. By reason of the foregoing, the Government has taken WE's property without compensation and is liable to WE for just compensation for that property under the Takings Clause of the Fifth Amendment to the U.S. Constitution.

## VIII. COUNT FOUR: SUPPLEMENTAL PLEADING

33. WE incorporates by reference paragraphs 1 through 32 of this Complaint as if set forth herein.

34. Since filing the Amended and Supplemental Complaint on April 7, 2006, WE has continued to pay fees to DOE pursuant to the Standard Contract. As of January 30, 2007, WE had paid more than $217 million into the Nuclear Waste Fund pursuant to the Standard Contract and continues to pay fees into the Fund.

35. Since filing the Amended and Supplemental Complaint on April 7, 2006, WE has incurred and continues to incur additional damages at Point Beach, which damages arise from the Government's same and continuing partial breach of WE's Standard Contract and the Government's same and continuing taking of WE's property without just compensation.

36. From January 1, 2006 and continuing through February 28, 2007, as a direct and proximate result of the Government's continuing partial breach of WE's Standard Contract and continuing taking of WE's property without just compensation, WE has incurred substantial damages. The amount of damages suffered by WE during this period exceeds $5.9 million (present dollars as of September 10, 2007), the exact amount to be determined at trial. These costs related to the following transactions, occurrences, or events, among others: fabrication oversight, purchase, and delivery of dry storage containers; loading and handling of dry storage containers; operation and maintenance of WE's ISFSI; and spent fuel management activities to address the long-term disposal of spent fuel.

37. WE continues to reserve its right to recover future damages that may be caused by the Government's future partial breaches of the Standard Contract and the Government's continuing taking of WE's property without just compensation.

## IX. PRAYER FOR RELIEF

WHEREFORE, WE respectfully requests that the Court enter judgment in its favor and against the United States as follows:

1. On Count One, for damages in an amount in excess of $91.7 million (present dollars as of September 10, 2007), the exact amount to be proven at trial;

2. On Count Two, for damages in an amount to be proven at trial;

3. On Count Three, for damages in an amount to be proven at trial;

4. On Count Four, for damages in an amount in excess of $5.9 million (present dollars as of September 10, 2007), the exact amount to be proven at trial;

5. Prejudgment and post-judgment interest as permitted by law;

6. Costs of this action, including reasonable attorneys' fees, as permitted by law; and

7. Such other relief as the Court deems just and equitable.

Dated: April 10, 2007

Respectfully submitted,

s/Richard W. Oehler by s/Emily C.C. Poulin
Richard W. Oehler
Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
(206) 583-8419

Attorneys for Plaintiff
WISCONSIN ELECTRIC POWER COMPANY

Of Counsel:

Donald J. Carney
Perkins Coie LLP
607 Fourteenth Street, N.W.
Washington, D.C. 20005
(202) 434-1675