IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WISCONSIN ELECTRIC POWER COMPANY, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 00-697C (Senior Judge Merow) |
| UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S SECOND AMENDED AND SUPPLEMENTAL COMPLAINT

Pursuant to Rule 15 of the Rules of the Court of Federal Claims ("RCFC"), defendant, the United States, respectfully responds to the motion that plaintiff, Wisconsin Electric Power Company ("WEPCO"), filed on April 10, 2007, seeking leave to amend its complaint for a second time. As discussed below, WEPCO is seeking to "update" its claim to include damages allegedly incurred in 2006 and a portion of 2007 and to increase its interest claim based upon the September 2007 trial date. However, WEPCO is seeking to "update" its damages by more than $8 million after fact discovery has closed and with a five-week trial scheduled to begin in September 2007. WEPCO's motion should be denied.

BACKGROUND

Although WEPCO is seeking formally to amend its complaint for the second time, it is the fourth time that WEPCO has "updated" its claim. WEPCO submitted its first claim, largely assembled by its experts with the Kenrich Group, LLC ("Kenrich"), on July 14, 2005. That claim sought nominal damages in the amount of $68,795,000, with an alleged present value of $101,738,000 and included future estimated costs through 2015. WEPCO's first claim was

reduced by an estimate of the loading costs that WEPCO would have incurred if the Department of Energy ("DOE") had begun accepting WEPCO's spent nuclear fuel ("SNF") in 1998.

On February 6, 2006, WEPCO sought to amend its complaint to seek damages through the end of 2005. On April 6, 2006, the Court granted WEPCO's motion for leave to supplement its damages claim, observing that, pursuant to the decision in Indiana Michigan Power Co. v. United States, 422 F.3d 1369 (Fed. Cir. 2005), WEPCO could only seek damages for costs that WEPCO had already incurred. At the same time, the Court granted the Government's request for additional discovery to investigate WEPCO's additional costs, even though WEPCO argued that the effect of the Government's request, more than a year before the trial was scheduled to begin, would require substantial additional time and might require an adjustment of the pretrial schedule. At the time of the Court's order, neither party had taken expert depositions.

WEPCO then submitted another claim on May 8, 2006, seeking nominal damages in the amount of $48,352,000, with an alleged present value of $91,018,000. This claim, which did not include a downward adjustment for the loading costs that WEPCO avoided because of DOE's partial breach, is the one upon which the Government's experts have based their analyses in their own expert reports.[1]

On January 17, 2007, WEPCO submitted its third claim in this case, primarily to remove some of the claimed costs for the Nuclear Regulatory Commission ("NRC") fees. Kenrich performed a calculation parsing the NRC fees into one of two categories: 1) spent fuel storage or

---

[1] After all adjustments were made, the Government expert witnesses opined that the WEPCO claim should be reduced by at least $82,482,018 to a net claim amount of $8,535,945.

2) reactor decommissioning costs. Government experts have not yet addressed this claim modification in any correspondence or updates.

On April 10, 2007, WEPCO submitted its fourth claim seeking $52,795,000 in nominal damages with a present value of $97,628,000 representing costs incurred through February 2007. While the majority of the increase appears to be for cask purchase and loading as well as additional interest running through the new trial date, some of the costs appear to be from WEPCO's efforts to license its spent fuel storage casks for transportation. Although our analysis is far from complete, listed below are the issues that we have identified which the Government would need to investigate through discovery and that our experts would be required to address in response to WEPCO's most recent claim.

A. Labor Costs

WEPCO is seeking to add more than $1 million in additional labor costs to its claim. The Government's accounting expert, Mr. Stephen Kiraly, has questioned significant portions of WEPCO's previously claimed labor as a fixed cost. WEPCO has not provided all of the data necessary to analyze these newly claimed labor costs, and a preliminary review of the new costs, based upon the limited information available to us, indicates that the additional labor costs are likely questionable. However, we would need to take discovery regarding these new labor costs to determine the appropriate manner in which to respond to them.

B. Employee Expenses

WEPCO has also added employee expenses to its claim. In his expert report, Mr. Kiraly, after we had taken appropriate discovery into the bases of WEPCO's claimed costs, questioned numerous previously-claimed employee expenses as unrelated to WEPCO's dry fuel storage

project. Further discovery will be required to determine whether there will be additional claim adjustments for employee expenses.

C. General and Administrative Costs

WEPCO's most recent claim includes more than $300,000 in additional General and Administrative ("G&A") costs. At least historically, WEPCO did not record G&A costs, but WEPCO's expert, Kenrich, added them to WEPCO's claim. In his expert report, Mr. Kiraly questioned all of the G&A as being fixed costs essentially unrelated to the dry fuel storage project. Assuming that these costs do not differ in nature from WEPCO's other previously-claimed G&A costs, the same adjustment would be required for the updated G&A costs. In addition, any G&A costs recorded by the Nuclear Management Company ("NMC"), the company that runs a number of nuclear power plants including Point Beach, might also need to be removed from the claim. WEPCO has not provided the detailed accounting data that would allow these determinations to be made.

D. Annual NRC Fees

WEPCO has added additional NRC fees to its claim, which WEPCO's expert, Kenrich, allocated to the claim. Previously, Mr. Kiraly questioned all of the previously-claimed NRC fees based upon the opinions of another Government expert, Mr. Warren Brewer. Following investigation and analysis of the additional NRC fees, the schedules that Mr. Kiraly attached to his report will likely require updating to reflect the additional claimed costs.

E. Dual-Purpose Cask Costs

WEPCO is seeking additional costs for licensing one of its storage-only casks, the VSC-24. In the past, Mr. Kiraly questioned VSC-24 transportation licensing costs. After these

additional licensing costs have been investigated, the schedules that Mr. Kiraly attached to his report will likely need modification.

WEPCO is also seeking additional costs related to another dry storage system, the NUHOMS casks. Previously, Mr. Kiraly questioned the costs of the NUHOMS casks based upon Mr. Brewer's opinions. We will need to take discovery to determine whether similar adjustments are necessary in response to WEPCO's new claim.

F. NUHOMS Loading Costs

WEPCO has added more that $1.5 million in loading costs that it recorded in a different manner than previous claim submissions. Further investigation, through discovery, is needed to determine the basis of these costs and to determine whether these costs were caused by DOE's delay and are properly supported.

G. Avoided Loading Costs

Even though Kenrich once deducted the costs that WEPCO avoided because of DOE's partial breach, since its May 8, 2006 updated claim, Kenrich eliminated that deduction. Consequently, the Government included a claim reduction in its response to the May 8, 2006 claim based upon the number of assemblies that DOE was responsible for accepting from WEPCO from 1998 through 2005. To price the reduction, Mr. Kiraly and Mr. Brewer relied upon the loading estimate that WEPCO originally prepared for the Kenrich group as its DOE loading offset. This estimate was used because WEPCO did not separately record its loading costs prior to 2006. However, in 2006, WEPCO apparently began recording its loading costs to a specific work order. Because the actual loading costs appear to be higher than the estimate that WEPCO once prepared, the Government would need to investigate the reasons for the increased

costs included in the additional claim and determine the proper methodology for calculating a deduction for all of the avoided loading costs. This determination may require Mr. Brewer to update his report to explain this position, and Mr. Kiraly would be required to reflect that change in his report as well.

H. Interest

WEPCO's claim increased by an additional $2,687,000 in interest because of the increase in nominal costs and the increased time period over which interest was applied. Mr. Kiraly previously removed all of the interest claim. The schedules that Mr. Kiraly attached to his report will have to updated to reflect the additional claimed costs as well as the relevant claim deductions. Further, to the extent that WEPCO claims that this interest claim is somehow related to funds that it actually borrowed to finance its dry storage project, discovery will be necessary to investigate that assertion.

## ARGUMENT

WEPCO is seeking to amend its claim for a fourth time in this case. Even though WEPCO claims that its additional damages are the same "type of costs" as previously claimed, the Government is entitled to test the basis of those alleged damages, and the Government's experts should be permitted to respond accordingly. Although WEPCO concedes that there is time for "limited discovery," WEPCO's new claim raises issues that require the dedication of significant resources and impinge upon the Government's trial preparation. Therefore, WEPCO's motion to amend its complaint should be denied.

RCFC 15(a) provides that, when a response to a complaint has been served, "a party may amend the party's own pleading only by leave of court or by written consent of the adverse party;

and leave shall be freely given when justice so requires." Although RCFC 15 has been liberally construed to permit relevant amendments, its scope is not unlimited. E.g., E.W. Bliss Co. v. United States, 77 F.3d 445, 449-50 (Fed. Cir. 1996); First Interstate Bank of Billings v. United States, 960 F.2d 1576, 1582-83 (Fed. Cir.), cert. denied, 506 U.S. 953 (1992); Te-Moak Bands of W. Shoshone Indians of Nevada v. United States, 948 F.2d 1258, 1260-63 (Fed. Cir. 1991). The decision whether to allow leave to amend pleadings is within the discretion of the trial court. First Interstate Bank, 61 F.3d at 881; accord E.W. Bliss, 77 F.3d at 450.

Commonly identified grounds for a court's denial of a proposed amended pleading include: (1) undue delay; (2) bad faith; (3) dilatory motive; (4) repeated failure to cure deficiencies; (5) undue prejudice to opposing party; or (6) futility of proposed amendment. Te-Moak Bands, 948 F.2d at 1260 (quoting Forman v. Davis, 371 U.S. 178, 182 (1962)). The existence of any one of these criteria is sufficient to deny a motion to amend, the theory being that the amendment would not be necessary to serve the interests of justice under the circumstances. Spalding & Son, Inc. v. United States, 22 Cl. Ct. 678, 680 (1991).

Leave to amend may be granted only if the amendment would not prejudice the opposing party. Thus, "the possibility of prejudice" is a "major factor" that "the trial court should take into account." Tenneco Resins, Inc. v. Reeves Brothers, Inc., 752 F.2d 630, 633 (Fed. Cir. 1985). "Another factor bearing on the trial court's discretion is the passage of time." Id. "These two factors – delay and prejudice – reinforce each other: The risk of substantial prejudice increases with the passage of time." 6 C. Wright & A. Miller, Federal Practice and Procedure § 1488, at 439 (1971), quoted in Tenneco Resins, 752 F.2d at 633. "Delay alone, even without a demonstration of prejudice, has . . . been sufficient grounds to deny the amendment." Te-Moak,

948 F.2d at 1263. "[T]he passage of time becomes fatal at some period of time." Datascope Corp. v. SMEC, Inc., 962 F.2d 1043, 1045 (Fed. Cir. 1992) (quoting Chitimacha Tribe of Louisiana v. Harry L. Laws Co., 690 F.2d 1157 (5th Cir. 1982)). The United States Court of Appeals for the Federal Circuit has recognized that the need for new discovery amounts to prejudice that can bar an amendment. Tenneco Resins, 752 F.2d at 634-35.

WEPCO's April 10, 2007 claim does more than present "updated" damages figures, but, instead, presents new issues. WEPCO is now seeking loading costs that were not previously known and that differ with the estimate of loading costs which WEPCO submitted with its July 2005 claim. If WEPCO is allowed to submit an "updated" claim, the Government needs additional discovery, likely including additional depositions of fact witnesses, to determine the reasoning and procedures established to record the actual loading costs and whether there is a discrepancy between WEPCO's estimates and its actual costs.

That issue is even more troubling in light of the timing issues that apply to the offset to WEPCO's claimed costs through 2007. WEPCO is seeking to increase its claim for costs that it has incurred in January and February 2007. As the Court is aware, the Government is seeking to offset WEPCO's damages claim by the amount of loading costs that WEPCO would have incurred "but for" DOE's delay, but that it has been able to avoid because of the delay. To the extent that the Court allowed WEPCO to litigate its costs for January and February 2007 here, the Government would be entitled to an offset for the costs that WEPCO would have incurred to load assemblies to DOE in the "but for" world but that, because of the delay, WEPCO was able to avoid or defer. However, the contract does not define the precise time during the course of 2007 that WEPCO would have been obligated to deliver its spent nuclear fuel assemblies to DOE

in the "but for" world. That is, although, assuming that the Court identifies the scope of DOE's obligations to accept WEPCO's spent nuclear fuel in 2007, we could construct a scenario based upon a specific acceptance rate through which the number of assemblies that WEPCO would have to have loaded into DOE casks in 2007 had DOE timely performed, it would be much more difficult to model when within 2007 those assemblies would have been loaded. Accordingly, we presume that WEPCO would argue that the Government, having failed to establish that WEPCO would otherwise have loaded spent nuclear fuel to DOE in either January or February 2007 (rather than at some point during the rest of 2007), is entitled to no offset for that period. Further, WEPCO is in the process of selling the Point Beach Nuclear Power Plant to another utility, Florida Power & Light Company. That sale is currently scheduled to be final in August 2007. If WEPCO were allowed to pursue its claim for some 2007 costs now, but with no offset applied against "but for" world loading costs, it is unclear which utility, if any, would ever be responsible for the remainder of the costs that might arise from the 2007 time period. and the Government's offset could be lost forever. We estimate the offset to load assemblies to DOE in 2007 would be in excess of $300,000.

WEPCO's new damages claims raise additional proof issues that the Government would need to investigate through additional discovery. Although WEPCO glosses over any need for discovery by asserting that it is seeking the same "type of costs" previously claimed, WEPCO's additional labor costs, employee expenses, cask costs, and licensing fees need to be investigated. It is well-settled that WEPCO bears the burden of proving its damages. Lisbon Contractors, Inc. v. United States, 828 F.2d 759, 767 (Fed. Cir. 1987). Not only does that preclude WEPCO from meeting its burden of proof through vague generalities, but, particularly with regard to certain

indirect cost claims, such as G&A, WEPCO must submit the specific evidence required to determine whether WEPCO's calculations are correct. Singelton Contracting Corp. v. Harvey, 395 F.3d 1353, 1357 (Fed. Cir. 2005). Thus, WEPCO's assertion that the additional damages which it is seeking are the same "type of costs" is simply not sufficient to provide the Government with the information necessary to analyze WEPCO's claim. Prior to trial, the Government is entitled to learn the basis of any new costs being claimed.

Further, the Government must be allowed to address each of WEPCO's changes through the issuance of new expert reports. In addition to being allowed complete discovery to investigate the basis of WEPCO's new claimed costs, the Government's experts must be allowed the opportunity to analyze those costs. Undoubtedly, WEPCO will demand to know what opinion each of the Government's experts wishes to offer on those subjects and, almost as surely, will wish to depose the Government's experts about those opinions before trial. This entire process would divert from both parties' trial preparation time.

Additionally, the prejudice that WEPCO would experience if its motion to amend its claim were denied is minimal. While WEPCO cannot seek damages arising from costs which have not yet been incurred, the statute of limitations for seeking additional damages runs from the date they are incurred. Indiana Michigan, 422 F.3d at 1378. Consequently, if WEPCO's motion to amend its complaint were denied, WEPCO, or whatever party succeeds WEPCO, can file a complaint seeking those damages anytime within the next six years.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court deny WEPCO's motion to amend its complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ Sharon A. Snyder by Russell A. Shultis
SHARON A. SNYDER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Phone: (202) 305-9640
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

May 11, 2007

CERTIFICATE OF FILING

I hereby certify under penalty of perjury that on May 11, 2007, a copy of this "DEFENDANT'S RESPONSE TO PLAINTIFF'S SECOND AMENDED AND SUPPLEMENTAL COMPLAINT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Russell A. Shultis