# APPENDIX

U.S. Department of Justice

Civil Division

PDK:JED:HDL:SASnyder
D.J. No. 154-00-697

Telephone: (202) 616-0347
Facsimile: (202) 307-2503

*Washington, D.C. 20530*

May 2, 2007

**VIA FACSIMILE AND UNITED STATES MAIL**

Richard W. Oehler
Perkins Coie LLP
1201 Third Avenue
Suite 4800
Seattle, Washington 98101-3099

Re: Wisconsin Electric Power Co. v. United States,
Fed. Cl. No. 00-697C

Dear Mr. Oehler:

We are preliminarily reviewing the new claim and supporting documents that you provided to us that ostensibly support your Second Amended Complaint. While we currently anticipate that we will have to oppose your motion seeking leave to file that complaint and the new claim, we need additional information to assist in our preliminary review. Please provide us with the following data, information, and documents as soon as possible.

First, we do not have the NMC cost data for 2006 and 2007 and, therefore, we request that you produce additional NMC cost data from the SAP accounting system for relevant claim accounts and periods to support your updated claim and the electronic files located at Bates WISC 00135471 – WISC 00135475. Those files comprise WE Cost Data, WE Employee Names and Numbers, WE Timesheet Data and NMC Timesheet Data for 2006 and 2007. We request that Wisconsin Electric Power Company ("WEPCO") provide electronic cost data for all work orders from which NMC bills costs are included in the April 10, 2007 claim update. The submission should include NMC WBS Elements 3.0182-54-0001, 3.0182-54-0055, 3.0182-54-2055, 3.0264-79-0055 and 3.5055-54-0055. I understand that you have previously provided the NMC cost data from the SAP accounting system, as indicated in a March 27, 2006 letter from Don Carney to Kevin Crawford attaching the CD Bates numbered WISC 00085632.

In addition to the NMC accounting records, we request the Kenrich Electronic files for the April 10, 2007 updated claim. These electronic files should include all files used to compile the April 10, 2007 Errata for Kenrich Group Expert Report located within Bates range KRGWE 003828 – KRGWE 003901.

Richard W. Oehler
May 2, 2007
Page 2

Third, please provide more detailed descriptions for the entries in the column titled "A/A Type" from the file titled "WISC 00135474_NMC_2006_Timesheet Data.xlsm," also provided as support for the April 10, 2007 claim. The detailed descriptions should provide more descriptive language than was provided. The production should be similar to the WE data file, Bates numbered WISC 00123294, provided in response to Request 2 referenced in Mr. Oehler's April 20, 2006 letter.

Please produce this information as quickly as possible. In the event that the Court, over our objections, grants plaintiff's motion to amend the complaint, it will be necessary for us to conduct discovery on this new claim quickly, before the trial begins on September 10, 2007.

Please do not hesitate to call me at (202) 616-0347, or Russ Shultis at (202) 305-7571, if you have any questions.

Very truly yours,

Sharon Snyder

Sharon A. Snyder
Trial Attorney
Commercial Litigation Branch

cc: Donald J. Carney (via facsimile:(202) 434-1690)

Perkins Coie

607 Fourteenth Street N.W.
Washington, D.C. 20005-2011
PHONE: 202.628.6600
FAX: 202.434.1690
www.perkinscoie.com

Richard W. Oehler
PHONE: (206) 359-8419
FAX: (206) 359-9419
EMAIL: R.Oehler@perkinscoie.com

May 10, 2007

**BY HAND DELIVERY**

Sharon A. Snyder
U.S. Department of Justice
Commercial Litigation Branch
Civil Division
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, DC 20530

**Re: Wisconsin Electric v. United States, No. 00-697C**

Dear Ms. Snyder:

Wisconsin Electric Power Company ("WE") hereby produces to the Government additional documents relating to its Second Amended Complaint and supporting damages schedules.

The production consists of spreadsheets responsive to the Government's letter requests of May 2, 2007. The spreadsheets are on compact disks ("CDs"), labeled WISC 00136524 – 00136526. The data responsive to the Government's first request, for NMC cost data, is on CD WISC 00136524. The data responsive to the Government's second request, for Kenrich electronic files for the updated claim, is on CD WISC 00136525. The data responsive to the Government's third request, for detailed descriptions of entries from the 2006 NMC Timesheet Data, is on CD WISC 00136526.

The enclosed CDs are marked as "Protected Material to be Disclosed Only in Accordance with U.S. Court of Federal Claims Protective Order."

Please contact me if you have any questions.

Very truly yours,

Richard W Oehler by Emily A Paulin

Richard W. Oehler

cc: Catherine Phillips
Donald J. Carney

**U.S. Department of Justice**

Civil Division

PDK:DMC:HDL:KBCrawford
D.J. No. 154-00-697

Telephone: (202) 305-9640
Facsimile: (202) 307-2503

*Washington, D.C. 20530*

January 26, 2007

**VIA FACSIMILE AND UNITED STATES MAIL**

Richard W. Oehler
Perkins Coie LLP
Suite 4800
1201 Third Avenue
Seattle, Washington 98101-3099

Re: Wisconsin Electric Power Co. v. United States, Fed. Cl. No. 00-697C

Dear Mr. Oehler:

This responds to your letters dated December 22, 2006 and January 5, 2007, with respect to the audit verification process. On June 30, 2006, the United States submitted Defendant's Statement Admitting or Denying the Accuracy or Admissibility of Plaintiff's Schedules and Summaries ("Defendant's Statement") pursuant to subparagraph (c) of the Court's November 8, 2002 pretrial order. On October 27, 2006, WEPCO submitted Plaintiff's Response to Defendant's Statement Admitting or Denying the Accuracy or Admissibility of Plaintiff's Schedules and Summaries ("Plaintiff's Response"). In your letters, you have asked us to inform you whether the positions set forth in Defendant's Statement have changed in view of your response and your subsequent productions of time recording documentation and WEPCO A&G calculation documentation on October 11, 2006 (WISC 131201-135035), and of employee expense report records on October 26, 2006 (WISC 135036-135470). We describe below the extent to which our position on each of the audit issues has changed.

A&G Costs

The A&G expenses that WEPCO included in its claim consist of corporate overhead costs that were simply allocated to the all projects. For example, the rate includes costs relating to Corporate Services, including Legal Services, Information Technology, Corporate Affairs, and Corporate Finance. The amount in the claim is based upon the application of the budgeted A&G rate for a given year multiplied by the labor costs charged to the dry fuel storage project.

Initially, the Government took issue with this part of the claim, both because much of the

supporting documentation provided for the rates used consisted merely of the rates themselves and not the underlying calculations, and because the A&G adders totaling $1,815,366 included in the claim did not accurately depict actual costs incurred by WEPCO because they were based on budget numbers.

Based upon the documentation provided on October 11, 2006, and in conjunction with previous documentation provided, the Government agrees that WEPCO has provided underlying calculations of the A&G adders. However, the Government has additional questions about the accuracy of the A&G amounts. First, the variances between the budgeted A&G rates and the actual A&G rates for 1996 – 1999 appear to be inordinately larger than other years. For example, the absolute value of the variances for 1996 – 1999 range from 6.64% to 9.70%, whereas, the absolute value of the variances for 2001 – 2005 range from 1.17% to 2.87%. Please explain the reason for the large variances for the 1996 – 1999 A&G budgeted vs. actual rates. Second, please confirm that the budgeted A&G rate for both 1996 and 1997 was 24.24% and the budgeted A&G rate for both 1998 and 1999 was 24.84%. Third, please confirm that consistent cost pool assumptions were used to calculate both the budgeted A&G rates and the actual A&G rates. We are uncertain about this because it appears that the budgeted rates for 1996 – 1999 were calculated using "pre-impact" information,[1] see WISC 00065079, whereas the actual rates for those given years was recently prepared by WEPCO personnel. See Letter from Oehler to Crawford of 10/11/06. If there is a variation in the cost pools used for budgeted and actual A&G rates, please provide an updated calculation using consistent cost pools.

NRC Annual Fees

WEPCO included NRC Fees for 1999 – 2005 in the claim based upon its view that a portion of the Power Reactors Annual Fees related to dry storage and would not be incurred in the event a utility did not have a dry fuel storage facility ("ISFSI"). The total amount WEPCO contends relates to the ISFSI is $2,989,750. The Government initially took the position that the fees identified as incremental costs were not supported by invoices and were not accurately recorded on WEPCO's books. Although WEPCO has now produced invoices for all of the NRC fees incurred during the period at issue, these documents demonstrate that the NRC did not invoice WEPCO specifically for a fee related to the ISFSI. Moreover, there are no accounting records demonstrating that WEPCO paid the NRC a fee specifically because of the presence of an ISFSI, or that the fees that it paid would have been different without an ISFSI. Thus, the Government disagrees with the methodology WEPCO used to allocate a portion of the Annual Fee to include as damages and still denies that these costs were incremental. However, the Government does not deny the accuracy of the NRC Power Reactors Annual Fee recorded on the

[1] "Pre-Impact" refers to the period prior to the implementation of the Impact cost accounting system. The manual for this system (Impact Costing Manual) was issued in February 1998 (WISC 00055012 – 00055106).

company's books and records in total, or the fact that the NRC Power Reactors Annual Fee costs were incurred as recorded.

Would-Have-Been Temporary Cask Pit Rack Costs

WEPCO has alleged that it would have incurred costs for the use of a temporary cask pit storage rack to handle its spent fuel storage needs had DOE begun accepting spent nuclear fuel in 1998. WEPCO's experts estimated, and included an offset of $2,047,641 for the Temporary Cask Pit Racks. Since these cost are based upon estimates, and there is no contemporaneous company documentation, the Government continues to deny the accuracy of these costs.

Interest Costs

WEPCO has alleged that it would have incurred interest costs on all items it included in its claimed damages. WEPCO's experts estimated, and WEPCO claimed interest costs of $42,666,000. Since these cost are based upon estimates, and there is no documentation linking the interest costs to the items WEPCO is including as damages, the Government continues to deny the accuracy of these costs.

Employee Expense Costs

WEPCO's claim includes costs for transactions relating to the reimbursement of employee expenses in the amount of $612,642. At the time of Defendant's Statement, the Government denied the accuracy of the Employee Expenses class of transactions because WEPCO had not provided invoice support for transactions under $5,000, and most of the costs involved in this class of transactions involved amounts below that level. To help facilitate agreement regarding the accuracy of these costs, WEPCO produced 260 transactions and documentary support as a sample of Employee expenses on October 26, 2006. Based upon the additional documentation, the Government no longer denies the accuracy of the Employee Expenses included in the claim. However, the Government continues to deny its liability for these costs for the other reasons described more fully in the expert report of Stephen Kiraly.

Pensions & Benefits Costs

In preparing its claim, WEPCO included adjustments to the labor costs to include Pension and Benefits costs in the claim for the costs recorded during the time period when the MSA accounting system was in use. Originally, when recording costs to project 33664, WEPCO included Pension and Benefits costs totaling $132,156 on Journal Entry 316 (Transfer Payroll Taxes for Work Orders). WEPCO removed the amounts actually recorded and included a mark-up totaling $536,444 by using percentage rates.

Initially, the Government took issue with fact that the support WEPCO provided for the A&G rates only contained the end result of the budgeted rate calculation for 1988 through 1999, and not the pool of accounts used to calculate the rates themselves. Without the pools, the Government could not verify the accuracy of the rates or ensure that there was not double counting. See WISC 65050-65118. On October 11, 2006, WEPCO provided additional documentation, to support the P&B rates for 1988 through 1995. See WISC 132465-135017. Based upon the October 11, 2006 production in conjunction with the prior documentation, the Government does not deny the accuracy of the budgeted Pensions and Benefits rates. However, the Government continues to deny its liability for these costs because WEPCO has provided no justification for the use of the higher mark-up rates.

Labor Costs

WEPCO's claim includes labor costs that were recorded in two different ways. From November 1988 through July 1996, WEPCO recorded approximately $1,977,979 of labor costs to its MSA accounting system. From August 1996 through March 1999, WEPCO recorded another $2,594,546 to WEPCO's SAP accounting system without the use of the CATS labor recording system. Thus, WEPCO has claimed a total labor cost of $4,572,525 for the time period of November 1988 through March 1999.

At the time of the Defendant's Statement, insufficient support was provided by WEPCO to determine whether these costs were properly supported. Therefore, to the extent that each line item of cost in Exhibits 1 and 2 to Defendant's Statement reflected the inclusion of some portion of these claimed labor costs, the Government denied the accuracy of that portion of each line item, and denied the accuracy of the total $4,572,525 in claimed labor costs. WEPCO provided a sample of supporting documents for the June 1995 time period, which Mr. Kiraly agreed was reasonable to support the labor costs for the entire year of 1995. To help facilitate agreement regarding the accuracy of the remaining costs, on October 11, 2006, WEPCO produced additional timesheets and documentary support samples for one-month periods in each of the other years.

Based upon the additional documentation provided, the Government no longer denies the accuracy of the $4,572,525 of labor costs included in the claim for the time period of November 1988 through March 1999. However, the Government requests some additional information relating to these labor costs. First, WEPCO has represented that timecards for represented employees for October 1994 were destroyed per document retention policies. Because timecards for managerial personnel relating to that same October 1994 time period were not destroyed, please provide an explanation as to why the document retention policy only applied to the represented employees and not the management employees.

Second, please explain why the dates on the timecards for represented employees all correspond to the dates to which the time cards relate, while some of the dates on the timecards

for management employees do not correspond to the dates to which the time card purportedly relates. For instance, the timecards for management employees for the months of May 1996, December 1996, May 1997, August 1998 and October 1998 were all dated the month prior to the requested months. This anomaly appears both during the MSA time period (May 1996) and the SAP time period (May 1997 and later). In addition, please explain the process by which the hours from the time cards eventually appear in the accounting system.

If you have any additional questions regarding our responses, please call.

Sincerely,

Kevin B. Crawford
Trial Attorney
Commercial Litigation Branch

cc: Donald J. Carney - via facsimile (202) 434-1690

Perkins Coie

607 Fourteenth Street N.W.
Washington, D.C. 20005-2011
PHONE: 202.628.6600
FAX: 202.434.1690
www.perkinscoie.com

Donald J. Carney
PHONE: (202) 434-1675
FAX: (202) 654-9113
EMAIL: DCarney@perkinscoie.com

May 16, 2007

**BY FACSIMILE AND FIRST CLASS MAIL**

Sharon A. Snyder
Russell A. Shultis
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530

**Re: Wisconsin Electric Power Co. v. United States, No. 00-697C**

Dear Counsel:

This letter confirms my telephone discussions with each of you yesterday.

First, Wisconsin Electric Power Company ("WE") offered to exchange copies of the parties' respective trial exhibits on Friday, May 18, 2007. The Government is looking into the feasibility of this date and will get back to us.

Second, the parties tentatively have agreed to meet at 9 am on June 7, 2007 at the Washington D.C. offices of Perkins Coie LLP regarding exhibit and audit verification issues. The agenda that WE envisions for the meeting includes: (1) review and resolve exhibit objections; (2) determine which exhibits are on both parties' lists so that a joint exhibit list can be created; and (3) work towards completion of the audit verification process in case it is not completed as of that date. WE would very much like to meet on June 7 or sometime during the week of June 4 because Rick Oehler expects to be in D.C. that week.

Third, this confirms that we received by email the Government deposition exhibits previously requested in WE's May 8 letter.

Fourth, Russ raised the possibility of the parties stipulating to a damages cut-off of December 31, 2006 to resolve the pending Plaintiff's Motion for Leave to file its Second Amended and Supplemental Complaint. We have conferred with WE and WE is willing to agree to this stipulation. Please inform us within the next day or so whether the Government is willing to agree to this stipulation.

If you have any questions, please feel free to contact us.

Very truly yours,

Donald J. Carney

cc: Catherine Phillips
Richard W. Oehler

Perkins Coie

1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
PHONE: 206.359.8000
FAX: 206.359.9000
www.perkinscoie.com

Richard W. Oehler
PHONE: (206) 359-8419
FAX: (206) 359-9419
EMAIL: R.Oehler@perkinscoie.com

March 9, 2007

**BY FACSIMILE AND FIRST CLASS MAIL**

Harold D. Lester, Jr.
Marian Sullivan
U.S. Department of Justice
Commercial Litigation Branch
Civil Division
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, DC 20530

**Re: Wisconsin Electric v. United States, No. 00-697C**

Dear Counsel:

In a February 23, 2007 Order, the Court rescheduled the trial from March 27, 2007 until September 10, 2007. Accordingly, Wisconsin Electric ("WE") intends to move for leave to file a second amended and supplemental complaint to update its damages through early 2007. WE intends to move for leave to amend by early April 2007, but is providing this advance notice to the Government now in case this information would assist the Government in planning audit verification activities.

The damages that WE will seek in this update are the same type of costs that WE has previously claimed in this litigation including cask acquisition costs, cask loading costs, NRC fees for SNF management, licensing costs to have the VSC-24 cask licensed as transportable and the weighted average cost of capital of WE's damages to reflect the new trial date of September 10, 2007.

Contemporaneously with WE's motion for leave, WE will produce to the Government documentation and electronic files in support of the claim update. This documentation

will be the same type of documentation that the Government has previously requested to support WE's costs.

If you have any questions, please call me.

Very truly yours,

Richard W. Oehler

cc: Catherine Phillips
Donald J. Carney