**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| WISCONSIN ELECTRIC POWER COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 00-697C<br><br>(Senior Judge Merow) |

**PLAINTIFF'S MOTION FOR AN ORDER**
**<u>SETTING A FINAL PRETRIAL CONFERENCE DATE</u>**

Pursuant to Rules 7(b), 16(a) and 16(d) of the Rules of the Court of Federal Claims, plaintiff Wisconsin Electric Power Company ("WE") respectfully moves the Court to enter an Order setting August 17, 2007 as the date for the final pretrial conference. Counsel for WE has attempted, but was unable, to contact Government counsel to determine whether the Government opposes this motion. Previously, the Government indicated that it believed that an August 17 pretrial date was too long before the September 10, 2007 trial date, but the Government has not proposed an alternate date.

WE believes that the pretrial conference should be held on August 17 for several reasons. The conference should be held sufficiently in advance of trial so that the parties may focus their final trial preparations on the relevant issues. Both parties have expressed an interest in attempting to streamline trial in this matter. <u>See, e.g.</u>, Appendix (App.) 6-8, 12-13, 26-27. Given this interest, an August 17 pretrial date provides sufficient time before trial for the parties to implement methods for streamlining trial that may be agreed upon prior to or during the pretrial conference. Additionally, the Labor Day holiday occurs just before trial. WE would like the conference in advance of that date to minimize scheduling conflicts.

WE counsel also has a number of other responsibilities and would very much desire setting the pretrial date (which will involve travel) in the near future. Finally, WE believes

that setting a final, firm pretrial conference date of August 17 may prompt resolution of several pretrial issues that have been outstanding for quite some time. If the parties cannot resolve these issues, at least they can be placed before the Court at the August 17 pretrial conference, at a time when the parties can still benefit in their trial preparations from the Court's input.

More specifically, there are several outstanding issues that WE has attempted to resolve with the Government, but without success. First and foremost is the date of the pretrial conference. WE proposed dates to the Government on several occasions, but the Government declined to agree to the date or to recommend an alternate date. See, e.g., App. 23, 26-27.

The second issue relates to whether the Government will stipulate to WE's incurred costs. In its letter of January 26, 2007, the Government noted that it no longer denied the accuracy of several of WE's claimed costs. App. 1-5. WE's February 16, June 18 and June 22 letters sought the Government's response on additional audit related issues and a stipulation regarding WE's other claimed costs. App. 9-11, 24-27. The Government has not responded to WE's further requests.

The third issue relates to the resolution of exhibit issues and possibly narrowing of issues for trial. The parties tentatively agreed to meet on Thursday, June 7 to discuss trial exhibits and associated issues. App. 14-15, 17-18. The Government cancelled that meeting shortly before it was to take place. WE then attempted to reschedule a meeting for June 26, but again the Government could not meet. App. 22, 26-27. By letter dated June 22, 2007, WE requested that the Government agree to set a date for a rescheduled meeting. App. 26-27. The Government has yet to respond to this request. WE believes that resolution of these exhibit issues now, to the extent possible, will narrow the issues that may arise and may otherwise need to be resolved at trial.

Other issues remain outstanding, including WE's request that the Government produce its trial exhibits in electronic format. App. 16-21. The Government has not responded to this request. Further, the Government has indicated that it may desire to conduct additional discovery regarding WE's 2006-2007 costs, but the Government has not provided a schedule for any such discovery.

To the extent that the Government may contend that the pretrial conference should be set nearer to the September 10 trial date, we respectfully disagree. The outstanding issues need to be resolved in the near future and we believe that establishing an August 17 pretrial date will prompt resolution of these issues.

For the foregoing reasons, WE respectfully requests that the Court issue an Order setting August 17, 2007 as the date of the final pretrial conference.

Dated: July 13, 2007

Respectfully submitted,

s/Richard W. Oehler by s/Donald J. Carney
Richard W. Oehler
Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
(206) 359-8419 Phone
(206) 359-9419 Fax

Attorneys for Plaintiff
WISCONSIN ELECTRIC POWER COMPANY

Of Counsel:

Donald J. Carney
Mary Rose Hughes
Perkins Coie LLP
607 Fourteenth Street, N.W.
Washington, D.C. 20005-2001
(202) 434-1675

## CERTIFICATE OF SERVICE

I certify under penalty of perjury that, on July 13, 2007, I caused a copy of the foregoing "Plaintiff's Motion For An Order Setting a Final Pretrial Conference Date" to be filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Donald J. Carney
Donald J. Carney

# APPENDIX

**U.S. Department of Justice**

Civil Division

PDK:DMC:HDL:KBCrawford
D.J. No. 154-00-697

Telephone: (202) 305-9640
Facsimile: (202) 307-2503

*Washington, D.C. 20530*

January 26, 2007

VIA FACSIMILE AND UNITED STATES MAIL

Richard W. Oehler
Perkins Coie LLP
Suite 4800
1201 Third Avenue
Seattle, Washington 98101-3099

Re: Wisconsin Electric Power Co. v. United States, Fed. Cl. No. 00-697C

Dear Mr. Oehler:

This responds to your letters dated December 22, 2006 and January 5, 2007, with respect to the audit verification process. On June 30, 2006, the United States submitted Defendant's Statement Admitting or Denying the Accuracy or Admissibility of Plaintiff's Schedules and Summaries ("Defendant's Statement") pursuant to subparagraph (c) of the Court's November 8, 2002 pretrial order. On October 27, 2006, WEPCO submitted Plaintiff's Response to Defendant's Statement Admitting or Denying the Accuracy or Admissibility of Plaintiff's Schedules and Summaries ("Plaintiff's Response"). In your letters, you have asked us to inform you whether the positions set forth in Defendant's Statement have changed in view of your response and your subsequent productions of time recording documentation and WEPCO A&G calculation documentation on October 11, 2006 (WISC 131201-135035), and of employee expense report records on October 26, 2006 (WISC 135036-135470). We describe below the extent to which our position on each of the audit issues has changed.

A&G Costs

The A&G expenses that WEPCO included in its claim consist of corporate overhead costs that were simply allocated to the all projects. For example, the rate includes costs relating to Corporate Services, including Legal Services, Information Technology, Corporate Affairs, and Corporate Finance. The amount in the claim is based upon the application of the budgeted A&G rate for a given year multiplied by the labor costs charged to the dry fuel storage project.

Initially, the Government took issue with this part of the claim, both because much of the

supporting documentation provided for the rates used consisted merely of the rates themselves and not the underlying calculations, and because the A&G adders totaling $1,815,366 included in the claim did not accurately depict actual costs incurred by WEPCO because they were based on budget numbers.

Based upon the documentation provided on October 11, 2006, and in conjunction with previous documentation provided, the Government agrees that WEPCO has provided underlying calculations of the A&G adders. However, the Government has additional questions about the accuracy of the A&G amounts. First, the variances between the budgeted A&G rates and the actual A&G rates for 1996 – 1999 appear to be inordinately larger than other years. For example, the absolute value of the variances for 1996 – 1999 range from 6.64% to 9.70%, whereas, the absolute value of the variances for 2001 – 2005 range from 1.17% to 2.87%. Please explain the reason for the large variances for the 1996 – 1999 A&G budgeted vs. actual rates. Second, please confirm that the budgeted A&G rate for both 1996 and 1997 was 24.24% and the budgeted A&G rate for both 1998 and 1999 was 24.84%. Third, please confirm that consistent cost pool assumptions were used to calculate both the budgeted A&G rates and the actual A&G rates. We are uncertain about this because it appears that the budgeted rates for 1996 – 1999 were calculated using "pre-impact" information,[1] see WISC 00065079, whereas the actual rates for those given years was recently prepared by WEPCO personnel. See Letter from Oehler to Crawford of 10/11/06. If there is a variation in the cost pools used for budgeted and actual A&G rates, please provide an updated calculation using consistent cost pools.

NRC Annual Fees

WEPCO included NRC Fees for 1999 – 2005 in the claim based upon its view that a portion of the Power Reactors Annual Fees related to dry storage and would not be incurred in the event a utility did not have a dry fuel storage facility ("ISFSI"). The total amount WEPCO contends relates to the ISFSI is $2,989,750. The Government initially took the position that the fees identified as incremental costs were not supported by invoices and were not accurately recorded on WEPCO's books. Although WEPCO has now produced invoices for all of the NRC fees incurred during the period at issue, these documents demonstrate that the NRC did not invoice WEPCO specifically for a fee related to the ISFSI. Moreover, there are no accounting records demonstrating that WEPCO paid the NRC a fee specifically because of the presence of an ISFSI, or that the fees that it paid would have been different without an ISFSI. Thus, the Government disagrees with the methodology WEPCO used to allocate a portion of the Annual Fee to include as damages and still denies that these costs were incremental. However, the Government does not deny the accuracy of the NRC Power Reactors Annual Fee recorded on the

[1] "Pre-Impact" refers to the period prior to the implementation of the Impact cost accounting system. The manual for this system (Impact Costing Manual) was issued in February 1998 (WISC 00055012 – 00055106).

company's books and records in total, or the fact that the NRC Power Reactors Annual Fee costs were incurred as recorded.

Would-Have-Been Temporary Cask Pit Rack Costs

WEPCO has alleged that it would have incurred costs for the use of a temporary cask pit storage rack to handle its spent fuel storage needs had DOE begun accepting spent nuclear fuel in 1998. WEPCO's experts estimated, and included an offset of $2,047,641 for the Temporary Cask Pit Racks. Since these cost are based upon estimates, and there is no contemporaneous company documentation, the Government continues to deny the accuracy of these costs.

Interest Costs

WEPCO has alleged that it would have incurred interest costs on all items it included in its claimed damages. WEPCO's experts estimated, and WEPCO claimed interest costs of $42,666,000. Since these cost are based upon estimates, and there is no documentation linking the interest costs to the items WEPCO is including as damages, the Government continues to deny the accuracy of these costs.

Employee Expense Costs

WEPCO's claim includes costs for transactions relating to the reimbursement of employee expenses in the amount of $612,642. At the time of Defendant's Statement, the Government denied the accuracy of the Employee Expenses class of transactions because WEPCO had not provided invoice support for transactions under $5,000, and most of the costs involved in this class of transactions involved amounts below that level. To help facilitate agreement regarding the accuracy of these costs, WEPCO produced 260 transactions and documentary support as a sample of Employee expenses on October 26, 2006. Based upon the additional documentation, the Government no longer denies the accuracy of the Employee Expenses included in the claim. However, the Government continues to deny its liability for these costs for the other reasons described more fully in the expert report of Stephen Kiraly.

Pensions & Benefits Costs

In preparing its claim, WEPCO included adjustments to the labor costs to include Pension and Benefits costs in the claim for the costs recorded during the time period when the MSA accounting system was in use. Originally, when recording costs to project 33664, WEPCO included Pension and Benefits costs totaling $132,156 on Journal Entry 316 (Transfer Payroll Taxes for Work Orders). WEPCO removed the amounts actually recorded and included a mark-up totaling $536,444 by using percentage rates.

Initially, the Government took issue with fact that the support WEPCO provided for the A&G rates only contained the end result of the budgeted rate calculation for 1988 through 1999, and not the pool of accounts used to calculate the rates themselves. Without the pools, the Government could not verify the accuracy of the rates or ensure that there was not double counting. See WISC 65050-65118. On October 11, 2006, WEPCO provided additional documentation, to support the P&B rates for 1988 through 1995. See WISC 132465-135017. Based upon the October 11, 2006 production in conjunction with the prior documentation, the Government does not deny the accuracy of the budgeted Pensions and Benefits rates. However, the Government continues to deny its liability for these costs because WEPCO has provided no justification for the use of the higher mark-up rates.

Labor Costs

WEPCO's claim includes labor costs that were recorded in two different ways. From November 1988 through July 1996, WEPCO recorded approximately $1,977,979 of labor costs to its MSA accounting system. From August 1996 through March 1999, WEPCO recorded another $2,594,546 to WEPCO's SAP accounting system without the use of the CATS labor recording system. Thus, WEPCO has claimed a total labor cost of $4,572,525 for the time period of November 1988 through March 1999.

At the time of the Defendant's Statement, insufficient support was provided by WEPCO to determine whether these costs were properly supported. Therefore, to the extent that each line item of cost in Exhibits 1 and 2 to Defendant's Statement reflected the inclusion of some portion of these claimed labor costs, the Government denied the accuracy of that portion of each line item, and denied the accuracy of the total $4,572,525 in claimed labor costs. WEPCO provided a sample of supporting documents for the June 1995 time period, which Mr. Kiraly agreed was reasonable to support the labor costs for the entire year of 1995. To help facilitate agreement regarding the accuracy of the remaining costs, on October 11, 2006, WEPCO produced additional timesheets and documentary support samples for one-month periods in each of the other years.

Based upon the additional documentation provided, the Government no longer denies the accuracy of the $4,572,525 of labor costs included in the claim for the time period of November 1988 through March 1999. However, the Government requests some additional information relating to these labor costs. First, WEPCO has represented that timecards for represented employees for October 1994 were destroyed per document retention policies. Because timecards for managerial personnel relating to that same October 1994 time period were not destroyed, please provide an explanation as to why the document retention policy only applied to the represented employees and not the management employees.

Second, please explain why the dates on the timecards for represented employees all correspond to the dates to which the time cards relate, while some of the dates on the timecards

for management employees do not correspond to the dates to which the time card purportedly relates. For instance, the timecards for management employees for the months of May 1996, December 1996, May 1997, August 1998 and October 1998 were all dated the month prior to the requested months. This anomaly appears both during the MSA time period (May 1996) and the SAP time period (May 1997 and later). In addition, please explain the process by which the hours from the time cards eventually appear in the accounting system.

If you have any additional questions regarding our responses, please call.

Sincerely,

Kevin B. Crawford
Trial Attorney
Commercial Litigation Branch

cc: Donald J. Carney - via facsimile (202) 434-1690

Perkins Coie

1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
PHONE: 206.359.8000
FAX: 206.359.9000
www.perkinscoie.com

Richard W. Oehler
PHONE: (206) 359-8419
FAX: (206) 359-9419
EMAIL: ROehler@perkinscoie.com

February 1, 2007

**BY FACSIMILE & U.S. MAIL**

Kevin B. Crawford
Marian Sullivan
U.S. Department of Justice
Commercial Litigation Branch
Civil Division
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, DC 20530

**Re: Wisconsin Electric v. United States, No. 00-697C**

Dear Counsel:

On behalf of Wisconsin Electric ("WE"), we are writing to raise for discussion with the Government several proposals to streamline the upcoming trial and to ease the burden of this proceeding on testifying witnesses. Based on the parties' Appendix A, Paragraph 15(a) witness lists, nearly fifty witnesses may be called to testify at trial. The majority of those witnesses do not reside in the Washington, D.C. area. Our hope is that, through these proposals, the parties can efficiently manage the presentation of testimonial evidence and reduce the number of witnesses or otherwise make trial more efficient.

First, WE proposes that witnesses in this case, subject to a few potential exceptions, be called to testify only once during the trial. The party calling the witness would conduct its direct examination and then the opposing party also would conduct its cross examination <u>and</u> any direct examination that it wishes to conduct at that time. Any follow-up questioning would also occur during the witness's one time on the stand. WE favors this approach so that the many fact witnesses who have to travel to Washington, DC for the trial do not have to make more than one trip.

WE is aware of one exception to this approach. Our present intention is to call a WE witness to testify twice on direct examination. The first appearance would be to orient the Court to the Point Beach Nuclear Plant ("PBNP"), its operation and spent nuclear fuel ("SNF") facilities. We would then later call this witness regarding the other subjects for which the witness was identified. Another exception, of course, would be witnesses called for rebuttal or surrebuttal.

Second, WE proposes that the parties consider whether they can reduce the number of witnesses that they expect to present through direct testimony at trial. WE is reviewing its list to determine whether WE can present its case through fewer witnesses. WE respectfully requests that the Government also revisit its witness list to determine if it can also delete any witnesses.

Third, as you know, this is Judge Merow's third SNF trial. Thus, he has already heard substantial evidence regarding the acceptance rate issue. WE is interested in discussing with the Government a substantial reduction or possible elimination of trial testimony regarding this issue at trial. For example, the parties potentially could agree upon stipulations of fact. Another possibility would be greater use of prior deposition and trial testimony.

Fourth, on a related point, WE has proposed to present the testimony of a number of DOE officials by prior trial and deposition testimony. WE is interested in whether the Government is intending to object to this approach and, if so, if the Government is willing to revisit its intention.

Fifth, WE is interested in learning about the Government's current expectation regarding the length of this trial. The parties previously jointly estimated that this trial would last three weeks. See Joint Motion to Revise the Court's Pretrial Scheduling Order (Dec. 19, 2005). WE is concerned, however, that the number of issues and volume of evidence in this trial may exceed the three week estimate. This may be the case even if the parties drop some witnesses as discussed above. We would like to know the Government's views regarding the anticipated duration of trial in this case and whether we should inform the Court now regarding a revision in the estimated duration of trial. WE also would like to know if the trial requires more than three weeks whether that would present an issue for the schedule of Government counsel.

Finally, we are interested in any proposals that the Government may have regarding potential methods to streamline trial in this matter.

We are available to discuss these issues in a conference call. We would suggest that you email us with several proposed times and consider that I am located in the western time zone.

Very truly yours,

Richard W. Oehler

Richard W. Oehler

cc: Catherine Phillips
Donald J. Carney

Perkins Coie

1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
PHONE: 206.359.8000
FAX: 206.359.9000
www.perkinscoie.com

Richard W. Oehler
PHONE: (206) 359-8419
FAX (206) 359-9419
EMAIL ROehler@perkinscoie.com

February 16, 2007

**BY FACSIMILE & U.S. MAIL**

Kevin B. Crawford
Marian Sullivan
Russell Shultis
U.S. Department of Justice
Commercial Litigation Branch
Civil Division
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, DC 20530

**Re: Wisconsin Electric v. United States, No. 00-697C**

Dear Counsel:

This responds to questions contained in the Government's January 26, 2007 letter regarding the audit verification process.

**1. Administrative and General ("A&G") Costs**

First, the letter requested an explanation why the variances based on comparison of the 1996-1999 A&G budgeted rates with the 1996-1999 actual rates were larger than the variances for other periods. The explanation is that these budgeted rates were prepared during a period of transition in WE's accounting system. As the Government knows, prior to 1996, WE used the MSA accounting system. Effective 1996, WE went to a new accounting system, the SAP/Impact system.

With the MSA system, WE had a detailed methodology for calculation of budgeted A&G rates. WE had challenges in using that methodology with the new SAP/Impact system. The budgeted A&G rates for 1996-1999 were conservatively low. Eventually, WE prepared a revised

methodology for calculating A&G budgeted rates customized for the SAP/Impact system in approximately 2000.

Second, the January 26, 2007 letter asked for a confirmation that the budgeted A&G rate for both 1996 and 1997 was 24.24% and that the budgeted A&G rate for both 1998 and 1999 was 24.84%. WE confirms these rates.

Third, the letter asked for a confirmation that consistent cost pool assumptions were used to calculate both the budgeted A&G rates and the actual A&G rates. As noted, the budgeted A&G rates for 1996-1999 were calculated using a pre-SAP/Impact methodology. The actual A&G rates for 1996–1999 were calculated using the aforementioned methodology that was implemented in 2000.

Finally, WE notes that the actual A&G rates for 1996-2005 are higher than the budgeted A&G rates for this same period. Thus, the Government derives a benefit from WE's utilization of its budgeted A&G rates for this period. In any case, WE requests that the Government state whether or not it denies the accuracy of the budgeted A&G rates.

**2. <u>NRC Fees</u>**

Regarding the portion of NRC fees claimed as damages, the January 26, 2007 letter misstates the methodology used by WE to calculate the spent fuel-related portion of the NRC fees for 1999 – 2005. We refer the Government to WE's October 27, 2006 Memorandum of Contentions of Fact and Law at pages 25-27 for an explanation of WE's methodology.

**3. <u>Labor Costs</u>**

The Government's January 26, 2007 letter states that "the Government no longer denies the accuracy of the $4,572,525 of labor costs included in the claim for the time period of November 1988 through March 1999." Govt. Ltr at 4. Given that discovery has closed and the purpose of the audit proceedings are completed with regard to the labor costs, we do not believe that it is appropriate for the Government to submit additional questions regarding the labor costs. Nevertheless, in the interest of moving forward on the merits and without waiving its objection, WE responds to these Government questions as follows:

First, the Government's letter requested an explanation why the document retention policy only applied to the represented employees and not the management employees for the October 1994 time period. To the contrary, the same retention policy applied to the timecards for the management employees and the represented employees. However, given this litigation, WE placed a hold on the destruction of boxes. Unfortunately, this hold on routine destruction of records occurred after the October 1994 represented timesheets were destroyed, but prior to the

destruction of the management timecards which were also set for destruction. Therefore, only the management timecards were available for production.

Second, the Government requested an explanation why dates on the timecards for represented employees correspond to the dates to which the time cards relate, while some of the dates on the timecards for management employees do not so correspond. In addition, the Government requested an explanation regarding the process by which the hours from the timecards eventually appear in the accounting system.

The response to both questions is as follows: The explanation is that represented employees complete either daily or weekly timecards and they are processed by payroll for both pay and distribution in the current month. Prior to the implementation of SAP/Impact in 1996, management employees completed semi-monthly timecards and there was a full month delay in processing overtime and absence time (except holidays) for payroll purposes and a full month delay in distributing hours worked to the accounting system. Payroll processing (paying employees) was a separate process from labor distribution (charging time to projects).

Represented employees are paid hourly. They have a positive time reporting system and are only paid for actual hours worked. This requires an approved timecard for all represented employees to receive a payroll check. Management employees are salaried and, at times during this period, were on an exception reporting basis. This resulted in management employees being paid for the current month before it actually ended. Their labor then was distributed to projects the following month.

If you have any questions, please call me.

Very truly yours,

Richard W. Oehler

Richard W. Oehler

cc: Catherine Phillips
Donald J. Carney

28795-0001/LEGAL13021305.1

Perkins Coie

607 Fourteenth Street N.W.
Washington, D.C. 20005-2011
PHONE: 202.628.6600
FAX: 202.434.1690
www.perkinscoie.com

Richard W. Oehler
PHONE (206) 359-8419
FAX: (206) 359-9419
EMAIL: R.Oehler@perkinscoie.com

May 7, 2007

**BY FACSIMILE AND FIRST CLASS MAIL**

Sharon A. Snyder
U.S. Department of Justice
Commercial Litigation Branch
Civil Division
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, DC 20530

**Re: Wisconsin Electric v. United States, No. 00-697C**

Dear Ms. Snyder:

I understand that you are the new counsel of record for the United States in the above referenced litigation. As you know, I am counsel of record for Wisconsin Electric ("WE") and look forward to working with you in the months ahead as we prepare for the trial commencing on September 10, 2007.

I want to take this early opportunity to point out that several Jewish holidays occur on scheduled trial dates. Rosh Hashanah is September 12-13, and Yom Kippur is September 21-22. Two WE witnesses – Howard Shimon and Ione Straub – will not be available for testimony on those dates and we will schedule their testimony so as not to conflict with their observance of these holidays.

We remain willing to discuss with Government counsel ways in which trial in this matter may be streamlined. For your information, we enclose our February 1, 2007 letter to Kevin Crawford regarding this issue.

Please contact me if you have any questions.

Very truly yours,

Richard W Oehler by Emily A Poulin

Richard W. Oehler

cc: Catherine Phillips
Donald J. Carney

Perkins Coie

607 Fourteenth Street N.W.
Washington, D.C. 20005-2011
PHONE: 202.628.6600
FAX: 202.434.1690
www.perkinscoie.com

Donald J. Carney
PHONE: (202) 434-1675
FAX: (202) 654-9113
EMAIL: DCarney@perkinscoie.com

May 16, 2007

**BY FACSIMILE AND FIRST CLASS MAIL**

Sharon A. Snyder
Russell A. Shultis
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530

**Re: Wisconsin Electric Power Co. v. United States, No. 00-697C**

Dear Counsel:

This letter confirms my telephone discussions with each of you yesterday.

First, Wisconsin Electric Power Company ("WE") offered to exchange copies of the parties' respective trial exhibits on Friday, May 18, 2007. The Government is looking into the feasibility of this date and will get back to us.

Second, the parties tentatively have agreed to meet at 9 am on June 7, 2007 at the Washington D.C. offices of Perkins Coie LLP regarding exhibit and audit verification issues. The agenda that WE envisions for the meeting includes: (1) review and resolve exhibit objections; (2) determine which exhibits are on both parties' lists so that a joint exhibit list can be created; and (3) work towards completion of the audit verification process in case it is not completed as of that date. WE would very much like to meet on June 7 or sometime during the week of June 4 because Rick Oehler expects to be in D.C. that week.



ANCHORAGE · BEIJING · BELLEVUE · BOISE · CHICAGO · DENVER · LOS ANGELES
MENLO PARK · OLYMPIA · PHOENIX · PORTLAND · SAN FRANCISCO · SEATTLE · WASHINGTON, D.C.
Perkins Coie LLP and Affiliates

Third, this confirms that we received by email the Government deposition exhibits previously requested in WE's May 8 letter.

Fourth, Russ raised the possibility of the parties stipulating to a damages cut-off of December 31, 2006 to resolve the pending Plaintiff's Motion for Leave to file its Second Amended and Supplemental Complaint. We have conferred with WE and WE is willing to agree to this stipulation. Please inform us within the next day or so whether the Government is willing to agree to this stipulation.

If you have any questions, please feel free to contact us.

Very truly yours,

Donald J. Carney

cc: Catherine Phillips
Richard W. Oehler

Perkins Coie

607 Fourteenth Street N.W.
Washington, D.C. 20005-2011
PHONE: 202.628.6600
FAX: 202.434.1690
www.perkinscoie.com

Donald J. Carney
PHONE: (202) 434-1675
FAX: (202) 654-9113
EMAIL: DCarney@perkinscoie.com

May 24, 2007

**BY FACSIMILE AND FIRST CLASS MAIL**

Russell A. Shultis, Esq.
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530

**Re: Wisconsin Electric Power Co. v. United States, No. 00-697C**

Dear Russ:

This letter confirms our telephone discussion yesterday in which I requested that the Government produce to Wisconsin Electric Power Company ("WE") a copy of its trial exhibits in this case in electronic format. In specific, WE requests that the Government produce the documents in an electronic TIF file format suitable for uploading into trial director. That is the format in which WE produced its trial exhibits to the Government on May 18, 2007.

The production of documents in this format is in the interests of both parties. It will potentially facilitate the resolution of objections and other pretrial activities. You indicated that you would let us know some time next week regarding this issue. I appreciate your anticipated cooperation.

If you have any questions, please feel free to contact us.

Very truly yours,

Donald J. Carney

cc: Catherine Phillips
Richard W. Oehler

Perkins Coie

607 Fourteenth Street N.W.
Washington, D.C. 20005-2011
PHONE: 202.628.6600
FAX: 202.434.1690
www.perkinscoie.com

Donald J. Carney
PHONE: (202) 434-1675
FAX: (202) 434-1690
EMAIL: DCarney@perkinscoie.com

May 31, 2007

**BY FACSIMILE AND FIRST CLASS MAIL**

Sharon A. Snyder
U.S. Department of Justice
Commercial Litigation Branch
Civil Division
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, DC 20530

**Re: Wisconsin Electric v. United States, No. 00-697C**

Dear Sharon:

This letter responds to your letter of yesterday regarding the electronic files of Wisconsin Electric Power Company's ("WE's") trial exhibits that WE produced to the Government pursuant to the parties' agreement to exchange exhibits.

WE respectfully disagrees with the Government's assertion that WE has not complied with the Rules of the United States Court of Federal Claims. Pursuant to the Rules, WE produced to the Government as part of the agreed-to exchange "each exhibit listed" on WE's exhibit list in electronic format. App. A, ¶ 13(a). No where do the Rules require that parties exchange marked copies of trial exhibits.

In any event, the electronic files provided by WE are titled by exhibit number. For instance, the file for plaintiff's exhibit 23 is entitled "P0023-0001.tif" and contains images of all of the pages of plaintiff's exhibit 23. Enclosed as Attachment A is a screen capture from the disk of exhibits provided to the Government illustrating that WE's electronic files in fact identify each exhibit by their exhibit number. Further, when WE's electronic files are loaded into the Trial Director software that is used to view exhibits at trial, Trial

Director will display WE's exhibits according to their electronic file name, which references the exhibit number. The titles of WE's electronic files make every document easily identifiable to the Government. WE has complied with the Rules and, moreover, the Government has all of the information that it needs in order to discuss exhibits and objections on June 7, 2007 as we have scheduled.

When we spoke on the phone regarding this issue, I mentioned that I would review your concern regarding exhibit marking. One disadvantage to the Government's request is that exhibits may have to be renumbered if the parties identify exhibits for a joint exhibit list pursuant to App. A, ¶ 18. Indeed, WE expects this to be one of the subjects that we discuss during our June 7, 2007 meeting. Nevertheless, in order to move this issue forward, we expect to be able to provide the Government with electronically-marked exhibit pages shortly. Although we will not be able to produce the files by the Government's two day deadline of June 1, we expect to produce the files by June 6 at the latest.

Relatedly, the Government has not yet responded to WE's letter of May 24, 2007 requesting that the Government produce its exhibits in electronic format as WE did for the Government. In our view, electronic files are far easier to handle and will assist when we meet to resolve exhibit objections.

As discussed above, WE will shortly provide the Government with the requested marked pages in electronic format. WE's production of exhibits, however, sufficiently identified each exhibit such that the Government's request is unnecessary. Consequently, WE fully expects to meet with the Government on June 7 as we have previously agreed.

Very truly yours,

Donald J. Carney

cc: Catherine Phillips
Richard W. Oehler

28795-0001/LEGAL13287932.1

# ATTACHMENT A



Perkins Coie

607 Fourteenth Street N.W.
Washington, D.C. 20005-2011
PHONE: 202.628.6600
FAX: 202.434.1690
www.perkinscoie.com

Donald J. Carney
PHONE: (202) 434-1675
FAX: (202) 434-1690
EMAIL: DCarney@perkinscoie.com

June 6, 2007

**BY HAND DELIVERY**

Sharon A. Snyder
U.S. Department of Justice
Commercial Litigation Branch
Civil Division
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, DC 20530

**Re: Wisconsin Electric v. United States, No. 00-697C**

Dear Sharon:

As discussed in my letter of May 31, 2007, Wisconsin Electric Power Company ("WE") hereby produces to the Government an additional set of WE's trial exhibits. WE's original May 18 production identified all of the exhibits by number, but we have revised the image files to include exhibit numbers on the face of the documents.

Additionally, we reiterate our request that the Government produce its trial exhibits to WE electronically. The Government has not responded to our written requests on May 24 and May 31 on this subject. As previously explained, in our view, electronic files are far easier to handle and will assist in our effort to resolve exhibit objections and issues.

If you have any questions, please feel free to contact us.

Very truly yours,

Donald J. Carney

cc: Catherine Phillips
Richard W. Oehler

Perkins Coie

607 Fourteenth Street N.W.
Washington, D.C. 20005-2011
PHONE: 202.628.6600
FAX: 202.434.1690
www.perkinscoie.com

Donald J. Carney
PHONE: (202) 434-1675
FAX: (202) 654-9113
EMAIL: DCarney@perkinscoie.com

June 8, 2007

**BY FACSIMILE AND FIRST CLASS MAIL**

Sharon A. Snyder
U.S. Department of Justice
Commercial Litigation Branch
Civil Division
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, DC 20530

**Re: Wisconsin Electric v. United States, No. 00-697C**

Dear Sharon:

I am writing to reschedule our meeting to discuss trial exhibit and audit verification issues. When you informed me that the Government could not meet on June 7, you mentioned that you would be available during the first part of the week of June 25. Accordingly, we propose meeting at 1:00 p.m. on Tuesday, June 26 at the Washington, D.C. offices of Perkins Coie. We look forward to moving forward on these issues at that time.

If this date and time will not work for the Government, please let me know as soon as possible. Otherwise, we will plan on seeing you on the 26th.

Very truly yours,

Donald J. Carney

cc: Catherine Phillips
Richard W. Oehler

Perkins Coie

1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
PHONE: 206.359.8000
FAX: 206.359.9000
www.perkinscoie.com

Richard W. Oehler
PHONE: (206) 359-8419
FAX: (206) 359-9419
EMAIL: ROehler@perkinscoie.com

June 11, 2007

**BY FACSIMILE AND FIRST CLASS MAIL**

Sharon A. Snyder
U.S. Department of Justice
Commercial Litigation Branch
Civil Division
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, DC 20530

**Re: Wisconsin Electric v. United States, No. 00-697C**

Dear Sharon:

In compliance with the Court's February 23, 2007 Order, we are writing to schedule the pretrial conference in this case. We propose having the pretrial conference on Friday, August 17, 2007. We believe that having the pretrial three weeks before the start of trial is appropriate. It will permit the Court and the parties hopefully to resolve issues that will make the parties' respective final pretrial preparations more efficient.

At one point, the Department of Justice indicated a desire to have the pretrial conference a mere one week before trial. We believe that such a last-minute conference will not aid the parties in their final pretrial preparations and is too close to trial.

Please let me know your thoughts at your earliest opportunity.

Very truly yours,

Richard W. Oehler

cc: Catherine Phillips
Donald J. Carney

28795-0001/LEGAL13297229.1

Perkins Coie

1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
PHONE: 206.359.8000
FAX: 206.359.9000
www.perkinscoie.com

Richard W. Oehler
PHONE: (206) 359-8419
FAX: (206) 359-9419
EMAIL: ROehler@perkinscoie.com

June 18, 2007

**BY FACSIMILE AND FIRST CLASS MAIL**

Sharon A. Snyder
U.S. Department of Justice
Commercial Litigation Branch
Civil Division
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, DC 20530

**Re: Wisconsin Electric v. United States, No. 00-697C**

Dear Sharon:

As you know, the Court granted the motion of Wisconsin Electric Power Company ("WE") for leave to file its Second Amended Complaint and, thereby, permitted WE to claim its 2006 and early 2007 costs. WE subsequently filed its Second Amended Complaint. As discussed in our pleadings regarding the motion, we believe that WE has provided the Government with all necessary information for the Government to complete its audit verification of these costs. If the Government believes that it requires any additional information, please let us know as soon as possible.

The Government previously completed its audit verification of WE's costs through 2005. We enclose two relevant letters, a January 26, 2007 letter from the Department of Justice ("DOJ") to Perkins Coie and a February 16, 2007 Perkins Coie response. As the Government is aware, this exchange of letters was the culmination of extensive Government audit activity. WE hosted a Government audit conference at WE's Milwaukee headquarters in 2005 and responded to numerous Government information requests. In its enclosed letter, DOJ indicates that it does not deny the accuracy of WE's claimed NRC annual fees, employee expenses, pension and benefit costs and labor costs.

Further, we believe that our February 16, 2007 response resolves any remaining Government's question regarding the accuracy of WE's A&G costs.

Once the Government has completed its audit verification of the 2006 and 2007 costs, WE expects that DOJ will provide a similar letter regarding the accounting records submitted by WE in connection with its 2006-2007 cost update. In addition, pursuant to the Court's November 8, 2002 Order and RCFC Appendix A, ¶ 17, WE expects that the parties will enter into a stipulation regarding the accuracy of the aforementioned categories of costs claimed by WE in this litigation. Such a stipulation should streamline the parties' pretrial efforts and the conduct of trial in this matter.

If the Government has any different expectations or understandings, please let us know as soon as possible so that these issues can be resolved by the parties or, if necessary, by the Court.

Very truly yours,

Richard W. Oehler

Richard W. Oehler

cc: Catherine Phillips
Donald J. Carney

Perkins Coie

607 Fourteenth Street N.W.
Washington, D.C. 20005-2011
PHONE: 202.628.6600
FAX: 202.434.1690
www.perkinscoie.com

Donald J. Carney
PHONE (202) 434-1675
FAX (202) 654-9113
EMAIL DCarney@perkinscoie.com

June 22, 2007

**BY FACSIMILE AND FIRST CLASS MAIL**

Sharon A. Snyder
U.S. Department of Justice
Commercial Litigation Branch
Civil Division
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, DC 20530

**Re: Wisconsin Electric v. United States, No. 00-697C**

Dear Sharon:

This follows up on our call yesterday regarding the Government's cancellation of the meeting that Wisconsin Electric Power Company ("WE") had requested with the Government for June 26 regarding trial exhibits and other issues. Our call also addressed several issues that WE has raised in correspondence to the Department of Justice ("DOJ") regarding this case that either remain unresolved or regarding which the DOJ has not yet provided a position or a response.

WE is interested in the parties setting a schedule within the next couple of weeks regarding meetings of the parties and other activities. Agreeing on a schedule now will facilitate planning and minimize the likelihood of conflicts with other commitments by counsel and the witnesses. Perkins Coie counsel involved in this matter all have numerous commitments over the next several months. Advance planning is also important so that the attorney of record in this case, Rick Oehler, may travel from Seattle, Washington for commitments requiring his presence. Accordingly, WE hereby requests that the Government inform us by July 9 the Government's schedule for additional discovery and supplemental expert reports, if any, in this case.

As we discussed yesterday, it is also in the interests of both parties to meet regarding trial exhibit issues, the potential for narrowing issues at trial, and other issues. The Government indicated on the phone that such a meeting may be possible in the latter part of July. WE hereby proposes to the Government that the parties have such a meeting at 9 am on Monday, July 23, 2007 at the downtown Washington DC offices of Perkins Coie. We agree with the Government that the parties should exchange agendas before the meeting and WE proposes July 13 for the exchange of such agendas. Again, we would very much like to schedule a date for such a meeting soon and request a written response proposing a firm date by July 9.

During our call yesterday, the Government stated that it does not agree with our proposed August 17 date for a pretrial conference. The Government has not responded in writing to our offer or proposed another date. In an attempt to accommodate the Government's desire to push the meeting closer to trial, WE hereby offers to schedule the pretrial conference on August 20 or 21. WE requests a written response to WE's offers regarding the date for the pretrial conference by July 9.

Finally, WE's February 16 and June 18 letters sought the Government's response on audit related issues and a stipulation regarding WE's claimed costs, including the 2006 and 2007 costs contained in WE's Second Amended Complaint. Given that the updated costs are the same as the costs previously audited by the Government, we would expect that the Government could provide a substantive response on stipulating to costs in the near future. WE again requests a response on this issue by July 9, 2007.

Please contact me if you have any questions.

Very truly yours,

Donald J. Carney

cc: Richard W. Oehler
Catherine Phillips

28795-0001/LEGAL13347197.1