# In the United States Court of Federal Claims

No. 00-697 C
(Filed August 21, 2007)

| | |
|---|---|
| WISCONSIN ELECTRIC POWER COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant. | ) |

## ORDER

On July 23, 2007, the clerk's office received a Motion to Intervene from Mr. William Peterson. The clerk's office did not file the proffered submission because it did not comport with the court's rules, but forwarded the submission to chambers for disposition. A prior, somewhat similar submission was tendered by Mr. Peterson in April of this year and ordered returned to him, unfiled. *See* Order of April 27, 2007.

As Mr. Peterson is appearing *pro se*, his submissions have been construed more liberally than if they had been prepared by counsel. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *see Vaizburd v. United States*, 384 F.3d 1278, 1285 n.8 (Fed. Cir. 2004) (noting that pleadings drafted by *pro se* parties "should accordingly not be held to the same standard as parties represented by counsel"). Nevertheless, the basis of subject matter jurisdiction must be apparent from his filings. *Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1991); *Kelley v. Sec'y, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987). For the limited purposes of determining whether the court would have subject matter jurisdiction over Mr. Peterson's allegations, assuming he were allowed to intervene, the court will presume all the facts he asserts in his submission are true, and "draw all reasonable inferences in favor of the plaintiff." *Henke*, 60 F.3d at 797; *see also Hamlet v. United States*, 873 F.2d 1414, 1415-16 (Fed. Cir. 1989).

Subject matter jurisdiction, if any, for Mr. Peterson's claims in this court must emanate from the Tucker Act, which grants "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Moreover, the Tucker Act itself does not grant a right to sue in this court. *United States v. Testan*, 424 U.S. 392, 398 (1976). Rather, one seeking redress in this court must also identify a substantive claim that "can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." *United States v. Mitchell*, 463 U.S. 206, 217 (1983) (citing *Testan*, 424 U.S. at 400.)

Mr. Peterson "moves that the Court see the Peterson 300-year SNF disposal solution and issue a ruling for its application," that "the Court move the Nuclear Waste Deposit Fund ("NWDF") back from the General Treasury and put it back to fund the work, even to apply it with Peterson to immediately build Pigeon Spur.[1/]" (William D. Peterson's *Pro Se* Motions to Intervene, at 12.) He "moves the Court for a stipulation supporting the 300-year SNF disposal solution for doing SNF disposal." He asks that the NWDF be used to pay for his "300-year SNF disposal solution" in order to "get the nuclear utilities relieved of their SNF and so unencumbered they can build and operate the nuclear plants projected needed by the nation." (*Id.* at 14.)

Even liberally construed, Mr. Peterson's submission fails to implicate a money-mandating constitution provision, or federal statute or regulation necessary for this court's jurisdiction. Indeed, Mr. Peterson distances himself from the underlying breach of contract and request for monetary damages. "At this point a 'breach of contract' or 'monetary damages' are not the real underlining [sic] issues." (William D. Peterson's Response to Defendant's Response to Mr. William D. Peterson's *Pro Se* Motion to Intervene and Complaint, attached to the Motion to Intervene 16.) "The real issues are getting the SNF off the utility sites, the U.S. Government providing an SNF disposal solutions, i.e., the Peterson 300-year SNF disposal solution and Peterson's doing the solution [paid for with the NWDF]." (*Id.*) "True, the defendant applicant does not seek monetary damages from either the United States or the

[1/] Mr. Peterson states that he, with the Southern Pacific Railroad, offered the Pigeon Spur area on the Transcontinental Main Line in Utah as a location for SNF storage, and in 1986, he submitted an NRC license application for Pigeon Spur.

nuclear utilities." (*Id*.) Even if, *arguendo*, a cognizable claim was cited, this court has no power to grant the "relief" he seeks – the federal government's use of his spent nuclear fuel storage solution.[2/] The court cannot grant equitable or injunctive relief, except in limited circumstances not applicable here. 28 U.S.C. § 1491(b)(2); *Kanemoto v. Reno*, 41 F.3d 641, 644-45 (1994) ("The remedies available in [the Court of Federal Claims] extend only to those affording monetary relief; the court cannot entertain claims for injunctive relief or specific performance, except in narrowly defined, statutorily provided circumstances[.]").

Even if this court had jurisdiction over the substance of Mr. Peterson's requests, his intervention in this particular action is untimely.[3/] This spent nuclear fuel case was commenced in 2000 and has been the subject of a number of decisions and orders addressing a variety of pre-trial motions. The parties now are well-advanced in their final preparations for trial, which is scheduled to commence on September 10, 2007. Intervention would prejudice the parties and delay the final resolution of this matter. *Honeywell Intern., Inc. v. United States*, 71 Fed. Cl. 759, 761-64 (2002) (discussing timeliness requirements of RCFC 24(a) – intervention as a matter or right; and 24(b) – permissive intervention).

---

[2/] The court notes that Birdie V. Hamilton-Ray, Contracting Officer, DOE, Office of Civilian Radioactive Waste Management, responding to Mr. Peterson's unsolicited proposals regarding a 300-year solution for dealing with spent nuclear fuel or reprocessed spent nuclear fuel, wrote to Mr. Peterson on August 6, 2003:

> The U.S. Department of Energy (DOE) takes its direction from the U.S. Congress in matters relating to the disposition of spent nuclear fuel and high-level radioactive waste. The [NWPA], as amended, directs the DOE to seek permanent disposal for such waste. The Act further directed the U.S. Environmental Protection Agency to develop standards for permanent disposal, and the U.S. Nuclear Regulatory Commission to license a permanent disposal site. Consequently, the DOE must design a permanent disposal system that meets this regulatory framework. Your proposal for a 300-year storage period would not fulfill the Congressional directives contained in the Act.

[3/] Mr. Peterson has sought to participate in many, if not all, of the approximately fifty lawsuits pending in the Court of Federal Claims for partial breach of the Standard Contract between nuclear electric utilities and the Department of Energy. While a few have gone through trial on the merits and are on appeal, many are still in various pretrial stages.

Not only does this court lack jurisdiction over Mr. Peterson' claims and could not grant the relief he seeks in any event, there are no grounds for intervention. Intervention requires a timely application and either (1) a statute that "confers an unconditional right to intervene: or (2) . . . an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." RCFC 24(a). No statutory right to intervene is stated, and Mr. Peterson does not have an "interest" in the plaintiffs' underlying partial breach of contract claims against the United States such as to permit intervention under RCFC 24(a)(2) as a matter of right. *United Keetoowah Band of Cherokee Indians of Okla. v. United States*, 480 F.3d 1318, 1324 (Fed. Cir. 2007) (construing RCFC 19(a)(2), a counterpart to RCFC 24(a)(2) as requiring a direct and immediate interest); *Am. Mar. Transp., Inc. v. United* States, 870 F.2d 1559, 1561 (Fed. Cir. 1989) ("Intervention is proper only to protect those interests which are of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment." (internal quotation, citations and emphasis omitted)); *Preseault v. United States,* 100 F.3d 1525, 1529 (Fed. Cir. 1996) (intervening party had an interest in the real estate); *Rolls-Royce, Ltd., Derby, England v. United States*, 176 Ct. Cl. 694, 696, 364 F.2d 415, 416 (1966) (affirming intervention because of indemnity agreement wherein intervenor could be liable for a judgment rendered against the United States).

Similarly, the submission does not warrant permissive intervention under RCFC 24(b). No statute creates a conditional right to intervene and no common direct issue of fact or law is cited. *Honeywell Intern., Inc. v. United States*, 71 Fed. Cl. 759, 768 (2006) (RCFC 24(b)(2) requires common questions of law or fact and intervention must not unduly delay or prejudice resolution of the litigation); *John R. Sand & Gravel Co. v. United States*, 59 Fed. Cl. 645, 657-58 (2004), *aff'd*, 143 Fed. Appx. 317 (Fed. Cir. 2005) (denying permissive intervention where there were no common issues of fact or law, allowing intervention would burden the proceedings and the proposed intervenor did not have a claim against the United States, a prerequisite for jurisdiction in this court under the Tucker Act, 28 U.S.C. § 1491(a)(1)(2000)).

Accordingly, it is **ORDERED** that no valid basis for seeking intervention has been shown, and the request is untimely. The Clerk of the Court shall return the Submissions to Mr. Peterson together with a paper copy of this order.

s/ James F. Merow
James F. Merow
Senior Judge