**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| WISCONSIN ELECTRIC POWER COMPANY,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant. | No. 00-697C<br>(Senior Judge Merow) |

**PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE**
**CERTAIN DEMONSTRATIVES AND RELATED EXPERT TESTIMONY**

Wisconsin Electric Power Company ("WE") files this motion *in limine* to exclude certain demonstratives of Mr. Stephen Kiraly and any related testimony. The demonstratives that WE seeks to exclude are as follows:

1. Defendant's demonstratives DDX 5-55 through 5-57. These demonstratives purport to relate to the time to load a NUHOMS canister compared to a VSC-24 cask;

2. Defendant's demonstrative 5-42. This slide adjusts WE's claim to exclude legal expenses; and

3. Defendant's demonstratives DDX 5-3, 5-15, 5-16 through 5-18, 5-23 and 5-26. WE seeks to exclude the third category of demonstratives as contrary to the parties' Joint Stipulation Regarding Accuracy of Plaintiff's Costs.

## I. BACKGROUND

The Government served Mr. Kiraly's expert report on WE on June 30, 2006 and served replacement attachments to the report on August 29, 2007 (collectively, the "Kiraly report"). WE deposed Mr. Kiraly regarding the Kiraly report from August 16, 2006 through August 18, 2006 ("Kiraly deposition"). On September 21, 2007, the parties filed a Joint Stipulation Regarding Accuracy of Plaintiff's Costs in this case ("Joint Stipulation").

On October 10, 2007, the Government produced to WE the demonstratives it intends to use during Mr. Kiraly's trial testimony ("Kiraly demonstratives"). Appendix 1-66 ("Appx.").

## II. ARGUMENT

### A. DDX 5-55 – 5-57 (Pursuit of Dual Purpose Casks)

Government demonstratives DDX 5-55 through DDX 5-57, the cask loading times slides, constitute new expert opinions outside the scope of Mr. Kiraly's existing opinions. These new opinions were not previously-disclosed to WE. The Government has known for a long time, and far earlier than trial in this case, the substance of the testimony of Wisconsin Electric's witnesses regarding cask loading times. In January 2006, Mr. Jim Becka testified that it takes less time to place a NUHOMS canister into service compared to a VSC-24. Appx. 67-71 (Becka Dep. Tr. 18:5-13, 169:16-18, and 170:12-24 (January 20, 2006)).

In addition, WE produced documents relevant to this issue well prior to trial. On March 30, 2006, WE produced work order packages for the VSC-24 loadings in response to Government Request for Production of Documents 103. Appx. 72-73 (March 30, 2006 WE letter producing WISC 00114818-00116023). On August 20, 2007, WE produced work order packages for recent NUHOMS loadings in response to the Government's August 14, 2007 letter request. Appx. 74 (August 20, 2007 WE letter producing WISC 00136548-00137994). In addition, the ISFSI plan views, which are found at PX 796.1 and PX 1029 (bates page KRGWE 003846), were both produced prior to trial.

Rule 26(a)(2) of the Rules of the Court of Federal Claims ("RCFC") governs the disclosure of expert opinions and requires that designated expert witnesses provide a written report containing "a complete statement of all opinions to be expressed and the basis and reasons therefor." RCFC(a)(2)(B) (emphasis added). This Court has stricken expert material when the new material constitutes a "new expert report." See Cane Tennessee, Inc. v. United States, 57 Fed.Cl. 115 (2003). See also O2 Micro Int'l Ltd. v. Monolothic Power Systems,

Inc., 467 F.3d 1355, 168-69 (Fed.Cir. 2006) (affirming exclusion of untimely expert reports according to Fed.R.Civ.P. 37(c)(1) and 26(a)(2)).

This new expert material regarding cask loading times materially prejudices WE. All that is available to Wisconsin Electric are the bare slides in Mr. Kiraly's demonstratives. Not only has Mr. Kiraly not issued a supplement to his report, he has provided no underlying documentation in support of his new opinion. By contrast, the Kenrich Group has typically provided a binder with additional background information when it has updated or supplemented its report in this matter. The Government's failure to do likewise has deprived WE of the ability to know what fact and or expert testimony would have been required for a full airing of the issues. This is especially the case considering that the Government has only provided these new expert analyses during the fifth week of an almost six week trial. WE will be materially prejudiced if it is required to probe these new analyses for the very first time during trial.

In these circumstances, WE objects to the new cask loading times opinion and the corresponding slides, DDX 5-55 through DDX 5-57, under RCFC 26. WE requests that the Cask loading times slides and any related testimony be excluded.

**B. DDX 5-42 Comment Regarding Legal Invoices**

Mr. Kiraly should not be allowed to testify about the materials presented in DDX 5-42 or to present that demonstrative to the Court. Mr. Kiraly will apparently testify that WE's claimed legal expenses in the amount of $1,222,393 should be excluded.[1] Mr. Kiraly's testimony in this regard would be contrary to the parties' Joint Stipulation. WE notes, however, that Mr. Kiraly's purported concerns regarding the legal invoices potentially can be cured through the negotiated production of these documents.

[1] None of the legal fees claimed by WE reflect charges from Perkins Coie related to this litigation that were previously removed from the claim.

The legal costs at issue relate to WE's dry storage application before the PSCW and alternative spent nuclear fuel storage siting projects. Several years ago during discovery, WE declined to produce to the Government unredacted invoices because of a concern that this might be misconstrued as a waiver of the attorney-client privilege with regard to WE's Standard Contract dispute with DOE. If redacted invoices raised a concern on the part of the Government, WE would have expected some follow-up communication from Government counsel. If WE had heard from the Government regarding this issue, WE would have agreed to produce the unredacted legal invoices at issue provided that there was agreement that such production did not constitute a waiver of the attorney-client privilege with regard to WE's Standard Contract dispute with DOE. WE never heard further from the Government and reasonably assumed that there was no remaining Government concern.

If Mr. Kiraly had needed unredacted invoices, the Government should have contacted WE regarding this matter far earlier than upon presentation of Mr. Kiraly's demonstratives. From the face of slide DDX 5-42, Mr. Kiraly's only concern is the claimed inability to sort the co-called Newton project from other legal fees. WE of course would have been willing to work with the Government to allow Mr. Kiraly to do such a straightforward analysis of the legal fees had WE known of Mr. Kiraly's concerns. WE timely replied to numerous similar Government audit requests and would have done so here if asked. Moreover, the Government never sought to except the legal invoices from the Joint Stipulation. The Government's failure to raise the legal invoice issue in this process gave WE no indication that the Government would now contest these same costs.

WE remains willing to produce unredacted invoices to the Government, provided that there is agreement between the parties or a ruling from the Court that such production does not constitute a waiver of the attorney-client privilege with regard to WE's Standard Contract dispute with DOE.

**C. Kiraly Demonstratives Contrary to Stipulation**

Certain of Mr. Kiraly's demonstratives are also contrary to the Joint Stipulation. WE understood that the parties had agreed, through the September 21, 2007 Joint Stipulation, that, with the exception of two categories, WE's claimed costs were "incurred by WE and [] traceable to and supported by WE's accounting records." Appx. 75-77. Accordingly, WE's damages experts, Messrs. Sieracki and Metcalfe, did not testify to approximately 29 of Plaintiff's exhibits.

The demonstratives to which WE objects include the following: Slide DDX 5-3, which relates to A&G Costs Claimed. Slides DDX 5-15 (second bullet), DDX 5-16 through 5-18, DDX 5-23 (top two bullets) and DDX 5-26 (third bullet) generally relate to salaried labor. The Government had stipulated to the accuracy of these costs.

WE would be materially prejudiced if the Government is permitted now to present testimony contesting the accuracy of WE's costs in these slides. The Government's apparent prior agreement to the accuracy of the costs at issue affected the proofs that WE presented at trial and deprived WE of the ability to adequately prepare to examine Mr. Kiraly on these costs at trial. Accordingly, WE requests that the Government be precluded from offering the testimony in these slides.

Additionally, if Mr. Kiraly's testimony appears to be contrary to the parties' stipulation as to costs, it may be necessary for WE to move for the admission of all of the underlying Kenrich and initial disclosures materials so as to supplement the record. WE had not to this point contemplated the admission of these voluminous additional exhibits based on the parties' Joint Stipulation. In view of Mr. Kiraly's anticipated testimony, WE may not have any alternative but to do so.

## IV. CONCLUSION

For the foregoing reasons, WE respectfully requests that the Court exclude the new Kiraly opinions not previously disclosed and the demonstratives related to these new expert opinions; and exclude the demonstratives and any related testimony relating to redacted legal invoices and those issues contrary to the parties' Joint Stipulation. In the alternative, WE requests a recess to depose Mr. Kiraly regarding his new opinions and any supporting analyses. Lastly, WE reserves the right to *voir dire* Mr. Kiraly at trial regarding his qualifications.

Dated: October 14, 2007

Respectfully submitted,

s/Richard W. Oehler by s/Emily C.C. Poulin
Richard W. Oehler
Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
(206) 583-8419

Attorneys for Plaintiff
WISCONSIN ELECTRIC POWER COMPANY

Of Counsel:

Donald J. Carney
Mary Rose Hughes
Perkins Coie LLP
607 Fourteenth Street, N.W.
Washington, D.C. 20005
(202) 434-1675

**CERTIFICATE OF SERVICE**

I certify under penalty of perjury that, on October 14, 2007, I caused a copy of the foregoing "Plaintiff's Motion *In Limine* to Exclude Expert Testimony and Related Demonstratives" to be filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Emily C.C. Poulin
Emily C.C. Poulin

# Methodology of Damages Analysis

*General Methodology to Assess Damages*

- Review the accounting records;
- Determine if costs were incurred;
- Determine if costs were caused by the breach.

Kiraly DDX 5-1

Appendix 1

# Methodology of Damages Analysis

*General Methodology for a Damages Model*

- The appropriate damage model quantifies the difference between the actual costs incurred and the costs that would have been incurred even absent a breach.
- The standard methodology for computing breach-related damages is to exclude any costs that would have been incurred even absent a breach.

Kiraly DDX 5-2

# Methodology of Damages Analysis

*Damages Analysis Performed on WEPCO's Claim*

- Determine if the costs claimed by WEPCO were actually incurred and traceable to accounting records.
  - Exceptions of costs incurred and traceable to accounting records are Weighted Average Cost of Capital, Temporary Cask Pit Rack cost estimate, A&G costs claimed and Costs Parsed from NRC Annual Reactor License Fees
- Determined if the costs included in the claim were incurred as a result of the DOE partial breach.
- Monetized the adjustments to WEPCO's claim based upon assumptions the Government experts and counsel provided.

Kiraly DDX 5-3

# Methodology of Damages Analysis

## *Shortcomings of Damage Claim Prepared by Plaintiff's Expert*

- Kenrich alleges to agree with this methodology, but did not follow it. [/1]

- The Kenrich report is primarily a series of summary schedules memorializing the plaintiff's costs and some basic testing to verify that the costs were incurred, offering no critical analysis.

- Kenrich did not fully consider the costs that would have been spent even absent a breach, therefore, failed to implement the methodology recommended within their expert report.

Note: /1 ***Overall Approach to Assessing Damages***, Kenrich Report p. 12, PX 0794

**Kiraly DDX 5-4**

# Methodology of Damages Analysis

## *Exclusion of Fixed Costs Does Not Cause Increased Spending*

- Unnecessarily spending more money for capabilities that already exist at WEPCO is needlessly excessive.
- To use internal resources which have excess capacity has a positive net income impact since WEPCO would recover costs it would otherwise have incurred, but not received any additional revenue.
- To use external resources in hopes of recovering those costs in a claim has a net zero effect to income.
  - If the costs are not recovered in litigation, than the company needlessly increased costs.

Kiraly DDX 5-5

# Methodology of Damages Analysis

*No Beneficiary Relationship from Dry Fuel Storage Project to DOE*

- No contract between DOE and WEPCO to build an ISFSI
- Therefore, the concept of equitable adjustment does not apply to the damages in this case
- The concept of benefit is misplaced in a breach of contract because the issue is of increased costs to WEPCO

Kiraly DDX 5-6

# Analysis of WEPCO's Damages Claim

## *Summary of WEPCO's Claim*

| Description | WEPCO Claim Amount | Prejudgment Interest Applied | Total Claimed Damages |
|---|---|---|---|
| **On-Site Storage** | | | |
| ISFSI, Licensing, Engineering, Construction & Maintenance | $ 20,682,871 | $ 28,406,129 | $ 49,089,000 |
| Dry Casks | 31,535,692 | 17,242,308 | 48,778,000 |
| Handling DOE Containers | 0 | 0 | 0 |
| Temporary Cask Pit Rack | (2,047,641) | (3,817,359) | (5,865,000) |
| **Total On-Site Storage** | **$ 50,170,922** | **$ 41,831,078** | **$ 92,002,000** |
| **Other Cost Types** | | | |
| Private Fuel Storage | $ 883,503 | $ 1,337,497 | $ 2,221,000 |
| Spent Fuel Management | 1,282,054 | 1,035,946 | 2,318,000 |
| **Total Other** | **$ 2,165,556** | **$ 2,373,444** | **$ 4,539,000** |
| **Total WEPCO Claim** | **$ 52,336,479** | **$ 44,204,521** | **$ 96,541,000** |

Source: Amounts from Kenrich Trial Damages Model produced September 24, 2007.

**Kiraly DDX 5-7**

# Analysis of WEPCO's Damages Claim

## *Summary of Adjustments to WEPCO's Claim*

| Description | Total WEPCO Claim | Claim Adjustments | WEPCO Claim After Adjustments |
|---|---|---|---|
| ISFSI | $ 20,682,871 | $ (20,127,278) | $ 555,594 |
| Dry Casks | 31,535,692 | (18,821,798) | 12,713,894 |
| Private Fuel Storage | 883,503 | (883,503) | 0 |
| Spent Fuel Management | 1,282,054 | (604,372) | 677,682 |
| **WEPCO Claim for Recorded Costs** | **$ 54,384,120** | **$ (40,436,950)** | **$ 13,947,170** |
| Temporary Cask Pit Rack | (2,047,641) | 2,047,641 | 0 |
| Handling DOE Containers | 0 | (3,688,166) | (3,688,166) |
| **WEPCO Claim Before Interest** | **$ 52,336,479** | **$ (42,077,475)** | **$ 10,259,004** |
| Prejudgment Interest Applied | 44,204,521 | (44,204,521) | 0 |
| **Total Claimed Damages** | **$ 96,541,000** | **$ (86,281,996)** | **$ 10,259,004** |

Source: Kiraly Report Attachment 1 and Attachment 1-a.

**Kiraly DDX 5-8**

# Analysis of WEPCO's Damages Claim

## *Government Adjustments as Presented in Report*

| Description | WEPCO Claim Amount | Claim Adjustments | Adjusted Claim Amount |
|---|---|---|---|
| Labor | $ 9,231,311 | $ (6,650,322) | $ **2,580,989** |
| Employee Expenses | 617,135 | (523,782) | **93,353** |
| Payroll Adjustments | 536,444 | (536,444) | **0** |
| G & A Adjustments | 1,733,273 | (1,733,273) | **0** |
| Private Fuel Storage | 883,503 | (883,503) | **0** |
| Annual NRC License Fees | 2,283,333 | (2,283,333) | **0** |
| ISFSI and VSC-24 Costs | 18,571,441 | (14,370,678) | **4,200,763** |
| TN-32 Cancellation | 4,915,113 | (4,915,113) | **0** |
| Pursuit of Dual-Purpose Cask | 15,044,948 | (8,540,503) | **6,504,446** |
| Other Spent Fuel Costs | 567,619 | 0 | **567,619** |
| **WEPCO Claim for Past Costs** | **$ 54,384,120** | **$ (40,436,950)** | **$ 13,947,170** |
| Temporary Cask Pit Rack | (2,047,641) | 2,047,641 | **0** |
| **Net Claim Amount** | **$ 52,336,479** | **$ (38,389,309)** | **$ 13,947,170** |
| Avoided Costs to Load to DOE | 0 | (3,688,166) | **(3,688,166)** |
| **Net Claim Amount** | **$ 52,336,479** | **$ (42,077,475)** | **$ 10,259,004** |
| Interest | 44,204,521 | (44,204,521) | **0** |
| **Claim Amount Including Interest** | **$ 96,541,000** | **$ (86,281,996)** | **$ 10,259,004** |

Source: Kiraly Report Attachment 1.

**Kiraly DDX 5-9**

# Analysis of WEPCO's Damages Claim

*Claim Adjustments Can be Based Upon Multiple Reasons*

**Total Adjustments to Recorded Costs: $40,436,950**




Source: Kiraly Report Attachment 1-a-4.4.

**Kiraly DDX 5-10**

# Analysis of WEPCO's Damages Claim

## *Government Adjustments as Presented in Opening Statement*

| Description | | Amount |
|---|---|---|
| **WEPCO Claim Amount** | | $ 96,541,000 |
| Prejudgment Interest | | (44,204,521) |
| **WEPCO Claim for Nominal Costs** | | $ 52,336,479 |
| Temporary Cask Pit Rack | | 2,047,641 |
| **Costs Included in WEPCO Claim** | | $ 54,384,120 |
| **Adjustments to Costs in WEPCO Claim** | | |
| Non-Entitlement Adjustments to Claimed Costs | | |
| Non-Incremental Salaried Internal Labor | $ (2,146,185) | |
| Employee Expenses | (65,217) | |
| Non-Incremental A&G Overhead | (675,263) | |
| Total Non-Entitlement Adjustments | | (2,886,666) |
| Entitlement Adjustments to Claimed Costs | | |
| Private Fuel Storage | $ (883,503) | |
| Annual NRC License Fees | (2,283,333) | |
| ISFSI and VSC-24 Casks 1-5 | (20,550,207) | |
| TN-32B Metal Cask Costs | (5,054,402) | |
| Pursuit of Dual-Purpose Casks | (8,778,839) | |
| Total Entitlement Adjustments | | $ (37,550,284) |
| **Total Adjustments to Costs in WEPCO Claim** | | **(40,436,950)** |
| **WEPCO Claim Net of Cost Adjustments** | | $ 13,947,170 |
| But-For Loading | | (3,688,166) |
| **Net WEPCO Claim After All Adjustments** | | $ 10,259,004 |

Source: In its opening statement, and reflected here, the Government presented the claim adjustments in a different priority order than the Kiraly report. This demonstrative updates the values included on DDX 1-7 to reflect plaintiff's claim update at trial.

**Kiraly DDX 5-11**

# Analysis of WEPCO's Damages Claim

## *Government Claim Adjustments to WEPCO Claim Categories*

| Description | WEPCO Claim Category<br>ISFSI | Dry Casks | Private Fuel Storage | Spent Fuel Mgt | Total |
|---|---|---|---|---|---|
| Past Costs in Claim | $ 20,682,871 | $ 31,535,692 | $ 883,503 | $ 1,282,054 | $ 54,384,120 |
| Government Claim Adjustment Categories | | | | | |
| Non-Incremental Salaried Internal Labor | $ (423,435) | $ (1,592,402) | $ 0 | $ (130,349) | $ (2,146,185) |
| Employee Expenses | (23,909) | (35,818) | 0 | (5,490) | (65,217) |
| Non-Incremental A&G Overhead | (121,628) | (553,067) | 0 | (568) | (675,263) |
| NRC Annual Fees | (2,283,333) | 0 | 0 | 0 | (2,283,333) |
| Private Fuel Storage | 0 | 0 | (883,503) | 0 | (883,503) |
| ISFSI & VSC-24 Casks 1-5 | (16,223,930) | (3,858,313) | 0 | (467,964) | (20,550,207) |
| TN-32B Metal Casks | 0 | (5,054,402) | 0 | 0 | (5,054,402) |
| Pursuit of Dual Purpose Casks | (1,051,043) | (7,727,796) | 0 | 0 | (8,778,839) |
| Total Adjustments to Past Costs | $ (20,127,278) | $ (18,821,798) | $ (883,503) | $ (604,372) | $ (40,436,950) |
| **WEPCO Claim After Adjustments** | **$ 555,594** | **$ 12,713,894** | **$ 0** | **$ 677,682** | **$ 13,947,170** |
| But-For Loading | | | | | (3,688,166) |
| **Net WEPCO Claim** | | | | | **$ 10,259,004** |

Source: Kiraly Report Attachments.

Note: Reflects nominal costs included in WEPCO's claim. Does not include prejudgment interest or the offset for the temporary rack. The adjustments are sorted to reflect the presentation at trial.

**Kiraly DDX 5-12**

# Analysis of WEPCO's Damages Claim

## *Comparison of Government Adjustments Presentations*

| Description | As Presented in Report | As Presented in Trial |
|---|---|---|
| **WEPCO Claim Amount** | $ 96,541,000 | $ 96,541,000 |
| Prejudgment Interest | (44,204,521) | (44,204,521) |
| **WEPCO Claim for Nominal Costs** | $ 52,336,479 | $ 52,336,479 |
| Temporary Cask Pit Rack | 2,047,641 | 2,047,641 |
| **Costs Included in WEPCO Claim** | $ 54,384,120 | $ 54,384,120 |
| **Adjustments to Costs in WEPCO Claim** | | |
| Cost Type Adjustments to Claimed Costs | | |
| Non-Incremental Salaried Internal Labor | $ (6,650,322) | $ (2,146,185) |
| Employee Expenses | (523,782) | (65,217) |
| Payroll Adjustments | (536,444) | 0 |
| Non-Incremental A&G Overhead | (1,733,273) | (675,263) |
| Total Cost Type Adjustments | (9,443,820) | (2,886,666) |
| Entitlement Adjustments to Claimed Costs | | |
| Private Fuel Storage | $ (883,503) | $ (883,503) |
| Annual NRC License Fees | (2,283,333) | (2,283,333) |
| ISFSI and VSC-24 Casks 1-5 | (14,370,678) | (20,550,207) |
| TN-32B Metal Cask Costs | (4,915,113) | (5,054,402) |
| Pursuit of Dual-Purpose Casks | (8,540,503) | (8,778,839) |
| Other Spent Fuel Costs | 0 | 0 |
| Total Entitlement Adjustments | $ (30,993,130) | $ (37,550,284) |
| **Total Adjustments to Costs in WEPCO Claim** | (40,436,950) | (40,436,950) |
| **WEPCO Claim Net of Cost Adjustments** | $ 13,947,170 | $ 13,947,170 |
| But-For Loading | (3,688,166) | (3,688,166) |
| **Net WEPCO Claim After All Adjustments** | $ 10,259,004 | $ 10,259,004 |

Includes all costs that could be adjusted for accounting reasons as well as entitlement cost adjustments by cost type (labor, A&G, etc).

Includes only accounting related adjustments and no entitlement cost adjustments.

Note: In the opening statement, the Government presented the adjustments categorized by the entitlement reasons. The total adjustments to the claim are the same, just the way in which they were presented varied between the report and the opening.

Kiraly DDX 5-13

# Analysis of WEPCO's Damages Claim

## *Government Claim Adjustments*

| Description | As Presented in Report | As Presented in Trial |
|---|---|---|
| **WEPCO Claim Amount** | **$ 96,541,000** | **$ 96,541,000** |
| Prejudgment Interest | (44,204,521) | (44,204,521) |
| **WEPCO Claim for Nominal Costs** | **$ 52,336,479** | **$ 52,336,479** |
| Temporary Cask Pit Rack | 2,047,641 | 2,047,641 |
| **Costs Included in WEPCO Claim** | **$ 54,384,120** | **$ 54,384,120** |
| **Adjustments to Costs in WEPCO Claim** | | |
| Cost Type Adjustments to Claimed Costs | | |
| Non-Incremental Salaried Internal Labor | $ (6,650,322) | $ (2,146,185) |
| Employee Expenses | (523,782) | (65,217) |
| Payroll Adjustments | (536,444) | 0 |
| Non-Incremental A&G Overhead | (1,733,273) | (675,263) |
| Total Cost Type Adjustments | (9,443,820) | (2,886,666) |
| Entitlement Adjustments to Claimed Costs | | |
| Private Fuel Storage | $ (883,503) | $ (883,503) |
| Annual NRC License Fees | (2,283,333) | (2,283,333) |
| ISFSI and VSC-24 Casks 1-5 | (14,370,678) | (20,550,207) |
| TN-32B Metal Cask Costs | (4,915,113) | (5,054,402) |
| Pursuit of Dual-Purpose Casks | (8,540,503) | (8,778,839) |
| Other Spent Fuel Costs | 0 | 0 |
| Total Entitlement Adjustments | $ (30,993,130) | $ (37,550,284) |
| **Total Adjustments to Costs in WEPCO Claim** | **(40,436,950)** | **(40,436,950)** |
| **WEPCO Claim Net of Cost Adjustments** | **$ 13,947,170** | **$ 13,947,170** |
| But-For Loading | (3,688,166) | (3,688,166) |
| **Net WEPCO Claim After All Adjustments** | **$ 10,259,004** | **$ 10,259,004** |

Source: Kiraly Report Attachments Reflecting Plaintiff's Claim Update at Trial.
Many of the claim adjustments can be included under multiple categories.

**Kiraly DDX 5-14**

# Non-Incremental Salaried Internal Labor

*Types of Labor Addressed in Claim*

- Craft labor was not categorically questioned for accounting reasons, but much of it was questioned for entitlement reasons including:
  - Construction of the ISFSI and work related to the first five (5) VSC-24 casks
  - TN-32B metal cask system
  - WEPCO's switch to the NUHOMS dual-purpose cask
- Salaried labor was further analyzed to determine if adjustments were required for:
  - Lack of support for detailed hours and amounts per employee
  - Non-Incremental nature of some of the salaried costs

Kiraly DDX 5-15

# Non-Incremental Salaried Internal Labor

*Accounting System Traceability With Respect to Labor*

- The ledger reports WEPCO provided to support portions of its salaried labor did not contain detailed hours and amounts per employee
  - The support did not indicate the actual services provided by the salaried staff
  - The evidence did not disclose the extent to which most of the employees were committed to the dry storage project

Kiraly DDX 5-16

# Non-Incremental Salaried Internal Labor

## *Accounting Records Provided in Support of MSA Salaried Labor*

G8908-2

WISCONSIN ELECTRIC POWER COMPANY
DOLLARS
MSA PERMANENT TRANSACTIONS-CONTROL REPORT

PAGE 1
11/15/05

| COSTC | REF | JANUARY<br>MAY<br>SEPTEMBER | FEBRUARY<br>JUNE<br>OCTOBER | MARCH<br>JULY<br>NOVEMBER | APRIL<br>AUGUST<br>DECEMBER |
|---|---|---|---|---|---|
| 41 | 702 | .00<br>.00<br>2,932.70 | .00<br>7,127.73<br>3,636.54 | .00<br>2,772.74<br>3,528.65 | .00<br>2,723.22<br>3,349.23<br>26,070.81 |
| COSTC | | .00<br>.00<br>2,932.70 | .00<br>7,127.73<br>3,636.54 | .00<br>2,772.74<br>3,528.65 | .00<br>2,723.22<br>3,349.23<br>26,070.81 |

| COSTC | REF | | | | |
|---|---|---|---|---|---|
| | | .00<br>1,870.99 | .00<br>705.01 | 983.23<br>.00 | .00<br>.00<br>3,559.23 |
| COSTC | | .00<br>.00<br>1,870.99 | .00<br>.00<br>705.01 | .00<br>983.23<br>.00 | .00<br>.00<br>.00<br>3,559.23 |
| 50 | 701 | 4,146.26<br>8,902.08<br>6,550.06 | 8,210.85<br>10,026.35<br>8,006.81 | 8,758.56<br>10,050.39<br>5,208.08 | 11,926.73<br>4,907.46<br>6,610.27<br>93,303.92 |
| 50 | 720 | .00<br>.00<br>.00 | .00<br>.00<br>.00 | 214.34<br>.00<br>.00 | .00<br>.00<br>.00<br>214.34 |
| COSTC | | 4,146.26<br>8,902.08<br>6,550.06 | 8,210.85<br>10,026.35<br>8,006.81 | 8,972.90<br>10,050.39<br>5,208.08 | 11,926.73<br>4,907.46<br>6,610.27<br>93,518.26 |
| 51 | 701 | 1,894.38<br>4,408.10<br>7,427.25 | .00<br>3,720.26<br>3,927.89 | 8,636.23<br>1,638.99<br>1,671.94 | 11,679.74<br>6,785.32<br>.00<br>51,799.10 |
| 51 | 718 | .00<br>481.63<br>.00 | .00<br>319.33<br>.00 | .00<br>170.60<br>.00 | .00<br>58.82<br>.00<br>1,030.38 |
| COSTC | | 1,894.38<br>4,889.73<br>7,427.25 | .00<br>4,040.59<br>3,927.89 | 8,636.23<br>1,809.59<br>1,671.94 | 11,679.74<br>6,844.14<br>.00<br>52,829.48 |
| 52 | 701 | .00<br>1,036.51<br>4,031.47 | 276.77<br>806.40<br>4,457.06 | 2,027.15<br>3,430.17<br>665.26 | 1,513.55<br>1,327.58<br>1,676.51<br>28,158.23 |
| 52 | 720 | .00<br>702.96<br>335.18 | .00<br>1,409.88<br>.00 | .00<br>41.94<br>.00 | .00<br>115.82<br>3,219.58<br>5,825.28 |

WISC 00070315

Protected Material to be Disclosed Only In Accordance with U.S. Court of Federal Claims Protective Order

Source: DX 337

Kiraly DDX 5-17

# Non-Incremental Salaried Internal Labor

## *Accounting Systems Used to Record Labor Detail*

| | MSA Accounting System | SAP Accounting System | CATS Labor Recording System |
|---|---|---|---|
| **Time Period** | Nov 88 - Jul 96 | Aug 96 - Mar 99 | Apr 99 - Present |
| **Salaried Labor in Claim** | $1,499,059 | $1,995,936 | $3,131,977 |
| **Non-Salaried Labor in Claim** | $478,920 | $598,610 | $1,526,809 |
| **Detailed Hours and Amounts per Employee** | No | No | Yes |
| **Salaried Labor Questioned Based upon Lack of Detail** | $1,499,059 ① | $1,995,936 ② | $0 |

Total Adjustment for Salaried Labor With no Detailed Hours and Amounts per Employee : ① $1,499,059 + ② $1,995,936 = $3,494,995

Source: Kiraly Report Attachment 2-c and electronic data support.

Kiraly DDX 5-18

# Non-Incremental Salaried Internal Labor

*Salary Labor Costs Were Not Incremental*

- Documentation does **NOT** exist to establish:
  - Salaried personnel were hired to fill positions vacated by personnel working on the SNF project.
  - Salaried personnel were moved from one project to another to backfill for SNF
  - Individuals were hired for a given project
  - Requests for personnel from one department to assist another department in covering a shortfall of work allegedly caused by the SNF project
  - Employees were precluded from accomplishing other work
  - Other projects were deferred or delayed by SNF

Kiraly DDX 5-19

# Non-Incremental Salaried Internal Labor

## *Minimal Charges to the Dry Fuel Storage Project*

| Personnel Name | Claimed Project Number | Hours by Year \1 1999 | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | Hours | Pct Claimed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Berger, Wade A | Claimed | | | | | 8 | | | | | 8 | |
| | Not Claimed | | | 2,243 | 2,245 | 2,178 | 2,221 | | | | 8,886 | |
| Berger, Wade A Total | | | | 2,243 | 2,245 | 2,186 | 2,221 | | | | 8,894 | 0.1% |
| Bowe, Steven D | Claimed | | | | | | | | 30 | | 30 | |
| | Not Claimed | | | | | | | | 2,575 | | 2,575 | |
| Bowe, Steven D Total | | | | | | | | | 2,605 | | 2,605 | 1.2% |
| Bowker, Ronald A | Claimed | | | | 8 | | | | | | 8 | |
| | Not Claimed | | | 2,212 | 2,230 | 2,297 | 2,282 | 2,195 | | | 11,215 | |
| Bowker, Ronald A Total | | | | 2,212 | 2,237 | 2,297 | 2,282 | 2,195 | | | 11,222 | 0.1% |
| Carter, Steven W | Claimed | | | | | 26 | | | | | 26 | |
| | Not Claimed | | | 1,198 | 2,327 | 2,298 | 2,630 | | | | 8,452 | |
| Carter, Steven W Total | | | | 1,198 | 2,327 | 2,324 | 2,630 | | | | 8,478 | 0.3% |
| Deuel, Rebecca A | Claimed | | | | 11 | | 21 | | | | 32 | |
| | Not Claimed | | | | 1,425 | 2,428 | 2,472 | | | | 6,325 | |
| Deuel, Rebecca A Total | | | | | 1,436 | 2,428 | 2,493 | | | | 6,356 | 0.5% |
| Farrand, Terry L | Claimed | | | | | | | | 4 | | 4 | |
| | Not Claimed | | | | | | | | 2,361 | | 2,361 | |
| Farrand, Terry L Total | | | | | | | | | 2,365 | | 2,365 | 0.2% |
| Jeffers, Dale | Claimed | | | 24 | | | | | | | 24 | |
| | Not Claimed | | | 2,437 | 2,449 | 2,425 | 184 | | | | 7,494 | |
| Jeffers, Dale Total | | | | 2,461 | 2,449 | 2,425 | 184 | | | | 7,518 | 0.3% |
| Krause, Kevin L | Claimed | | | | | | 52 | | | | 52 | |
| | Not Claimed | | | 813 | 2,289 | 2,328 | 2,240 | | | | 7,668 | |
| Krause, Kevin L Total | | | | 813 | 2,289 | 2,328 | 2,292 | | | | 7,720 | 0.7% |
| Lange, Edward J | Claimed | | | | | | | | 2 | | 2 | |
| | Not Claimed | | | | | | | | 2,557 | | 2,557 | |
| Lange, Edward J Total | | | | | | | | | 2,559 | | 2,559 | 0.1% |
| Smith-Torp, Shirley I | Claimed | | | | | | 5 | 81 | | | 86 | |
| | Not Claimed | | | | | 994 | 2,108 | 2,047 | | | 5,149 | |
| Smith-Torp, Shirley I Total | | | | | | 994 | 2,113 | 2,128 | | | 5,235 | 1.6% |

Source: Kiraly Report Attachment 2-a-3.1.
Note: \1 Prior to the initiation of the CATS labor recording system in April 1999, WEPCO's accounting ledgers did not contain detailed hours and amounts per employee. Therefore, the analysis of employees and hours could only be completed for the time period after April 1999.

**Kiraly DDX 5-20**

# Non-Incremental Salaried Internal Labor

## *Comparison of Hours Claimed for Salaried Personnel*




Source: Kiraly Report Attachment 2-a-3.1.
Note: \1 Prior to the initiation of the CATS labor recording system in April 1999, WEPCO's accounting ledgers did not contain detailed hours and amounts per employee. Therefore, the analysis of employees and hours could only be completed for the 7 years, 10 month time period after April 1999.

Kiraly DDX 5-21

# Non-Incremental Salaried Internal Labor

## *Graphical Representation of Salaried Personnel*

### Incremental Salaried Personnel







### Non-Incremental Salaried Personnel







☐ Claimed ■ Not Claimed

Source: Kiraly Report Attachment 2-a-3.1.

Kiraly DDX 5-22

# Non-Incremental Salaried Internal Labor

## *Adjustments to Salaried Labor*

| Description | Claimed Amount | Adjustment Amount | Net Claim Amount |
|---|---|---|---|
| Salaried Labor Recorded to MSA Accounting System | $ 1,499,059 | $ (1,499,059) | $ 0 |
| Salaried Labor Recorded to SAP Prior to CATS | 1,995,936 | (1,995,936) | 0 |
| Salaried Labor Recorded to SAP with CATS | 3,131,977 | (2,077,641) | 1,054,336 \1 |
| **Total Salaried Labor** | **$ 6,626,972** | **$ (5,572,636)** | **$ 1,054,336** |

Source: Kiraly Report Attachment 2-a.
Note: \1 The salaried labor costs not questioned relate to the James Becka and Lynn Rogers who are considered incremental to the breach.

Kiraly DDX 5-23

# Non-Incremental Salaried Internal Labor

## *Cross-Reference to Entitlement Adjustment Reasoning*

| | Activity Adjustment | | | | |
|---|---|---|---|---|---|
| **Reason for Adjustment** | **ISFSI** | **TN-32B** | **Dual-Purpose** | **Other Costs** | **Total** |
| Non-Incremental Salaried Labor | $ 631,771 | $ 4,331 | $ 894,973 | $ 615,110 | $ **2,146,185** ① |
| Dual Adjustment for Both Non-Incremental Salaried Labor and Entitlement | 3,350,451 | 73,136 | 2,864 | 0 | **3,426,451** ② |
| Entitlement for Activity Adjustment | 1,074,299 | 402 | 2,985 | 0 | **1,077,686** ③ |
| **Total** | **$ 5,056,521** | **$ 77,869** | **$ 900,822** | **$ 615,110** | **$ 6,650,322** |

Claim Adjustments Attributable to Non-Incremental Salaried Labor: $2,146,185 ① + $3,426,451 ② = $5,572,636

**Claim Adjustments Attributable to Entitlement for Activity Adjustment: $3,426,451 ② + $1,077,686 ③ = $4,504,137**

Source: Kiraly Report Attachment 1-a-4.4

**Kiraly DDX 5-24**

# Analysis of WEPCO's Damages Claim

## *Government Claim Adjustments*

| Description | As Presented in Report | As Presented in Trial |
|---|---|---|
| **WEPCO Claim Amount** | **$ 96,541,000** | **$ 96,541,000** |
| Prejudgment Interest | (44,204,521) | (44,204,521) |
| **WEPCO Claim for Nominal Costs** | **$ 52,336,479** | **$ 52,336,479** |
| Temporary Cask Pit Rack | 2,047,641 | 2,047,641 |
| **Costs Included in WEPCO Claim** | **$ 54,384,120** | **$ 54,384,120** |
| **Adjustments to Costs in WEPCO Claim** | | |
| Cost Type Adjustments to Claimed Costs | | |
| Non-Incremental Salaried Internal Labor | $ (6,650,322) | $ (2,146,185) |
| Employee Expenses | (523,782) | (65,217) |
| Payroll Adjustments | (536,444) | 0 |
| Non-Incremental A&G Overhead | (1,733,273) | (675,263) |
| Total Cost Type Adjustments | (9,443,820) | (2,886,666) |
| Entitlement Adjustments to Claimed Costs | | |
| Private Fuel Storage | $ (883,503) | $ (883,503) |
| Annual NRC License Fees | (2,283,333) | (2,283,333) |
| ISFSI and VSC-24 Casks 1-5 | (14,370,678) | (20,550,207) |
| TN-32B Metal Cask Costs | (4,915,113) | (5,054,402) |
| Pursuit of Dual-Purpose Casks | (8,540,503) | (8,778,839) |
| Other Spent Fuel Costs | 0 | 0 |
| Total Entitlement Adjustments | $ (30,993,130) | $ (37,550,284) |
| **Total Adjustments to Costs in WEPCO Claim** | **(40,436,950)** | **(40,436,950)** |
| **WEPCO Claim Net of Cost Adjustments** | **$ 13,947,170** | **$ 13,947,170** |
| But-For Loading | (3,688,166) | (3,688,166) |
| **Net WEPCO Claim After All Adjustments** | **$ 10,259,004** | **$ 10,259,004** |

Source: Kiraly Report Attachments Reflecting Plaintiff's Claim Update at Trial.
Many of the claim adjustments can be included under multiple categories.

**Kiraly DDX 5-25**

# Employee Expenses

*Analysis of Employee Expenses*

- Employee expenses were reviewed to ensure they were incurred and as a result of the breach
- Where available, the employee's name was identified in the accounting records and used to determine if that employee performed work on claim related accounts
- If an employee charged employee expenses, but did not have recorded hours, an adjustment was made for those employee expenses.

Kiraly DDX 5-26

# Employee Expenses

## *Cross-Reference to Entitlement Adjustment Reasoning*

| Reason for Adjustment | ISFSI | TN-32B | Dual-Purpose | Other Costs | Total | |
|---|---|---|---|---|---|---|
| | Activity Adjustment | | | | | |
| Employee Expenses | $ 52,767 | $ 0 | $ 0 | $ 12,450 | $ **65,217** | ① |
| Dual Adjustment for Both Employee Expenses and Entitlement | 0 | 739 | 18,171 | 0 | **18,910** | ② |
| Entitlement for Activity Adjustment | 260,848 | 51,711 | 127,096 | 0 | **439,655** | ③ |
| **Total** | **$ 313,615** | **$ 52,450** | **$ 145,267** | **$ 12,450** | **$ 523,782** | |

Claim Adjustments Attributable to Employee Expenses: $65,217 ① + $18,910 ② = $84,127

**Claim Adjustments Attributable to Entitlement for Activity Adjustment: $18,910 ② + $439,655 ③ = $458,565**

Source: Kiraly Report Attachment 1-a-4.4

**Kiraly DDX 5-27**

# Analysis of WEPCO's Damages Claim

## *Government Claim Adjustments*

| Description | As Presented in Report | As Presented in Trial |
|---|---|---|
| **WEPCO Claim Amount** | **$ 96,541,000** | **$ 96,541,000** |
| Prejudgment Interest | (44,204,521) | (44,204,521) |
| **WEPCO Claim for Nominal Costs** | **$ 52,336,479** | **$ 52,336,479** |
| Temporary Cask Pit Rack | 2,047,641 | 2,047,641 |
| **Costs Included in WEPCO Claim** | **$ 54,384,120** | **$ 54,384,120** |
| **Adjustments to Costs in WEPCO Claim** | | |
| Cost Type Adjustments to Claimed Costs | | |
| Non-Incremental Salaried Internal Labor | $ (6,650,322) | $ (2,146,185) |
| Employee Expenses | (523,782) | (65,217) |
| Payroll Adjustments | (536,444) | 0 |
| Non-Incremental A&G Overhead | (1,733,273) | (675,263) |
| Total Cost Type Adjustments | (9,443,820) | (2,886,666) |
| Entitlement Adjustments to Claimed Costs | | |
| Private Fuel Storage | $ (883,503) | $ (883,503) |
| Annual NRC License Fees | (2,283,333) | (2,283,333) |
| ISFSI and VSC-24 Casks 1-5 | (14,370,678) | (20,550,207) |
| TN-32B Metal Cask Costs | (4,915,113) | (5,054,402) |
| Pursuit of Dual-Purpose Casks | (8,540,503) | (8,778,839) |
| Other Spent Fuel Costs | 0 | 0 |
| Total Entitlement Adjustments | $ (30,993,130) | $ (37,550,284) |
| **Total Adjustments to Costs in WEPCO Claim** | **(40,436,950)** | **(40,436,950)** |
| **WEPCO Claim Net of Cost Adjustments** | **$ 13,947,170** | **$ 13,947,170** |
| But-For Loading | (3,688,166) | (3,688,166) |
| **Net WEPCO Claim After All Adjustments** | **$ 10,259,004** | **$ 10,259,004** |

Source: Kiraly Report Attachments Reflecting Plaintiff's Claim Update at Trial.
Many of the claim adjustments can be included under multiple categories.

**Kiraly DDX 5-28**

# Non-Incremental A&G Overhead

*A&G Costs are Non-Incremental to the Breach*

- Charges include costs for corporate level expenses.
- Costs NOT allocated to project level on WEPCO's books and records.
- WEPCO would incur the same overhead costs regardless of spent fuel storage
  - Examples exist demonstrating the A&G pool did not change as a result of DOE not performing in 1998.
- If the Dry Fuel Storage project did not exist, the existing WEPCO overhead cost pools would be distributed to other projects.

Kiraly DDX 5-29

# Non-Incremental A&G Overhead

*Sample of Types of WEPCO Overhead in A&G Rates*

10/89

SCHEDULE 2

PROPOSED BILLING OVERHEAD RATES

| | Utility Affiliates (Normal Billing Overheads) | | Nonutility Affiliates (Per Transitional Period Service Agreement) (A) | |
|---|---|---|---|---|
| | Proposed | Current | Proposed(B) | Current |
| Payroll Taxes | 7.7% | 7.7% | 7.5% | 7.4% |
| Pensions | .8 | .8 | .8 | .8 |
| Employee Benefits | 11.1 | 10.9 | 10.7 | 10.6 |
| Use of Facilities | 7.2(A) | 7.7(A) | 7.0(C) | 7.4(C) |
| Injuries and Damages | 2.4 | 2.7 | 2.3 | 2.6 |
| General | 1.1 | 1.2 | 1.0 | 1.2 |
| Office Supplies | N/A | N/A | .9 | .9 |
| Office Space | N/A | N/A | 10.6(D) | 10.5(D) |
| Office Furniture | [illegible] | [illegible] | 1.0 | 1.0 |

(C) Includes O & M expenses of buildings.

(D) Includes the return of and the return on the PSB and Annex.

(B) The [illegible] utility affiliates verses the proposed rates to be billed to the nonutility affiliates is that the administrative overhead of 3.4% is not applied to the proposed rates to be billed to the nonutility affiliates.

(C) Includes O & M expenses of buildings.

(D) Includes the return of and the return on the PSB and Annex.

WISC 00065053

Protected Material to be Disclosed Only in Accordance with U.S. Court of Federal Claims Protective Order

Source: DX 338

Kiraly DDX 5-30

# Non-Incremental A&G Overhead

## *Sample of Types of Wisconsin Gas Overhead in A&G Rates*

Wis Gas Overhead Calculation for ATC Billing -Return OF

| Plant Acct | Cost | Depr Res | 12/31/2002 YTD Depr Exp | Net Book | Depr Amt In Vehicles | Depr Amt In Stores | Depr Amt In Telecom | Depr Amt In Tools | Software not In Corp Ctr | Depr Remain for Overhead | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | 0.000% |
| 389 Land/Esmt | | | - | - | | | | | | - | 0.000% |
| 390 Structure | | | 643,368 | - | | | | | | 643,368 | 0.135% |
| 391 Off Furn &Equip | | | 744,375 | - | | | | | | 744,375 | 0.157% |
| 391 Computer | | | 1,437,900 | - | | | | | | 1,437,900 | 0.303% |
| 391 Off Equip | | | 17,932 | - | | | | | | 17,932 | 0.004% |
| 303 Software | | | 696,825 | - | | | | | 696,825 | - | 0.000% |
| 392 Vehicles | | | 731,602 | - | 731,602 | - | | | | - | 0.000% |
| 393 Stores Equip | | | 6,488 | - | | | | | | 6,488 | 0.001% |
| 394 Tools, Shop Garage | | | 463,660 | - | | | | | | 463,660 | 0.098% |
| 395 Lab Equip | | | 14,677 | - | | | | | | 14,677 | 0.003% |
| 396 Power OpEquip | | | 161,029 | - | 161,029 | | | | | - | 0.000% |
| 397 Comm | | | 4,113,539 | - | | | | | | 4,113,539 | 0.865% |
| 398 Misc | | | 57,966 | - | | | | | | 57,966 | 0.012% |
| | | | | | | | | | | - | 0.000% |
| | - | - | 9,089,360 | - | 892,631 | - | - | - | 696,825 | 7,499,905 | 1.578% |

| | | | | | | |
|---|---|---|---|---|---|---|
| 394 Tools, Shop Garage | 463,660 | - | | | 463,660 | 0.098% |
| 395 Lab Equip | 14,677 | - | | | 14,677 | 0.003% |
| 396 Power OpEquip | 161,029 | - | 161,029 | | - | 0.000% |
| 397 Comm | 4,113,539 | - | | | 4,113,539 | 0.865% |
| 398 Misc | 57,966 | - | | | 57,966 | 0.012% |
| | | | | | - | 0.000% |
| | 9,089,360 | - | 892,631 | 696,825 | 7,499,905 | 1.578% |

| | WE | WG | Total | |
|---|---|---|---|---|
| 12 month Return Of | 24,696,879 | 7,499,905 | 32,196,783 | 6.774% |
| Denom | 475,328,633 | 475,328,633 | 475,328,633 | |
| Rate-return OF | 5.20% | 1.58% | [redacted] | |

WISC 00065111
Protected Material to be Disclosed Only in Accordance with U.S. Court of Federal Claims Protective Order

3/14/2003

Source: DX 338

Kiraly DDX 5-31

# Non-Incremental A&G Overhead

## *Demonstration of Fixed Nature of A&G Cost Pool*

Actual World




Plaintiff's Contention
Spent Fuel Project
Not Performed




***The total G&A costs at WEPCO did not change as a result of the performance of the Dry Fuel Storage project.***

**Kiraly DDX 5-32**

# Non-Incremental A&G Overhead

## *Cross-Reference to Entitlement Adjustment Reasoning*

| | Activity Adjustment | | | | |
|---|---|---|---|---|---|
| Reason for Adjustment | ISFSI | TN-32B | Dual-Purpose | Other Costs | Total |
| Non-Incremental G&A Overhead | $ 157,368 | $ 0 | $ 0 | $ 517,896 | $ **675,264** ① |
| Dual Adjustment for Both Non-Incremental G&A Overhead and Entitlement | 957,486 | 13,302 | 87,221 | 0 | **1,058,009** ② |
| Entitlement for Activity Adjustment | 0 | 0 | 0 | 0 | **0** ③ |
| **Total** | **$ 1,114,854** | **$ 13,302** | **$ 87,221** | **$ 517,896** | **$ 1,733,273** |

**Claim Adjustments Attributable to Non-Incremental A&G Overhead: $675,264 ① + $1,058,009 ② = $1,733,273**

**Claim Adjustments Attributable to Entitlement for Activity Adjustment: $1,058,009 ② + $0 ③ = $1,058,009**

Source: Kiraly Report Attachment 1-a-4.4

**Kiraly DDX 5-33**

# Analysis of WEPCO's Damages Claim

## *Government Claim Adjustments*

| Description | As Presented in Report | As Presented in Trial |
|---|---|---|
| **WEPCO Claim Amount** | **$ 96,541,000** | **$ 96,541,000** |
| Prejudgment Interest | (44,204,521) | (44,204,521) |
| **WEPCO Claim for Nominal Costs** | **$ 52,336,479** | **$ 52,336,479** |
| Temporary Cask Pit Rack | 2,047,641 | 2,047,641 |
| **Costs Included in WEPCO Claim** | **$ 54,384,120** | **$ 54,384,120** |
| **Adjustments to Costs in WEPCO Claim** | | |
| Cost Type Adjustments to Claimed Costs | | |
| Non-Incremental Salaried Internal Labor | $ (6,650,322) | $ (2,146,185) |
| Employee Expenses | (523,782) | (65,217) |
| Payroll Adjustments | (536,444) | 0 |
| Non-Incremental A&G Overhead | (1,733,273) | (675,263) |
| Total Cost Type Adjustments | (9,443,820) | (2,886,666) |
| Entitlement Adjustments to Claimed Costs | | |
| Private Fuel Storage | $ (883,503) | $ (883,503) |
| Annual NRC License Fees | (2,283,333) | (2,283,333) |
| ISFSI and VSC-24 Casks 1-5 | (14,370,678) | (20,550,207) |
| TN-32B Metal Cask Costs | (4,915,113) | (5,054,402) |
| Pursuit of Dual-Purpose Casks | (8,540,503) | (8,778,839) |
| Other Spent Fuel Costs | 0 | 0 |
| Total Entitlement Adjustments | $ (30,993,130) | $ (37,550,284) |
| **Total Adjustments to Costs in WEPCO Claim** | **(40,436,950)** | **(40,436,950)** |
| **WEPCO Claim Net of Cost Adjustments** | **$ 13,947,170** | **$ 13,947,170** |
| But-For Loading | (3,688,166) | (3,688,166) |
| **Net WEPCO Claim After All Adjustments** | **$ 10,259,004** | **$ 10,259,004** |

Source: Kiraly Report Attachments Reflecting Plaintiff's Claim Update at Trial.
Many of the claim adjustments can be included under multiple categories.

**Kiraly DDX 5-34**

# Private Fuel Storage (PFS)

*Methodology used to Identify PFS Costs*

- Costs were interspersed through various project codes included in WEPCO's claim
- Kenrich separately identified costs for PFS
- I verified the invoices provided to support the PFS costs
  - Identified vendor Purchase Orders and Invoices relating to PFS
  - Quantified the costs contained within the electronic files provided to support the WEPCO claim
  - Ensured the PFS costs were not being removed from the claim for other reasons.

Kiraly DDX 5-35

# Analysis of WEPCO's Damages Claim

## *Government Claim Adjustments*

| Description | As Presented in Report | As Presented in Trial |
|---|---|---|
| **WEPCO Claim Amount** | **$ 96,541,000** | **$ 96,541,000** |
| Prejudgment Interest | (44,204,521) | (44,204,521) |
| **WEPCO Claim for Nominal Costs** | **$ 52,336,479** | **$ 52,336,479** |
| Temporary Cask Pit Rack | 2,047,641 | 2,047,641 |
| **Costs Included in WEPCO Claim** | **$ 54,384,120** | **$ 54,384,120** |
| **Adjustments to Costs in WEPCO Claim** | | |
| Cost Type Adjustments to Claimed Costs | | |
| Non-Incremental Salaried Internal Labor | $ (6,650,322) | $ (2,146,185) |
| Employee Expenses | (523,782) | (65,217) |
| Payroll Adjustments | (536,444) | 0 |
| Non-Incremental A&G Overhead | (1,733,273) | (675,263) |
| Total Cost Type Adjustments | (9,443,820) | (2,886,666) |
| Entitlement Adjustments to Claimed Costs | | |
| Private Fuel Storage | $ (883,503) | $ (883,503) |
| Annual NRC License Fees | (2,283,333) | (2,283,333) |
| ISFSI and VSC-24 Casks 1-5 | (14,370,678) | (20,550,207) |
| TN-32B Metal Cask Costs | (4,915,113) | (5,054,402) |
| Pursuit of Dual-Purpose Casks | (8,540,503) | (8,778,839) |
| Other Spent Fuel Costs | 0 | 0 |
| Total Entitlement Adjustments | $ (30,993,130) | $ (37,550,284) |
| **Total Adjustments to Costs in WEPCO Claim** | **(40,436,950)** | **(40,436,950)** |
| **WEPCO Claim Net of Cost Adjustments** | **$ 13,947,170** | **$ 13,947,170** |
| But-For Loading | (3,688,166) | (3,688,166) |
| **Net WEPCO Claim After All Adjustments** | **$ 10,259,004** | **$ 10,259,004** |

Source: Kiraly Report Attachments Reflecting Plaintiff's Claim Update at Trial.
Many of the claim adjustments can be included under multiple categories.

**Kiraly DDX 5-36**

# Annual NRC License Fees

*Reason for Post-Regulation Change Adjustment*

- Costs for the post-regulation change NRC annual license fees being claimed **were not recorded** on the books and records at WEPCO in the same form as they appear in the claim.
- I have removed all post-regulation NRC annual fees based upon Warren Brewer's opinions.
- Furthermore, the NRC Fees relating to the ISFSI are not incremental since the ISFSI itself is not incremental per Mr. Hamal.

Kiraly DDX 5-37

# Analysis of WEPCO's Damages Claim

## *Government Claim Adjustments*

| Description | As Presented in Report | As Presented in Trial |
|---|---|---|
| **WEPCO Claim Amount** | **$ 96,541,000** | **$ 96,541,000** |
| Prejudgment Interest | (44,204,521) | (44,204,521) |
| **WEPCO Claim for Nominal Costs** | **$ 52,336,479** | **$ 52,336,479** |
| Temporary Cask Pit Rack | 2,047,641 | 2,047,641 |
| **Costs Included in WEPCO Claim** | **$ 54,384,120** | **$ 54,384,120** |
| **Adjustments to Costs in WEPCO Claim** | | |
| Cost Type Adjustments to Claimed Costs | | |
| Non-Incremental Salaried Internal Labor | $ (6,650,322) | $ (2,146,185) |
| Employee Expenses | (523,782) | (65,217) |
| Payroll Adjustments | (536,444) | 0 |
| Non-Incremental A&G Overhead | (1,733,273) | (675,263) |
| Total Cost Type Adjustments | (9,443,820) | (2,886,666) |
| Entitlement Adjustments to Claimed Costs | | |
| Private Fuel Storage | $ (883,503) | $ (883,503) |
| Annual NRC License Fees | (2,283,333) | (2,283,333) |
| ISFSI and VSC-24 Casks 1-5 | (14,370,678) | (20,550,207) |
| TN-32B Metal Cask Costs | (4,915,113) | (5,054,402) |
| Pursuit of Dual-Purpose Casks | (8,540,503) | (8,778,839) |
| Other Spent Fuel Costs | 0 | 0 |
| Total Entitlement Adjustments | $ (30,993,130) | $ (37,550,284) |
| **Total Adjustments to Costs in WEPCO Claim** | **(40,436,950)** | **(40,436,950)** |
| **WEPCO Claim Net of Cost Adjustments** | **$ 13,947,170** | **$ 13,947,170** |
| But-For Loading | (3,688,166) | (3,688,166) |
| **Net WEPCO Claim After All Adjustments** | **$ 10,259,004** | **$ 10,259,004** |

Source: Kiraly Report Attachments Reflecting Plaintiff's Claim Update at Trial.
Many of the claim adjustments can be included under multiple categories.

**Kiraly DDX 5-38**

# ISFSI and VSC-24 Casks 1-5

*Reasoning for Adjustment for ISFSI and VSC-24 Casks 1-5*

- I have been asked to assume that WEPCO would have constructed an ISFSI even if DOE had begun performance under the Standard Contract.
- Per Cliff Hamal, WEPCO would have loaded five VSC-24 casks if DOE had performed.

Kiraly DDX 5-39

# ISFSI and VSC-24 Casks 1-5

## *Methodology to Identify Relevant Costs*

- I reviewed the costs included in the claim beginning in 1988 and running through the loading of the fifth cask to the ISFSI pad at the end of 1998.
  - These costs include upfront costs that would have been incurred regardless of the number of casks.
- By using the descriptions contained on the vendor contracts, purchase orders, and invoices, I identified the various types of costs incurred by WEPCO to evaluate its spent fuel storage options, and then to design, implement, construct, and load spent nuclear fuel to the ISFSI.
  - I also relied upon the recorded accounting data for those costs where vendor documentation was not provided to identify the costs relating to the ISFSI and VSC-24 casks 1-5.
  - Warren Brewer reviewed a similar set of invoices relating to the ISFSI and VSC-24 casks 1-5 and found no discrepancies with the classification I performed.

**Kiraly DDX 5-40**

# ISFSI and VSC-24 Casks 1-5

## *Removal of PFS Costs in ISFSI Project Codes*

| Description | Amount |
|---|---|
| Total Adjustment to WEPCO's Claim for the ISFSI and VSC-24 Casks 1-5 | $ 21,433,710 \1 |
| Less: PFS Costs Recorded to the Same Project Numbers as the ISFSI and VSC-24 Casks 1-5 | (883,503) \2 |
| **Adjustment to WEPCO's Claim for Costs Relating to ISFSI and VSC-24 Casks 1-5** | **$ 20,550,207** |

Notes:
\1 Source: Kiraly Report Attachment 8.
\2 Source: Kiraly Report Attachment 6.

Kiraly DDX 5-41

# ISFSI and VSC-24 Casks 1-5

## *Categories of Claim Adjustments*

| Description | WEPCO Claim Amount | Claim Adjustment | Adjusted Claim Amount |
|---|---|---|---|
| Engineering Costs | $ 1,376,664 | $ (1,376,664) | $ 0 |
| ISFSI Construction Costs | 2,785,422 | (2,785,422) | 0 |
| Casks 1-8 Fabrication Costs | 3,979,300 | (2,793,639) | 1,185,661 |
| Casks 1-8 Loading Costs | 1,160,281 | (1,105,082) | 55,199 |
| Legal Expenses | 1,222,393 | (1,222,393) | 0 |
| Labor Charges | 5,059,564 | (4,424,750) | 634,814 |
| NRC Fees | 1,084,772 | (1,084,772) | 0 |
| PSCW Fees | 415,656 | (415,656) | 0 |
| Casks 9-12 Costs | 1,162,503 | 0 | 1,162,503 |
| Casks 13-16 Costs | 1,365,246 | 0 | 1,365,246 |
| Other Costs | 7,121,180 | (6,225,331) | 895,849 |
| **Total Claimed Costs** | **$ 26,732,980** | **$ (21,433,710)** | **$ 5,299,270** |
| PFS Costs in Work Orders | (883,503) | 883,503 | 0 |
| **Total ISFSI & VSC-24 Costs in Trial Presentation** | **$ 25,849,477** | **$ (20,550,207)** | **$ 5,299,270** |
| **Less: Adjustments Already in Report Presentation** | | | |
| Salaried Labor | (5,256,552) | 4,424,750 | (831,802) |
| Employee Expenses | (370,185) | 260,848 | (109,337) |
| Payroll Adjustment | (536,444) | 536,444 | - |
| Non-Incremental A&G Overhead | (1,114,854) | 957,486 | (157,368) |
| **Total Adjustments Already in Report Presentation** | **(7,278,036)** | **6,179,529** | **(1,098,507)** |
| **Net Amount Referenced in Report Presentation** | **$ 18,571,441** | **$ (14,370,678)** | **$ 4,200,763** |

Includes legal fees from Shaw, Pittman, Potts & Trowbridge relating to the Newton project, which are not separately identifiable due to redacted documents provided in support of the legal fees.

Source: Kiraly Report Attachment 8

**Kiraly DDX 5-42**

# ISFSI and VSC-24 Casks 1-5

## *Cross-Reference to Accounting Adjustment Reasoning*

| | Type of Cost | | | | | |
|---|---|---|---|---|---|---|
| **Reason for Adjustment** | **Labor** | **Employee Expenses** | **Payroll Adjustment** | **G&A** | **Activity** | **Total** |
| Accounting Basis Only | $ 631,771 | $ 52,767 | $ 0 | $ 157,368 | $ 0 | $ **841,906** ① |
| Dual Adjustment for Accounting and ISFSI and VSC-24 Casks 1-5 | 3,350,451 | 0 | $ 536,444 | 957,486 | 0 | **4,844,381** ② |
| ISFSI and VSC-24 Casks 1-5 | 1,074,299 | 260,848 | 0 | 0 | 14,370,678 | **15,705,826** ③ |
| **Total** | **$ 5,056,521** | **$ 313,615** | **$ 536,444** | **$ 1,114,854** | **$ 14,370,678** | **$ 21,392,113** |

Claim Adjustments Attributable to Accounting Reasons: $841,906 ① + $4,844,381 ② = $5,686,287

**Claim Adjustments Attributable to ISFSI and VSC-24 Casks 1-5: $4,844,381 ② + $15,705,826 ③ = $20,550,207**

Source: Kiraly Report Attachment 1-a-4.4

**Kiraly DDX 5-43**

# Analysis of WEPCO's Damages Claim

## *Government Claim Adjustments*

| Description | As Presented in Report | As Presented in Trial |
|---|---|---|
| **WEPCO Claim Amount** | **$ 96,541,000** | **$ 96,541,000** |
| Prejudgment Interest | (44,204,521) | (44,204,521) |
| **WEPCO Claim for Nominal Costs** | **$ 52,336,479** | **$ 52,336,479** |
| Temporary Cask Pit Rack | 2,047,641 | 2,047,641 |
| **Costs Included in WEPCO Claim** | **$ 54,384,120** | **$ 54,384,120** |
| **Adjustments to Costs in WEPCO Claim** | | |
| Cost Type Adjustments to Claimed Costs | | |
| Non-Incremental Salaried Internal Labor | $ (6,650,322) | $ (2,146,185) |
| Employee Expenses | (523,782) | (65,217) |
| Payroll Adjustments | (536,444) | 0 |
| Non-Incremental A&G Overhead | (1,733,273) | (675,263) |
| Total Cost Type Adjustments | (9,443,820) | (2,886,666) |
| Entitlement Adjustments to Claimed Costs | | |
| Private Fuel Storage | $ (883,503) | $ (883,503) |
| Annual NRC License Fees | (2,283,333) | (2,283,333) |
| ISFSI and VSC-24 Casks 1-5 | (14,370,678) | (20,550,207) |
| TN-32B Metal Cask Costs | (4,915,113) | (5,054,402) |
| Pursuit of Dual-Purpose Casks | (8,540,503) | (8,778,839) |
| Other Spent Fuel Costs | 0 | 0 |
| Total Entitlement Adjustments | $ (30,993,130) | $ (37,550,284) |
| **Total Adjustments to Costs in WEPCO Claim** | **(40,436,950)** | **(40,436,950)** |
| **WEPCO Claim Net of Cost Adjustments** | **$ 13,947,170** | **$ 13,947,170** |
| But-For Loading | (3,688,166) | (3,688,166) |
| **Net WEPCO Claim After All Adjustments** | **$ 10,259,004** | **$ 10,259,004** |

Source: Kiraly Report Attachments Reflecting Plaintiff's Claim Update at Trial.
Many of the claim adjustments can be included under multiple categories.

**Kiraly DDX 5-44**

# TN-32B Metal Casks

## *Methodology to Identify Relevant Costs*

- Review Methodology
  - Reviewed the costs included in the claim relating to the TN-32B metal cask dry fuel storage system.
  - Identified TN-32B costs incurred by WEPCO by using the descriptions contained on the vendor contracts, purchase orders and invoices.
  - Relied upon the recorded accounting data to identify those costs where vendor documentation was not provided.
- Exclusion Methodology
  - All costs after September 1998 were excluded from the claim based upon Mr. Hamal's opinions that the project should have been put on hold then canceled.
  - Based upon Mr. Brewer's opinion that the long-lead materials could have been sold, I removed the costs for the long-lead materials.
  - All other costs were removed per instruction of counsel.

**Kiraly DDX 5-45**

# TN-32B Metal Casks

## *Categories of Claim Adjustments*

| Description | WEPCO Claim Amount | Claim Adjustment | Adjusted Claim Amount |
|---|---|---|---|
| Licensing Costs | $ 84,979 | $ (46,634) | $ 38,345 |
| Fabrication Costs | 4,251,518 | (3,105,368) | 1,146,150 |
| Tri-Cor Info. Management Costs | 282,939 | (204,352) | 78,588 |
| Engineering Services Costs | 347,117 | (347,117) | 0 |
| Labor Costs | 77,868 | (73,538) | 4,331 |
| Other Costs | 14,311 | (35,683) | (21,372) |
| **Total TN-32B Costs** | **$ 5,058,733** | **$ (3,812,692)** | **$ 1,246,041** |
| Other Adjustments | | | |
| Long Lead Materials | $ 0 | $ (849,000) | $ (849,000) |
| Failed Mitigation | 0 | (392,710) | (392,710) |
| Total Other Adjustments | 0 | (1,241,710) | (1,241,710) |
| **Total TN-32B Costs in Trial Presentation** | **$ 5,058,733** | **$ (5,054,402)** | **$ 4,331** |
| **Less: Adjustments Already in Report Presentation** | | | |
| Salaried Labor | (77,868) | 73,538 | (4,331) |
| Employee Expenses | (52,449) | 52,449 | 0 |
| Non-Incremental A&G Overhead | (13,302) | 13,302 | 0 |
| **Total Adjustments Already in Report Presentation** | **$ (143,620)** | **$ 139,289** | **$ (4,331)** |
| **Net Amount Referenced in Report Presentation** | **$ 4,915,113** | **$ (4,915,113)** | **$ 0** |

Source: Kiraly Report Attachment 9.

**Kiraly DDX 5-46**

# TN-32B Metal Casks

## *Cross-Reference to Accounting Adjustment Reasoning*

| | Type of Cost | | | | |
|---|---|---|---|---|---|
| Reason for Adjustment | Labor | Employee Expenses | G&A | Activity | Total |
| Accounting Basis Only | $ 4,331 | $ 0 | $ 0 | $ 0 | $ 4,331 ① |
| Dual Adjustment for Accounting and TN-32B Metal Casks | 73,136 | 739 | 13,302 | 0 | 87,176 ② |
| TN-32B Metal Casks | 402 | 51,711 | 0 | 4,915,113 | 4,967,226 ③ |
| **Total** | **$ 77,868** | **$ 52,449** | **$ 13,302** | **$ 4,915,113** | **$ 5,058,733** |

**Claim Adjustments Attributable to Accounting Reasons: $4,331 ① + $87,176 ② = $91,507**

**Claim Adjustments Attributable to TN-32B Metal Casks: $87,176 ② + $4,967,226 ③ = $5,054,402**

Source: Kiraly Report Attachment 1-a-4.4

**Kiraly DDX 5-47**

# Analysis of WEPCO's Damages Claim

## *Government Claim Adjustments*

| Description | As Presented in Report | As Presented in Trial |
|---|---|---|
| **WEPCO Claim Amount** | **$ 96,541,000** | **$ 96,541,000** |
| Prejudgment Interest | (44,204,521) | (44,204,521) |
| **WEPCO Claim for Nominal Costs** | **$ 52,336,479** | **$ 52,336,479** |
| Temporary Cask Pit Rack | 2,047,641 | 2,047,641 |
| **Costs Included in WEPCO Claim** | **$ 54,384,120** | **$ 54,384,120** |
| **Adjustments to Costs in WEPCO Claim** | | |
| Cost Type Adjustments to Claimed Costs | | |
| Non-Incremental Salaried Internal Labor | $ (6,650,322) | $ (2,146,185) |
| Employee Expenses | (523,782) | (65,217) |
| Payroll Adjustments | (536,444) | 0 |
| Non-Incremental A&G Overhead | (1,733,273) | (675,263) |
| Total Cost Type Adjustments | (9,443,820) | (2,886,666) |
| Entitlement Adjustments to Claimed Costs | | |
| Private Fuel Storage | $ (883,503) | $ (883,503) |
| Annual NRC License Fees | (2,283,333) | (2,283,333) |
| ISFSI and VSC-24 Casks 1-5 | (14,370,678) | (20,550,207) |
| TN-32B Metal Cask Costs | (4,915,113) | (5,054,402) |
| Pursuit of Dual-Purpose Casks | (8,540,503) | (8,778,839) |
| Other Spent Fuel Costs | 0 | 0 |
| Total Entitlement Adjustments | $ (30,993,130) | $ (37,550,284) |
| **Total Adjustments to Costs in WEPCO Claim** | **(40,436,950)** | **(40,436,950)** |
| **WEPCO Claim Net of Cost Adjustments** | **$ 13,947,170** | **$ 13,947,170** |
| But-For Loading | (3,688,166) | (3,688,166) |
| **Net WEPCO Claim After All Adjustments** | **$ 10,259,004** | **$ 10,259,004** |

Source: Kiraly Report Attachments Reflecting Plaintiff's Claim Update at Trial.
Many of the claim adjustments can be included under multiple categories.

**Kiraly DDX 5-48**

# Pursuit of Dual-Purpose Casks

*Reasoning for Adjustment for Dual-Purpose Casks*

- I have been asked to assume that WEPCO should not have pursued the dual-purpose casks.
- Per Warren Brewer, WEPCO could have continued to utilize the VSC-24 cask system. The switch to the NUHOMS system was not needed.
- WEPCO claimed the following costs relating to dual-purpose capabilities:
  - WEPCO is seeking a transportation license for the existing storage only VSC-24 canisters.
  - WEPCO changed from the VSC-24 system, to the more expensive NUHOMS system, resulting in additional costs to use the dual-purpose system in lieu of the VSC-24 system.

Kiraly DDX 5-49

# Pursuit of Dual-Purpose Casks

*Methodology to Identify Relevant Costs*

- I reviewed the costs included in the claim relating to the VSC-24 transportation licensing and the NUHOMS acquisition costs.
- By using the descriptions contained on the vendor contracts, purchase orders, and invoices, I identified the various types of costs incurred by WEPCO to pursue dual-purpose capabilities.
  - I also relied upon the recorded accounting data for those costs where vendor documentation was not provided to identify costs.
- Although all NUHOMS costs should be removed from the claim, a replacement cost was required to price the additional VSC-24s in lieu of the NUHOMS actually purchased.
  - I reviewed similar vendor documents to identify a unit cost for the VSC-24 casks.

Kiraly DDX 5-50

# Pursuit of Dual-Purpose Casks

*Equivalent Number of NUHOMS and VSC-24s*

14 NUHOMS = 19 VSCs




($14.7 million)




($6.3 million)

Source: Number of Units (Kiraly Attachment 10-b-4). Cost of units is non-labor costs as reflected on Kiraly Attachment 10-b-1,2&3.

**Kiraly DDX 5-51**

# Pursuit of Dual-Purpose Casks

## *NUHOMS Fabrication / Acquisition Costs*

| | | NUHOMS Related Costs | |
|---|---|---|---|
| Project Description (Project Number) | Recorded Costs | Costs Not Related to Fabrication / Acquisition | Net Costs to Fabricate / Acquire NUHOMS |
| NUHOMS Cask Costs (3.0182) | $ 15,325,865 | $ (1,681,781) | $ 13,644,084 |
| Tri-Lifter Truck Costs (3.5027) | 278,044 | 0 | 278,044 |
| NUHOMS Modification Design Work (3.5051) | 772,999 | 0 | 772,999 |
| **Total Costs to Pursue Transportable Casks** | **$ 16,376,908** | **$ (1,681,781)** \1 | **$ 14,695,127** |

**Notes:**
Source: Kiraly Report Attachment 10.
\1 Internal labor and loading related costs were removed in order to isolate the fabrication and acquisition costs of the NUHOMS casks.

Kiraly DDX 5-52

# Pursuit of Dual-Purpose Casks

## *Calculation of VSC-24 Units Required as Replacements for NUHOMS*

| | a | b = a * 32 | | c = b/24 | d | f = c * d |
|---|---|---|---|---|---|---|
| **Claimed NUHOMS Units** | **Number of NUHOMS Units** | **Number of Assemblies** | **VSC-24 Unit** | **Number of VSC-24 Units Required** | **Replacement Cost per Unit** | **Total Replacement Cost** |
| DSCs 1-3 | 3 | 96 | MSB | 4 | $ 282,747 | $ 1,130,990 |
| DSCs 4-6 | 3 | 96 | MSB | 4 | 282,747 | 1,130,990 |
| DSCs 7-8 | 2 | 64 | MSB | 3 | 282,747 | 848,242 |
| DSCs 9-11 | 3 | 96 | MSB | 4 | 282,747 | 1,130,990 |
| DSCs 12-14 | 3 | 96 | MSB | 4 | 282,747 | 1,130,990 |
| HSMs 1-8 | 8 | 256 | VCC | 11 | 48,796 | 536,756 |
| HSMs 9-14 | 6 | 192 | VCC | 8 | 48,796 | 390,368 |
| **Total VSC-24 Replacement Costs** | | | | | | **$ 6,299,325** |

Source: Kiraly Report Attachment 10-b-4.

**Kiraly DDX 5-53**

# Pursuit of Dual-Purpose Casks

## *Calculation of VSC-24 Unit Cost*

| Description | Amount |
|---|---|
| Costs Recorded to WBS 3.0009-67-0055 (VSC-24 Cask Components - Units 13-16) | $ 1,365,246 |
| Costs Not Related to Fabrication / Acquisition | (39,072) |
| **Net Costs to Fabricate / Acquire VSC-24 Casks 13 - 16** | **$ 1,326,174** |

| Description | VCC Portion | MSB Portion |
|---|---|---|
| Recorded Costs | $ 195,184 | $ 1,130,990 |
| Number of Units | 4 | 4 |
| **Unit Cost** | **$ 48,796** | **$ 282,747** |

Source: Kiraly Report Attachment 10-b-4.1.

Kiraly DDX 5-54

# Pursuit of Dual-Purpose Casks

*Plaintiff's Trial Assertions of VSC-24 Loading are not Supportable*

- Plaintiff witnesses testified at trial that part of the reason to switch from VSC-24s to the NUHOMS was because the VSC-24s were more time consuming to load.
  - The VSC-24 loading evolution lasted approximately nine (9) days. Tr. 1725:20-22 (Becka)
  - The NUHOMS loading evolution lasts approximately four and a half (4.5) days. Tr. 1726:1-4 (Becka)
- The duration of the loading evolution assertions are unsupported by labor records in the accounting system.
  - The accounting system does not support the notion that the VSC-24 loading evolutions were more labor intensive than the NUHOMS loading evolutions.
  - The accounting system does not support the notion that the NUHOMS loading evolutions took 4.5 days.

Kiraly DDX 5-55

# Pursuit of Dual-Purpose Casks

## *Hours Recorded to Accounting System During Loading Evolutions*

| | Hours Recorded to Accounting System | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **VSCs 13-16** | **Day 1** | **Day 2** | **Day 3** | **Day 4** | **Day 5** | **Day 6** | **Day 7** | **Day 8** | **Day 9** | **Day 10** | **Total** |
| VSC-24-13 (11/26/01 - 12/05/01) | 65 | 84 | 77 | 85 | 128 | 111 | 106 | 121 | 107 | 84 | 966 |
| VSC-24-14 (01/02/02 - 01/09/02) | 103 | 203 | 175 | 209 | 187 | 165 | 163 | 201 | | | 1,406 |
| VSC-24-15 (12/09/02 - 12/18/02) | 206 | 227 | 220 | 217 | 161 | 44 | 58 | 95 | 64 | | 1,292 |
| VSC-24-16 (01/09/03 - 01/20/03) | 62 | 36 | 157 | 147 | 168 | 142 | 102 | 78 | 12 | 141 | 1,045 |
| VSC Average | 109 | 137 | 157 | 164 | 161 | 115 | 107 | 124 | 61 | 113 | 1,249 |
| Cum of Average | 109 | 246 | 404 | 568 | 729 | 844 | 952 | 1,075 | 1,136 | 1,249 | |
| Full-Time Equivalents (12 Hr Shifts) | 9.1 | 11.4 | 13.1 | 13.7 | 13.4 | 9.6 | 8.9 | 10.3 | 5.1 | 9.4 | 10.4 |

| | Hours Recorded to Accounting System | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **NUHOMS 5-9** | **Day 1** | **Day 2** | **Day 3** | **Day 4** | **Day 5** | **Day 6** | **Day 7** | **Day 8** | **Day 9** | **Day 10** | **Total** |
| NUHOMS-05 (04/21/06 - 04/24/06) | 424 | 240 | 140 | 500 | | | | | | | 1,303 |
| NUHOMS-06 (05/10/06 - 05/13/06) | 329 | 340 | 336 | 188 | | | | | | | 1,192 |
| NUHOMS-07 (05/15/06 - 05/18/06) | 443 | 439 | 441 | 424 | | | | | | | 1,747 |
| NUHOMS-08 (05/22/06 - 05/25/06) | 446 | 456 | 440 | 419 | | | | | | | 1,761 |
| NUHOMS-09 (06/05/06 - 06/08/06) | 453 | 402 | 359 | 335 | | | | | | | 1,549 |
| NUHOMS Average | 419 | 375 | 343 | 373 | | | | | | | 1,510 |
| Cum of Average | 419 | 794 | 1,137 | 1,510 | 1,510 | 1,510 | 1,510 | 1,510 | 1,510 | 1,510 | |
| Full-Time Equivalents (12 Hr Shifts) | 34.9 | 31.3 | 28.6 | 31.1 | | | | | | | 31.5 |

Source: Electronic accounting data provided as support of WEPCO and NMC costs included in the claim for WBS codes 3.0001-10-0055, 3.0001-21-0055, 3.0001-22-0055, 3.0001-23-0055, 3.0001-24-0055, 3.0001-25-0055, 3.0001-67-0055, 3.0182-67-0055, 3.0264-77-0055, 3.4999-64-0055, 3.4999-81-0055 with identifiable personnel. Full-Time Equivalents calculation was based upon trial testimony that, during loading campaigns, WEPCO worked two 12 hour shifts. Tr. 1725:22-25 (Becka)

**Kiraly DDX 5-56**

# Pursuit of Dual-Purpose Casks

*NUHOMS Loading Evolutions Include more than 4.5 Days of Labor*




Source: Man hour data from electronic accounting data. Cask loading period determined from WEPCO loading procedures during loading evolutions (WISC 00136548-137994). This chart denotes the timeframe from the day the DSC was placed into the pool until the cask was in service on the ISFSI (DX 616).

Kiraly DDX 5-57

# Pursuit of Dual-Purpose Casks

## *Categories of Claim Adjustments*

| Description | WEPCO Claim Amount | Claim Adjustment | Adjusted Claim Amount |
|---|---|---|---|
| VSC-24 Transportation Licensing Costs | $ 383,037 | $ (383,037) | $ 0 |
| NUHOMS Transportation Costs | 16,376,908 | (8,395,802) | 7,981,106 |
| **Total Dual-Purpose Costs in Trial Presentation** | **$ 16,759,945** | **$ (8,778,839)** | **$ 7,981,106** |
| **Less: Adjustments Already in Report Presentation** | | | |
| Salaried Labor | $ (1,482,509) | $ 5,849 | $ (1,476,660) |
| Employee Expenses | (145,267) | 145,267 | 0 |
| Non-Incremental A&G Overhead | (87,221) | 87,221 | 0 |
| **Total Adjustments Already in Report Presentation** | **$ (1,714,997)** | **$ 238,337** | **$ (1,476,660)** |
| **Net Amount Referenced in Report Presentation** | **$ 15,044,948** | **$ (8,540,503)** | **$ 6,504,446** |

Source: Kiraly Report Attachment 10.

**Kiraly DDX 5-58**

# Pursuit of Dual-Purpose Casks

## *Cross-Reference to Accounting Adjustment Reasoning*

| | Type of Cost | | | | |
|---|---|---|---|---|---|
| **Reason for Adjustment** | **Labor** | **Employee Expenses** | **G&A** | **Activity** | **Total** |
| Accounting Basis Only | $ 894,973 | $ 0 | $ 0 | $ 0 | $ **894,973** ① |
| Dual Adjustment for Accounting and Pursuit of Dual-Purpose | 2,864 | 18,171 | 87,221 | 0 | **108,256** ② |
| Pursuit of Dual-Purpose Basis Only | 2,985 | 127,096 | 0 | 8,540,503 | **8,670,584** ③ |
| **Total** | **$ 900,822** | **$ 145,267** | **$ 87,221** | **$ 8,540,503** | **$ 9,673,813** |

Claim Adjustments Attributable to Accounting Reasons: $894,973 ① + $108,256 ② = $1,003,229

**Claim Adjustments Attributable to Pursuit of Dual Purpose Reason: $108,256 ② + $8,670,584 ③ = $8,778,840**

Source: Kiraly Report Attachment 1-a-4.4

**Kiraly DDX 5-59**

# Analysis of WEPCO's Damages Claim

## *Government Claim Adjustments*

| Description | As Presented in Report | As Presented in Trial |
|---|---|---|
| **WEPCO Claim Amount** | **$ 96,541,000** | **$ 96,541,000** |
| Prejudgment Interest | (44,204,521) | (44,204,521) |
| **WEPCO Claim for Nominal Costs** | **$ 52,336,479** | **$ 52,336,479** |
| Temporary Cask Pit Rack | 2,047,641 | 2,047,641 |
| **Costs Included in WEPCO Claim** | **$ 54,384,120** | **$ 54,384,120** |
| **Adjustments to Costs in WEPCO Claim** | | |
| Cost Type Adjustments to Claimed Costs | | |
| Non-Incremental Salaried Internal Labor | $ (6,650,322) | $ (2,146,185) |
| Employee Expenses | (523,782) | (65,217) |
| Payroll Adjustments | (536,444) | 0 |
| Non-Incremental A&G Overhead | (1,733,273) | (675,263) |
| Total Cost Type Adjustments | (9,443,820) | (2,886,666) |
| Entitlement Adjustments to Claimed Costs | | |
| Private Fuel Storage | $ (883,503) | $ (883,503) |
| Annual NRC License Fees | (2,283,333) | (2,283,333) |
| ISFSI and VSC-24 Casks 1-5 | (14,370,678) | (20,550,207) |
| TN-32B Metal Cask Costs | (4,915,113) | (5,054,402) |
| Pursuit of Dual-Purpose Casks | (8,540,503) | (8,778,839) |
| Other Spent Fuel Costs | 0 | 0 |
| Total Entitlement Adjustments | $ (30,993,130) | $ (37,550,284) |
| **Total Adjustments to Costs in WEPCO Claim** | **(40,436,950)** | **(40,436,950)** |
| **WEPCO Claim Net of Cost Adjustments** | **$ 13,947,170** | **$ 13,947,170** |
| But-For Loading | (3,688,166) | (3,688,166) |
| **Net WEPCO Claim After All Adjustments** | **$ 10,259,004** | **$ 10,259,004** |

Source: Kiraly Report Attachments Reflecting Plaintiff's Claim Update at Trial.
Many of the claim adjustments can be included under multiple categories.

**Kiraly DDX 5-60**

# But-For DOE Loading

## *Reasoning for Adjustment for DOE Loading*

- The appropriate damage model quantifies the difference between the actual costs incurred and the costs that would have been incurred even absent a breach.
- WEPCO would have incurred costs to load fuel to DOE had performance occurred.
- In order to properly monetize the alleged harm to WEPCO caused by DOE's breach, the avoided loading costs from 1998 through 2006 need to be accounted for.

Kiraly DDX 5-61

# But-For DOE Loading

## *Methodology to Calculate But-For Loading Costs*

- Kenrich included an estimate for But-For loading costs in its initial report dated July 14, 2005.
  - Prior to 2006, WEPCO did not maintain an accounting project number specifically for loading costs incurred to load casks to the ISFSI.
  - In lieu of actual recorded costs, Kenrich relied upon plant personnel to develop a cost estimate to load a hypothetical 24 assembly bolted cask.
  - WEPCO created a unique accounting project number to capture actual loading costs for the 2006 loading campaign.
- Mr. Brewer provided me with DOE cask size assumptions and acceptance assumptions for 1998 through 2006.

Kiraly DDX 5-62

# But-For DOE Loading

## *Methodology to Calculate But-For Loading Costs (1998 – 2005)*

- Determined the number of hours Mr. Becka included in his loading campaign estimate (DX 248), which Kenrich relied upon in its 2005 expert report.
- The number of hours used in the loading estimate were utilized in conjunction with accounting labor rates from other years to determine the cost of the loading campaigns in each respective year.
- Offsets were made to account for adjustments made for non-incremental salaried internal labor and non-incremental A&G overhead costs, which have already been removed from the claim.

Kiraly DDX 5-63

# But-For DOE Loading

## *Methodology to Calculate But-For Loading Costs (2006)*

- WEPCO created project code 3.0264 to capture all loading costs associated with the 2006 NUHOMS campaign.
- Based upon the opinions of Mr. Brewer, the 2006 actual loading costs were used to determine the but-for DOE loading costs for 2006.
- Based upon trial testimony, the costs for the following time periods were isolated.
  - **Preparation / Mobilization:** 1/1/06 – 4/16/06 *[Tr. 1923:14-23 (Becka)]*
  - **Loading:** 4/17/06 – 6/8/06 *[Tr. 1924:3-11 (Becka)]*
  - **Demobilization:** 6/9/06 – 12/31/06 [*Tr. 1924:22-25 (Becka)]*
- WEPCO loaded five (5) NUHOMS casks in 2006, so an average loading cost per cask was calculated.

**Kiraly DDX 5-64**

# But-For DOE Loading

## *Calculation of Offset for But-For DOE Loading*

| Description | Amount (1998 - 2006) |
|---|---|
| Estimated Mobilization Costs | $ 2,011,372 |
| Estimated Loading Cost | 3,183,783 |
| Estimated Demobilization Costs | 447,482 |
| **Total Avoided Loading Costs** | **$ 5,642,637** |
| Less: Adjustments for Non-Incremental Costs | |
| Non-Incremental Salaried Internal Labor | $ (891,923) |
| Non-Incremental A&G Overhead | (1,062,549) |
| Total Non-Incremental Adjustments | $ (1,954,472) |
| **Net Avoided Loading Costs** \1 | **$ 3,688,166** |

DOE Acceptance Assumptions\2

| Year | Assemblies to DOE | Full 4 Assembly Casks |
|---|---|---|
| 1998 | 41 | 11 |
| 1999 | 110 | 28 |
| 2000 | 50 | 13 |
| 2001 | 69 | 18 |
| 2002 | 92 | 23 |
| 2003 | 62 | 16 |
| 2004 | 24 | 6 |
| 2005 | 32 | 8 |
| 2006 | 40 | 10 |
| Total | 520 | 133 |

Source: Kiraly Report Attachment 13-a.

Notes:

\1 The net avoided loading costs figure ($3,688,166) is only relevant if an adjustment to all other claimed costs is made for both non-incremental salaried internal labor and non-incremental A&G overhead. If neither of these adjustments are made, then the total avoided loading costs figure ($5,642,637) should be used.

\2 DOE Acceptance Assumptions provided by Warren Brewer.

Kiraly DDX 5-65

# Analysis of WEPCO's Damages Claim

## *Government Claim Adjustments*

| Description | As Presented in Report | As Presented in Trial |
|---|---|---|
| **WEPCO Claim Amount** | $ 96,541,000 | $ 96,541,000 |
| Prejudgment Interest | (44,204,521) | (44,204,521) |
| **WEPCO Claim for Nominal Costs** | $ 52,336,479 | $ 52,336,479 |
| Temporary Cask Pit Rack | 2,047,641 | 2,047,641 |
| **Costs Included in WEPCO Claim** | $ 54,384,120 | $ 54,384,120 |
| **Adjustments to Costs in WEPCO Claim** | | |
| Cost Type Adjustments to Claimed Costs | | |
| Non-Incremental Salaried Internal Labor | $ (6,650,322) | $ (2,146,185) |
| Employee Expenses | (523,782) | (65,217) |
| Payroll Adjustments | (536,444) | 0 |
| Non-Incremental A&G Overhead | (1,733,273) | (675,263) |
| Total Cost Type Adjustments | (9,443,820) | (2,886,666) |
| Entitlement Adjustments to Claimed Costs | | |
| Private Fuel Storage | $ (883,503) | $ (883,503) |
| Annual NRC License Fees | (2,283,333) | (2,283,333) |
| ISFSI and VSC-24 Casks 1-5 | (14,370,678) | (20,550,207) |
| TN-32B Metal Cask Costs | (4,915,113) | (5,054,402) |
| Pursuit of Dual-Purpose Casks | (8,540,503) | (8,778,839) |
| Other Spent Fuel Costs | 0 | 0 |
| Total Entitlement Adjustments | $ (30,993,130) | $ (37,550,284) |
| **Total Adjustments to Costs in WEPCO Claim** | **(40,436,950)** | **(40,436,950)** |
| **WEPCO Claim Net of Cost Adjustments** | $ 13,947,170 | $ 13,947,170 |
| But-For Loading | (3,688,166) | (3,688,166) |
| **Net WEPCO Claim After All Adjustments** | **$ 10,259,004** | **$ 10,259,004** |

Source: Kiraly Report Attachments Reflecting Plaintiff's Claim Update at Trial.
Many of the claim adjustments can be included under multiple categories.

**Kiraly DDX 5-66**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

WISCONSIN ELECTRIC POWER COMPANY,

Plaintiff,

Case No. 00-697C

-vs-

THE UNITED STATES,

Defendant.

---

Examination of JAMES BECKA, taken at the instance of the Defendant, under and pursuant to all applicable rules, before JESSICA R. WAACK, Registered Merit Reporter, Certified Realtime Reporter and Notary Public in and for the State of Wisconsin, at Wisconsin Electric, 231 West Michigan Avenue, Milwaukee, Wisconsin, on January 20, 2006, commencing at 9:02 a.m. and concluding at 5:39 p.m.

09:29 remaining 14 casks that are at Point Beach.
09:29 Q That might be a good thing to say for yourself. But there were 16 total loaded; is that correct?
09:29 A Yes.
09:29 Q Typically, what is involved in loading of VSC 24 casks?
09:29 A It is typically an eight-day evolution -- eight to nine days. That was our experience. We go into two 12-hour shifts, and we work the evolution around the clock from start to completion. Would you like me to go through the physical descriptions of what happens during a loading campaign?
09:30 Q Yes. And to help me stay in sync with you, we talked a little bit about that with Mr. Schultz the other day, so I got my notes from that. I'm going to keep on those while you're telling me about your experience with it. Go ahead.
09:30 A Okay. I should preface the loading evolution by saying that there are some preparations that need to be done prior to starting that evolution.
09:30 Q Okay.
09:30 A That's not done in shift work. That's typically done by maintenance. For the VSC 24 MSB or multiassembly sealed basket, it needs to be

03:20 Q Right.
03:20 A And we're just talking about VSC 24?
03:20 Q That's correct.
03:20 A Yeah, I think so.
03:20 Q And would the same be true for demobilization after the campaign is concluded?
03:20 A There would be some efficiencies if you could do cask loads back to back to back in very tight success --
03:20 Q Or --
03:20 A -- in terms of demobilizing equipment or not demobilizing equipment. There's some efficiencies to be gained by putting them closer to together.
03:21 Q So given that, why weren't you all doing that with the VSC 24s?
03:21 A With the VSC 24, a loading campaign, as I mentioned earlier, typically takes eight to nine days.
03:21 Q Yes, sir.
03:21 A It is -- I don't want to call it a disruption, but it is -- it is kind of a disruption to the flow of plant work compared to if you don't have a dry cask evolution going on.
So my recollection at the time was that you're also taking a little bit of a toll on

people as well. People are tired after eight to nine to ten days straight of doing a loading campaign.

And I think part of our decision making was not to go strictly back to back to back, but to put some time in between. So I believe there was a people element and concern for the people that was involved in that decision.

Q Yet you are doing multi cask campaigns with the NUHOMS; is that correct?

A Yes, sir.

Q And so is there some difference between that people factor in the NUHOMS loading campaign?

A Yes.

Q What is that?

A The NUHOMS loading campaign is much shorter than the VSC 24 campaign.

Q How much shorter?

A The way we have our upcoming campaign planned out is we will start on a Monday morning and we will finish on a Friday. So five work days. Yes, it's two 12s, at least we're planning on doing two 12s, but you have the weekends off, time for people recover.

Q When you say "two 12s," what are you saying?

STATE OF WISCONSIN )
) SS:
COUNTY OF MILWAUKEE )

I, JESSICA R. WAACK, a Registered Merit Reporter, Certified Realtime Reporter and Notary Public in and for the State of Wisconsin, do hereby certify that the above deposition of JAMES BECKA was recorded by me on January 20, 2006, and reduced to writing under my personal direction.

I further certify that I am not a relative or employee or attorney or counsel of any of the parties, or a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

In witness whereof I have hereunder set my hand and affixed my seal of office at Milwaukee, Wisconsin, this 23rd day of January, 2006.

______________________________
Notary Public
In and for the State of Wisconsin

My Commission Expires: September 20, 2009.

Perkins Coie

607 Fourteenth Street N.W.
Washington, D.C. 20005-2011
PHONE: 202.628.6600
FAX 202.434.1690
www.perkinscoie.com

Donald J. Carney
PHONE 202.434.1675
EMAIL dcarney@perkinscoie.com

March 30, 2006

**BY HAND DELIVERY**

Kevin Crawford, Esq.
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530

**Re: Wisconsin Electric Power Co. v. United States, No. 00-697C**

Dear Mr. Crawford:

On behalf of Wisconsin Electric Power Company ("WE"), we enclose documents responsive to Defendant's Fourth Set of Requests for the Production of Documents Nos. 93, 98 and 104. These documents are labeled WISC 00101619 – 00116023. We also enclose a spreadsheet associating documents, by bates range, with the Government's corresponding Requests for Production of Documents.

All of the enclosed materials are marked as "Protected Material to be Disclosed Only in Accordance with U.S. Court of Federal Claims Protective Order."

If you have any questions, please call me.

Sincerely,

Donald J. Carney

cc: Catherine Phillips
Richard Oehler

[28795-0001/DA060870.034]

**CONFIDENTIAL**

| **Bates Nos.** | **Responsive to:** |
|---|---|
| WISC 00101619 – 00105620;<br>WISC 00112914 – 00114711 | RPD 98 |
| WISC 00105621 – 00112913;<br>WISC 00114818 – 00116023 | RPD 104 |
| WISC 00114712 – 00114817 | RPD 93 |

[28795-0001/DA060870.034]

Perkins Coie

607 Fourteenth Street N.W.
Washington, D.C. 20005-2011
PHONE: 202.628.6600
FAX: 202.434.1690
www.perkinscoie.com

Donald J. Carney
PHONE: (202) 434-1675
FAX: (202) 434-1690
EMAIL: DCarney@perkinscoie.com

August 20, 2007

**BY HAND DELIVERY**

Sharon A. Snyder
U.S. Department of Justice
Commercial Litigation Branch
Civil Division
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, DC 20530

**Re: Wisconsin Electric v. United States, No. 00-697C**

Dear Ms. Snyder:

Wisconsin Electric Power Company ("WE") hereby produces to the Government the "work order packages" for the 2006 loading campaign at Point Beach Nuclear Plant. This production is responsive to the Government's letter request of August 14, 2007. The documents are labeled WISC 00136548 – 00137994 and marked as "Protected Material to be Disclosed Only in Accordance with U.S. Court of Federal Claims Protective Order."

Please contact me if you have any questions.

Very truly yours,

Donald J. Carney

cc: Catherine Phillips
Richard W. Oehler

28795-0001/LEGAL13476233.1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| WISCONSIN ELECTRIC POWER COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 00-697C<br><br>(Senior Judge Merow) |

**JOINT STIPULATION REGARDING ACCURACY OF PLAINTIFF'S COSTS**

The parties have worked together through the audit verification process envisioned by this Court regarding the costs through February 28, 2007 that are included in the claim filed by Wisconsin Electric Power Company ("WE"). In the interest of resolving the relative certainty of costs through February 28, 2007 included in WE's claim, the parties offer this joint stipulation.

1. The parties agree, with the two exceptions noted below, that all costs through February 28, 2007 that are included in WE's claim were incurred by WE and are traceable to and supported by WE's accounting records. These costs include (1) outside services and materials costs, (2) the NRC Power Reactors' Annual Fees, (3) employee expenses, (4) the Pension and Benefits Labor Adder, and (5) labor costs. In addition, the Government does not deny the accuracy of the budgeted Administrative and General cost rates used by WE in its claim. The Government, however, contests whether WE legally is entitled to recover these claimed monies in this action.

2. The Government contests the accuracy of the weighted average cost of capital contained in WE's claim.

3. The Government contests the accuracy of the calculated offset from WE's claim for the procurement and installation of a temporary storage rack.

4. This stipulation is without waiver of or prejudice to the parties' rights.

Dated: September 21, 2007

Respectfully submitted,

s/Richard W. Oehler by s/ Emily C.C. Poulin
Richard W. Oehler
Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
(206) 583-8419

Attorneys for Plaintiff
WISCONSIN ELECTRIC POWER COMPANY

Of Counsel:

Donald J. Carney
Mary Rose Hughes
Perkins Coie LLP
607 Fourteenth Street, N.W.
Washington, D.C. 20005
(202) 434-1675

s/Sharon A. Snyder
Sharon A. Snyder
U.S. Department of Justice
Commercial Litigation Branch
Civil Division
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, DC 20530

Attorney for Defendant
UNITED STATES

## CERTIFICATE OF SERVICE

I certify under penalty of perjury that, on September 21, 2007, I caused a copy of the foregoing "Joint Stipulation Regarding Accuracy of Plaintiff's Costs" to be filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Emily C.C. Poulin
Emily C.C. Poulin