# But-For DOE Loading

*Reasoning for Adjustment for DOE Loading*

- The appropriate damage model quantifies the difference between the actual costs incurred and the costs that would have been incurred even absent a breach.
- WEPCO would have incurred costs to load fuel to DOE had performance occurred.
- In order to properly monetize the alleged harm to WEPCO caused by DOE's breach, the avoided loading costs from 1998 through 2006 need to be accounted for.

**Kiraly DDX 5-61**

# But-For DOE Loading

## *Methodology to Calculate But-For Loading Costs*

- Kenrich included an estimate for But-For loading costs in its initial report dated July 14, 2005.
  - Prior to 2006, WEPCO did not maintain an accounting project number specifically for loading costs incurred to load casks to the ISFSI.
  - In lieu of actual recorded costs, Kenrich relied upon plant personnel to develop a cost estimate to load a hypothetical 24 assembly bolted cask.
  - WEPCO created a unique accounting project number to capture actual loading costs for the 2006 loading campaign.
- Mr. Brewer provided me with DOE cask size assumptions and acceptance assumptions for 1998 through 2006.

**Kiraly DDX 5-62**

# But-For DOE Loading

*Methodology to Calculate But-For Loading Costs (1998 – 2005)*

- Determined the number of hours Mr. Becka included in his loading campaign estimate (DX 248), which Kenrich relied upon in its 2005 expert report.
- The number of hours used in the loading estimate were utilized in conjunction with accounting labor rates from other years to determine the cost of the loading campaigns in each respective year.
- Offsets were made to account for adjustments made for non-incremental salaried internal labor and non-incremental A&G overhead costs, which have already been removed from the claim.

Kiraly DDX 5-63

# But-For DOE Loading

## *Methodology to Calculate But-For Loading Costs (2006)*

- WEPCO created project code 3.0264 to capture all loading costs associated with the 2006 NUHOMS campaign.
- Based upon the opinions of Mr. Brewer, the 2006 actual loading costs were used to determine the but-for DOE loading costs for 2006.
- Based upon trial testimony, the costs for the following time periods were isolated.
  - **Preparation / Mobilization:** 1/1/06 – 4/16/06 *[Tr. 1923:14-23 (Becka)]*
  - **Loading:** 4/17/06 – 6/8/06 *[Tr. 1924:3-11 (Becka)]*
  - **Demobilization:** 6/9/06 – 12/31/06 [*Tr. 1924:22-25 (Becka)]*
- WEPCO loaded five (5) NUHOMS casks in 2006, so an average loading cost per cask was calculated.

**Kiraly DDX 5-64**

# But-For DOE Loading

## *Calculation of Offset for But-For DOE Loading*

| Description | Amount (1998 - 2006) |
|---|---|
| Estimated Mobilization Costs | $ 2,011,372 |
| Estimated Loading Cost | 3,183,783 |
| Estimated Demobilization Costs | 447,482 |
| **Total Avoided Loading Costs** | **$ 5,642,637** |
| Less: Adjustments for Non-Incremental Costs | |
| Non-Incremental Salaried Internal Labor | $ (891,923) |
| Non-Incremental A&G Overhead | (1,062,549) |
| Total Non-Incremental Adjustments | $ (1,954,472) |
| **Net Avoided Loading Costs** \1 | **$ 3,688,166** |

| DOE Acceptance Assumptions\2 | | |
|---|---|---|
| Year | Assemblies to DOE | Full 4 Assembly Casks |
| 1998 | 41 | 11 |
| 1999 | 110 | 28 |
| 2000 | 50 | 13 |
| 2001 | 69 | 18 |
| 2002 | 92 | 23 |
| 2003 | 62 | 16 |
| 2004 | 24 | 6 |
| 2005 | 32 | 8 |
| 2006 | 40 | 10 |
| Total | 520 | 133 |

Source: Kiraly Report Attachment 13-a.
Notes:
\1 The net avoided loading costs figure ($3,688,166) is only relevant if an adjustment to all other claimed costs is made for both non-incremental salaried internal labor and non-incremental A&G overhead. If neither of these adjustments are made, then the total avoided loading costs figure ($5,642,637) should be used.
\2 DOE Acceptance Assumptions provided by Warren Brewer.

Kiraly DDX 5-65

# Analysis of WEPCO's Damages Claim

## *Government Claim Adjustments*

| Description | As Presented in Report | As Presented in Trial |
|---|---|---|
| **WEPCO Claim Amount** | $ 96,541,000 | $ 96,541,000 |
| Prejudgment Interest | (44,204,521) | (44,204,521) |
| **WEPCO Claim for Nominal Costs** | $ 52,336,479 | $ 52,336,479 |
| Temporary Cask Pit Rack | 2,047,641 | 2,047,641 |
| **Costs Included in WEPCO Claim** | $ 54,384,120 | $ 54,384,120 |
| **Adjustments to Costs in WEPCO Claim** | | |
| Cost Type Adjustments to Claimed Costs | | |
| Non-Incremental Salaried Internal Labor | $ (6,650,322) | $ (2,146,185) |
| Employee Expenses | (523,782) | (65,217) |
| Payroll Adjustments | (536,444) | 0 |
| Non-Incremental A&G Overhead | (1,733,273) | (675,263) |
| Total Cost Type Adjustments | (9,443,820) | (2,886,666) |
| Entitlement Adjustments to Claimed Costs | | |
| Private Fuel Storage | $ (883,503) | $ (883,503) |
| Annual NRC License Fees | (2,283,333) | (2,283,333) |
| ISFSI and VSC-24 Casks 1-5 | (14,370,678) | (20,550,207) |
| TN-32B Metal Cask Costs | (4,915,113) | (5,054,402) |
| Pursuit of Dual-Purpose Casks | (8,540,503) | (8,778,839) |
| Other Spent Fuel Costs | 0 | 0 |
| Total Entitlement Adjustments | $ (30,993,130) | $ (37,550,284) |
| **Total Adjustments to Costs in WEPCO Claim** | **(40,436,950)** | **(40,436,950)** |
| **WEPCO Claim Net of Cost Adjustments** | $ 13,947,170 | $ 13,947,170 |
| But-For Loading | (3,688,166) | (3,688,166) |
| **Net WEPCO Claim After All Adjustments** | **$ 10,259,004** | **$ 10,259,004** |

Source: Kiraly Report Attachments Reflecting Plaintiff's Claim Update at Trial.
Many of the claim adjustments can be included under multiple categories.

Kiraly DDX 5-66

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

WISCONSIN ELECTRIC POWER COMPANY,

Plaintiff,

Case No. 00-697C

-vs-

THE UNITED STATES,

Defendant.

---

Examination of JAMES BECKA, taken at the instance of the Defendant, under and pursuant to all applicable rules, before JESSICA R. WAACK, Registered Merit Reporter, Certified Realtime Reporter and Notary Public in and for the State of Wisconsin, at Wisconsin Electric, 231 West Michigan Avenue, Milwaukee, Wisconsin, on January 20, 2006, commencing at 9:02 a.m. and concluding at 5:39 p.m.

remaining 14 casks that are at Point Beach.
Q That might be a good thing to say for yourself. But there were 16 total loaded; is that correct?
A Yes.
Q Typically, what is involved in loading of VSC 24 casks?
A It is typically an eight-day evolution -- eight to nine days. That was our experience. We go into two 12-hour shifts, and we work the evolution around the clock from start to completion. Would you like me to go through the physical descriptions of what happens during a loading campaign?
Q Yes. And to help me stay in sync with you, we talked a little bit about that with Mr. Schultz the other day, so I got my notes from that. I'm going to keep on those while you're telling me about your experience with it. Go ahead.
A Okay. I should preface the loading evolution by saying that there are some preparations that need to be done prior to starting that evolution.
Q Okay.
A That's not done in shift work. That's typically done by maintenance. For the VSC 24 MSB or multiassembly sealed basket, it needs to be

Q Right.
A And we're just talking about VSC 24?
Q That's correct.
A Yeah, I think so.
Q And would the same be true for demobilization after the campaign is concluded?
A There would be some efficiencies if you could do cask loads back to back to back in very tight success --
Q Or --
A -- in terms of demobilizing equipment or not demobilizing equipment. There's some efficiencies to be gained by putting them closer to together.
Q So given that, why weren't you all doing that with the VSC 24s?
A With the VSC 24, a loading campaign, as I mentioned earlier, typically takes eight to nine days.
Q Yes, sir.
A It is -- I don't want to call it a disruption, but it is -- it is kind of a disruption to the flow of plant work compared to if you don't have a dry cask evolution going on.
So my recollection at the time was that you're also taking a little bit of a toll on

people as well. People are tired after eight to nine to ten days straight of doing a loading campaign.

And I think part of our decision making was not to go strictly back to back to back, but to put some time in between. So I believe there was a people element and concern for the people that was involved in that decision.

Q Yet you are doing multi cask campaigns with the NUHOMS; is that correct?

A Yes, sir.

Q And so is there some difference between that people factor in the NUHOMS loading campaign?

A Yes.

Q What is that?

A The NUHOMS loading campaign is much shorter than the VSC 24 campaign.

Q How much shorter?

A The way we have our upcoming campaign planned out is we will start on a Monday morning and we will finish on a Friday. So five work days. Yes, it's two 12s, at least we're planning on doing two 12s, but you have the weekends off, time for people recover.

Q When you say "two 12s," what are you saying?

STATE OF WISCONSIN )
) SS:
COUNTY OF MILWAUKEE )

I, JESSICA R. WAACK, a Registered Merit Reporter, Certified Realtime Reporter and Notary Public in and for the State of Wisconsin, do hereby certify that the above deposition of JAMES BECKA was recorded by me on January 20, 2006, and reduced to writing under my personal direction.

I further certify that I am not a relative or employee or attorney or counsel of any of the parties, or a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

In witness whereof I have hereunder set my hand and affixed my seal of office at Milwaukee, Wisconsin, this 23rd day of January, 2006.

______________________________
Notary Public
In and for the State of Wisconsin

My Commission Expires: September 20, 2009.

Perkins Coie

607 Fourteenth Street N.W.
Washington, D.C. 20005-2011
PHONE: 202.628.6600
FAX 202.434.1690
www.perkinscoie.com

Donald J. Carney
PHONE 202.434.1675
EMAIL dcarney@perkinscoie.com

March 30, 2006

**BY HAND DELIVERY**

Kevin Crawford, Esq.
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530

**Re: Wisconsin Electric Power Co. v. United States, No. 00-697C**

Dear Mr. Crawford:

On behalf of Wisconsin Electric Power Company ("WE"), we enclose documents responsive to Defendant's Fourth Set of Requests for the Production of Documents Nos. 93, 98 and 104. These documents are labeled WISC 00101619 – 00116023. We also enclose a spreadsheet associating documents, by bates range, with the Government's corresponding Requests for Production of Documents.

All of the enclosed materials are marked as "Protected Material to be Disclosed Only in Accordance with U.S. Court of Federal Claims Protective Order."

If you have any questions, please call me.

Sincerely,

Donald J. Carney

cc: Catherine Phillips
Richard Oehler

[28795-0001/DA060870.034]

CONFIDENTIAL

| Bates Nos. | Responsive to: |
|---|---|
| WISC 00101619 – 00105620;<br>WISC 00112914 – 00114711 | RPD 98 |
| WISC 00105621 – 00112913;<br>WISC 00114818 – 00116023 | RPD 104 |
| WISC 00114712 -- 00114817 | RPD 93 |

[28795-0001/DA060870.034]

Perkins Coie

607 Fourteenth Street N.W.
Washington, D.C. 20005-2011
PHONE: 202.628.6600
FAX: 202.434.1690
www.perkinscoie.com

Donald J. Carney
PHONE: (202) 434-1675
FAX: (202) 434-1690
EMAIL: DCarney@perkinscoie.com

August 20, 2007

**BY HAND DELIVERY**

Sharon A. Snyder
U.S. Department of Justice
Commercial Litigation Branch
Civil Division
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, DC 20530

**Re: Wisconsin Electric v. United States, No. 00-697C**

Dear Ms. Snyder:

Wisconsin Electric Power Company ("WE") hereby produces to the Government the "work order packages" for the 2006 loading campaign at Point Beach Nuclear Plant. This production is responsive to the Government's letter request of August 14, 2007. The documents are labeled WISC 00136548 – 00137994 and marked as "Protected Material to be Disclosed Only in Accordance with U.S. Court of Federal Claims Protective Order."

Please contact me if you have any questions.

Very truly yours,

Donald J. Carney

cc: Catherine Phillips
Richard W. Oehler

28795-0001/LEGAL13476233.1

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| WISCONSIN ELECTRIC POWER COMPANY,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant. | No. 00-697C<br>(Senior Judge Merow) |

**JOINT STIPULATION REGARDING ACCURACY OF PLAINTIFF'S COSTS**

The parties have worked together through the audit verification process envisioned by this Court regarding the costs through February 28, 2007 that are included in the claim filed by Wisconsin Electric Power Company ("WE"). In the interest of resolving the relative certainty of costs through February 28, 2007 included in WE's claim, the parties offer this joint stipulation.

1. The parties agree, with the two exceptions noted below, that all costs through February 28, 2007 that are included in WE's claim were incurred by WE and are traceable to and supported by WE's accounting records. These costs include (1) outside services and materials costs, (2) the NRC Power Reactors' Annual Fees, (3) employee expenses, (4) the Pension and Benefits Labor Adder, and (5) labor costs. In addition, the Government does not deny the accuracy of the budgeted Administrative and General cost rates used by WE in its claim. The Government, however, contests whether WE legally is entitled to recover these claimed monies in this action.

2. The Government contests the accuracy of the weighted average cost of capital contained in WE's claim.

3. The Government contests the accuracy of the calculated offset from WE's claim for the procurement and installation of a temporary storage rack.

4. This stipulation is without waiver of or prejudice to the parties' rights.

Dated: September 21, 2007

Respectfully submitted,

s/Richard W. Oehler by s/ Emily C.C. Poulin
Richard W. Oehler
Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
(206) 583-8419

Attorneys for Plaintiff
WISCONSIN ELECTRIC POWER COMPANY

Of Counsel:

Donald J. Carney
Mary Rose Hughes
Perkins Coie LLP
607 Fourteenth Street, N.W.
Washington, D.C. 20005
(202) 434-1675

s/Sharon A. Snyder
Sharon A. Snyder
U.S. Department of Justice
Commercial Litigation Branch
Civil Division
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, DC 20530

Attorney for Defendant
UNITED STATES

## CERTIFICATE OF SERVICE

I certify under penalty of perjury that, on September 21, 2007, I caused a copy of the foregoing "Joint Stipulation Regarding Accuracy of Plaintiff's Costs" to be filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Emily C.C. Poulin
Emily C.C. Poulin