# ATTACHMENT B

something that would be agreeable to, at this point in time. It's an issue they've just raised. We'll consider it and get back to them.

THE COURT: Okay.

MR. OEHLER: On the issue Morgan issue, I believe we're okay with the position that you took in your letter. On that issue, do you want to discuss anything on that now or just get up later? I'm addressing my co-counsel, Ms. Hughes.

MS. HUGHES: I will wait. As Ms. Snyder indicated, we have had an offer from the government that we stipulate to the admission of Mr. Mills testimony from a prior trial. They indicated that the MSP trial would be the testimony of their choice. We suggested that that would be fine, if we could include Mr. Mills' testimony from the Yankees. They came back and suggested that that would be fine, if they could include the testimony from PG&E. And I think to close it out, we would suggest that -- Mr. Mills testified most recently in the A&O trial and that was just in February, so it kind of brings his testimony forward to February of 2007. Our understanding is that the government stipulated to the admission of that A&O testimony in the most recent spent fuel case trial. So, with that, we would add that if we can add the A&O





testimony, to which the government has previously stipulated, I think we can close out Mr. Mills and leave him on the Eastern Shore.

THE COURT: Okay. So, we'll have a complete Mills.

MR. LORE: Your Honor, as the person responsible for the Mills testimony, I would imagine we can work that out. We will certainly work with counsel.

THE COURT: Right.

MR. LORE: Thank you.

THE COURT: Excellent.

MR. OEHLER: On the designation of prior testimony, I wanted to answer a question that you had in your August 16th order. In the August 16th order, on page 22, note 12, you asked a question and your question was, "I believe that there has been designated testimony of 17 individuals, yet the parties in their pleadings seem to discuss 19 individuals." And if you are like me, Your Honor, that's going to bug you. So, I am going to make sure that you can rest comfortably. What happened was, we designated 17 officials -- 17 individual testimony on December 18, 2006. However, we, at that point, deposing two NRC personnel. We then designated the





testimony of those two NRC personnel on January 17, 2007. That was filing number 261 for your electronic docket sheet. And the government is aware of that, because they responded to all 19 total designations on February 9, 2007.

The other point that I would just like to address is, it is possible that at the end of trial, when the government designates their counter-designation, that we feel that there is some rebuttal designations that need to come in and we certainly want to have that as an option. So, we would like to mention that to the Court.

THE COURT: Okay, fair enough.

MR. OEHLER: Now, we do have another issue regarding proprietary information and I would like my co-counsel, Mr. Carney, to address that issue for the Court.

THE COURT: Mr. Carney?

MR. CARNEY: Judge, it's really sort of a housekeeping issue. We want to keep the trial as open as possible, but I wanted to alert the Court to two instances where there may be an issue of briefly closing the Court. The first one is a projected discharge information -- excuse me, outage information at Point Beach nuclear plant. We anticipate that





being an issue, because if the damages are cut off, if that comes up, we might ask -- request the Court to close the Court for that part.

The other issue is we're going to be calling a witness Kris Singh from HOLTEC International. I think, as the Court is aware, HOLTEC is a major manufacturer of racks and the short temper rack is one of its case. His report is not proprietary, but some of the underlying documents were produced to the government, their cost estimate. It's actually Defendant's Exhibit 388. If the government elicits testimony relating to HOLTEC proprietary pricing information, that puts -- or try to publish that exhibit, we would probably request the Court to close the proceedings at that time, to protect HOLTEC proprietary information.

THE COURT: Okay. It is under seal, as I recall.

MR. CARNEY: That's correct, Your Honor, so we would request that continued status for that exhibit.

THE COURT: Okay. Any further issues?

MS. SNYDER: Your Honor, one final housekeeping issue regarding live note. We intend to use live note and our staff wants to know if you want

respect to Mr. Milner and Mr. Pollog.

If that's not the case, I think we need to know that. So we can figure out whether or not we need to adjust the schedule.

THE COURT: Well, I would be less than honest with both counsel if I didn't indicate that it would be highly unlikely that I would grant a directed verdict. So that, I mean, the government can file if they want in that regard, but my normal reaction would be to defer ruling on it until the end of the trial on the merits briefing.

So unless there is an overwhelming reason why I should grant it, that I am not aware of, by the current trial to date, so that's -- that really isn't an issue. I guess the issue is Mr. Oehler does not want to be limited to scope of examination of the government witnesses strictly to direct. He wants to be able to go beyond direct if necessary to get whatever points he wants from these witnesses during that period of time, whether that's considered part of his case-in-chief or cross-examination or expanded cross or whatever you want to call it. I think





that's your situation. You just don't want to be limited necessarily by scope issues.

And that was done for convenience of witnesses, basically, that no sense in having them in and out, if possible. And I take it that still holds. But of course, you have the right, if it gets abusive or something, you can object.

MS. SNYDER: Sure.

THE COURT: In that regard. But I don't know if that changes the issue at all. But from what I hear, I am not hearing any upset in the scheduling or anything from what Mr. Oehler says and you said. It seems to me we're just going forward.

MS. SNYDER: As long as I don't -- the government doesn't find that when we close our case, Mr. Oehler has decided that he is going to call more government witnesses. That would be improper. The point is, is that we are starting our case-in-chief and, yes, Mr. Oehler will elicit whatever testimony he wants from the witnesses that we put on.

THE COURT: Yeah, I think I did say that if you have listed any witnesses that you





are not going to call, you should give notice to Mr. Oehler. That would be the only criteria.

MS. SNYDER: We have done that, Your Honor.

MR. OEHLER: Let me say, Your Honor, when Ms. Snyder gave me notice regarding Mr. Pollog and Mr. Milner, I immediately dedicated myself to trying to determine, do I need to have them here to admit certain exhibits. I then identified those exhibits that I felt were appropriate, that potentially might come in through those witnesses, and I asked for this hearing.

At this point, I am willing to forego calling Mr. Milner and Mr. Pollog, but I want it clear then that the deposition designations that we previously provided for those individuals will come in, and we will have our standard rules on counterdesignations, meaning the government can counterdesignate, we can object to specific counterdesignations that they make, if we feel they are for some reason inappropriate, and then we can submit counterdesignations to their





counterdesignations.

With that understanding, I will not need to call --

THE COURT: If they are not live witnesses, their designations would come in normally.

MR. OEHLER: Just confirming these things, Your Honor. I want to be clear on the record so everybody is clear.

THE COURT: All right.

MR. OEHLER: And if they have other witnesses that are listed on our witness list that they say they are not going to call, then they should give me notice because then I may say, gee, if you are not calling Chris Kouts, we want to call him, just to use an example.

So I don't think this should be a problem for the government. I think I have been very responsive. Once they told me on Monday that they were dropping two of these people, here we are on Wednesday and I am doing everything I can to try and accommodate them to see if I can say I don't need to call these gentlemen because they have now -- I have now straightened out some exhibit issues.