IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WISCONSIN ELECTRIC POWER COMPANY, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 00-697C |
| | ) | (Senior Judge Merow) |
| UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S RENEWED MOTION TO STRIKE PLAINTIFF'S TESTIMONY REGARDING DEFENDANT'S SETTLEMENTS WITH OTHER UTILITIES

Pursuant to Federal Rule of Evidence 408 and Rule 12(f) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully renews its motion made during trial to strike certain testimony introduced by plaintiff, Wisconsin Electric Power Company ("WEPCO"), regarding defendant's settlements with other utilities. Specifically, the Government seeks to strike (1) Page 8, footnote 25 of Eileen Supko's Expert Report Regarding the Development of Dual-Purpose Casks and the reference to item 28 on page C-2 of the appendix of that report; (2) Ms. Supko's testimony on this portion of her report during her direct examination which appears at pages 3322:12-3328:11 of the trial transcript; and (3) any reference to these portions of Ms. Supko's report or testimony in WEPCO's pleadings.[1] This testimony attempts to introduce into evidence the substance of the Department of Energy's ("DOE") prior settlement agreements in violation of Federal Rule of Evidence 408.

In her report, Ms. Supko cited to the Government's settlement agreement with Exelon

[1] To the extent that the Court strikes Ms. Supko's direct testimony and report regarding the Government's settlement agreements, we do not object to the Court similarly striking her testimony on cross examination to the effect that 25% of the industry has settled their SNF claims with the Government based upon the rate argued by the Government in this case.

Generation LLC for the proposition that "the Government has, in fact, reimbursed certain utilities use of dual purpose systems." At trial, Ms. Supko reiterated and expanded upon this claim. Specifically, she discussed four settlements entered into by the Government, described the fact that three of the utilities with whom the Government entered into these settlements used dual purpose casks, and concluded, therefore, that dual purpose casks were covered by the settlement agreements. Tr. 3325:8-24. Ms. Supko further indicated that she viewed these settlements as an endorsement by the Government of dual purpose casks. Tr. 3654:7-3655:12. While WEPCO's pleadings do not appear to address this point directly or cite specifically to the portions of Ms. Supko's report or trial testimony dealing with this issue, WEPCO's proposed findings of fact cite to Ms. Supko's report as a whole and portions of her testimony which encompass her discussion of this issue. See WEPCO PFOF 32 (citing PX 793), 154 (citing PX 793 and Tr. 3199:4-3403:3). Likewise, WEPCO's post trial brief cites to some of the proposed findings of fact that in turn make broad reference to the report or the testimony. See Pl.'s Br. at 53, 56 (citing PFF 154).

WEPCO's attempt to introduce the substance of DOE's settlement agreements with other utilities as evidence of DOE's liability for the cost of WEPCO's dual purpose casks, is in clear violation of Federal Rule of Evidence 408. This rule provides in pertinent part:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible.

Fed. R. Evid. 408. When DOE and the other utilities with which it has entered into settlements

executed those settlement agreements, the utilities' claims against DOE were "disputed as to validity or amount." Id. Thus, evidence of DOE's acceptance of a compromise of other utilities claims is not admissible.

In fact, this Court has twice granted the Government's motion to strike this type of evidence in nearly identical circumstances in other spent nuclear fuel cases. First, in Florida Power and Light Co. v. United States, No. 98-483C, 2003 WL 24129961 (Fed. Cl. May 21, 2003), the plaintiff utility sought to introduce evidence of the rate of acceptance used in the Government's 2000 settlement with PECO Energy Company. Although the plaintiff argued that the settlement did not fall within the prohibitions of Rule 408 because it was not introduced to prove the amount of its damages, but only for other purposes, it was "clear to the court that plaintiff's introduction of the settlement agreement is intended to support its argument on the merits of the acceptance rate issue including calculation of the amount of plaintiff's damages." Id. at *1. The Court also noted that excluding the evidence comported with the rule's purpose of encouraging settlement. "The government may well have declined to negotiate a settlement agreement with PECO had it foreseen that its terms would be used to prove its actual intent rather than a negotiated amount. This is the very result Rule 408 was intended to guard against." Id. at *2 (citing Manko v. United States, 87 F.3d 50, 54 (2d Cir. 1996) ("The primary purpose of Rule 408 is the 'promotion of the public policy favoring the compromise and settlement of disputes' that would be otherwise be discouraged with the admission of such evidence.") (quoting Notes of Advisory Committee on 1972 Proposed Rules, Rule 408)).

Likewise, in Power Authority of the State of New York v. United States, 62 Fed. Cl. 376 (2004), the Court rejected the introduction of the same settlement offered under the same

rationale. The Court concluded that "Plaintiff's proposed introduction of the PECO settlement does not fit comfortably within the boundaries of th[e] authority" for admitting such evidence. Id. at 378. Rather, the Court excluded the settlement, noting that the issue which the plaintiff aimed to address through the use of the settlement "is closely related to the issue of damages in this litigation." Id. at 379. "The nexus between the question of rate and damages is sufficiently close and the factual inquiries so closely intertwined that the purpose and spirit of Rule 408 would be contravened by the admission of the PECO settlement." Id. The Court explained, here too, "that the policy behind FRE 408 is the encouragement of settlements." Id. at 377 (citing Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc., 265 F.3d 1294, 1308 (Fed Cir. 2001) ("[W]e are mindful . . . of the policy in favor of protecting settlement negotiations from being admitted as evidence, thus serving to encourage settlements.")); see also Trebor Sportswear Co., Inc. v. The Limited Stores, Inc., 865 F.2d 506, 510 (2d Cir. 1989) ("[s]ince the two questions were so closely intertwined, admission of the documents . . . would, under the circumstances of this case, militate against the public policy considerations which favor settlement negotiations and which underlie Rule 408."). Finally, the Court cautioned that, "when the applicability of Rule 408 is a close call, the court should lean toward exclusion." Id. at 379 (citing Bradbury v. Phillips Petroleum Co., 815 F.2d 1356, 1354 (10th Cir. 1987)).

Just as in the other two spent fuel cases in which this issue has been addressed, the purpose for which WEPCO offers testimony regarding the Government's settlements is inextricably intertwined with its damages claim. The proffered testimony alleges that certain settlements entered into by the Government reimbursed the plaintiff utilities for dual purpose casks. WEPCO's damages claim contains costs associated with purchasing a number of dual

purpose casks, although single purpose casks were available to WEPCO at a much smaller cost and costs associated with obtaining licensing for a number of other casks to make them dual purpose. The Government has disputed these additional costs as not being the least cost mitigation and as being unforseeable. Thus, the testimony about the Government's alleged reimbursement of the cost of dual purpose casks goes to the heart of damages.

When the Government initially moved to strike Ms. Supko's testimony on this issue at trial, it was suggested that Rule 408 did not apply to this situation because WEPCO had not been a party to the original agreement. This Court's prior rulings on this issue in the two aforementioned spent fuel cases make plain that this is not the case, as neither plaintiff in those cases was a party to the settlement they hoped to introduce. As the Court explained in one of its decisions, "even where the settlement agreement in question involved the same defendant but a different plaintiff, '[i]f such evidence were routinely allowed in subsequent lawsuits, it would give any litigant pause before settling.'" Power Authority of the State of New York, 62 Fed. Cl. at 377 (citing Abundis v. United States, 15 Cl. Ct. 619, 621 (1988)). In reaching this conclusion, this Court relied on the Claims Court's definitive rejection of this type of argument in Abundis v. United States. In that case, the Claims Court explained that

> Plaintiffs are attempting to introduce evidence of a settlement involving the Government and parties in a different lawsuit. On that basis, they attempt to distinguish Rule 408. While they are correct that a literal reading of the rule suggests an application solely to negotiations or compromises involving the claim being litigated, courts have not read the rule that narrowly. We agree. The rationale behind the rule, as explained in the advisory committees note, applies full weight in circumstances in which a plaintiff attempts to introduce evidence of settlement involving the same defendant but a different plaintiff. If such evidence were routinely allowed in subsequent lawsuits, it would give any litigant

> pause before settling. Moreover, circumstances can vary between cases in ways that would make the settlement evidence irrelevant or confusing.

Abundis, 15 Cl. Ct. at 620-21 (citations omitted).[2] Given this definitive rejection of a narrow reading of Rule 408, and its past application in identical circumstances, WEPCO should not be permitted to admit evidence regarding the Government's settlements based upon such a reading.

It was also suggested at trial that testimony regarding the Government's settlements with other utilities was acceptable, even if barred by FRE 408, because the testimony was from one of WEPCO's expert witnesses and because experts may rely upon inadmissable information under Fed. R. Evid. 703. Tr. 3067:25-3068:13, 3074:18-3075:25. This suggestion, however, disregards the interplay between Fed. R. Evid. 703 and the other evidentiary rules. "The primary purposes of Rule 703 are to shortcut the cumbersome process of authenticating admissible evidence or to allow experts to rely on otherwise inadmissible hearsay evidence. All of the examples cited in the Advisory Committees Notes involve use of the Rule to such advantage. By contrast, Rule 703 is disfavored as a method for admitting evidence that is otherwise inadmissible based on policy considerations, such as those underlying Rule 408." Alpex Computer Corp. v. Nintendo Co., Ltd., No. 86-1749, 1994 WL 139423, at *11 (S.D.N.Y. March

---

[2]The Claims Court's approach has also found support in other circuits. For instance, the United States Court of Appeals for the Fifth Circuit determined that a trial court's admission of a settlement agreement for jury's consideration in determining "liability and quantum of damages" violated Rule 408. Specifically, it stated "[t]he spectre of a subsequent use to prejudice a separate and discrete claim is a disincentive which Rule 408 seeks to prevent." Branch v. Fidelity & Casualty Co. of New York, 783 F.2d 1289, 1294 (5th Cir. 1986). Likewise, the United States Court of Appeals for the Fourth Circuit has recognized that "it is the general practice of federal courts to hold inadmissible the attempted use of a completed compromise of a claim arising out of the same transaction between a third person and a party to the suit being litigated." Fiberglass Insulators, Inc. v. Dupuy, 856 F.2d 652, 654 (4th Cir. 1988).

18, 1994) (citing M. Graham, Federal Practice & Proc.: Evidence § 6651 (Interim Edition)). Moreover, although it is "undisputed that an expert may base his or her testimony on inadmissable facts or data, Rule 703 'does not allow the data itself.'. . . In other words, the rule simply permits an 'witness to rely on this type of information to base his conclusions or inferences but does not allow the admittance of the evidence otherwise inadmissable.'" Fiorentino v. Rio Mar Associates, 381 F. Supp. 2d 43, 48 (D.P.R. 2005) (citation omitted); see e.g., Bado-Santana v. Ford Motor Co., 364 F. Supp. 2d 79, 92 (D.P.R. 2005) ("The rule simply permits an expert witness to rely on this type of information to base this conclusions or inferences. It is not a rule that would allow the admittance of the evidence otherwise inadmissable."); Pharmastem Therapeutics, Inc. v. Viacell, Inc., No. 02-148, 2003 WL 22387038, at *2 (D. Del. Oct. 7, 2003) ("This Court is not required to allow otherwise inadmissable settlement agreements into evidence simply because one party's expert relies on them . . . ."). "In light of these decisional rules, the court [should] decline[] to eviscerate rules 408 and 403 by admitting the evidence of [the Government's settlements with other utilities] through the back door of Rule 703." Alpex Computer Corp. v. Nintendo Co., Ltd., 1994 WL 139423, at *11.[3]

In addition, even if the admission of such evidence were not precluded by Fed. R. Evid.

---

[3] Likewise, to the extent that discussion of the Government's settlement agreements constitutes inadmissible hearsay, plaintiff may not not admit such evidence through the back door of Fed. R. Evid. 703. U.S. Information Systems, Inc. v. International Brotherhood of Electrical workers Local Union Number 3, AFL-CIO, No. 00-4763, 2006 WL 2136249 (S.D.N.Y. Aug. 1, 2006) (citation omitted) ("Although the plaintiffs are correct that under Rule 703 of the Federal Rules of Evidence they may quote [their expert's] conclusions and opinions, even if he has relied on inadmissible evidence in reaching them, they may not use his report as a 'mere conduit' for the hearsay of another.").

408, the Court must still evaluate the reliability of the evidence in question. "In another context the Supreme Court has reminded us that the rules 'assign to the trial judge the task of ensuring that an expert's testimony rests on a reliable foundation.'" United States v. Evanoff, 10 F.3d 559, 562 n.4 (8th Cir. 1993) (quoting Daubert v. Merrell Dow Pharmaceuticals, Inc. 509 U.S. 579 (1993)). "Although experts may rely on [certain types of evidence, the court] may also assert [its] gate-keeping role and make an independent evaluation with respect to the reliability and relevance of the bases [of that evidence]." MTX Communications Corp. v. LDDS/WorldCom, Inc., 132 F. Supp.2d 289, 293 (S.D.N.Y. 2001) (citing States v. Locascio, 6 F.3d 924, 938 (2d Cir. 1993)). For instance, the Court must determine"[w]hether the inadmissable evidence is of the type reasonably relied upon by other experts . . . ." Davison v. Eldorado Resorts LLC, No. 05-0021, 2006 WL 587587 (D. Nevada March 10, 2006); see Bado-Santana, 364 F. Supp. 2d at 92 (quoting Fed. R. of Evid. 703) ("Plaintiffs' experts may base their opinions on said inadmissable evidence, providing that it is 'of a type reasonably relied upon by experts in the particular field.'").[4] Thus, courts have declined to consider expert testimony relating to certain evidence where the expert was in no better position than a lay person to opine on the evidence in question. United States v. Vest, 116 F.3d 1179, 1185 (7th Cir. 1997). On this basis, too, Ms. Supko's proffered testimony should be excluded. Nuclear engineers do not typically rely upon

[4]This determination must be made with respect to hearsay. Thus, even if the prohibition on hearsay could be overcome based upon the fact that the evidence in question constituted an admission or a public document, see Tr. 3064:3-17, 3078:2-3073:3, there still must be an inquiry into whether the evidence is of the type relied upon by an expert in that field, as well as an evaluation of the concerns underlying Fed. R. Evid. 403. Davison v. Eldorado Resorts LLC, No. 05-0021, 2006 WL 587587 (D. Nevada March 10, 2006) (citing Fed. R. Evid. 703). "Of course, experts may rely on inadmissable evidence, including hearsay, in forming their opinions as long as they are of 'a type reasonably relied upon by experts in the particular field in forming opinions.'"

settlement agreements to reach conclusions, and Ms. Supko is in no better position than a lay person to opine on the import of the Government's settlement agreements. See, e.g., United States v. Evanoff, 10 F.3d 559, 562 n.4 (8th Cir. 1993) ("We realize that experts may rely on a variety of otherwise inadmissible materials in forming their opinions. . . . We nonetheless . . . question whether [these types of experts] reasonably rely on such material.").

CONCLUSION

For all of the foregoing reasons, the Government respectfully requests that the Court strike (1) Page 8, footnote 25 of Eileen Supko's Expert Report Regarding the Development of Dual-Purpose Casks and the reference to item 28 on page C-2 of the appendix of that report; (2) Ms. Supko's testimony on this portion of her report during her direct examination which appears at pages 3322:12-3328:11 of the trial transcript; and (3) any reference to these portions of Ms. Supko's report or testimony in WEPCO's pleadings.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

OF COUNSEL:

JANE K. TAYLOR
Office of the General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

ALAN LO RE
Senior Trial Attorney

STEPHEN FINN
SONIA M. ORFIELD
RUSSELL A. SHULTIS
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice

s/ Sharon A. Snyder
SHARON A. SNYDER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-9640
Fax: (202) 307-2503

April 23, 2008

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify under penalty of perjury that on April 23, 2008, a copy of this "Defendant's Renewed Motion to Strike Plaintiff's Testimony Regarding Defendant's Settlements with Other Utilities" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Sonia Orfield