IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| WISCONSIN ELECTRIC POWER COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 00-697C<br><br>(Senior Judge Merow) |

# PLAINTIFF'S OPPOSITION TO DEFENDANT'S RENEWED MOTION TO STRIKE PLAINTIFF'S TESTIMONY REGARDING DEFENDANT'S SETTLEMENTS WITH OTHER UTILITIES

**Of Counsel:**

Donald J. Carney
Mary Rose Hughes
Emily C.C. Poulin
Jay L. Griffiths
Perkins Coie LLP
607 Fourteenth Street, N.W.
Washington, D.C. 20005-2003
(202) 434-1675

Richard W. Oehler
Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
206-359-8419

Attorneys for Plaintiff
WISCONSIN ELECTRIC
POWER COMPANY

DATED: May 22, 2008

# TABLE OF CONTENTS


**Page**

I. ARGUMENT ..... 1

A. The Government's Motion Is Untimely ..... 1

B. The Court Correctly Ruled Under Rule 703 That Experts May Rely Upon Evidence That Is Not Admissible ..... 2

1. Rule 408 Does Not Require The Exclusion Ms. Supko's Testimony ..... 3

C. The Court of Federal Claims' Decisions In Power Authority of New York and FP&L Are Factually Distinct From This Case ..... 8

D. The Government's Assertion That "Settlement Agreements Are Not Typically Relied Upon By Experts" Misapprehends Rule 703 ..... 10

II. CONCLUSION ..... 12

## TABLE OF AUTHORITIES

**Page**

### Cases

*Alpex Computer Corp. v. Nintendo Corp., Ltd.*, No. 86-1749, 1994 WL 139423 (S.D.N.Y. March 18, 1994) ..... 5

*Baumholser v. Amax Coal Co.*, 630 F.2d 550 (7th Cir. 1980) ..... 11

*Bradbury v. Phillips Petroleum Co.*, 815 F.2d 1356 (10th Cir. 1987) ..... 6, 7

*Broadcort Capital Corp. v. Summa Medial Corp.*, 972 F.2d 1183 (10th Cir. 1992) ..... 5

*C&E Servs., Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316 (D.D.C. 2008) ..... 6

*Daviscourt v. Columbia State Bank*, No. 05-cv-00687-WYD-BNB, 2008 WL 1806192 (D. Colo. Apr. 21, 2008) ..... 5

*Florida Power & Light Company v. United States*, No. 98-483C, 2003 WL 24129961 (Fed. Cl. May 21, 2003) ..... 9

*Power Authority of the State of New York v. United States*, 62 Fed. Cl. 376 (2004) ..... 7, 8, 10

*PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc.*, 520 F.3d 109 (2d Cir. 2008) ..... passim

*Slaughter v. Southern Talc Co.*, 919 F.2d 304 (5th Cir. 1990) ..... 11

*Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758 (10th Cir. 1997) ..... 5

*Trebor Sportswear Co., Inc. v. The Limited Stores, Inc.*, 865 F.2d 506 (2d Cir. 1989) ..... 3, 4, 6, 10

*United States v. Evanoff*, 10 F.3d 559 (8th Cir. 1993) ..... 11

*United States v. Locascio*, 6 F.3d 924 (2d Cir. 1993) ..... 11

*United States v. Vest*, 116 F.3d 1179 (7th Cir. 1997) ..... 11

### Regulations and Rules

Fed. R. Evid. 402 ..... 2

Fed. R. Evid. 403 ..... 2, 5

Fed. R. Evid. 408 ..... passim

Fed. R. Evid. 703 ..... passim

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**Other Authorities**

4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence (2d ed. 2008) ........ 11

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| WISCONSIN ELECTRIC POWER COMPANY,<br>Plaintiff,<br>v.<br>UNITED STATES,<br>Defendant. | No. 00-697c<br>(Senior Judge Merow) |

# PLAINTIFF'S OPPOSITION TO DEFENDANT'S RENEWED MOTION TO STRIKE PLAINTIFF'S TESTIMONY REGARDING DEFENDANT'S SETTLEMENTS WITH OTHER UTILITIES

Pursuant to the Rules of the U.S. Court of Federal Claims, plaintiff, Wisconsin Electric Power Company ("WE"), hereby opposes the Government's Motion to Strike. As demonstrated below, the Government's motion is untimely, the evidence that it seeks to strike is admissible under Rule 703, and Rule 408 does not require the Court to exclude the evidence.

## I. ARGUMENT

### A. The Government's Motion Is Untimely

The Government should have filed its current motion to strike Ms. Supko's testimony and related appendix item prior to the closing of the record in this matter on October 16, 2007. At the commencement of Ms. Supko's trial testimony on September 27, 2007, the Government, pursuant to Federal Rule of Evidence 408, objected to references in Ms. Supko's report to settlement agreements entered into by the Government with other nuclear utilities that compensated these utilities for the cost of dual-purpose casks. The Court correctly ruled that an expert is entitled to rely upon a fact in forming an expert opinion and that experts do not have to rely solely on admissible evidence. Tr. 3073:22-3076:19.

The Government objected again during Ms. Supko's testimony the following day, asserting that any reference to settlements for dual-purpose casks was "irrelevant, prejudicial, and improper to discuss." Tr. 3324:7-8.[1] The Court again overruled the Government's objection and allowed Ms. Supko to testify that the Government had reimbursed other utilities for dual-purpose casks. Tr. 3324:18-3325:6. The Government's objections were thoroughly explored at trial and the Court correctly overruled those objections.

If the Government wished to file an evidentiary motion after the closing of trial, it should have raised this issue with the Court during the conference with the Court at the end of trial regarding post-trial activities. The Government failed to raise this issue. Tr. 6385:20-6415:5. Nevertheless, the Government belatedly attempts to raise this issue now.[2] No reason exists for the Government's decision to wait more than six months after the conclusion of trial to file this motion. Not surprisingly, the Government fails to even address this issue. Instead, the Government waits until counsel for WE is working on WE's post-trial reply pleadings to file this motion.

**B. The Court Correctly Ruled Under Rule 703 That Experts May Rely Upon Evidence That Is Not Admissible**

In its motion, the Government asserts that Ms. Supko's testimony regarding the Government's reimbursement of the cost of dual-purpose casks in SNF settlements with other nuclear utilities is not admissible under Rule 703 because (1) an expert may base her testimony on "otherwise inadmissible" facts but Rule 703 does not allow the data itself to be

---

[1] The Government's motion does not assert that the testimony given by Ms. Supko at trial should be stricken based upon FRE 402 or 403.

[2] In ruling on the Government's objections, the Court set a precise precondition for revisiting this issue: that if anyone proposed a finding on the issue it should be accompanied by briefing. Tr. 3325:25-3326:10. Despite WE not having proposed a specific finding, the Government belatedly attempts to renew its objections on the basis that Ms. Supko's testimony and report were "generally" referred to in plaintiff's post-trial filings. The Government's indirect attempt to justify its tardy filing is not well-supported.

admitted; and (2) Ms. Supko's testimony regarding the fact of the settlement agreements is not "the type of evidence reasonably relied upon by experts in the field."

The Government's argument fails on all counts. First, the settlement agreement (i.e., "the data itself") was not admitted into evidence. Second, Ms. Supko's testimony in that regard is not "otherwise inadmissible" under Rule 408. Third, the Government misunderstands the reliability standard enunciated in Rule 703. The standard is whether the inadmissible evidence relied upon is, in itself, *reliable*, not whether it is evidence typically relied upon by experts.

**1. Rule 408 Does Not Require The Exclusion Ms. Supko's Testimony**

The Government asserts that the evidence of the Government's reimbursement of other utilities for dual-purpose casks is "otherwise inadmissible" under Rule 408 (and, therefore, is required to be excluded under Rule 408) because it is "inextricably intertwined with WE's damages claim," and that to allow this evidence would discourage the Government from settling claims. Neither basis of the Government's argument is well-supported.

The fact that the Government reimbursed other utilities for the costs of dual-purpose casks is not required to be excluded under Rule 408 because it was not offered to "prove liability for the claim or its amount." Instead, it was offered to rebut the Government's assertion that these costs were not "the least cost mitigation and [were] unforeseeable." Govt. Mot. at 5. Thus, this evidence clearly falls within the wide discretion of the trial court to admit evidence offered "for another purpose." As the Second Circuit explained:

> [in *Trebor*] We did not rule that the exclusion of the evidence was mandated. We said only that the district court's decision to exclude it was not an abuse of discretion. Although Rule 408 speaks categorically of the inadmissibility of settlement evidence to prove the validity or invalidity of a claim, the terms of the exception are less categorical. The exception says only that "[t]his rule ... *does not require exclusion* when the evidence is offered for another purpose, leaving the court wide

> discretion whether to admit or exclude. Our conclusion in *Trebor* that the district court had discretion to exclude the evidence of compromise negotiations did not mean that the district court in *Trebor was required* to exclude that evidence, and in no way supports PRL's contention in this case that the district court was required by Rule 408 to exclude it.

*PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc.*, 520 F.3d 109, 116 (2d Cir. 2008) (referring to *Trebor Sportswear Co., Inc. v. The Limited Stores, Inc.*, 865 F.2d 506 (2d Cir. 1989).

In this case, the evidence was not offered to prove a primary element of WE's claim or the amount of its claim. Instead, it was offered to rebut the Government's contention that WE's incurrence of these costs was not foreseeable or was somehow unreasonable. While this evidence relates to the invalidity of the Government's defense, the court in *PRL* aptly pointed out that:

> All of the evidence a party offers at trial is intended to help establish its own position and defeat the adversary's position. In a sense, all evidence offered seeks either to 'prove liability for or invalidity of [a] claim or its amount.' If we accepted PRL's contention of the meaning of the Rule, there would be no evidence falling within the category whose exclusion is 'not require[d]' because it is 'offered for another purpose.' The exception would be meaningless.

*PRL*, 520 F.3d at 114. The court went on to explain that the exception "for another purpose" in the rule clearly intended to exempt from the Rule's prohibition "evidence focused on issues different from the elements of the primary claim in dispute." *Id.* The Government's argument here is directly analogous to the argument presented by PRL and rejected by the Second Circuit which was, in essence, "If the defendant's claim of [unforeseeability or unreasonable mitigation] would succeed, [WE's claim for damages] would fail, and since this goes to the validity of the claim it is prohibited under Rule 408." *Id.* As quoted, the Second Circuit rejected PRL's attempt to construe Rule 408 this broadly, and the Government's argument here should be similarly rejected. As demonstrated, the evidence of reimbursement for dual-purpose casks is not required to be excluded by Rule 408.[3]

---

[3] The Government relies upon *Alpex Computer Corp. v. Nintendo Corp., Ltd.*, No. 86-1749,

The Government's assertion that "it would be discouraged from settling" if this evidence were allowed and that the purpose of Rule 408 would thereby be defeated is overbroad and is insufficient to exclude all evidence of settlements. As recently as April 2008, the U.S. District Court for the District of Colorado reviewed the Tenth Circuit's long line of cases admitting settlement evidence, stating:

> Rule 408 does not require the exclusion of evidence regarding the settlement of a claim different from the one litigated … though admission of such evidence may nonetheless implicate the same concerns of prejudice and deterrence of settlements which underlie Rule 408. *Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 770 (10th Cir. 1997), *see also Broadcort Capital Corp. v. Summa Medial Corp.*, 972 F.2d 1183, 1194 (10th Cir. 1992) (evidence of a settlement discussion involving a different dispute and "a different claim than the one at issue in the current trial" was not barred).

*Daviscourt v. Columbia State Bank*, No. 05-cv-00687-WYD-BNB, 2008 WL 1806192 at *3 (D. Colo. Apr. 21, 2008).

In *Towerridge*, T.A.O. defended against Towerridge's assertion that T.A.O. and the Government caused Towerridge's delays by asserting that Towerridge was responsible for its own delays. *Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758 (10th Cir. 1997) . In order to rebut this assertion, Towerridge was permitted to introduce evidence of T.A.O.'s settlement of its delay claims with the Government. *Towerridge*, 111 F.3d at 770. As in *PRL* and as in this case, the court found that while this type of evidence may go to the question of validity of a claim, it also falls within the "another purpose" exception of Rule 408.

---

1994 WL 139423 at *11 (S.D.N.Y. March 18, 1994), for the proposition that "Rule 703 is disfavored as a method for admitting evidence that is otherwise in admissible based on policy considerations such as those underlying Rule 408." In addition to demonstrating that the evidence at issue is not "otherwise inadmissible," we note that the *Alpex* court held that five of seven categories of evidence were *improperly excluded* under Rule 408, but that they should be excluded under Rule 403. The court subsequently vacated its March 16, 1994 opinion, allowing all categories but two to be admitted, only one of which was excluded under Rule 408.

In another recent case, a defendant attempted to bar evidence of its settlement agreement with the Government to show that the claims against it in a private action had merit. *C&E Servs., Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316 (D.D.C. 2008). The plaintiff responded that the evidence was not offered to establish the validity of its underlying claim, but rather for the "other purpose" of establishing misrepresentation upon which the plaintiffs relied. The court found that "the facts here are much closer to *PRL* than *Trebor*", and concluded that the evidence was not barred by Rule 408. *Id.* at 321. Similarly, in this case WE offers this settlement evidence (as well as evidence of other representations made by the Government) to rebut the Government's assertion that the incurrence of costs for dual-purpose casks was not foreseeable, or was somehow unreasonable.

The Court in *C&E* also explained that it was balancing the probative value of the evidence against the danger of unfair prejudice or misleading the jury. *Id.* As in *C&E*, a review of the case law clearly reveals that the overriding judicial concern with the admission of settlement evidence is that it may unfairly prejudice a jury, which requires analysis of the issue under other evidentiary rules. *See Bradbury v. Phillips Petroleum Co.*, 815 F.2d 1356, 1364-65 (10th Cir. 1987). That is obviously not an issue here since the Court, as it stated at trial, will determine the probative value of this evidence.

The Government will readily admit (and in fact routinely advises this Court) that it will not settle unless it perceives some liability. Thus, its assertion that evidence of a past settlement will deter it from future settlements is not credible. As the Court pointed out, the settlements are public and there is no disputing the fact that the Government paid for the items that the settlement states were reimbursed by the Government. Tr. 3071:2-20.

The use of evidence of dual-purpose cask reimbursement to rebut a defense of foreseeability is vastly different than offering the *amount* of the government's settlement in another case to prove the amount of damages in this case. As discussed below, that was the

situation in the cases cited by the Government in its motion,[4] and it is what the Government attempted to do by offering evidence of its own settlements in its cross-examination of Ms. Supko. Tr. 3655-61, *see* footnote 6 below.

More specifically, those cases and the Government's cross-examination of Ms. Supko related to the acceptance rate that would be applied. The courts found in *Florida Power & Light* and *Power Auth. of N.Y.* , that the determination of DOE's acceptance rate was a factor in the calculation of damages. Using other settlements to prove the acceptance rate in a different case was rejected (and should be here) because the acceptance rate is a negotiable item. *Florida Power & Light*, 2003 WL 24129961 at *2.

While the *amount* of damages to be paid in settlement for dual-purpose casks is negotiable, just as the acceptance rate is negotiable to determine the *amount* of damages, liability for the payment of costs for dual-purpose casks is not negotiable, at least from the Government's perspective, unless there is some risk of liability on the issue settled. There is either some exposure to liability for those costs, or there is not. If there is, the claim can be settled. If there is not, it cannot be settled. In order to pay those costs, the Government attorney has to make a showing that the damages were, to some extent, justified both legally and factually. While the Government had an opportunity at trial to offer evidence that there were different facts or different contractual terms that made reimbursement of dual-purpose casks "foreseeable" or "reasonable" under other Standard Contracts, but not the one at issue in this case, it chose not to offer such evidence. *Bradbury*, 815 F.2d at 1365. The Government cannot now assert that it did not offer such evidence because it objected to the discussion of its settlements when it attempted to use those very settlements (despite

---

[4] *Florida Power & Light Co. v. United States*, No. 98-483C, 2003 WL 24129961 (Fed. Cl. May 21, 2003) and *Power Authority of the State of New York v. United States*, 62 Fed. Cl. 376 (2004) .

language in them that they could not be used for any other purpose) to attempt to establish the acceptance rate in this case and did so in the guise of trying to impeach Ms. Supko.[5]

A review of the Government's cross-examination of Ms. Supko underscores WE's position – evidence of an acceptance rate that was negotiated and agreed upon is not probative of the "intended" acceptance rate, because it was a *negotiated* rate factor in the settlement, whereas the fact of reimbursement for dual-purpose casks was just that – a fact. *See* Tr. 3652:22-3661:11.[6]

### C. The Court of Federal Claims' Decisions In *Power Authority of New York* and *FP&L* Are Factually Distinct From This Case

The Government's assertion that the holdings in *Florida Power & Light Company v. United States*, No. 98-483C, 2003 WL 24129961 (Fed. Cl. May 21, 2003) and *Power Authority of the State of New York v. United States*, 62 Fed. Cl. 376 (2004) require the Court to reverse its ruling that the evidence at issue is admissible is not well-supported. This Court properly exercised its discretion to admit dual-purpose reimbursement evidence, just as the

[5] Despite its vehement objection that these other settlement agreements should not be referred to *at all*, the Government used its other settlement agreements to argue that its proposed acceptance rate was the correct one. Tr. 3652:22-3661:12. The Government did so despite the Court having ruled that, while the Government might be bound by its own agreement not to use the agreement for any purpose, WE was not so bound. Tr. 3067:14-3080:4. *See also* Tr. 3322:12-3327:14.

[6] To summarize Ms. Supko's testimony on cross-examination, she testified (in response to the Government attorney's attempt to get her to testify that the Exelon settlement represented an "endorsement" by the Government of dual-purpose casks), that it was her opinion that "the fact that the government reimbursed the company [Exelon] to load dual-purpose casks says that it was a viable expense under the agreement that was signed," while the acceptance rate that Exelon agreed to reflected what worked for Exelon financially in that settlement, rather than that its "agreement to the terms of the settlement reflect[ed] its endorsement of the rate of acceptance contained in that agreement." Tr. 3655:8-12, 3657:24-3658:15. The Government was comparing apples and oranges by attempting to correlate the Government's acknowledgement that it was liable to Exelon for some reimbursement for dual-purpose casks (which necessarily means that the incurrence of the costs was foreseeable), to the *amount* Exelon was willing to accept in a negotiated resolution of its case, which was driven by the acceptance rate factor. The first qualifies as "another purpose" under Rule 408 because it rebuts a defense asserted; the second is prohibited because its uses another settlement to prove the amount of damages for which a party is liable.

courts in *Power Authority of NY* and *Florida Power & Light*, under the circumstances of those cases, properly exercised their discretion to exclude acceptance rate settlement evidence.

As discussed, a trial court does not abuse its discretion by excluding evidence of an acceptance rate factor from one settlement to prove the "correct" acceptance rate in another case. However, the exclusion of settlement acceptance rates is not analogous to the exclusion that the Government urges here. In this case, the Government asserts that the trial court must exclude the evidence of a settlement in which the Government reimbursed a utility for costs of dual-purpose casks because this evidence generally relates to the "amount of damages," even though it is being used to rebut the Government's foreseeability and unreasonableness defenses. *PRL* makes plain that this argument is without merit.

In *Florida Power & Light Company*, the court discusses the impact of allowing evidence of a negotiated acceptance rate in a settlement to prove the overall acceptance rate intended by the Government:

> Because plaintiff argues that the government's intended rate is the same rate in the settlement agreement, that agreement necessarily will be used to support plaintiff's argument as to the rate intended by defendant. The government may well have declined to negotiate a settlement agreement with PECO had it foreseen that its terms would be used to prove its actual intent rather than a negotiated amount.

*Florida Power & Light*, 2003 WL 24129961 at *2.[7]

Here, WE did not offer evidence of these dual-purpose casks to prove the Government's intent, but rather to rebut the Government's assertion that incurrence of the costs was not foreseeable by the Government and constituted unreasonable mitigation. This

[7] For the reasons set forth above, the Government cannot credibly assert that "it would be discouraged from settling" if this evidence were admitted here. While Judge Sypolt also excluded the evidence because it did not fit squarely within the specific exceptions mentioned in Rule 408, a review of the Second Circuit's reasoning in *PRL* shows that those exceptions are simply examples and are not meant to be the exclusive exceptions permitted.

is quite different than the plaintiff's position in *Florida Power & Light*, which was rejected because the plaintiff's assertion that the "settlement agreement would be used to rebut the government's position that the acceptance rate was provided [elsewhere], challenges only the merits of defendant's *principal argument*." *Id.* at *2 (emphasis added).

Likewise, in *Power Authority of the State of New York*, the court reviewed the question of admitting the PECO settlement to prove the intended acceptance rate. *Power Authority of the State of New York v. United States*, 62 Fed. Cl. 376 (2004) . After reviewing several cases that admitted settlement evidence despite Rule 408 objections, the court found that the case before it was similar to *Trebor*, stating that "The nexus between the questions of [acceptance] rate and damages is sufficiently close and the factual inquiries so closely intertwined that the purpose and spirit of Rule 408 would be contravened by admission of the PECO settlement. *Id.* at 379. As demonstrated, this case is more similar to *PRL* than *Trebor*. Thus, the Court here, as in *PRL*, correctly ruled in its discretion that the evidence should be allowed.

**D. The Government's Assertion That "Settlement Agreements Are Not Typically Relied Upon By Experts" Misapprehends Rule 703.**

Rule 703 provides, in pertinent part, that

> The facts or data in a particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type *reasonably relied* upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible *shall not be disclosed to the jury* ... unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

(Emphasis added).

Courts, in determining whether the underlying facts at issue are "of a type reasonably relied upon" by experts in the field, do not look simply to whether other experts in the field

rely on that type of data. 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 703.04[2] (2d ed. 2008).[8] Instead, the test universally applied is whether "the material in question is *sufficiently reliable* for experts in that field to rely on it."[9] Here, there is no assertion that the evidence of the government's reimbursement of other utilities for dual-purpose casks is not "reliable" evidence. It is a publicly known and published fact.

The Government misconstrues the holdings in *United States v. Vest*, 116 F.3d 1179 (7th Cir. 1997) and *United States v. Evanoff*, 10 F.3d 559 (8th Cir. 1993) in an attempt to support its argument that Rule 703 somehow requires an expert to rely upon "typically relied upon evidence," rather than upon "reliable" evidence. In the cases cited by the Government, as in *Baumholser*, *see* footnote 6, the court reviewed the sources of the information and determined that they were not reliable as the foundation for an expert opinion. In *Vest*, the court held that judging the credibility of witnesses was not within the expert's area of special competence, and with only written records as evidence the expert was in no better position than a lay person to judge whether the witnesses testified truthfully. Hence, to allow such testimony could unduly influence the jury. *Vest*, 116 F.3d at 1185. In *Evanoff*, the court held that it was questionable whether a memorandum summarizing an informant's testimony was a "reliable foundation" for the expert's opinion. *Evanoff*, 10 F.3d at 561, fn. 4. Again, as demonstrated above, both of these courts looked to the reliability of the evidence relied upon, and its impact *upon the jury*. Here, it is beyond dispute that the evidence is reliable, and there is no jury to unduly influence.

---

[8] Indeed, courts may reject evidence used by other experts in the field if the court determines that the data is questionable. *United States v. Locascio*, 6 F.3d 924, 938 (2d Cir. 1993).

[9] *See, e.g.*, *Slaughter v. Southern Talc Co.*, 919 F.2d 304, 306-07 (5th Cir. 1990) (Rule 703 "requires courts to examine the reliability of an expert's sources to determine whether they satisfy the threshold established by the rule"); *Baumholser v. Amax Coal Co.*, 630 F.2d 550, 553 (7th Cir. 1980) ("It is for the trial court to determine, in the exercise of its discretion, whether the expert's sources of information are sufficiently reliable to warrant reception of the opinion").

## II. CONCLUSION

For the foregoing reasons, WE respectfully requests that the Court deny the Government's motion to strike evidence regarding the Government's settlements with other utilities.

Dated: May 22, 2008

Respectfully submitted,

s/Richard W. Oehler by s/Jay L. Griffiths
Richard W. Oehler
Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
(206) 359-8419

Attorneys for Plaintiff
WISCONSIN ELECTRIC POWER COMPANY

Of Counsel:

Donald J. Carney
Mary Rose Hughes
Emily C.C. Poulin
Jay L. Griffiths
Perkins Coie LLP
607 Fourteenth Street, N.W.
Washington, D.C. 20005-2003
(202) 434-1675

**CERTIFICATE OF SERVICE**

I certify under penalty of perjury that, on May 22, 2008, I caused a copy of the foregoing "Plaintiff's Opposition To Defendant's Renewed Motion To Strike Plaintiff's Testimony Regarding Defendant's Settlements With Other Utilities" to be filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Jay L. Griffiths
Jay L. Griffiths