**No. 00-697C**
**(Senior Judge Merow)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**WISCONSIN ELECTRIC POWER COMPANY,**

**Plaintiff,**

**v.**

**THE UNITED STATES OF AMERICA,**

**Defendant.**

---

# DEFENDANT'S REPLY IN SUPPORT OF ITS RENEWED MOTION TO STRIKE PLAINTIFF'S TESTIMONY REGARDING DEFENDANT'S SETTLEMENTS WITH OTHER UTILITIES

---

**GREGORY G. KATSAS**
**Acting Assistant Attorney General**

**JEANNE E. DAVIDSON**
**Director**

**HAROLD D. LESTER, JR.**
**Assistant Director**

**SHARON A. SNYDER**
**Commercial Litigation Branch**
**U.S. Department of Justice**
**Attn: Classification Unit,**
**8th Floor**
**1100 L Street, N.W.**
**Washington, D.C. 20530**
**Tele: (202) 616-0347**
**Fax: (202) 307-2503**

**OF COUNSEL:**

**JANE K. TAYLOR**
**Office of General Counsel**
**U.S. Department of Energy**
**Office of General Counsel**
**1000 Independence Ave., S.W.**
**Washington, D.C. 20585**

**ALAN LO RE**
**Senior Trial Attorney**

**STEPHEN FINN**
**SONIA M. ORFIELD**
**RUSSELL A. SHULTIS**
**Trial Attorneys**
**Commercial Litigation Branch**

**June 6, 2008**

**Attorneys for Defendant**

# TABLE OF CONTENTS

PAGE(S)

TABLE OF AUTHORITIES . . . . . . . . . . ii

SUMMARY OF ARGUMENT . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . 2

I. THE GOVERNMENT'S MOTION IS TIMELY . . . . . . . . . . 2

II. EVIDENCE OF THE GOVERNMENT'S SETTLEMENT IS NOT ADMISSIBLE FOR ANOTHER PURPOSE . . . . . . . . . . 3

III. FRE 703 REQUIRES INADMISSIBLE FACTS OR DATA TO BE "OF A TYPE REASONABLY RELIED UPON BY EXPERTS IN THE PARTICULAR FIELD" . . . . . . . . . . 10

CONCLUSION . . . . . . . . . . 12

TABLE OF AUTHORITIES

CASES PAGE(S)

Anchor Sav. Bank, FSB v. United States,
59 Fed. Cl. 126 (2003) . . . . . . . . . . 11

Baumholster v. Amax Coal Co.,
630 F.2d 550 (7th Cir. 1980) . . . . . . . . . . 12

Bice v. United States,
72 Fed. Cl. 432 (2006) . . . . . . . . . . 11

C&E Service, Inc. v. Ashland Inc,
539 F. Supp. 2d 316 (D.D.C. 2008) . . . . . . . . . . 4

Florida Power & Light, v. United States,
No. 98-483C, 2003 WL 24129961 (Fed. Cl. May 21, 2003) . . . . . . . . . . 6, 7

Hudspeth v. C.I.R.,
914 F.2d 1207 (9th Cir.1990) . . . . . . . . . . 12

Indiana Michigan Power Co. v. United States,
422 F.3d 1369 (Fed. Cir. 2005) . . . . . . . . . . 5

PRL USA Holdings, Inc. v. United States Polo Association,
520 F.3d 109 (2nd Cir. 2008) . . . . . . . . . . 3, 4, 5

Pennzoil-Quaker State Co. v. United States,
511 F.3d 1365 (Fed. Cir. 2008) . . . . . . . . . . 10

Power Authority of the State of New York v. United States,
62 Fed. Cl. 276 (2004) . . . . . . . . . . 6, 7

Slaughter v. Southern Talc Co.,
919 F.2d 304 (5th Cir. 1990) . . . . . . . . . . 12

System Fuels, Inc. v. United States,
79 Fed. Cl. 37 (2007) . . . . . . . . . . 11

Towerridge, Inc. v. TAO, Inc.,
111 F.3d 758 (10th Cir) . . . . . . . . . . 4

TABLE OF AUTHORITIES (Cont'd)

CASES PAGE(S)

Trebor Sportswear Co., Inc. v. The Limited Stores,
865 F.2d 506 (2nd Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Williams v. Taylor,
529 U.S. 362, 120 S. Ct. 1495 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

RULES

Fed. R. Evid. 408 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Fed. R. Evid. 703 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10-12

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WISCONSIN ELECTRIC POWER COMPANY, Plaintiff, | ) | |
| v. | ) | No. 00-697C (Senior Judge Merow) |
| THE UNITED STATES, Defendant. | ) | |

DEFENDANT'S REPLY IN SUPPORT OF ITS RENEWED MOTION TO STRIKE PLAINTIFF'S TESTIMONY REGARDING DEFENDANT'S SETTLEMENTS WITH OTHER UTILITIES

Defendant, the United States, respectfully submits this reply to plaintiff's response to defendant's motion to strike plaintiff's testimony regarding defendant's settlements with other utilities.

SUMMARY OF ARGUMENT

In its opposition to the Government's motion to strike, plaintiff, Wisconsin Electric Power Company ("WEPCO"), raises four arguments. It contends, first, that the Government's motion is untimely. Plaintiff's Opposition To Defendant's Renewed Motion To Strike Plaintiff's Testimony Regarding Defendant's Settlements With Other Utilities ("Pl.'s Opp.") at 1-2. It also argues that its testimony regarding the Government's settlements with other utilities falls within the exception to Federal Rule of Evidence ("FRE") 408's prohibitions on the uses of settlement-related evidence. Pl.'s Opp. at 2-8. It attempts to distinguish its effort to use the Government's settlement at trial from the two previous circumstances in which this Court has refused to allow plaintiffs in other spent nuclear fuel cases to rely upon the terms of the Government's

settlements of spent nuclear fuel cases. Pl.'s Opp. at 8-10. Finally, WEPCO argues that the analysis under FRE 703 as to whether an expert may rely upon evidence that is inadmissible need not focus on whether the evidence is of a type relied upon by experts in a particular field. Pl.'s Opp. at 10-11. As discussed below, all of these contentions are without merit.

## ARGUMENT

### I. THE GOVERNMENT'S MOTION IS TIMELY

WEPCO contends that the Government's motion is untimely because it should have been made "prior to the closing of the record in this matter on October 16, 2007." Pl.'s Opp. at 1. WEPCO cites no authority for this proposition, and, even assuming that it is correct, as WEPCO acknowledges, defendant made the same motion during trial. See Pl.'s Opp. at 1-2 (citing Tr. 3073:22-3076:19; 3324:7-8). The Government has simply renewed its motion here.

Moreover, WEPCO contradicts its own argument with its simultaneous acknowledgment that post-trial briefing on this matter was explicitly sanctioned by the Court. Specifically, as WEPCO notes, the Court requested briefing on this issue, in the event that any party proposed a finding related to the settlement agreements. Pl.'s Opp. at 2 n.2 (citing Tr. 3325:25-3326:10); see also Tr. 3324:25-3325:6. While the level of WEPCO's reliance on the Government's settlement in post-trial pleadings was not completely clear, it cited to portions of Ms. Supko's testimony and report encompassing this issue in both its proposed findings of fact and its briefing. See Defendant's Renewed Motion To Strike Plaintiff's Testimony Regarding Defendant's Settlement's With Other Utilities ("Def.'s Mot.") at 2. Moreover, WEPCO gave no indication that it had abandoned its position with respect to the relevance of the settlement. Indeed, WEPCO has continued zealously to assert its theory regarding dual purpose casks since the conclusion of trial. See Wisconsin Electric Power Company's Proposed Findings of Fact

Nos. 32 and 154 (noting that Ms. Supko testified about "DOE's actions to encourage, or agree without objection to, the development and the use of dual-purpose casks by nuclear operating companies for dry cask storage of SNF and for transportation of SNF" and describing Ms. Supko's testimony on this topic); Wisconsin Electric Power Company's Post-Trial Brief at 53-59 (arguing that "DOE foresaw dual purpose systems" and that "DOE's continuing breach and VSC-24 cask problems caused WE[PCO] to reasonably incur costs to procure the NUHOMS system"). Likewise, rather than simply clarify here that it is not relying upon the settlement, as we would expect if the Government was wrongly concerned about WEPCO's broad references to this issue, WEPCO has zealously defended its use of this information. For all of these reasons, the Government's renewed motion is warranted.

## II. EVIDENCE OF THE GOVERNMENT'S SETTLEMENT IS NOT ADMISSIBLE FOR ANOTHER PURPOSE

WEPCO's second and third set of arguments both deal with its contention that its testimony regarding the Government's settlements with other utilities falls within the exception to FRE 408's prohibitions on the uses of settlement-related evidence. FRE 408(b) provides that "[t]his rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a). Examples of permissible purposes include proving a witness's bias or prejudice; negating a contention of undue delay; and proving an effort to obstruct a criminal investigation." Subdivision (a), in turn, states that such evidence is not admissible "when offered to prove liability for, invalidity of, or amount of a claim. . . ." FRE 408.

WEPCO contends that the exception should be interpreted in accord with a decision of the United States Court of Appeals for the Second Circuit, PRL USA Holdings, Inc. v. United States Polo Association, 520 F.3d 109 (2nd Cir. 2008). In that case, a trademark holder brought

an action against several entities' alleged infringement of its trademark. The defendants sought to introduce evidence that, during the course of settlement discussions, the trademark holder had indicated that no claim of infringement would be brought with regard to a particular type of usage, in reliance upon which the defendants had spent millions of dollars developing that usage. Id. at 113. The court determined that "[t]he exception [to FRE 408] clearly intends to exempt from the absolute prohibition of the Rule evidence focused on issues different from the elements of the primary claim in dispute." Id. at 114. Thus, the court concluded that, "while [it] ha[d] no need in th[at] case to determine the full range of accommodation between Rule 408's prohibition and its exception, it seems clear that the firm prohibition should not apply to the affirmative defense of estoppel by acquiescense, which depended on issues distinct from the elements of the claim of infringement." Id. at 115. WEPCO also cites to a case in which similar reasoning was used to permit use of settlement evidence "for the 'other purpose' of establishing [defendant's] misrepresentations upon which plaintiffs allegedly relied," C&E Service, Inc. v. Ashland Inc, 539 F. Supp.2d 316, 321 (D.D.C. 2008), cited in Pl.'s Opp. at 6, and a case in which the plaintiff was allowed to rely upon settlement evidence to show, among other things, that "it was not at fault for any delay. . . , " one of FRE 408(b)'s explicit exceptions to the prohibition on using settlement evidence. Towerridge, Inc. v. TAO, Inc., 111 F.3d 758 (10th Cir. 1997), cited in Pl.'s Opp. at 5.

Based upon these court decisions, WEPCO argues that its proffered testimony regarding the Government's settlements is not offered to prove liability for claim or amount, but, rather, to rebut the Government's argument that these costs were unforeseeable and were not the least-cost

mitigation. Pl.'s Opp. at 3-5.[1] Even assuming this non-binding authority from other circuits were applicable, it would not advance WEPCO's case. Far from focusing on "issues different from the elements of the primary claim in dispute," PRL USA Holdings, Inc., 520 F.3d 109 at 113, the unforseeability and reasonableness of WEPCO's claim are almost exactly the same as two of the elements of WEPCO's claim. As the Federal Circuit has explained, "the presence of a duty to mitigate does not perforce make the pre-breach costs incurred by [a utility] to store its SNF recompensable; [the utility] must prove foreseeability, causation, and reasonableness." Indiana Michigan Power Co. v. United States, 422 F.3d 1369, 1376 (Fed. Cir. 2005) (emphasis added). Given this overlap, the PRL decision itself requires that the evidence of the Government's settlement be excluded as evidence focused on the same elements or issues as the primary dispute. PRL USA Holdings, 520 F.3d at 114; see also Trebor Sportswear Co., Inc. v. The Limited Stores, 865 F.2d 506, 510 (2d Cir. 1989) (finding that settlement evidence could not be admitted only to satisfy the statute of frauds because showing the existence of a contract was the "necessary first step to proving, ultimately, the validity of their claims of breach of contract.").

WEPCO uses this same false distinction to attempt to distinguish the circumstances in the case at hand from those in the other spent fuel cases in which this issue has arisen. Specifically, WEPCO contends, in part, that the other utilities were offering the "amount of the government's settlement in another case to prove the amount of damages in this case." Pl.'s Opp. at 6.

---

[1]Even if her testimony were proper, it is not clear that Ms. Supko's testimony could accomplish WEPCO's stated purpose. All that Ms. Supko indicated in her testimony is that she was aware of three settlements with utilities that have dual purpose casks so that,"to the extent that their costs for additional storage were covered, therefore, costs of dual-purpose casks were part of and covered by the companies through their settlement agreements." Tr. 3325:20-24. She never verifies that the costs of dual purpose casks were actually covered by the agreements.

Accordingly, WEPCO argues that its use of evidence to rebut forseeability is "vastly different than offering the amount of the government's settlement in another case to prove the amount of damages in this case." Pl.'s Opp. at 6. As an initial matter, WEPCO's description of what the utilities were doing in the other cases is oversimplified and does not accord with either the other plaintiffs' own descriptions of their purpose in introducing settlement evidence or the Court's contrary characterization. As WEPCO acknowledges, Pl.'s Opp. at 9-10, the plaintiffs in the other SNF cases also claimed that they were introducing evidence of the rate used in the Government's settlement for purposes other than "to prove liability for, invalidity of, or amount of a claim." FRE 408(a). Specifically, they contended that the rate which the Government used in the settlement would show the Government's intent to operate a storage facility at that rate, show the Government's routine practice of using that rate, and rebut the Government's argument that the rates used in the DCSs are binding and otherwise appropriate. Florida Power & Light Co. v. United States, No. 98-483C, 2003 WL 24129961, at *1 (Fed. Cl. May 21, 2003); Power Authority of the State of New York v. United States, 62 Fed. Cl. 376, 377 (2004). In addition, in both cases, the Court rejected plaintiffs' attempts to distinguish their efforts to use the evidence from an effort to prove liability under FRE 408, but did not simply conclude that the other utilities were offering the "amount of the government's settlement in another case to prove the amount of damages in this case," as WEPCO suggests. Pl.'s Opp. at 6. Rather, the Court carefully evaluated "whether plaintiff's stated grounds for utilizing the . . . settlement agreement comport with the exceptions to FRE 408's general proscription," Power Authority of the State of New York, 62 Fed. Cl. at 377, and the Court found that plaintiff's contention that the settlement agreement would be used to rebut the government's position was unavailing. Specifically, the Court determined that "the nexus between the questions of rate and damages is sufficiently close

and the factual inquiries so closely intertwined . . . the purpose and spirit of Rule 408 would be contravened by the admission of the . . . settlement." Id. at 379; see also Florida Power & Light, 2003 WL 24129961, at *2 ("Because plaintiff argues that the government's intended rate is the same rate in the settlement agreement, that agreement will necessarily be used to support plaintiff's argument as to the rate intended by defendant.").

Moreover, WEPCO is wrong that it is doing something different that what the other utility plaintiffs tried to do. The rate of acceptance is no more directly intertwined with damages than the use of dual purpose casks. Like the rate of acceptance, the propriety of using dual purpose casks directly translates into a higher damages number. As the Government's expert, Mr. Stephan Kiraly, explained in his report, WEPCO chose to pay $14,695,127 for 14 NUHOMS dual purpose casks (Kiraly DDX 5-51, DDX 5-52, Attachment 10) when it could have paid $6,299,325 for a comparable number of VSC-24 storage-only casks (Kiraly DDX 5-51, DDX 5-53, Attachment 10-b-4). Similarly, it chose to pay $383,037 to attempt to license its existing VSC-24 storage-only casks as dual purpose casks (Kiraly DDX 5-58, Attachment 10-a). If the Government is not obligated to pay for a utility's casks, WEPCO's claimed damages must be reduced by $8,778,839. It is hard to imagine how settlement evidence could more directly translate into an amount of damages. As this Court found with respect to rate, because the propriety of using dual purpose technology is so "closely related to the issue of damages in this litigation. . . Plaintiff's characterization of the PECO settlement as evidence of 'intent' amounts to a mere ritual intonation of a permissible purpose but in substance does not establish an exception to Rule 408." Power Authority of the State of New York, 62 Fed. Cl. at 379.

Taking another tack, WEPCO also contends that the circumstances of the other two spent fuel cases are distinct because, "[w]hile the amount of damages to paid in settlement for dual-

purpose casks is negotiable, just as the acceptable rate is negotiable to determine the amount of damages, liability for the payment of costs for dual-purpose casks is not negotiable, at least from the Government's perspective, unless there is some risk of liability on the issue settled." Pl.'s Opp. At 7-8. This argument is fatally flawed in every respect. First, there is no basis in the record regarding how the Government has gone about settling spent fuel cases. Indeed, Ms. Supko has acknowledged that she neither was involved in settlements between the Government and utilities nor had spoken to either party about the settlements. See Tr.3655:13-25. In addition, any such evidence would be privileged, and any such evidence cannot be added to the record at this late date or be offered based upon plaintiff counsel's mere say-so without any foundation. Moreover, the very rule at issue recognizes that settlement does not indicate liability "since the offer may be motivated by a desire for peace rather than from any concession of weakness of position." FRE 408 advisory committee's note. Moreover, even if, in the abstract, a party were only willing to settle based upon a recognition of liability, that willingness does not mean that every term of the agreement shows that same recognition. Rather, a party could agree to a total value that it believed reflected its litigation risk, compromising on specific terms that were critical to the other party. Finally, as demonstrated by WEPCO's statement above to the effect that the Government's settlements indicate liability, WEPCO's very attempt to distinguish its use of settlement testimony from the other utilities' offers of such evidence to prove liability shows that WEPCO is offering this evidence for just that purpose. See also Pl.'s Opp. at 7 ("There is either some exposure to liability for these costs, or there is not. If there is, the claim can be settled. If there is not, it cannot be settled. In order to pay those costs, the Government

attorney has to make a showing that the damages were, to some extent, justified both legally and factually.")[2]

WEPCO also seems to rely upon counsel's own bald statements about the inner workings of the Government in a final argument that it should be permitted to introduce settlement evidence because the overwhelming concern of FRE 408 is whether the potential for prejudice is greater than the probative value. Pl.'s Opp. at 6. Specifically, it indicates that there is no potential for prejudice in the absence of a jury and that the evidence of the Government's settlement has probative value because the Government "will not settle unless it perceives some liability." Id. Even if this were the only concern of the rule, which seems unlikely as it would render FRE 403 superfluous, WEPCO's argument would still fail because there is no basis in fact for it. WEPCO's mere assertion that the Government's settlement represents Government liability does not make it so.[3]

---

[2]WEPCO also seems to claim that, because of the alleged distinction between offering evidence about the rate used in settlements and the reimbursement for dual purpose casks in settlements, its evidence about the use of dual purpose casks is proper while the Government's cross-examination establishing that one quarter of the nuclear utilities have settled their claims against the Government based upon the 900 rate is not. See Pl.'s Opp. at 6-7. Not only is this argument untimely because WEPCO did not raise this issue at trial, see Tr. 3652:22-3661:15, but, as set forth above, both types of evidence are equivalent. Accordingly, the Government only offered the evidence regarding rate of acceptance contingent upon the admission of plaintiff's dual purpose evidence, Tr. 3652:22-3653:13, and the Government has indicated that it would not object to having the rate of acceptance evidence struck if the Court grants its motion to strike the dual-purpose evidence. Def. Mot. at 1 n.1.

[3]As well as essentially offering its own written fact testimony about the inner workings of the Government, WEPCO also usurps the role of the Court in making a credibility determination. It states that the Government's "assertion that evidence of a past settlement will deter it from future settlements is not credible." Pl.'s Opp. at 6. Even if this were WEPCO's role, such a determination is not relevant here. The underlying premise of the rule is that the desirable public outcome of settlement of litigation will be hampered if a settlement can be used against a party thereto. The exceptions do not provide for admitting evidence if the Court does not believe that the party will be deterred from future settlement.

III. FRE 703 REQUIRES INADMISSIBLE FACTS OR DATA TO BE "OF A TYPE REASONABLY RELIED UPON BY EXPERTS IN THE PARTICULAR FIELD"

WEPCO also takes the position that FRE 703 does not require what is indicated by its plain language. FRE 703 states, in pertinent part, as follows:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted.

FRE 703 (emphasis added). WEPCO would read out the clause "by experts in the particular field in forming opinions or inferences upon the subject" making the only test whether the evidence is sufficiently reliable. Pl.'s Opp. at 10-11.

WEPCO's interpretation not only defies ordinary cannons of construction, see Pennzoil-Quaker State Co. v. U.S., 511 F.3d 1365, 1374 (Fed. Cir. 2008) (citing Williams v. Taylor, 529 U.S. 362, 404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)), but it is contradicted by the advisory committee's note to FRE 703. As an initial matter, the 1972 notes emphasize the same phrase that WEPCO would read out of the rule, stating

> If it be feared that enlargement of permissible data may tend to break down the rules of exclusion unduly, notice should be taken that the rule requires that the facts or data 'be of a type reasonably relied upon by experts in the particular field.'

FRE 703 advisory committee's note. In addition, the 1972 notes further explain that "[f]acts or data upon which expert opinions are based may, under the rule, be derived from three possible sources." The notes explain that the source contemplated here

> consists of the presentation of data to the expert outside of court and other than by is own perception. In this respect the rule is designed to broaden the basis for expert opinions beyond that

> current in many jurisdictions and to bring the judicial practice into line with the practice of the experts themselves when not in court. Thus, a physician in his own practice bases his diagnosis on information from numerous sources and of considerable variety, including statements by patients and relatives, reports and opinions from nurses, technicians and other doctors, hospital records and X rays. Most of them are admissible in evidence, but only with the expenditure of substantial time in producing and examining various authenticating witnesses. The physician makes life-and-death decisions in reliance upon them. His validation, expertly performed and subject to cross-examination ought to suffice for judicial purposes.

FRE 703 advisory committee's note (emphasis added). This simply does not describe the practice of nuclear engineers with regard to settlement agreements. There is no evidence that nuclear engineers rely upon settlements of legal claims in their work, much less at the level described in by the advisory committee's note here.

This Court has applied FRE 703 in accordance with the advisory committee's note. For instance, in determining that the bases for the opinions of medical experts were sufficient, this Court has noted that the experts based their opinions on "the type of information reasonably relied upon by experts in the medical field." Bice v. United States, 72 Fed. Cl. 432, 447-48 (2006) (emphasis added). In that case, the Court even made explicit reference to the advisory committee's note, stating that, "[i]ndeed, in the Advisory Committee Notes to FRE 703, the first example of an appropriate basis for expert testimony is the firsthand observation of a patient by a doctor." Id. Similarly, other cases have acknowledged that otherwise inadmissable facts and data relied upon by an expert must be "of the type reasonably relied upon by experts in that particular field," not just sufficiently reliable. System Fuels, Inc. v. United States, 79 Fed. Cl. 37, 69 (2007) (emphasis added); see also Anchor Sav. Bank, FSB v. United States, 59 Fed. Cl. 126, 148 (2003) (indicating that the relevant inquiry under FRE 703 with respect to whether an

expert in the field of banking and finance had reasonably relied upon inadmissable evidence would be whether experts in that field would reasonably rely on such materials).[4] Moreover, other courts have explicitly rejected the use of settlement data along these lines. For instance, the United States Court of Appeals for the Ninth Circuit has explained that, "[g]iven the fact that settlements are often consummated for reasons other than the merits of the case, the evidence might not be reasonably relied upon by experts." Hudspeth v. C.I.R., 914 F.2d 1207, 1215 (9th Cir.1990).

## CONCLUSION

For the foregoing reasons, and for those set forth in the Government's April 23, 2008 motion to strike, the Government respectfully requests that the Court strike (1) Page 8, footnote 25, of Eileen Supko's Expert Report Regarding the Development of Dual-Purpose Casks and the reference to item 28 on page C-2 of the appendix of that report; (2) Ms. Supko's testimony on this portion of her report during her direct examination which appears at pages 3322:12-3328:11

[4]In fact, even the cases upon which WEPCO relies suggest that the Court need not consider the experts field as part of the 703 calculus both suggest the contrary. See Pl.'s Opp. at 11 n.9. Both cases recite the full standard, not leaving out the necessity that the evidence be "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject. . . ." See Baumholster v. Amax Coal Co., 630 F.2d 550, 553 (7th Cir. 1980); Slaughter v. Southern Talc Co., 919 F.2d 304, 307 n.3 (5th Cir. 1990). Both cases also analyze the evidence at issue accordingly. In Baumholster, the court concluded that the expert "testified that a similar survey was conducted by the Atomic Energy Commission to study the effects of blasts in Colorado. This testimony was uncontradicted and unrebutted. It more than satisfied the threshold inquiry as to whether other experts would rely upon it." Baumholster, 630 F.2d at 553. In Slaughter, the court explained that it was reaching its decision to exclude on other grounds, stating that, "[i]n our case, data derived from medically accepted diagnostic techniques were sloppily compiled. Thus, although the diagnostic methods used are not questioned, the errors in the reports render the basis of the resulting opinions suspect." Slaughter, 919 F.2d at 307 n.5 (emphasis omitted).

of the trial transcript; and (3) any reference to these portions of Ms. Supko's report or testimony in WEPCO's pleadings.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ Sharon A. Snyder by s/ Sonia M. Orfield
SHARON A. SNYDER
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-9640
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

ALAN J. LO RE
Senior Trial Counsel

STEPHEN FINN
SONIA M. ORFIELD
RUSSELL A. SHULTIS
Trial Attorneys
Commercial Litigation Branch
Civil Division
U.S. Department of Justice

June 6, 2008

CERTIFICATE OF FILING

I hereby certify under penalty of perjury that on this 6th day of June, 2008, a copy of this "Defendant's Reply In Support of Its Renewed Motion to Strike Plaintiff's Testimony Regarding Defendant's Settlements with Other Utilities" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Sonia M. Orfield